**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

CAROLYN CLARK, *on behalf of herself and*     :
*all other similarly situated individuals*     :
                                             :
        Plaintiff,                           :
                                             :
v.                                              :         Civil Action No. 3:15-cv-391 (MHL)
                                             :
TRANS UNION, LLC,                    :
                                             :
        Defendant.                       :

## FIRST AMENDED CLASS COMPLAINT

The Plaintiff, Carolyn Clark, by counsel, and for her First Amended Class Complaint against Defendant, she alleges as follows:

### PRELIMINARY STATEMENT

1.  The Plaintiff brings this class action against the Defendant to obtain relief for herself and the class she proposes to represent for the Defendant's violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

2.  Defendant is a FCRA-governed "consumer reporting agency" that selectively decides which information to provide to consumers that request the FCRA-governed information in its possession and which information it will hide from consumers. It withholds certain information in order to minimize its compliance costs and to avoid customer service inquiries directed at it and its business partners. These business partners include LexisNexis, a third party that sells public record information to Trans Union and then, in turn, processes disputes regarding that public record information via the "ACDV" system.

3.      Defendant systemically misrepresents to consumers the source of the public record information (such as civil judgments, tax liens, and bankruptcies) that it places on their consumer reports, in violation of 15 U.S.C. § 1681g(a)(2).  Defendant thus deprives consumers of valuable congressionally-mandated information and makes it more difficult for consumers, such as Plaintiff and the putative class members, to correct errors relating to these public records that are caused by Defendant and/or its private vendor sources, but not by any courthouse or other government body that Defendant often misidentifies as its "source."

4.      The Defendant never identifies LexisNexis as the source of the public record information that makes its way into the consumer credit files that it sells. Accordingly, Plaintiff alleges a class-claim under 15 U.S.C. § 1681g(a)(2). The Plaintiff requested a full copy of her credit file from the Defendant. When the Defendant responded to her request, it violated 15 U.S.C. § 1681g(a)(2) because it misrepresented the source of the public record information contained in her file disclosure.

## JURISDICTION

5.      The jurisdiction of this Court is conferred by the FCRA, 15 U.S.C. § 1681(p) and 28 U.S.C. §1331.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

## PARTIES

7.      The Plaintiff, Carolyn Clark ("Ms. Clark" or "Plaintiff"), is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

8.      Upon information and belief, Trans Union, LLC ("Trans Union") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

2

9.      Upon information and belief, Trans Union is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f).  Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

10.      Upon information and belief, Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

## FACTS

### DEFENDANT FAILS TO DISCLOSE THE TRUE SOURCE OF THE PUBLIC INFORMATION IT GATHERS AND REPORTS ABOUT CONSUMERS

11.      For several years, Defendant has obtained its information about bankruptcies, civil judgments, and tax liens (*i.e.,* "public records" information) from other private businesses it calls "vendors."

12.      Trans Union has not retrieved actual public records from courthouses or actual government offices for many years.

13.      Nevertheless, on its credit reports that it provides to consumers, Trans Union falsely lists the names and addresses of courthouses or other government offices as the sole "source" of its public records information.

14.      The public records information that Defendant receives from its vendors is not the court or taxing authority records.  Instead, it is a distilled version of those records, which does not include all of the information available at the actual courthouses or government offices where the true records are housed.

15.      Defendant knows that both it and its public records vendors make mistakes in the distilled public records information that is acquired for purposes of credit reporting.

3

16.     These distilled records frequently have numerical and other factual errors, do not contain the most updated status of the public records, invert the debtor and creditor, and/or are placed on the wrong consumer's report.

17.     Indeed, Trans Union receives hundreds, if not thousands, of consumer disputes per month about public records items being misreported on personal credit reports.

18.     The FCRA unambiguously requires credit-reporting agencies, such as Trans Union, to "clearly and accurately disclose to the consumer" who requests his or her credit file "the sources" that supplied any "information" to the credit-reporting agency about that consumer.  15 U.S.C. § 1681g(a)(2).

19.     Disclosure of the source—the entity that gave the information to the consumer reporting agency—is vital so that certain credit reporting errors that originate at the source can be corrected, and so that consumers always know who is furnishing important credit information about them.

20.     Nevertheless, and despite the clear mandate of FCRA section 1681g(a)(2), Trans Union never discloses to consumers the source of the public records information that it collects and reports about them.

21.     Trans Union conceals that its sources for public record information are private vendors that supply to it only incomplete information, which can often be inaccurate or not up to date.

