IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CAROLYN CLARK,
On behalf of herself and all similarly
situation individuals,

      Plaintiff,

v.                                                          Civil No. 3:15-cv-00391-MHL

TRANS UNION, LLC,

      Defendant.


## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRANSUNION, LLC'S MOTION TO DISMISS

## I.   INTRODUCTION

At the Court's invitation, TransUnion submits its Motion to Dismiss seeking dismissal of Count One of the First Amended Class Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(f)), so that the Court may address the implications of Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), as revised (May 24, 2016), and Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1050 (2016).  As explained below, the allegations of Count One of the First Amended Class Complaint, when considered with the judicially noticeable material, fail to set forth any "concrete" injury caused by the alleged statutory violation that gives rise to the class claim, and so the allegations fail to comply with Article III of the Constitution.  Plaintiff's alleged injury had nothing to do with her supposed lack of knowledge of who gathered information for TransUnion.  Because the General District Court itself is still publishing the allegedly dismissed judgment against Plaintiff as valid, due and owing, the asserted incomplete disclosure did not affect her in any material way.

At a minimum, even if Plaintiff sufficiently pleads injury to herself, she alleges a class that necessarily includes large numbers of individuals without concrete injury resulting from the alleged failure to disclose how court data was collected.  There is no practical way to ascertain, objectively, the specific individuals (if any) who might have been injured by the alleged non-disclosure.  Moreover, the proposed class as alleged has other defects, described in prior briefing and again below.  The only reasonable conclusions this Court may draw are that Plaintiff's class certification theory is inherently implausible, that the class claim should be dismissed and that Plaintiff should be directed to limit her action to her individual claims only.  Count One should be dismissed and the class allegations should be stricken from the First Amended Class Complaint.

Plaintiff's sweeping theory of the case likewise confirms the implausibility of proceeding with class certification, and the Court may make this determination now, based on the pleadings and judicially-noticeable material alone.  Under the Fair Credit Reporting Act ("FCRA") consumers may request that consumer reporting agencies ("CRAs") like TransUnion provide consumers with a copy of information in their credit file.  See 15 U.S.C. §§ 1681g.  Included in what must be provided in response to a valid consumer request is the "sources of the information" in the file.  15 U.S.C. § 1681g(a)(2).  TransUnion complies with this provision by disclosing the ultimate sources of information, such as by disclosing which banks, credit card issuers, mortgage companies and vehicle finance companies are reporting the consumer's payment behavior.  Similarly, when information about a lawsuit (such as judgment) is included in a credit file, the court is identified as the source of the information, because when the word "sources" is given "its plain and ordinary meaning, it would appear simply to refer to the originator of information."  See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., No. 12-0333 (GK), 2015 WL 4638303, at *13 (D.D.C. Aug. 4, 2015) (citations omitted) (interpreting a different federal statute).  Plaintiff contends, by contrast, that when the court information is not gathered by a regular TransUnion employee, but instead by a non-employee contractor, that contractor should be disclosed, in addition to the originating source.  In the more than forty-five years Section 1681g(a)(2) has been in effect, no regulation or reported appellate case has adopted Plaintiff's interpretation of the law.[1]

---

[1] Section 1681g(a)(2) was enacted in 1970.  Pub L. 91-508, 84 Stat. 1114, 1131 (Oct. 26, 1970).  However, "there is a paucity of case law interpreting this provision."  Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1334 (9th Cir. 1995).  We have located no reported cases anywhere interpreting the "sources of information" language prior to 2013, and since then, only two unreported District Courts have addressed how Section 1681g(a)(2) might be interpreted.  One of these cases, Dreher v. Experian Info. Solutions, Inc., No. 3:11-cv-00624, 2013 WL 2389878 (E.D. Va. May 30, 2013), is inapplicable here, as that case addressed whether there was

The Consumer Financial Protection Bureau ("CFPB") is the primary supervisory authority over the credit reporting industry.  See 12 U.S.C. § 5481(12)(F), (14) & (15)(A)(ix); 12 U.S.C. § 5492(a)(10).  As such, it is the primary federal regulator responsible for interpretation and enforcement of 15 U.S.C. § 1681g(a)(2), with enforcement powers under 12 U.S.C. § 5565.  The Federal Trade Commission ("FTC") also is empowered to enforce the provisions of 15 U.S.C. § 1681g(a)(2), but may not seek a monetary penalty unless the CRA was previously enjoined for a violation, and then violated the injunction.  See 15 U.S.C. § 1681s(a)(2)(C).  State attorneys general also may enforce the provisions of Section 1681g(a)(2), but only in consultation with federal regulators.  See 15 U.S.C. § 1681s(c)(2), (4). As with FTC enforcement actions, a state attorney general may not seek a monetary penalty unless the CRA was previously enjoined for a violation, and then violated the injunction.  See 15 U.S.C. § 1681s(c)(5)(A).  The maximum civil penalty, which may be imposed by CFPB against a person who "knowingly violates a Federal consumer financial law," is $1 million per day.  12 U.S.C. § 5565(c)(2)(C).  In determining the amount of the penalty, CFPB must take into account various aggravating and mitigating factors, including "the gravity of the violation" and "the severity of the risks to or losses to the consumer."  See 12 U.S.C. § 5565(c)(3).  The largest

---

a violation of Section 1681g(a)(2) when the credit reporting agency identified a defunct entity as the originator of the information on his credit file, instead of the company subsequently servicing the defunct entity's accounts.  The reasoning in Dreher does not apply, as the relevant courts are still in operation.  Unlike the situation in Dreher, where a consumer might be confused by being directed to address a dispute with a company that had gone out of business, it is not confusing to anyone to identify an existing court as the information source.  In any event, Dreher is on appeal to the Fourth Circuit (Case No. 15-2119); the opening brief in that appeal was filed on June 27, 2016.  Another case, Dennis v. Trans Union, LLC, No. CIV.A. 14-2865, 2014 WL 5325231 (E.D. Pa. Oct. 20, 2014), is neither binding nor persuasive.  Dennis misapplied Dreher and relied on Third Circuit law to permit a claim like the present one to proceed beyond the motion to dismiss stage; Dennis is still being actively litigated in the Eastern District of Pennsylvania, and that court has not yet examined any class certification issues.

3

civil penalty CFPB ever has imposed in the context of credit reporting was $8 million, against a

CRA that allegedly obtained 190,000 files illegally, and which, according to CFPB, persistently

refused to investigate consumer claims that inaccurate data was contained in its files.[2]

None of the governmental bodies with power to enforce the FCRA has ever interpreted

the "sources of information" requirement in the manner requested by Plaintiff here, or has taken

any public enforcement action asserting Plaintiff's theory.  None of them has enjoined

TransUnion or any other CRA with respect to the issue identified in this litigation.  And as noted

above, no controlling legal precedent applies Section 1681g(a)(2) in the manner requested by

Plaintiff.  Nevertheless, Plaintiff contends that by disclosing only the court, and not disclosing

who specifically gathered the information, TransUnion willfully violated the FCRA.  According

to Plaintiff, each time TransUnion delivered a credit file disclosure to any consumer with any

public record on the file, the alleged violation of Section 1681g(a)(2) makes TransUnion liable to

each consumer for $1,000.  According to Plaintiff's counsel, this alleged violation, which is

based solely on a novel, unsupported and unsupportable interpretation of the statute, renders

TransUnion liable to the class for approximately $2,000,000,000 in statutory damages, as well as

for punitive damages on top of that.  See Jenkins v. Equifax Info. Servs. LLC, Case No.