22.     In this regard, Trans Union is more interested in maintaining the appearance that it receives actual public records from true government sources and in protecting its low-cost private sources of public record data than in disclosing to consumers vital information that Congress required credit-reporting agencies to disclose in FCRA section 1681g(a)(2).  Its true

4

goal is to minimize the number of disputes directed to it and to its vendors, as responding to such inquiries from a compliance standpoint is entirely a liability to Trans Union and its business partners and creates no profit potential.

## MS. CLARK REQUESTS A COPY OF HER TRANS UNION FILE

23.     On multiple occasions within the past two years, Plaintiff requested a full copy of her file from the Defendant.

24.     In its responses to Plaintiff's requests, Trans Union provided and furnished Ms. a copy of her conventional credit report.

25.     On or about August 7, 2014, in response to a request from Plaintiff, Trans Union provided her with a "credit file." This credit file stated that Plaintiff allegedly had public records—two civil judgments in Henrico County General District Court and a Chapter 7 bankruptcy.

26.     One of these civil judgments was allegedly entered against her in November 2008 for the amount of "$575" by Quik Cash.

27.     Trans Union represented that its sources for this public record information were "Henrico District Court, PO Box 27032, Richmond, VA 23273" and "Virginia Federal Court, 1100 E Main St., Room 310, Richmond, VA 23219."

28.     Trans Union did not obtain any civil judgment information about Plaintiff, or any consumer, from "Henrico District Court, PO Box 27032, Richmond, VA 23273" and "Virginia Federal Court, 1100 E Main St., Room 310, Richmond, VA 23219."

29.     Rather, Trans Union obtained this civil judgment information about Plaintiff from one of its private "vendors," including LexisNexis.

30.     The information about this supposed "$575" Quik Cash judgment was incredibly inaccurate. This civil judgment had in fact been appealed and dismissed, so the judgment should not have appeared on her credit report at all, let alone as a civil judgment with a "paid" status.

31.     Based upon information and belief, this error (listing the appealed and dismissed civil case as a paid civil judgment) originated with Trans Union's public records vendors, and not with the Henrico County General District Court records.

32.     Plaintiff submitted multiple disputes to Trans Union asserting that the Quik Cash case was reporting incorrectly and asking it to fix the error.

33.     In at least one of these dispute letters, Plaintiff explained that she appealed the judgment to the circuit court who ultimately dismissed the case with prejudice against Plaintiff.

34.     With this letter, Plaintiff enclosed a copy of the final order entered by the Henrico County Circuit Court showing that her appeal was successful and the case was dismissed.

35.     Notwithstanding Plaintiff's disputes, Trans Union failed to conduct a timely and reasonable reinvestigation into Plaintiff's disputes and inaccurately continued to report the Quik Cash case as a paid civil judgment without indicating the source from which Trans Union obtained this public record information. Trans Union further represented that it had "verified" the Quik Cash judgment.

36.     Had Trans Union truthfully disclosed to Plaintiff that the true source of the Quik Cash "judgment" was a private public records vendor, Plaintiff would have had information to try to correct this error directly with the "vendor."

37.     Importantly, Plaintiff would also have known the true source of the error and could try to stop it from being disseminated by the same vendor to other credit-reporting agencies to which it also sells public records information, including Experian and Equifax.

6

38.     Notwithstanding the FCRA's requirements, Trans Union deprived Plaintiff of this valuable information despite the requirements of the FCRA and according to its standard practice and procedure.

39.     As a result of Trans Union's conduct, Plaintiff has suffered actual damages.

**THE DEFENDANT'S CONDUCT WAS WILLFUL**

40.     The Defendant is well aware of its obligations under the Fair Credit Reporting Act.

41.     The Defendant knew about its legal obligation to disclose the sources of information in a consumer's file disclosure, to maintain reasonable procedures to ensure the maximum possible accuracy of the information that it maintains and publishes about consumers, and to conduct a reasonable investigation of a consumer's dispute regarding the inaccuracy in information contained in his or her consumer file. These obligations are well established in the plain language of the FCRA and in the statute's regulations.

42.     Additionally, the Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

43.     Despite knowing of these legal obligations, the Defendant acted consciously in breaching its known duties and deprived the Plaintiff and other putative class members of their rights under the FCRA.

44.     For example, Trans Union deprived Plaintiff and the putative class members of source of the public record information in their consumer files, despite the requirements of the FCRA and according to its standard practice and procedure.

45.     To this day, nowhere upon personal credit reports or file disclosures does Trans Union disclose the actual source of its public records information, and instead continues to

7

misdirect consumers to courthouses and other government offices with which Defendant has had no dealings in years.

46.     At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, and carried out in reckless disregard for a consumer's rights as set forth under section 1681g(a)(2) of the FCRA, and further assumed an unjustifiably high risk of harm.

47.     Defendant's conduct was not a mere mistake or accident. Instead, it was the intended result of its standard operating procedures.