3:15CV443, Trans. of Hearing on Mot. for Prelim. Approval of Class Action Settlement (E.D.

Va. June 14, 2016) at 4, attached as Exhibit G to the concurrently-filed Request for Judicial

Notice ("RJN").  Plaintiff's class action liability theory, if applied literally, would result in a

statutory damages award approximately 250 times larger than the largest civil penalty ever

---

[2] See http://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-subprime-credit-reporting-company-and-owner-to-pay-8-million-penalty-for-illegal-practices/

imposed by the government on any consumer reporting agency.  It is patently unreasonable and excessive, as a matter of law.

It is well known that threats of massive class action liability often bully defendants into settling even weak cases.  See id.; Coopers & Lybrand v. Livesay, 437 U.S. 463, 476 (1978) ("Certification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense."); In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1298 (7th Cir. 1995) (discussing "blackmail" effect of a class certification order, even when the liability theory is weak).  The threat of statutory penalty liability here is grossly disproportionate to the most serious penalties imposed by the government on flagrant violators of the FCRA, as well as to common sense, and so this case presents a serious risk of an unfair outcome if the rule of Spokeo is not enforced. See Stillmock v. Weis Mkts., Inc., 385 Fed. Appx. 267, 276 (4th Cir. 2010) ("I worry that the exponential expansion of statutory damages through the aggressive use of the class action device is a real jobs killer that Congress has not sanctioned.") (Wilkinson, J., concurring specially); see also London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) (refusing to certify a statutory damages class where the defendant's potential liability "would be enormous and completely out of proportion to any harm suffered by the plaintiff"); Forman v. Data Transfer, Inc., 164 F.R.D. 400, 405 (E.D. Pa. 1995) (rejecting class certification when the potential annihilating statutory damages that the class could potentially recover would be disproportionate to address "the minor nuisance" alleged); Ratner v. Chem. Bank New York Trust Co., 54 F.R.D. 412, 414-416 (S.D.N.Y. 1972) (finding that "the allowance of thousands of minimum recoveries like plaintiff's would carry to an absurd and stultifying extreme the specific and essentially inconsistent remedy Congress pre[s]cribed as the means of private

enforcement"); Starbucks Corp. v. Super. Ct., 168 Cal. App. 4th 1436, 1449 (2008) (construing statutory damages provision to require proof of injury and causation to avoid turning "the statute into a veritable financial bonanza … and to avoid absurd consequences, including an unconstitutionally excessive penalty").

Accordingly, this Court should act now to confine this case to its proper scope: All that is fairly presented here is an ordinary individual claim under the FCRA.[3]  The massive statutory damages threat should be removed from this case, and the Supreme Court's recent precedents in Spokeo and Tyson empower this Court to do exactly that.  "In an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so."  Arizona Christian Sch. Tuition Org. v. Winn, 131 S. Ct. 1436, 1449 (2011).

## II.    PLAINTIFF'S ALLEGATIONS AND JUDICIALLY NOTICEABLE MATERIAL

In 2008, Plaintiff suffered a judgment in the General District Court, Henrico County, Virginia, on a $575 loan made to her from Quik Cash.  Plaintiff does not deny that she owed the money, but alleges that in 2009, this judgment was set aside and dismissed by order of the Circuit Court.  In spite of this contention, the General District Court docket still shows Plaintiff to be subject to a judgment in favor of Quik Cash, and the published docket does not reflect the alleged appellate dismissal.  (RJN, Ex. H.)  Thus, to the extent that subsequent credit reporting fails to tie a subsequent Circuit Court dismissal to the original General District Court judgment,

---

[3] And a weak one at that.  When Plaintiff disputed the item with TransUnion in 2014, TransUnion deleted the item within the time period allowed by the statute.  Her claims based on earlier disputes are time-barred or otherwise lacking in merit because she admittedly provided TransUnion with "misstated" information in connection with a dispute she made in 2013.  She also had no damages from the one item this lawsuit is based on, as her file contains a great deal of more serious delinquencies.  But this is all for summary judgment later.

the fault lies entirely with the court itself, or perhaps with Plaintiff's original counsel for failing

to follow through and make sure the General District Court clerk updated its records properly.

The credit reporting error, if there was one at all, has nothing whatsoever to do with <u>who</u>

collected the records or <u>how</u> those records were collected, but rather with an apparent

recordkeeping issue at the original court source.  No matter who collected the records, or how

they were collected, the judgment would have been placed on Plaintiff's file because according

to the General District Court's published records, the judgment remains live and unpaid today.

Even so, Plaintiff seeks to assert, in Count One of the First Amended Class Complaint, a

class claim under 15 U.S.C. § 1681g(a)(2) on behalf of:  "All natural persons residing in the

Fourth Circuit (a) who requested their consumer file from Trans Union [or affiliates] (b) within

five years preceding the filing of this action and during its pendency, and (c) to whom Trans

Union provided a response that did not include any reference to its public records vendor as the

source of public records information within the consumers file disclosure."[4]  (First Am. Compl.

("FAC") ¶ 62.)  Nothing in the class definition restricts membership to consumers who had

errors on their reports, or where the identity of who collected the information from the court (or

the manner of collection) mattered to the resolution of any claim of error.  Plaintiff does not

allege that the alleged non-disclosure of the involvement of a contractor in gathering information

from a court caused her or anyone else any actual damages, and for that reason she does not

assert a class claim for a negligent violation of Section 1681g(a)(2), which requires proof of

actual damages.  <u>See</u> 15 U.S.C. § 1681o.  While Plaintiff alleges, in the alternative, that

TransUnion's purported violation was negligent, she neither pleads that she actually suffered

---

[4] TransUnion personnel, and attorneys and judges working on the case are excluded from the class definition.

harm, nor does she specifically request actual damages under Section 1681o based on the Section 1681g(a)(2) claim.  (FAC ¶¶ 73, 74.)

The proposed class definition also improperly includes persons who previously released claims against TransUnion in a 2013 class settlement, <u>Soutter et al. v. Trans Union, LLC</u>, Case No. 3:10-cv-00514-HEH, E.D. Va. ("<u>Soutter v. TU</u>").  In <u>Soutter v. TU</u>, the plaintiff (now represented by some of Plaintiff's counsel here) filed a FCRA class action in this Court against TransUnion on July 26, 2010 which was later amended on February 15, 2011.  Plaintiff alleged, as here with respect to her individual claims, that TransUnion did not adequately update judgment data.  (RJN, Ex. A, <u>Soutter</u> FAC ¶ 13(a).)  On May 17, 2013, United States District Judge Henry E. Hudson entered an order referring all settlement conferences to Your Honor, then a United States Magistrate Judge.  (RJN, Ex. B, May 17, 2013 Order.)  The parties ultimately agreed to a class action settlement in <u>Soutter v. TU</u>, which was overseen by Your Honor and Judge Hudson.  Plaintiff filed a motion for preliminary approval on December 9, 2013, and it was granted on December 19, 2013.  (RJN, Exs. C-E.)  On June 4, 2014, after a hearing, the Court entered the final approval order, which found that the settlement agreement was "fair, reasonable, adequate, and in the best interest of the Settlement Class Members[.]" (RJN, Ex. F, Final Approval Order ¶ 3.)  Pursuant to the final approval order, the Court certified the following settlement class:

> All consumers in the United States who, between July 26, 2008 and [December 9, 2013], had a hard inquiry on their TransUnion File resulting in the delivery of a TransUnion consumer report that reflected an unsatisfied Virginia General District Court or Virginia Circuit Court civil judgment, if at least 31 days prior to delivery of the consumer report, and on the date of delivery of the consumer report, such judgment had been satisfied, vacated or dismissed, as shown by the VSC Master File.