48.     Furthermore, the inaccurate reporting of the Quik Cash "judgment" occurred because Trans Union failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains concerning Plaintiff.

49.     Specifically, Trans Union does not follow the same automated and systematically rigorous processes to obtain vacated or dismissed judgments that Trans Union follows to obtain the initial derogatory entry of the judgment.

50.     In Plaintiff's instance, if Trans Union had followed such procedures, it would have reported an update in the records showing that the judgment had been appealed and dismissed with prejudice on March 3, 2009.

51.     Just like the initial derogatory information regarding the judgment, information regarding the dismissal of Plaintiff's judgment was publically available—free and easily accessible to Trans Union.

52.     Yet, upon information and belief, Trans Union failed to adopt reasonable procedures (or any procedures whatsoever) to update and correct its public record information

8

concerning judgments entered in the Henrico County General District Court to ensure the maximum possible accuracy of the reporting of these judgments.

53. Trans Union did so even though it has been sued repeatedly for failing to adopt reasonable procedures to timely gather and report updated public record information. *See, e.g., Williams v. Experian Info. Solutions, Inc.*, Case No. 1:13-cv-1102 (E.D. Va. 2013); *Beattie v. Experian Info. Solutions, Inc.*, Case No. 1:13-cv-1195 (E.D. Va. 2013).

54. Finally, Trans Union has been sued repeatedly for failing to conduct a reasonable reinvestigation in response to a consumer's dispute to determine whether the disputed information was inaccurate and to subsequently delete the information from the file, including within this District and Division. *See, e.g.*, *Mullins v. Equifax Information Services,* LLC, 3:05cv888-REP; *Johnson v. Equifax Information Services, LLC,* 3:02cv523-RLW; *Saunders v. TransUnion, LLC*, 3:05cv731-DWD.

55. Trans Union does not make money by processing disputes from consumers—in fact, this is a pure expense for Trans Union. As a result, Trans Union now processes consumer disputes in the Philippines, Costa Rica, and/or India for a small fraction of the amount that it previously spent on disputes when they were processed in the United States.

56. In an attempt to save both time and money, when Trans Union receives a dispute from a consumer, Trans Union, through its outsource vendor in the Philippines, Costa Rica, and/or India, merely transmits a two-digit "dispute code" in an electronic ACDV to the furnisher regarding the account in each instance in accordance with its standard investigation procedures.

57. This two-digit code often does not contain enough information for the furnisher to adequately investigate the consumer's dispute.

58.     Because Trans Union does not convey the required information to the furnisher, it routinely fails to perform a meaningful and searching inquiry into the substance of a consumer's dispute, as required by the FCRA.

59.     Trans Union does not intend to modify its dispute-processing procedures because doing so would drastically increase its operating expenses. Instead, it intentionally chooses to not comply with the FCRA in order to keep its costs low.

60.     Accordingly, the Defendant's violations of 15 U.S.C. §§ 1681e(b), 1681i, and 1681(g) were willful and it is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## Count I:  Violation of 15 U.S.C. § 1681g(a)(2)
### Class Claim

61.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

62.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class defined as follows:

> All natural persons residing in the Fourth Circuit (a) who requested their consumer file from Trans Union or any of its affiliated companies, subsidiaries, or any other Trans Union entity, (b) within five years preceding the filing of this action and during its pendency, and (c) to whom Trans Union provided a response that did not include any reference to its public records vendor as the source of public records information within the consumer's file disclosure. Excluded from the class definition are any employees, officers, or directors of Trans Union, any attorney appearing in this case, and any judge assigned to hear this action.

63.     Plaintiff incorporates her prior allegations and estimates that the class is so numerous that joinder of all members is impractical.  Although the precise number of Class members is known only to Defendant, Trans Union sends tens of thousands of consumer file disclosures per year, and Trans Union's uniform practice and procedure is to always omit the

true source of its public records information from such disclosures. Accordingly, Plaintiff estimates that the class size numbers in the thousands.

64.     Plaintiff's counsel is in possession of consumer files that Trans Union sent to a consumer in response to his or her request for a complete copy of his or her Trans Union consumer file. None of these letters or consumer files contains the actual source of the public records information that it reported about the Plaintiff and the putative class members. This omission has remained consistent and uniform across time, jurisdictions, and consumers.

65.     There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.  For example, and without limitation: (a.) whether Trans Union misrepresented the true source of its public records information in its consumer file disclosures; (b.) whether this failure was a result of Trans Union's standard operating procedure when responding to a consumer's request for a full copy of his or her credit file; (c.) whether Trans Union's conduct constituted a violation of the FCRA; (d.) whether Trans Union's conduct was willful; and (e.) the appropriate amount of statutory and/or punitive damages that are appropriate for such a violation.