(<u>Id.</u> ¶ 4.a.)  The scope of the release in <u>Soutter v. TU</u> broadly applied to all FCRA claims relating to public records data (<u>id.</u> ¶ 10).  The release did not exclude claims under Section 1681g(a)(2),

but expressly applied to all claims that might be asserted under the FCRA.  Thus, the <u>Soutter v. TU</u> release covers the proposed class claims pleaded in the instant action, to the extent such claims are presented on behalf of <u>Soutter v. TU</u> class members.

### III.  SUBJECT MATTER JURISDICTION OVER COUNT ONE IS LACKING

The Court lacks subject matter jurisdiction over Count One.  There is no plausible allegation of "concrete" damage resulting to Plaintiff from the alleged non-disclosure that TransUnion used a third party to gather information from the court source.[5]  However, the alleged misreporting relates to an apparent error in the court's recordkeeping, which the court appears not to have corrected even today.  The identity of who collected the data is irrelevant and had no impact on her.  Even though TransUnion disclosed the court as the source, Plaintiff apparently never went to the source – which was also the source of the claimed error – to seek correction.  Plaintiff has not explained and cannot explain how she would have been better able to correct the error at the courthouse, if she had been provided with more information about the collection process.

If the alleged statutory violation resulted in no concrete harm, statutory damages may not be awarded.  <u>See</u> <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540 (2016), <u>as revised</u> (May 24, 2016).  "Article III standing requires a concrete injury even in the context of a statutory violation"; a plaintiff cannot satisfy Article III's injury-in-fact requirement by "alleg[ing] a bare procedural violation, divorced from any concrete harm." <u>Id.</u> at 1549.  Likewise, "a plaintiff [does not]

---

[5] As discussed at the initial status conference, standing to pursue each claim must be evaluated independently.  <u>See</u> <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 353, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006) ("standing is not dispensed in gross") (internal quotation marks and citations omitted).  Pursuant to the Court's suggestion, this Motion focuses solely on standing to pursue Count One, which is the only count seeking class relief.  TransUnion reserves the right to challenge Plaintiff's standing with respect to the other Counts, which seek only individual remedies.

automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. "A violation of one of the FCRA's procedural requirements may result in no harm." Id. at 1550.

Spokeo constitutes a substantial change in the law. See Cruper-Weinmann v. Paris Baguette Am., Inc., No. 14-3709-CV, 2016 WL 3553448, at *1 (2d Cir. June 30, 2016). Recognizing that Spokeo is a strong signal from the Supreme Court to reject no-injury statutory damages class actions at the pleading stage, District Courts are rejecting these claims. Smith v. Ohio State Univ., No. 2:15-CV-3030, 2016 U.S. Dist. LEXIS 74612 (S.D. Ohio June 8, 2016) (applying Spokeo to find that plaintiff did not adequately allege actual injury resulting from alleged violation of FCRA disclosure requirement); see also Jamison v. Bank of Am., N.A., No. 2:16-CV-422-KJM-AC, 2016 U.S. Dist. LEXIS 88326 (E.D. Cal. July 7, 2016) (applying Spokeo to dismiss class claim based on allegedly erroneous disclosures in mortgage payoff statements); Sartin v. EKF Diagnostics, Inc., Civ. No. 16-1816, 2016 WL 3598297, at *4 (E.D. La. July 5, 2016) (dismissing putative class claim under Telephone Consumers Protection Act); Davis Neurology v. DoctorDirectory.com LLC, No. 4:16-CV-95 BSM, 2016 U.S. Dist. LEXIS 84391, at *1 (E.D. Ark. June 29, 2016) (remanding claim after plaintiff conceded lack of injury-in-fact); Gubala v. Time Warner Cable, Inc., No. 15-cv-1078 pp, 2016 U.S. Dist. Lexis 79820, at *16-17 (E.D. Wis. June 17, 2016) (citing Spokeo in ruling that plaintiff had no standing to bring claim that defendant committed a procedural violation of statute by retaining plaintiff's personally identifiable information, where there was no allegation of concrete harm and no evidence that defendant made the personal information available to anyone); Khan v. Children's Nat'l Health Sys., No. CV TDC-15-2125, 2016 WL 2946165, at *7 (D. Md. May 19, 2016) (citing Spokeo and finding lack of standing where plaintiff failed to connect the alleged statutory

violations with a concrete harm); see also Wall v. Michigan Rental, No. 15-13254, 2016 WL 3418539, at * 3 (E.D. Mich. June 22, 2016) (dismissing claim based on alleged violation of statute governing the handling of security deposits, because the alleged violation did nothing "to put the security deposits in jeopardy" of loss or misappropriation). Contra Thomas v. FTS USA, LLC, No. 3:13-cv-825-REP, slip op. at 11 (E.D. Va. June 30, 2016) ("Contrary to Defendants' position, Spokeo did not change the basic requirements of standing.") (Payne, J.).

In Count One, Plaintiff alleges only a procedural violation of the FCRA, untethered to any actual harm.  Section 1681g exists solely to help consumers identify potential inaccuracies in their files, and then to either take steps to correct or explain the items.  See Hauser v. Equifax, Inc., 602 F.2d 811, 817 (8th Cir. 1979) (purpose of Section 1681g is "to provide the consumer with an opportunity to dispute the accuracy of information in his file"); Goode v. LexisNexis Risk & Info. Analytics Grp., Inc., 848 F. Supp. 2d 532, 544-45 (E.D. Pa. 2012) (goal of Section 1681g(a) "is to allow consumers to identify accurate information in their credit files and correct this information") (quoting Gillespie v. Equifax Info. Servs., L.L.C., 484 F. 3d 938, 941 (7th Cir. 2007)).  The structure of the FCRA confirms this interpretation:  Section 1681g sets forth what should be disclosed to the consumer, Section 1681h sets forth the format for the disclosure. Section 1681i sets forth what actions the consumer might take to correct or explain inaccurate items disclosed to him and Section 1681j sets forth when the consumer may or may not be charged for receiving the disclosure.  After receiving the disclosure, the most relevant statutory provision for the consumer is Section 1681i, which sets forth the consumer's right to request reinvestigation of an item in the file (Section 1681i(a)) and, if the reinvestigation does not resolve the item to the consumer's satisfaction, the consumer's right to include an explanatory statement in the file (Section 1681i(b)).  See Gillespie, 484 F.3d at 941.  Here, the alleged lack of

knowledge of how the data was collected could not have any impact on Plaintiff's rights under Section 1681i and could not have impaired the correction of any inaccuracy.