66.     Plaintiff's claims are typical of those of the class members.  All are based on the same facts and legal theories.  Trans Union's response to a consumer's request for a full copy of his or her consumer file routinely failed to include any information about the source of public records included on disclosures sent during the full class period. The violation alleged is the same and the class claim will rise and fall entirely based upon whether or not Plaintiff's claim rises or falls.

67.     The Plaintiff will fairly and adequately protect the interests of the class.  The Plaintiff has retained counsel experienced in handling actions involving unlawful practices

against consumers and class actions.  Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. The Plaintiff is aware of her responsibilities to the putative class and has accepted these responsibilities.

68.     Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper.  Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

69.     Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendant has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

70.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.     As alleged above, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member.  Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues.  Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually.  Further, most consumers

affected by the Defendant's FCRA violation would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources.  The issues at the core of this case are class wide and should be resolved at one time.  One win for one consumer would set the law as for every similarly situated consumer.

71.     The Defendant's failure to disclose all information in the consumer's file, including the sources of the public record information, in response to a consumer's request for this information violated 15 U.S.C. § 1681g(a)(2) as to the Plaintiff and other putative class members.

72.     The conduct, action, and inaction of the Defendant were willful, rendering the Defendant liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

73.     Plaintiff and the putative class members are entitled to recover costs and attorney's fees, as well as appropriate equitable relief, from the Defendant, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent entitling the Plaintiff and the class to actual damages in the amount of the value of their consumer disclosure.

74.     As a result of these FCRA violations, the Defendant is liable to the Plaintiff and to each putative class member for statutory damages from $100.00 to $1,000.00, punitive damages, and/or actual damages, as well as for their attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

## Count II: Violation of 15 U.S.C. §1681e(b)
### Individual Claim

75.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

76.    Trans Union violated 15 U.S.C. §1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit report and credit files it published and maintained.

77.    As a result of the conduct, actions and inactions of Trans Union, the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:   credit damage, higher interest rates, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

78.    Trans Union's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Trans Union was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

79.    The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## Count III: Violation of 15 U.S.C. § 1681i(a)(1)
### Individual Claim

80.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

14

81.     Defendant violated 15 U.S.C § 1681i(a)(1) by its conduct which includes, but is not limited to, failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently delete the information from the file.

82.      As a result of this conduct, the Plaintiff suffered actual damages.

83.     Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

84.     The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorney's fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## Count IV: Violation of 15 U.S.C. § 1681i(a)(2)
### Individual Claim

85.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

86.     Defendant violated 15 U.S.C § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to send to the furnishers all relevant information that it received in Plaintiff's dispute letter.

87.      As a result of this conduct, the Plaintiff suffered actual damages.

88.      Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

89.      The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorney's fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## Count V: Violation of 15 U.S.C. § 1681i(a)(4)
### Individual Claim

15

90.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

91.     Defendant violated 15 U.S.C § 1681i(a)(4) by its conduct which includes, but is not limited to, failing to review and consider all relevant information that it received in Plaintiff's communications.

92.     As a result of this conduct, the Plaintiff suffered actual damages.

93.     Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

94.     The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorney's fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

### Count VI: Violation of 15 U.S.C. § 1681i(a)(5)
### <u>Individual Claim</u>

95.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

96.     Defendant violated 15 U.S.C § 1681i(a)(5) by its conduct which includes, but is not limited to, failing to delete any information that was the subject of Plaintiff's disputes and that was inaccurate or could not be verified.

97.     As a result of this conduct, the Plaintiff suffered actual damages.

98.     Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

99.     The Plaintiff is entitled to recover actual damages, statutory damages, costs, and her attorney's fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendant, for her attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems just.

**TRIAL BY JURY IS DEMANDED.**

Respectfully Submitted,
**CAROLYN CLARK**

By_____/s/_____
            Counsel

Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-9285 - Facsimile
E-mail:  kkelly@kellyandcrandall.com
E-mail: aguzzo@kellyandcrandall.com
*Counsel for Plaintiff*

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2015, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Michael R. Ward
Gibson S. Wright
Morris & Morris, P.C.
P.O. Box 30
Richmond, VA 23218
Phone: 804-344-8300
Fax: 804-344-8359
mward@morrismorris.com
gwright@morrismorris.com
*Counsel for Trans Union, LLC*

                                      /s/
                              _____
                              Kristi Cahoon Kelly, VSB #72791
                              KELLY & CRANDALL, PLC
                              4084 University Drive, Suite 202A
                              Fairfax, Virginia 22030
                              (703) 424-7576 Telephone
                              (703) 591-0167 - Facsimile
                              E-mail:  kkelly@kellyandcrandall.com
                              *Counsel for Plaintiff*