The Supreme Court explained in Spokeo that the FCRA was enacted to "curb the dissemination of false information by adopting procedures designed to decrease that risk." Id. at 1550; see also 15 U.S.C. § 1681 (statement of statutory purpose). But where the particular violation alleged is not the actual cause of the transmission of false information, and neither caused a new, concrete injury or exacerbated an existing one, there is no claim for statutory damages. See Safeco Ins. Co. v. Burr, 551 U.S. 47, 63-64, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) (FCRA case requiring proof of "some practical consequence of reading the report, not merely some subsequent adverse occurrence that would have happened anyway"); Doe v. Chao, 540 U.S. 614, 625-26 (2004) ("a guaranteed minimum" statutory damages must be "contingent upon some showing of actual damages, thereby avoiding giveaways to plaintiffs with nothing more than abstract injuries"); Owner-Operator Indep. Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc., 537 F.3d 1184, 1194 (10th Cir. 2008) (recognizing that injury is an element of a claim for FCRA statutory damages); Dowell v. Wells Fargo Bank, N.A., 517 F.3d 1024, 1026 (8th Cir. 2008) ("A reasonable reading of the [FCRA] could still require proof of actual damages but simply substitute statutory rather than actual damages for the purpose of calculating the damages award."); Trujillo v. First Am. Registry, Inc., 157 Cal. App. 4th 628, 737-38 (2007) (interpreting state-law analog to FCRA; barring statutory damages claim absent proof of actual damages resulting from the alleged violation). In this case, the alleged violation of Section 1681g(a)(2) caused no increased risk of a credit denial or any other practical consequence whatsoever; additional information about who collected data or how it was collected could not have affected Plaintiff at all. Accordingly, she lacks Article III standing.

The present case is different from cases alleged under Section 1681b(b), which involve job applicants' privacy rights, such as Thomas v. FTS, pending before Judge Payne of this Court.[6]  In the Section 1681b(b) cases, plaintiffs contend that they were duped into giving consent to a potential employer's review of their credit history, which information is not generally known to the public and which may not be obtained absent compliance with the FCRA's provisions designed to protect privacy.  A second alleged real-world impact in these cases is concrete impairment of the right to work, such as through an imminent adverse employment action.  See also In re Nickelodeon Consumer Privacy Litig., No. 15-1441, 2016 WL 3513782, at *7  (3d Cir. June 27, 2016) (invasion of privacy claims relating to disclosure of private information not barred by Spokeo); Bona Fide Conglomerate v. SourceAmerica, No. 3:14-cv-751, 2016 WL 3543699, at *8 (S.D. Cal. June 29, 2016) (permitting wiretapping claim, based on private information, to proceed under state invasion of privacy statute, and distinguishing claims based on "a technical violation of the Fair Credit Reporting Act").  Yet even in cases under FCRA provisions focused on privacy protection, courts still should dismiss claims for lack of Article III standing under Spokeo where no real-world impact on the plaintiff is identified.  See Smith v. Ohio State, 2016 WL 3182675 at *4.  Here, no claim is pleaded under Section 1681b(b) or any other privacy provision of the FCRA, and none could be.  That should be reason enough to disregard Thomas v. FTS and similar cases.  What is at issue is information in the public record, and that presently remains part of the public record, so there can be no

---

[6] The statement in that case that Spokeo did not change the law of Article III standing is legally erroneous in any event, and for that independent reason the case should not be followed here.  In Spokeo, the Supreme Court recognized, "A violation of one of the FCRA's procedural requirements may result in no harm" and that even the transmission of inaccurate credit information is not actionable without "harm" or at least some "material risk of harm."  136 S. Ct. at 1550.  Thomas v. FTS fails to conduct the harm and risk analysis required by Spokeo, and instead relies erroneously on pre-Spokeo authorities to reach an incorrect conclusion.

alleged intangible harm resulting from any invasion of privacy.  Compare Thomas v. FTS at 27-28 & n.7 (describing Section 1681b(b) as an analog to common-law invasion of privacy torts).

Nor does Plaintiff allege any cognizable informational injury.  To hold that any deprivation of information is sufficient to confer standing would render Spokeo meaningless. The Plaintiff still must show how the deprivation of information had a "concrete" impact on her. See Washington v. CSC Credit Servs. Inc., 199 F.3d 263, 266 (5th Cir. 2000) (the purpose of the FCRA "is not furthered unless [before filing suit] a plaintiff suffers the harm the procedures are meant to prevent").  For example, Spokeo noted that where deprivation of information had a material effect on political activity, there would be a stronger case for standing.  Spokeo, 136 S. Ct. at 1549-50; Jamison, 2016 U.S. Dist. LEXIS 88326, at *11 (noting that informational injury cases involved disclosure of government-held information, and rejecting plaintiff's theory of informational injury); see also Nader v. Fed. Election Com'n, 725 F.3d 226, 230 (D.C. Cir. 2013) (rejecting theory of informational injury where information was unrelated to plaintiff's personal participation in the political process).  For example, in Federal Election Commission v. Akins, 524 U.S. 11, 21 (1998), the plaintiffs alleged concrete injury based on the importance of the information sought to specific decisions to be made in specific elections that would have made a material difference to their voting decisions.  See also Public Citizen v. Dep't of Justice, 491 U.S. 440, 449 (1989) (pleading that specific information was essential for their participation in the judicial selection process); Doe v. Public Citizen, 749 F.3d 246, 264 (4th Cir. 2014) (nonprofit group's access to court documents for the specific purpose of advocating political positions).  No similar informational injury is pleaded here, as deprivation of information does not automatically translate to harm.

The information TransUnion supposedly failed to disclose had no real-world impact on Plaintiff.  Her ability to correct an error was not impaired, because the source of the alleged error, the court itself, was identified.  See Henson v. CSC Credit Servs., 29 F.3d 280, 285-86 (7th Cir. 1994) ("the consumer will be alerted to the error and can then seek correction of the error by notifying the credit reporting agency or the court itself").  TransUnion's manner of complying with Section 1681g(a)(2) caused no harm to Plaintiff.  See Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'"); see also United States v. Weiss, 467 F.3d 1300, 1311 (11th Cir. 2006) ("federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action") (internal quotation marks and citations omitted) (ellipses in original); Doe v. Nat'l Bd. of Med. Exam'rs, 199 F.3d 146, 153 (3d Cir. 1999) ("The proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statute was violated.").

Because Plaintiff's allegations, when read against the judicially-noticeable material, fail to establish that she sustained any concrete harm as a result of the alleged Section 1681g(a)(2) violation, she lacks standing and Count One should be dismissed pursuant to Rule 12(b)(1).

## IV.    THE CLASS ALLEGATIONS SHOULD BE STRICKEN

**A.**    **Legal Standards on a Motion to Strike Class Allegations.**

Even if Plaintiff has standing to pursue Count One, the First Amended Class Complaint fails to plausibly allege a class of consumers who all have standing to recover on the claim. Accordingly, the class allegations should be stricken pursuant to Rule 12(f).

Rule 23(a) requires that a prospective class comply with four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. EQT Production Co. v. Adair, 764 F.3d 347, 357 (4th Cir. 2014). The four requirements of Rule 23(a) are threshold requirements, each of which must be satisfied in order to proceed as a class action. Dykes v. Portfolio Recovery Assoc., LLC, No. 1:15-cv-110 (JCC/MSN), 2016 WL 346959, at *2 (E.D. Va. January 28, 2016). Additionally, the class action must fall within one of the three categories enumerated in Rule 23(b). EQT, 764 F.3d at 357. Certification under Rule 23(b)(3) is appropriate where the Rule 23(a) prerequisites are satisfied in addition to two other requirements: (1) common questions of law or fact predominate over any questions affecting only individual class members; and (2) proceeding as a class is superior to other available methods for fairly and efficiently adjudicating the controversy. Id.

The Fourth Circuit also has "repeatedly recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable,'" which other courts describe as an "ascertainability" requirement. Id. at 358 (quoting Hammond v. Powell, 462 F.2d 1053, 1055 (4th Cir.1972)). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." EQT, 764 F.3d at 358 (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592–94 (3d Cir. 2012)).

"The predominance inquiry [of Rule 23(b)(3)] focuses not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation." EQT, 764 F.3d at 366. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Dykes, 2016 WL 346959, at *2 (citing Gariety v. Grant Thornton, LLP, 368 F.3d 356, 362 (4th Cir. 2004)). "Even a plethora of

identical practices will not satisfy the predominance requirement if the defendants' common conduct has little bearing on the central issue in the litigation." EQT, 764 F.3d at 366.  The district court must examine why any such common practices were sufficient to ensure that class member's common issues will not predominate over individual ones.  Id.  Where the court must engage in "substantial and individualized inquiries for each class member," the predominance requirement is not satisfied.  Paulino v. Dollar General Corp., 2014 WL 1875326, at *6 (N.D. W. Va. May 9, 2014).  Rule 23(b)(3) also requires the proponent of the class to establish that class litigation is superior to other modes of dispute resolution.

"[T]he Rule 23 class-action device was designed to allow an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979).  Where the class claims as pleaded are legally defective, the Court may strike or dismiss them at the outset of the case, without waiting for the plaintiff to file a class certification motion.  Carter v. Allstate Ins. Co., No. 5:12-CV-72, 2012 WL 3637239, at *7 (N.D. W. Va. Aug. 21, 2012).  As explained below, Plaintiff's proposed class cannot meet the necessary elements for class certification, and accordingly the class allegations should be stricken from the FAC.

**B.**      **Plaintiff Fails to Plead a Plausible Ascertainable Class of Injured Persons.**

As discussed above, Plaintiff fails to plead injury to herself.  With respect to the class allegations, she fails to limit her class definition to persons with "concrete" injury, as mandated by Spokeo.  There is, for example, no effort to limit the proposed class to persons with inaccurate information in their credit files, but plaintiff fails to explain how a person whose file was perfectly accurate was harmed in some concrete way by not knowing the specifics of how the accurate information was collected.  Moreover, just as Plaintiff herself was not affected by the

alleged non-disclosure of who specifically collected information from the court, there is no way to ascertain which specific putative class members might have been affected.  As is the case with Plaintiff, for example, if the source of an alleged inaccuracy is the court, how the information is collected from the court is wholly irrelevant.  Finally, many putative class members may have been successfully able to obtain correction of an erroneous item by disputing it directly to TransUnion, and for these consumers the manner of disclosure under Section 1681g(a)(2) would have been completely irrelevant to the outcome, and could not have injured them at all.

Plaintiff's failure to limit the class definition to persons with concrete harm, resulting from the alleged violation, renders the class definition defective as a matter of law.  See Mazza v. Am. Honda Motor Co., 666 F.3d 581, 594 (9th Cir. 2012) ("No class may be certified that contains members lacking Article III standing.") (internal quotations omitted); Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006) ("The class must … be defined in such a way that anyone within it would have standing."); In re Zappos.com, Inc., Customer Data Sec. Breach Litig., No. 3:12-CV-00325-RCJ-VPC, 2016 WL 2637810, at *8 (D. Nev. May 6, 2016) (striking class allegations because class must be limited "to individuals who have suffered actual injury").  Nor can a class be certified in hopes of later identifying the class members who sustained injury-in-fact.  Rule 23(c)(2)(B) requires that valid class members be identified before notice is sent; there is no justification under the Federal Rules for a process that certifies a class first, and then later determines who rightfully belongs in the class.  "A court that is not satisfied that the requirements of class certification are met should refuse certification until they have been met."  2003 Rules Advisory Committee Notes to Fed. R. Civ. P. 23(c)(1)(C) (explaining deletion of earlier language permitting conditional class certification).

The Supreme Court recognizes the importance of the question "whether uninjured class members may recover." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1050 (2016). Nevertheless, the Tyson majority declined to answer it, noting that the question was not "fairly presented" in Tyson itself because of a lack of sufficient information in the record. Id. The Tyson majority nevertheless cautioned that class counsel ultimately would have to establish whether any "methodology will be successful in identifying uninjured class members," presumably to ensure that uninjured persons do not partake in a class award. Id. at 1050. Significantly, Chief Justice Roberts' concurring opinion (joined by Justice Alito, the author of Spokeo), reiterates that "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." Id. at 1053 (Roberts, C. J., concurring). "[I]f there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand." Id. Because the Rules Enabling Act states that the Federal Rules of Civil Procedure cannot enlarge substantive rights, see 28 U.S.C. § 2072(b), a consumer lacking injury-in-fact (and thus lacking Article III standing in an individual case) cannot recover money via a class action certified under Rule 23. In other words, the Rules Enabling Act shows that Congress did not intend to permit Rule 23 to be used as a tool to deliver relief to uninjured persons.

The best application of Spokeo and Tyson, read together and read against the backdrop of the Rules Enabling Act, is that they reinforce each other. All plaintiffs must have a concrete injury and persons without concrete injuries must be excluded from any class. The Supreme Court did not say how to determine who was concretely injured and who was not, but the legal principle is solid: Persons without concrete injury may not recover money from lawsuits in federal court. See Ortiz v. Fibreboard Corp., 527 U.S. 815, 857-58, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999) (error to include in a proposed class persons who presently lack standing to assert

claims); In re Rail Freight Fuel Surcharge Antitrust Litig., 725 F.3d 244, 252 (D.C. Cir. 2013) (class cannot be certified where plaintiffs cannot "show that they can prove, through common evidence, that all class members were in fact injured" by the alleged wrongdoing); Kohen v. Pac. Inv. Mgmt. Co. LLC, 571 F.3d 672, 677 (7th Cir. 2009) (a class may not be certified if it would include "a great many" uninjured persons); In re New Motor Vehicles Can. Exp. Antitrust Litig., 522 F.3d 6, 28 (1st Cir. 2008) (no class can be certified unless the proponent of the class presents an evidence-based "means of determining that each member of the class was in fact injured"); Goodman v. Lukens Steel Co., 777 F.2d 113, 122 (3d Cir. 1985) (stating that the Article III standing of absent class members "is one of compliance with the provisions of Rule 23"); Adashunas v. Negley, 626 F.2d 600, 604 (7th Cir. 1980) (affirming denial of class certification where it was unclear "that the proposed class members have all suffered a constitutional or statutory violation warranting some relief"); Mazur v. eBay, Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009) (class cannot be certified if it includes persons not harmed by the challenged practice).

Because Plaintiff's proposed class necessarily includes uninjured persons, it fails as a matter of law and should be stricken.  See Sandoval v. PharmaCare US, Inc., No. 3:15-cv-00120-H-JLB, 2016 WL 3554919, at *8 (S.D. Cal. June 10, 2016) ("class certification is not proper to the extent that Plaintiffs raise claims and theories they do not have standing to raise, and to the extent that the class includes consumers who have no cognizable injury"; citing Spokeo).

## C.      **Plaintiff Does Not Plausibly Plead Commonality Under Rule 23(a)(2).**

The class allegations also should be stricken because commonality is not properly pleaded under Rule 23(a)(2).   "Commonality requires that 'there are questions of law or fact common to the class.'"  Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001) (quoting Fed. R. Civ. P. 23(a)(2)).

Plaintiff alleges that the following questions are allegedly common to the putative class: (1) whether TransUnion misrepresented the source of the public records information by not disclosing who gathered the information; (2) whether the failure to disclose this information was a standard operating procedure for TransUnion when responding to a consumer's request for a credit file; (3) whether TransUnion's conduct violated the FCRA; (4) whether TransUnion's conduct was willful; and (5) the appropriate amount of statutory and/or punitive damages.  (FAC ¶ 65.)  However, Plaintiff's mere recitation of "these questions is not sufficient to obtain class certification."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).  As the Fourth Circuit stated in an FCRA case, "the members of a proposed class do not establish that their claims can be productively litigated at once, merely by alleging a violation of the same legal provision by the same defendant."  Soutter v. Equifax Info. Servs., 498 Fed. Appx. 260, 265-66 (4th Cir. 2012) ("Soutter v. Equifax") (quoting Wal-Mart, 131 S. Ct. at 2551 and M.D. ex rel. Stukenberg. v. Perry, 675 F.3d 832, 840 (5th Cir. 2012)).

It is not sufficient for Plaintiff to pose broadly general questions, such as whether TransUnion violated the FCRA or whether the class is entitled to statutory damages.  Dukes requires that the "common contention . . . [must be] of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Dukes, 131 S. Ct. at 2551.  Here, Plaintiff cannot prove that TransUnion violated Section 1681g(a)(2) in one stroke.  As explained above, the purpose of Section 1681g(a) is to allow consumers to identify inaccurate information in their credit files and correct any inaccuracies through the procedure established under Section 1681i.  See Gillespie, 484 F.3d at 941.  Thus, proving the class claim will require a review of every single credit file to determine whether the public records information contained

therein was in fact inaccurate, because a consumer who received a credit file <u>with accurate</u>

information has no need to seek correction, and therefore could not have been affected at all by

not being told the details of how the data was retrieved.

Lastly, <u>Dukes</u> teaches that a critical inquiry for commonality is whether "the class

members have suffered the same injury[.]" <u>Dukes</u>, 131 S. Ct. at 2551 (internal quotation marks

and citation omitted).  Because, as explained above, Plaintiff's proposed class necessarily

includes both injured and uninjured consumers, the broadly-defined class could not have suffered

the same injury, as required under <u>Dukes</u>.

For these additional reasons, Plaintiff cannot establish commonality in this case, and the

class allegations should be stricken.

**D.**      <u>**Typicality and Adequacy Also Are Not Adequately Pleaded.**</u>

Plaintiff also cannot pursue class claims because the claim is not typical of the class she

proposes to represent, and because she is not adequate to pursue these claims.[7]

Under the typicality requirement, "the claims or defenses of the representative parties

[must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  For typicality,

"[t]he representative party's interest in prosecuting [her] own case must simultaneously tend to

advance the interests of the absent class members." <u>Deiter v. Microsoft Corp.</u>, 436 F.3d 461, 466

(4th Cir. 2006).  "For that essential reason, plaintiff's claim cannot be so different from the

claims of absent class members that their claims will not be advanced by plaintiff's proof of [her]

own individual claim." <u>Id.</u> at 466-67.  "The adequacy of representation prerequisite requires the

---

[7] Because of the intertwined nature of typicality and adequacy, courts frequently consider these elements together.  <u>In re Am. Med. Sys., Inc.</u>, 75 F.3d 1069, 1083 (6th Cir.1996) ("The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members.").

Court to be satisfied that 'the representative parties will fairly and adequately protect the interests of the class.'" <u>Manuel v. Wells Fargo Bank, Nat. Ass'n</u>, No. 3:14CV238, 2015 WL 4994549, at *15 (E.D. Va. Aug. 19, 2015) (quoting Fed. R. Civ. P. 23(a)(4)). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 625, 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997) (citation omitted). "[A class representative] must be part of the class and possess the same interest and suffer the same injury as the class members." <u>Id.</u> at 625-26 (internal quotation marks and citations omitted).

Plaintiff's circumstances are significantly atypical of the broad class proposed in the FAC. Plaintiff's experience with her credit file was unique and different than the class she seeks to certify. She avers that even though the civil judgment entered against her was appealed and dismissed, it nonetheless remained on her credit file, and that TransUnion purportedly failed to correct this inaccurate information despite Plaintiff's disputes. (<u>Id.</u> ¶¶ 26, 30, 32, 34, 35.) Plaintiff's proposed class, however, is not limited to consumers in the rare circumstances pleaded—that a judgment was successfully reversed on appeal, and that post-appeal the judgment remained on the credit file. Rather, the proposed class includes <u>all</u> consumers with any public records data regardless of its nature or degree of accuracy and consumers who did not dispute any purported inaccuracies, like Plaintiff. Accordingly, her "claim is 'typical' only on an 'unacceptably general level.' . . . On 'a more directly relevant level,' her claim has 'meaningful differences' from the class she seeks to represent." <u>Soutter v. Equifax</u>, 498 F. App'x at 265 (internal citation omitted). She also fails the typicality and adequacy tests because the alleged error remains present in the court records themselves. Plaintiff is the wrong person to represent

those consumers (if any) with reporting errors caused by something <u>other</u> than an error at the court.  And of course she is the wrong person to represent persons whose reports are accurate.

In addition, because Plaintiff is pursuing <u>five</u> individual claims (Section 1681e(b) and Section 1681i(a)(1), (2), (4) & (5)) based on different legal theories than the proposed class, she is atypical in this regard as well.  Her individual claims also make her an inadequate class representative because "the existence of non-class claims may distract a class representative from vigorously pursuing class claims."  <u>Pagan v. The New Wilson's Meats, Inc.</u>, No. CIV. 08-0751, 2011 WL 1876027, at *8 (E.D. Pa. May 17, 2011) (internal quotation marks and citation omitted).  By pursuing both individual and class claims in the same action, Plaintiff may improperly favor pursuit of her individual claims over the class claims, thus creating an inherent conflict.  <u>Id.</u>[8]  Accordingly, Plaintiff cannot, as a matter of law, meet the typicality and adequacy elements for class certification, and that is a further reason to strike the class allegations.

**E.**     **Plaintiff Fails to Plead Plausible Allegations That Common Issues Predominate Over Individual Issues.**

Plaintiff's class certification allegations also fail as a matter of law because determining which specific consumers were harmed (if any), how they were harmed and to what degree (if at all) will predominate over any common issues in the case.  In the wake of <u>Spokeo</u> and <u>Tyson</u>, Plaintiff will be unable to establish predominance as required under Rule 23(b)(3).

Under <u>Spokeo</u>, an actual harm inquiry is of critical importance to putative class members' claims for statutory damages, and therefore it must be factored into the predominance analysis.  <u>See</u> <u>Spokeo</u>, 136 S. Ct. at 1549 (requiring "a concrete injury even in the context of a statutory

---

[8] As noted in prior briefing, Plaintiff also is inadequate because of her involvement in the <u>Jenkins v. Equifax</u> litigation.

violation."); <u>Ali v. U.S.A. Cab Ltd.</u>, 176 Cal. App. 4th 1333, 1349-50 (2009) (certification is improper where individualized issues predominate "pertaining to the fact of damage").

Plaintiff cannot avoid the predominance inquiry by arguing for a classwide statutory damages award, and then seeking to parcel out that award only among injured consumers to be identified later.  This argument was rejected in <u>Campbell v. Facebook</u>, No. 13-CV-5996-PJH, 2016 WL 2897936 (N.D. Cal. May 18, 2016), which recently denied certification of a statutory damages class because "many class members appear to have suffered little, if any, harm." <u>Id.</u> at *15.  Plaintiffs failed to prove predominance under Rule 23(b)(3) because "many individual damages awards would be disproportionate, and sorting out those disproportionate damages awards would require individualized analyses that would predominate over common ones." <u>Id.</u> The Fourth Circuit likely would agree, as in <u>Broussard v. Meineke Disc. Muffler Shops, Inc.</u>, 155 F.3d 331, 342 (4th Cir. 1998), it recognized that class member damages claims can be "inherently individualized and thus not easily amenable to class treatment."  The Fourth Circuit reaffirmed this principle in <u>Soutter v. Equifax</u>, reversing a class certification order entered by Judge Payne of this Court and noting that "problems" with Rule 23(b)(3) predominance were "exacerbated because [plaintiff] is claiming only statutory damages, which typically require an individualized inquiry."  498 Fed. Appx. at 265.

Significantly, <u>Soutter v. Equifax</u> and <u>Campbell</u> were decided before the Supreme Court issued <u>Spokeo</u>, and their rationale is doubly persuasive now.  The need for an individualized showing of concrete injury and causation for each proposed class member confirms that it is impossible for Plaintiff to satisfy Rule 23(b)(3)'s predominance requirement as a matter of law. <u>See</u> <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426, 1433 (2013) ("a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that

theory [and] [i]f the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)"); Bell Atl. Corp. v. AT&T Corp., 339 F.3d 294, 304 (5th Cir. 2003) (finding that class certification was improper where plaintiffs could not establish that their damages methodology (based on nationwide averages) represented "an adequate approximation of any single class member's damages, let alone a just and reasonable estimate of the damages of every class member"); Antoninetti v. Chipotle Mex. Grill, Inc., No. 06CV02671 BTM WMC, 2012 WL 3762440, at *6 (S.D. Cal. Aug. 28, 2012), reconsideration denied, No. 06CV2671 BTM WMC, 2013 WL 149722 (S.D. Cal. Jan. 14, 2013) (finding individual issues predominated in action seeking statutory damages because "each putative class member's entitlement to damages hinges on factual determinations requiring individualized proof.  Even if some of the factual issues could be resolved on a class-wide basis . . . the issues requiring individualized proof would still predominate" where each class member would need to describe their own experience with defendant's facilities to recover); Moeller v. Taco Bell Corp., No. C 02–5849, 2012 WL 3070863, at *5 (N.D. Cal. Jul. 26, 2012) (finding no predominance because it was "impossible to make an across-the-board conclusion as to the recovery of damages by any class member"); O'Shea v. Epson Am., Inc., No. CV 09-8063 PSG CWX, 2011 WL 4352458, at *10 (C.D. Cal. Sept. 19, 2011) (stating that "satisfaction of Article III's requirements raises individualized issues that defeat certification under Rule 23(b)(3)"); Glatt v. PMI Group, Inc., No. 2:03-cv-326-FtM-29SPC, 2004 U.S. Dist. LEXIS 28927, at *15-16 (M.D. Fla. Sept. 7, 2004) (denying class certification, finding that even where plaintiff limits the claim to statutory damages, individualized issues still exist as to the amount of statutory damages and as to whether the defendant acted willfully as to each putative class member).

This principle was applied in the context of an FCRA claim in <u>Harper v. Trans Union, LLC</u>, No. 04-3510, 2006 WL 3762035, at *8-9 (E.D. Pa. Dec. 20, 2006), where class certification was denied in part because plaintiff's class certification theory, if adopted, would have improperly imposed liability "with no factual inquiry into whether the absent class members were injured by the violation."  <u>See also</u> <u>Gomez v. Kroll Factual Data, Inc.</u>, No. 13-CV-0445-WJM-KMT, 2014 WL 1456530, at *4 (D. Colo. Apr. 14, 2014) ("The individualized nature of an FCRA claim—particularly one seeking statutory damages—has led most courts to deny class certification in these types of cases.") (citations omitted); <u>Klotz v. Trans Union LLC</u>, 246 F.R.D. 208, 216 (E.D. Pa. 2007) (denying certification in FCRA case because "whether the disputed information was inaccurate" is an issue "that must be determined individually"); <u>Gardner v. Equifax Info. Servs., LLC</u>, No. 06-3102, 2007 WL 2261688, at * 7 (D. Minn. Aug. 6, 2007) ("Issues such as the reasonableness of [a credit reporting agency's] conduct along with a determination of the willfulness of the violation are of such an individual nature that maintenance of a class action would become unwieldy.") (citation omitted); <u>Pendleton v. Trans Union Sys. Corp.</u>, 76 F.R.D. 192 (E.D. Pa. 1977) (finding common questions of law or fact did not predominate in FCRA action).

Because <u>Spokeo</u> requires an individualized showing of concrete injury for each proposed class member, individualized issues predominate over any common issues.  Thus, Plaintiff has not adequately pleaded the predominance element and the class allegations should be stricken.

**F.**   **<u>The Class Allegations Should Be Stricken Because, as Pleaded, They Improperly Include Claims That Were Settled in <em>Soutter v. TU</em>.</u>**

The practical difficulty of determining at trial which class members did and did not sustain concrete injury also shows that Plaintiff fails to adequately plead that class litigation is

superior to other methods of dispute resolution.  See Ganesh, L.L.C. v. Comput. Learning Ctrs., Inc., 183 F.R.D. 487, 491 (E.D. Va. 1998).  This is another way the class allegations do not satisfy Rule 23(b)(3).  But yet another significant problem, for purposes of Rule 23(b)(3)'s superiority analysis, is that the class allegations here are grossly overbroad.  The claims supposedly are based on events as early as 2010, and the claims substantially overlap with claims released in the Soutter v. TU settlement.

"A necessary condition to certification under Rule 23(b)(3) is the class action's superiority to all other methods for the fair and efficient adjudication of the controversy." Gregory v. Finova Capital Corp., 442 F.3d 188, 191 n.3 (4th Cir. 2006).  "Thus, a class cannot be certified under Rule 23(b)(3) if there is a method to which the class action is not superior."  Id. A crucial consideration in the Rule 23(b)(3) superiority test is "the extent and nature of any litigation concerning the controversy already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B); see Gregory, 442 F.3d at 191 (reversing class certification order because litigation had already been commenced elsewhere concerning the same controversy).

Here, the proposed class is not "superior to other available methods," as many of the putative class members described in the FAC have already obtained relief already found by this Court to be "fair, reasonable, adequate, and in the best interest of the Settlement Class Members" in the Soutter v. TU settlement.  (RJN, Ex. F, Final Approval Order ¶ 3.)  The scope of the Soutter v. TU release encompasses the Section 1681g(a)(2) claim alleged in the instant lawsuit since it broadly applies to all FCRA claims relating to public records data.  (Id. ¶ 10.)  Moreover, the class period in Soutter v. TU and this case significantly overlap.  In Soutter v. TU, the class period was July 26, 2008 through December 9, 2013, while Plaintiff's proposed class includes consumers who requested a credit file five years preceding the filing of the action, i.e., June 30,

2010 through June 30, 2015.  Remarkably, despite the clear parallels between the <u>Soutter v. TU</u>

class action and this case, Plaintiff makes no reference to <u>Soutter v. TU</u> in the FAC.  Instead,

Plaintiff cites to other lawsuits that supposedly show TransUnion's conduct to be willful

violations.  (FAC ¶ 54.)  Yet as the Court is well aware, TransUnion undertook significant efforts

in <u>Soutter v. TU</u> to address issues relating to the reporting of public records data.

 Accordingly, because a class action involving a significant portion of the proposed class

here (approximately 159,000 consumers) has already been filed <u>and settled</u>, the extremely broad

class action proposed by Plaintiff fails to satisfy the superiority requirement.  <u>See</u> <u>Kemp v.</u>

<u>Medtronic Inc.</u>, No. 1:97-CV-00103-SSB, 1998 WL 35161989, at *10 (S.D. Ohio Feb. 11, 1998)

(stating that because other class actions had been filed addressing similar issues, a class action

was not superior because "plaintiffs will not inundate the court system with a burdensome

amount of [individual] lawsuits."); <u>In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.</u>,

170 F.R.D. 417, 426 n.20 (E.D. La. 1997) ("Today plaintiffs' counsel seeks to create one more

national litigation class action in the name of the same set of plaintiffs.  One wonders how

judicial economy (or any other policy) is thereby served.").  The class definition is inherently

defective as pleaded, and it should be stricken.

**G.** <u>**No Class May Be Certified Under Rule 23(b)(1) or (b)(2).**</u>

 Plaintiff's proposed class also cannot be certified under Rule 23(b)(1) or (b)(2).  A class

may not be certified under Rule 23(b)(1)(A) or (b)(2) where, as here, a litigant seeks monetary

damages in the action.  <u>See</u> <u>Pruitt v. Allied Chem. Corp.</u>, 85 F.R.D. 100, 107 (E.D. Va. 1980)

(stating that certification under Rule 23(b)(1)(A) should be denied "where monetary damage is

the predominating relief sought by the class members."); <u>Dukes</u>, 131 S. Ct. at 2558-60; <u>Thorn v.</u>

<u>Jefferson-Pilot Life Ins. Co.</u>, 445 F.3d 311, 330 (4th Cir. 2006) ("Rule 23(b)(2)'s categorical

exclusion of class actions seeking primarily monetary relief . . . ensures that the class is sufficiently cohesive that the class-action device is properly employed.").  Here, Plaintiff primarily seeks between $100 and $1,000 in monetary damages for each class member.  (See FAC ¶¶ 72-73.)  The monetary relief dominates the relief requested overall, thus, making certification under Rule 23(b)(1)(A) and (b)(2) improper.[9]

Further, a class may not be certified under Rule 23(b)(1)(B), which is permitted only in cases where "any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members."  Ortiz v. Fibreboard Corp., 527 U.S. 815, 834, 119 S. Ct. 2295, 2309, 144 L. Ed. 2d 715 (1999).  As explained in Ortiz, "[o]ne recurring type of such suits was the limited fund class action, aggregating claims made by numerous persons against a fund insufficient to satisfy all claims."  Id. (internal quotation marks, citation and ellipses omitted).  Plaintiff does not adequately plead a Rule 23(b)(1)(B) limited fund here.  See In re Trans Union Corp. Privacy Litig., 211 F.R.D. 328, 347 (N.D. Ill. 2002) (holding that FCRA claim "for statutory damages cannot be maintained as a Rule 23(b)(1)(B) limited fund class.").  Thus, Plaintiff's proposed class cannot be certified under Rule 23(b)(1)(B).

Plaintiff's requests to certify a class under Rule 23(b)(1) and (b)(2) should be stricken, as there is no basis whatsoever for these certification theories.

## V.     CONCLUSION

Based on the foregoing, TransUnion requests that Count One be dismissed.

---

[9] Even though Plaintiff alleges that equitable and declaratory relief are also appropriate in this case (FAC ¶¶ 69,73), such remedies are not available to private litigants under the FCRA.  See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., No. 06-5118, 2007 WL 2306578, at *9 (E.D. Pa. Aug. 9, 2007) (holding that injunctive and declaratory relief are unavailable under the FCRA). Moreover, the FAC makes clear that the primary relief requested by Plaintiff is monetary.  (See FAC ¶¶ 72, 73.)

TRANSUNION, LLC


/s/_____
Michael R. Ward
Virginia Bar Number 41133
Gibson S. Wright
Virginia Bar Number 84632
Attorneys for TransUnion, LLC
Morris & Morris, P.C.
P.O. Box 30
Richmond, VA 23218-0030
Phone: 804-344-8300
Fax: 804-344-8359
mward@morrismorris.com
gwright@morrismorris.com

Admitted pro hac vice:
Stephen Julian Newman
Stroock & Stroock & Lavan LLP (CA NA)
2029 Century Park East, Suite 1600
Los Angeles, CA 90067-3086
Phone: 310-556-5982
Fax: 310-556-5959
snewman@stroock.com

Brian Charles Frontino
Alisa Marie Taormina
Stroock & Stroock & Lavan LLP
200 S. Biscayne Blvd., Ste 3100
Miami, FL 33131
Phone:  305-789-9300
Fax: 305-789-9302
bfrontino@stroock.com
ataorimina@strock.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 18 day of J, 2016, I will electronically file the foregoing with

the Clerk of the Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the following:

Kristi Cahoon Kelly
Andrew Joseph Guzzo
Kelly & Crandall PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
kkelly@kellyandcrandall.com
aguzzo@kellyandcrandall.com

Leonard Anthony Bennett
Susan Mary Rotkis
Craig Carley Marchiando
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
lenbennett@clalegal.com
srotkis@clalegal.com
craig@clalegal.com

Casey Shannon Nash
Matthew James Erausquin
Consumer Litigation Associates PC 1800
Diagonal Rd. Suite 600
Alexandria, VA 22314
casey@clalegal.com
matt@clalegal.com

James A. Francis
John Soumilas
Lauren KW Brennan
Francis & Mailman, P.C.
Land Title Building
100 S Broad Street Suite 1902
Philadelphia, PA 19110
jsoumilas@consumerlawfirm.com
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com

TRANSUNION, LLC


/s/_____
Michael R. Ward
Virginia Bar Number 41133
Attorney for TransUnion, LLC
Morris & Morris, P.C.
P.O. Box 30
Richmond, VA 23218-0030
Phone: 804-344-8300
Fax: 804-344-8359
mward@morrismorris.com

LA 51999231v3