# EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

DONNA K. SOUTTER,                          :
    *for herself and on behalf of all*       :
    *similarly situated individuals*          :
                      :
        Plaintiff,                        :
                       :     Civil Action No. 3:10-cv-514
v.                                         :
                       :
TRANS UNION, LLC,                          :
                       :
        Defendant.                        :

### FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, Donna K. Soutter, (hereafter, "the Plaintiff") by counsel, and as for her First Amended Complaint against the Defendant, she alleges as follows:

### INTRODUCTION

1.     This action is brought under the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681e(b), *et seq.*  Plaintiff obtained a copy of her credit reports from Trans Union, LLC, and discovered that it was reporting a judgment against her in favor of Virginia Credit Union in Richmond General District Court.  This reporting was inaccurate.  Trans Union violated the FCRA, 15 U.S.C. § 1681e(b) by failing to establish or maintain reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.  Plaintiff also seeks to represent a class of similarly situated consumers.

### JURISDICTION

2.     The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C.

**EXHIBIT A**

§1331.

  3.  Venue is proper in this Court under 28 U.S.C. § 1391(b), as Trans Union

maintains its registered agent in Richmond.

<div align="center">

**PARTIES**

</div>

  4.  Plaintiff resides in the Commonwealth of Virginia, and she is a "consumer" as

protected and governed by the FCRA.

  5.  Trans Union, LLC (hereinafter, "Trans Union") is an Illinois corporation, which

does business in the Commonwealth of Virginia.  At all times relevant hereto, it was a

"consumer reporting agency" as governed by the FCRA.

<div align="center">

**FACTS**

</div>

  6.  Prior to December 2008, Plaintiff obtained a copy of her credit report from Trans

Union and discovered that Trans Union was reporting a judgment against her in favor of Virginia

Credit Union in Richmond General District Court.

  7.  Trans Union's reporting of the judgment was inaccurate and in violation of the

FCRA, 15 U.S.C. § 1681e(b) due to Defendant's failure to follow reasonable procedures to

assure maximum possible accuracy in the preparation of the credit reports and credit files it

publishes and maintains concerning the Plaintiff.   If the Defendant had fully investigated, it

would have found that on March 02, 2008 the Court entered an Order that set aside and

dismissed the judgment, because the judgment was obtained against the Plaintiff in error.

  8.  Trans Union failed to maintain reasonable procedures designed to avoid violations

of the FCRA, 15 U.S.C. § 1681e(b).

  9.  Trans Union furnished multiple consumer reports regarding the Plaintiff to third

<div align="center">

2

</div>

parties that contained the inaccurate information alleged herein.

## CLASS ACTION ALLEGATIONS

10.     Plaintiff re-alleges and reincorporates paragraphs 1 though 9 above as if fully set out herein.

11.     **The Class.**  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class (the "class") initially defined as follows:

> All natural persons for whom Trans Union's records note that a "hard inquiry" credit report was furnished to a third party other than for an employment purpose at a time when any Virginia General District Court or Circuit Court judgment that had been satisfied, appealed, or vacated more than 30 days earlier was reported in Trans Union's file as remaining unpaid.

12.     **Numerosity.  FED. R. CIV. P. 23(a)(1).**  Upon information and belief, the Plaintiff alleges that class members are so numerous that joinder of all is impractical.  The names and addresses of the class members are identifiable through documents the Defendant maintains, and the class members may be notified of the pendency of this action by published and/or mailed notice.

13.     **Existence and Predominance of Common Questions of Law and Fact.  FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the class. These questions predominate over the questions affecting only individual members.  These common legal and factual questions include, but are not limited to:

> a.     Whether Trans Union provided a consumer report that reported a judgment without first fully investigating the public records to determine if the judgment was set aside, vacated, or dismissed with prejudice;
>
> b.     Whether Trans Union knowingly and intentionally committed an act in

3

conscious disregard of the rights of the consumer; and

    c.      Whether Trans Union's conduct constituted violations of the FCRA.

14.    **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the claims of each class member. Plaintiff is entitled to relief under the same causes of action as the other members of the class.

15.    **Adequacy.** FED. R. CIV. P. 23(a)(4)). Plaintiff is an adequate representative of the class, because her interests coincide with and are not antagonistic to the interests of the members of the class she seeks to represent; she has retained counsel competent and experienced in such litigation; and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the class.

16.    **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages each member suffered are such that individual prosecution would prove burdensome and expensive, given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for individual members of the class to effectively redress the wrongs done to them. Even if members of the class could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments given the complex legal and factual issues Defendant's conduct raises and also increases the delay and expense to all parties and the court system. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of

proof in a case.

17.     **Injunctive Relief Appropriate for the Class. FED. R. CIV. P. 23(b)(2).** Class

certification is appropriate, because Defendant has acted on grounds generally applicable to the

class, making appropriate equitable injunctive relief with respect to Plaintiff and the putative class

members.

<div align="center">

**COUNT ONE: VIOLATION OF THE FCRA, § 1681e(b)**

**CLASS CLAIM**

</div>

18.     Plaintiff re-alleges and reincorporates paragraphs 1 though 17 above as if fully set

out herein.

19.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow

reasonable procedures to assure maximum possible accuracy in the preparation of the consumer

reports it furnished regarding the Plaintiff.

20.     As a result of the conduct, actions, and inactions of the Defendant as alleged in

this count, the Plaintiff suffered actual damages.

21.     Defendant's conduct, actions, and inactions were willful, rendering Defendant

liable for actual, statutory, and punitive damages, as well as attorneys' fees and costs in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the

Defendant was negligent entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff and the class members pray for relief as follows:

1.      An order certifying the proposed class herein under Federal Rule 23 and

        appointing Plaintiff and her undersigned counsel of record to represent same;

2.      The creation of a common fund available to provide notice of and remedy for

<div align="center">5</div>

Defendant's violations;

3.      Statutory and punitive damages for the class claims;

4.      Actual or statutory damages and punitive damages for the individual claims;

5.      Attorneys' fees, expenses, and costs;

6.      Pre-judgment and post-judgment interest as provided by law; and

7.      Such other relief the Court does deem just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

> Respectfully submitted,
> **DONNA K. SOUTTER**,
> *For herself and on behalf of all similarly situated*
> *individuals.*
>
> _____/s/_____
> Leonard A. Bennett, VSB # 37523
> Consumer Litigation Associates, P.C.
> 12515 Warwick Boulevard, Suite 100
> Newport News, VA 23606
> (757) 930-3660
> (757) 930-3662 facsimile
> lenbennett@clalegal.com

# EXHIBIT "B"

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

DONNA K. SOUTTER,

      Plaintiff,

v.

TRANS UNION, LLC,

      Defendant.

Civil Action No.  3:10CV00514-HEH

```
 F I L E D
  MAY 1 7 2013
 CLERK, U.S. DISTRICT COURT
      RICHMOND, VA
```

## ORDER
### (Settlement Conference Referral)

It is hereby ORDERED that the settlement conference and proceedings required by paragraph 3 of the Scheduling Order are referred to United States Magistrate Judge M. Hannah Lauck.  Counsel shall be responsible for contacting the Chambers of Magistrate Judge Lauck within five (5) days of the date of this Order to schedule the conference, which should occur at least thirty (30) days before the start of trial and at such time as Magistrate Judge Lauck shall approve.

The Clerk is directed to send a copy of this Order to Magistrate Judge Lauck and to all counsel of record.

It is so ORDERED.

                                       /s/
                                  Henry E. Hudson
                                  United States District Judge

Dated: May 16 2013
Richmond, Virginia

# EXHIBIT "C"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

DONNA K. SOUTTER,
*For herself and on behalf of all*
*Similarly situated individuals,*

                    Plaintiff,

v.                                                    Civil Action No.  3:10-cv-00514-HEH

TRANS UNION, LLC,

                    Defendant.


## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND CLASS CERTIFICATION FOR SETTLEMENT

Plaintiff Donna K. Soutter ("Plaintiff"), on behalf of herself and all others similarly situated, pursuant to Fed. R. Civ. P. 23, hereby moves the Court for Preliminary Approval of Class Action Settlement Agreement and Class Certification for Settlement. For the reasons supplied in the accompanying Memorandum in Support, filed herewith, the Plaintiff respectfully requests that the court enter a Preliminary Approval Order:

(1) preliminarily approving a proposed class settlement,

(2) scheduling a fairness hearing,

(3) certifying the proposed settlement class for purposes of the proposed class settlement,

(4) appointing class counsel, and

(5) approving the form and manner of notice proposed to be sent to all members of the

    settlement classes.

The Plaintiff has attached as exhibits to the Memorandum in Support of this motion a Proposed Preliminary Approval Order and Proposed Class Notice.


Respectfully submitted,


1

**DONNA K. SOUTTER,**
*For herself and on behalf of all*
*Similarly situated individuals,*

By: _____ /s/ _____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail: lenbennett@clalegal.com

Susan M. Rotkis
VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail: srotkis@clalegal.com

Janelle Mason Mikac
VSB# 82389
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Phone: (703) 273-7770
Fax: (888) 892-3513
E-mail: janelle@clalegal.com

*Attorneys for Plaintiff and the Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5<u>th</u> day of December, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Grant E. Kronenberg
Michael Robert Ward
Morris & Morris PC
11 South 12th Street
5th Floor
PO Box 30
Richmond, VA 23218
E-mail: gkronenberg@morrismorris.com
Email: mward@morrismorris.com

Matthew Kasey Ratliff
Strasberger & Price, LLP
901 Main Street, Suite 4400
Dallas, TX 75202
E-mail: kasey.ratliff@strasburger.com

Paul Lee Myers
Strasburger & Price, LLP
2801 Network Boulevard
Suite 600, Frisco, TX 75034
E-mail: paul.myers@strasburger.com

Stephen Newman
Strook, Strook & Lavan, LLP
2029 Century Park East
Suite 1600
Los Angeles, CA 90067-3086
E-mail: snewman@strook.com

/s/
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail: lenbennett@clalegal.com

3

# EXHIBIT "D"

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

DONNA K. SOUTTER,
*For herself and on behalf of all
Similarly situated individuals,*

<div align="center">Plaintiff,</div>

v.                                                          Civil Action No.  3:10-cv-00514-HEH

TRANS UNION, LLC,

<div align="center">Defendant.</div>

---

**<u>MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AGREEMENT</u>**

Plaintiff Donna K. Soutter ("Plaintiff"), on behalf of herself and all others similarly

situated (the "Class" as further defined below). Plaintiff entered into a Class Action Settlement

("Settlement Agreement" or "Agreement") with Defendant Trans Union, LLC ("Defendant" and,

together with Plaintiff, the "Parties") and now seeks the Court's preliminary approval of the

Settlement.  In support of the motion for an Order preliminarily approving the class action

settlement, scheduling a fairness hearing, certifying the proposed settlement class for purposes of

the proposed class settlement, appointing class counsel, and approving the form and manner of

notice proposed to be sent to all members of the settlement classes, the Plaintiff submits this

memorandum.

## I.  INTRODUCTION

On July 26, 2008, Plaintiff Donna K. Soutter filed a Complaint in the above-captioned

class action (the "Lawsuit"), asserting class claims against Defendant for violations of the Fair

Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. More specifically, this case arises

under 15 U.S.C. § 1681e(b) of the FCRA, which provides in relevant part:

Whenever a consumer reporting agency prepares a consumer report it shall follow

<div align="center">1</div>

reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).  Plaintiff Donna Soutter alleged that Trans Union had a uniform policy of including Virginia state-court judgments in the consumer reports it prepares and sells, and listing the judgments as unpaid, even though its records do not contain information on the current status of those judgments, any of which may have been satisfied, vacated or appealed since the date Trans Union last received the data. As a result, a class of approximately 159,000 consumers had an inaccurate consumer report issued about them by Trans Union; each of these consumer reports showed an unpaid judgment when in fact the court records showed that the judgment had been satisfied, vacated or appealed at least thirty days before Trans Union's report was prepared.

Although this case followed, and was stayed for a period because of the pending appeal of a similar case against Equifax Information Services, LLC[1], the Parties in this action have litigated independently of the Equifax case.  The Parties have served and conducted both informal and formal discovery.  They have examined and defended the claims as they uniquely relate to Trans Union.

Trans Union vigorously denied all claims asserted against it in the action and Amended Complaint.  It contended that its past and current procedures with respect to collecting and reporting public records, and handling disputes relating thereto, were reasonable and compliant with the FCRA. Trans Union also opposed class certification.  That later obstacle became a greater defense leverage when the United States Court of Appeals for the Fourth Circuit reversed

---

[1] *Donna K. Soutter, et al. v. Equifax Information Services, LLC*, Civil Action No.: 3:10-cv107 (E.D.Va.)(J. Payne).

the grant of class certification in the Equifax matter because the breadth of the class definition covered atypical time periods.[2]

Plaintiff, Class Counsel, Trans Union and Trans Union's Counsel engaged in extensive, good faith arms-length negotiations under the supervision of U.S. Magistrate Judge M. Hannah Lauck, including by participating in two in person private mediations, one supervised by the Hon. Wayne Anderson (Ret.),[3] JAMS in Chicago, and the other supervised by the Hon. Stanley Birch (Ret.),[4] JAMS, in Atlanta. The negotiations and mediation sessions finally resulted in an agreement on the principal terms of the settlement. Plaintiff and her counsel have concluded that the settlement now brokered before Judge Birch is fair, reasonable, adequate, and in the best interests of the Class based upon their investigation and discovery, and taking into account the sharply contested issues involved, the uncertainty and cost of further prosecution of the Action, and the substantial benefits to be received by the Settlement Class pursuant to the Settlement Agreement.

Pursuant to Fed. R. Civ. P. 23, the Plaintiff now seeks preliminary approval of the proposed class action settlement of the FCRA claims. Specifically, the Plaintiff requests that the Court preliminarily certify the proposed class and the proposed class settlement by entering the proposed Order of Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order").

## II. PROPOSED CLASS ACTION SETTLEMENT

### A.    Settlement Terms

---

[2] *Souter v. Equifax Info. Servs., LLC*, 498 F. App'x 260 (4th Cir. 2012). The Plaintiff's narrowed Motion for Class Certification has now been briefed and is pending before Senior District Court Judge Payne.
[3] Judge Anderson retired from the United States District Court for the Northern District of Illinois.
[4] Judge Birch retired from the United States Court of Appeals for the Eleventh Circuit.

The Parties settled the FCRA claims on a class basis ("Proposed Settlement") upon these basic terms:

1. Trans Union will make the correction of all credit files for the approximately 159,000 class members by using the data the Parties have now obtained directly from the Executive Secretary for the Supreme Court of Virginia;

2. All class members will be eligible to submit a claim for a cash payment from the $1.4 million settlement fund. All consumers may claim and obtain a pro rata payment that is increased if the consumer had previously disputed the reporting inaccuracy and if the reporting correction materially increases the class member's credit score;

3. All class members are entitled to six months of Trans Union's primary credit monitoring service that it regularly sells for $14.95 a month;

4. To accommodate the possibility that some consumers may claim larger than typical actual damages, the Settlement permits class members to participate in the settlement to cause the correction of their credit file and to receive the Trans Union credit monitoring product, but still reserve and thus exclude their individual actual damage claims for later negotiation and /or litigation;

5. The Settlement is narrowly tailored to settle and release only claims related to the inaccurate Virginia civil judgments; and

6. The cost of Notice and Administration and Plaintiff's counsel's attorneys' fees will be paid from the settlement fund.

**A. Certification of a Fed. R. Civ. P. 23(b)(3) Settlement Class.**

For settlement purposes only, the Plaintiffs seeks preliminary certification of a Fed. R. Civ. P. 23(b)(3) class as follows:

4

All consumers in the United States who, between July 26, 2008, and the date of preliminary approval of the Settlement, had a hard inquiry on their Trans Union File resulting in the delivery of a Trans Union consumer report that reflected an unsatisfied Virginia General District Court or Virginia Circuit Court civil judgment, if at least 31 days prior to delivery of the consumer report, and on the date of delivery of the consumer report, such judgment had been satisfied, vacated or dismissed, as shown by the VSC Master File.

Ex. 1, ¶ 2.37.

### C. Third-Party Settlement Administrator

Plaintiff's counsel asks the Court to appoint and hire a third party class action settlement administrator, McGladrey LLP (the "Settlement Administrator"), to oversee the administration of the settlement and the notification to Class Members. All costs and expenses for the Settlement Administrator shall be paid from the Settlement Fund, established pursuant to the Settlement Agreement ¶ 4.3. The Settlement Administrator will be responsible for mailing the approved class action notices and claim forms to the Class Members. A separate checking account will be established by the Settlement Administrator for purposes of depositing the settlement funds after payment of all settlement costs for the sole purpose of issuing settlement checks to Class Members who submit claims.  If this Class Action Settlement receives final approval, the Class Administrator will verify that the settlement checks were mailed to the Class Members who made a valid claim.

### D. Mailed Notice

Trans Union is responsible for providing the last known address and identity of each Class Member, and other related information regarding the Virginia court judgment in the Class Member's credit reporting history. Before sending the written notices to the Class Members, the Class Administrator will, as necessary, further research and update the Class Members' addresses. As part of this process, the Parties agreed to a protective order permitting the

disclosure of Class Member data and requiring the Settlement Administrator and Class Counsel to keep the Class Member information confidential. After completing the address updating process, in the manner prescribed in the Settlement Agreement, the Settlement Administrator will send, via First Class U.S. mail, the Court-approved written notice of the settlement to each Class Member at his or her last known valid address. If any notice is returned with a new address, the notice will be re-mailed by the Settlement Administrator to the new address. The notice shall be in substantially the form attached to the Settlement Agreement. In addition to the Mail Notice plan, Class Counsel will establish a Settlement Website, either independently or with the assistance of the Settlement Administrator, containing relevant information such as the Settlement Agreement, the Mail Notice, Claim Form, Preliminary Approval Order, and contact information for the Settlement Administrator. Ex. 1, ¶ 7.3.

### E.  Class Counsel's Fees, Costs, and Expenses.

Defendant agreed not to contest Plaintiff's counsel's motion for attorneys' fees and expenses as the successful party in the litigation, subject to court approval and for settlement purposes only. Plaintiff may also ask the Court for a Service award. Ex.1, ¶ 5.1.

### III.    ARGUMENT

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Gen. Tel. Co. of SW. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Id.* "For in such cases, 'the class-action device saves the resources of both the

courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'" *Id.*

There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation. *See In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (there is an "especially strong" presumption in favor of voluntary settlements in "class actions . . . where substantial judicial resources can be conserved by avoiding formal litigation."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (same); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (same); 2 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). This includes the "strong initial presumption" in class action cases "that the compromise is fair and reasonable." *In re MicroStrategy*, 148 F. Supp. 2d at 663 (internal quotation marks omitted). Proposed settlements must, nevertheless, satisfy the requirements of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 592 (1997).

Rule 23 "states that '[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 599 U.S. 393, 398 (2010) (quoting Fed. R. Civ. P. 23). Each condition is addressed below.

## A. The Rule 23(a) Requirements are Satisfied

Rule 23(a) sets forth four basic requirements for any class action—numerosity, commonality, typicality, and adequacy. This Lawsuit satisfies the Rule 23(a) prerequisites.

Each Rule 23(a) factor is considered in turn below.

### 1.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)). However, where the class numbers 25 or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 class members sufficient); *cf. Kennedy v. Va. Polytechnic Inst. & State Univ.*, 2010 U.S. Dist. LEXIS 101491, at *6 (W.D. Va. Sept. 23, 2010) ("it is exceedingly rare to certify classes with less than 25 members").

The numerosity requirement is met here. There are approximately 159,000 Class Members, including the named Plaintiff as class representative. Joinder of this many individuals is neither possible nor practical, so the first prong of the certification test has been met. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) (finding that a class of 1,400 members "easily satisfied Rule 23(a)(1)'s numerosity requirement").

### 2.    Commonality

Rule 23(a)(2) requires that the court find that "that there are questions of law or fact common to the class." "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO,* 212 F.R.D. 320, 322 (E.D. Va. 2003). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes,* ___

U.S. ___, 131 S. Ct. 2541, 2551 (2011) (quoting *Falcon*, 457 U.S. at 157). Moreover, the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Jeffreys*, 212 F.R.D. at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (Factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory.").

This case involves common questions of fact and law, particularly where the Named Plaintiff and potential Class Members were subject to the same manner of judgment disposition collection and credit reporting by Trans Union that allegedly violated the FCRA. The putative class claims stem from Plaintiff's allegations that the same procedures and thus Rule 23's low commonality threshold is satisfied for the Class Members. In other words, the putative class claims are legally and factually identical and the commonality prong of Rule 23 is satisfied.

### 3.   Typicality

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. and Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as

the claims of the class members." *Jeffreys*, 212 F.R.D. at 322.  Commonality and typicality tend to merge because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 131 S. Ct. at 2551 n.5.

Donna Soutter's claim is typical of those of other class members. She, as every class member, alleges a violation of the same FCRA provision, 15 U.S.C. §1681e(b). This claim challenges the credit reporting procedures of Trans Union and does not depend on any individualized facts. Trans Union obtains all of its Virginia judgment records under the same contract from the same vendor. During the period at issue in this case, those records were gathered from a single source—the Virginia Supreme Court's website. Trans Union's notice and knowledge of the challenged reporting problem is the same for Plaintiff as for the Class. Plaintiff's proof of each of these elements in her own case will advance the class claims in proportionate degree.[5]

### 4.    Adequacy of Representation

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys,* 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing

---

[5] Typicality is the basis for the Fourth Circuit reversal in the Equifax case.  However, the posture at this stage is of course different—settlement.  But the facts are also alleged to be different as to Trans Union versus Equifax.  Regardless, the evidence obtained in the Equifax case after the Fourth Circuit ruling have addressed the earlier dispute as to typicality.  *See, e.g., Soutter v. Equifax Information Servs., LLC.*, Civ. No. 3:10cv107 (E.D. Va.), Am. Mot. to Certify Class Docket No. 131; Mem. in Supp. of Am. Mot. to Certify Class, Docket No. 132.

*Broussard v. Meineke Disc. Muffler Shops,* 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. Plaintiff understands the obligations of a class representative, has adequately represented the interests of the putative class, and has retained experienced counsel who have handled numerous consumer-protection class actions. Plaintiff also aligned herself with Counsel who are qualified to prosecute this case in favor of the Class. Plaintiff's Counsel has effectively handled numerous consumer-protection and complex class actions, typically as lead or co-lead counsel. *Soutter v. Equifax Info. Servs., LLC,* 2011 U.S. Dist. LEXIS 34267, at *28 (E.D. Va. Mar. 30, 2011) (stating "the Court finds that Soutter's counsel [Leonard A. Bennett] is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as Class Counsel in numerous cases."). *See* Decl. of Leonard Bennett. (attached as Exhibit 2).

Plaintiff has no antagonistic or conflicting interests with the Class Members. Both Plaintiff and the Class Members seek statutory damages for Defendant's alleged unlawful actions. Plaintiff is a member of the Settlement Class. Considering the identity of claims, there is no potential for conflicting interests in this action. Accordingly, the class is adequately represented to meet the requirements under Rule 23.

**B.      The Rule 23(b) Requirements are Satisfied.**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem,* 521 U.S. at 614. Here, Plaintiff seeks certification pursuant to Rule 23(b)(3).

**1.  The Class Should Be Certified under Rule 23(b)(3)**

Rule 23(b)(3) actions may be permitted in "situations in which class-action treatment is not as clearly called for, but may nevertheless be convenient and desirable." *Id.* at 615 (internal quotation marks omitted). To certify such a class, the court must find that "the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Preliminary certification of the proposed class is appropriate under Rule 23(b)(3). The predominance and superiority factors are addressed below.

### i. *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Moreover, the Fourth Circuit has held that, even when present, individualized damage determinations may not preclude the conclusion that common questions of law and fact predominate. *See, e.g.*, *Ward v. Dixie Nat. Life. Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010); *Gunnells Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003). Instead, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, Arthur R. Miller

& Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986). In this case, any of the claims with individualized damages or other factors were settled individually separate and apart from the FCRA class claims.

A common nucleus of facts and potential legal remedies dominate this litigation. The claims of the Class Representative and Class Members are identical. As this Court recently held in granting the parties' joint motion for class certification and preliminary approval of a class action settlement in *Mauro*:

> In this matter, all of the proposed class members' claims arise from Defendants' act of mailing the dunning letter at issue. And as already established, their legal theories are identical: Each class member's potential claim turns on the single question of whether Defendants' Verification Notice violated the FDCPA. That shared issue clearly predominates over potential peripheral matters, making collective resolution sensible in this case.

2011 U.S. Dist. LEXIS 127173, at *10.

Plaintiff's and the putative class members' claims are identical, and all issues are subject to the same proof. Proof of the class claims will leave nothing for Plaintiff to prove individually. Class-wide claims predominate over any individual claims.

ii. ***Superiority***

The superiority inquiry requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When determining whether a class action is superior, the Court should consider the following factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Jeffreys,* 212 F.R.D. at 323; *see also* Fed. R. Civ. P. 23(b)(3)(A)-(D).

13

"In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff.  Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs." Advisory Committee's Note to 1996 Amendment to Rule 23.  In other words, a class action is superior when potential damages may be too insignificant to provide class members with incentive to pursue a claim individually. Thus, the class mechanism permits a large group of claimants to have their claims adjudicated in a single lawsuit.  For example, in *Quiroz v. Revenue Production Management, Inc.*, 252 F.R.D. 438 (N.D. Ill. 2008), the defendant collection agency engaged in standardized conduct by sending allegedly deceptive form letters to many consumers. Each individual consumer's claim under the FDCPA would have been too small to vindicate through an individual suit, so a class action was found to be the superior method to resolve these claims.

Similarly, FCRA statutory damage cases, like this one, are ideally suited for class certification, because of the uniform, but limited, recoveries sought under a complex statute. *See Bush v. Calloway Consol. Group River City, Inc.*, 2012 WL 1016871, at *11 (M.D. Fla. March 26, 2012) ("Courts routinely find class resolution superior in consumer protection actions . . . ."); *Larsen v. JBC Legal Group, P.C.*, 2006 U.S. Dist. LEXIS 42474, at *20 (E.D.N.Y. June 23, 2006) ("courts routinely certify plaintiffs' classes under Rule 23(b)(3) in FDCPA cases[.]"). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Bush*, 2012 WL 1016871, at *11 (quoting *Amchem*, 521 U.S. at 617).  Rule 23(b)(3) was designed for situations such as this, where the amount in controversy for any individual claimant is small, but injury is substantial in the aggregate.

The alternative mechanism, permitting individual lawsuits for a small statutory penalty,

14

would be costly and duplicative. Through the class action procedure, these common claims can be brought in one proceeding, thereby eliminating unnecessary duplication, preserving limited judicial resources, and achieving economies of time, effort, and expense.

## C.    The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate

Although pretrial settlement of class actions is favored, "Rule 23(e) provides that 'a class action shall not be dismissed without the approval of the court." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (citations omitted). "To this end, 'the role of the Court reviewing the proposed settlement of a class action under Fed. R. Civ. P. 23(e) is to assure that the procedures followed meet the requirements of the Rule and . . . to examine the settlement for fairness and adequacy.'" *In re MicroStrategy*, 148 F. Supp. 2d at 663.

"[T]he Fourth Circuit [has] adopted a bifurcated analysis, separating the inquiry into a settlement's 'fairness' from the inquiry into a settlement's 'adequacy.'" *Id.* These safeguards ensure that "a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Amchem*, 521 U.S. at 621; *see also In re Jiffy Lube*, 927 F.2d at 158 ("The primary concern addressed by Rule 23(e) is the protection of class members who rights may not have been given adequate consideration during the settlement negotiations."). In this case, each set of factors weighs in favor of approving the Settlement.

### 1.  The Proposed Settlement is Fair.

When evaluating the fairness of a settlement, the Court must evaluate the settlement against the following criteria: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *In re Jiffy Lube*, 927 F.2d at 159.  The fairness inquiry ensures that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Id.* These factors point persuasively to the conclusion that

the settlement here is fair.

The settlement was reached after the Parties engaged in informal and formal written discovery as well as frequent communications regarding the merits of the case. Further, the systems and procedures of Trans Union's public records vendor, LexisNexis, were fully discovered through written document requests and interrogatories, third party subpoenas and numerous depositions in the related Equifax case.

The parties mediated the claims both privately and with the assistance of United States Magistrate Judge Lacuk. The settlement was reached at arms-length after settlement negotiations in Chicago and Atlanta, and by countless written and telephonic exchanges, with literally years of back-and-forth negotiations and both sides making substantial concessions. The final divide was bridged upon the hands-on intervention of mediator Judge Birch, one of the few retired United States Court of Appeals judges who will accept a private mediation.

Pursuant to the settlement, the putative class members are guaranteed a substantial recovery with a strong combination of cash payments, credit reporting corrections and credit monitoring for six months. The Settlement is narrowly drawn to limit the claim release to matters regarding the Virginia civil judgments. Other public record FCRA claims are expressly excluded. And in the event a class member asserts unusually large actual damages, he or she may expressly reserve and preserve those claims while still participating in the primary settlement benefits. Class Counsel are experienced class-action attorneys who specialize in consumer protection-type cases, and have determined settlement by way of this Agreement is in the Parties' best interests. *See Soutter*, 2011 U.S. Dist. LEXIS 34267, at *28.

Considering the risks associated with litigating this matter, Defendant's defenses to Plaintiff's claims, the meaningful settlement discussions, and approval of the proposed

16

compromise by a retired U.S. Court of Appeals Judge as mediator, the proposed settlement is fair and appropriate for approval. *See S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were, at times, supervised by a magistrate judge and were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of securities law).

### 2. The Proposed Settlement is Adequate.

In assessing the adequacy of the settlement, the Court should look to the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159.

While it is too early to address the last factor, *i.e.*, the reaction of the Class Members to the proposed settlement, application of the other relevant factors confirms that the proposed settlement is adequate and should be preliminarily approved.

#### i. The Relative Strength of the Plaintiff's Case and the Difficulty in Proving Liability.

As noted, Defendant has disputed Plaintiff's claim since the inception of this case and has raised a number of defenses to Plaintiff's class claims. The Defendant believes that it would succeed on the Plaintiff's request to certify this class as well. Given the Parties' arguments, the fact that some of the above issues are matters of first impression in Virginia and in the federal courts, the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery

through continued litigation, the proposed settlement is adequate.

### ii.  The Anticipated Duration and Expense of Additional Litigation

Aside from the potential that either side will lose at trial, the Parties anticipate

incurring substantial additional costs in pursuing this litigation further.   The level of additional

costs would significantly increase as Plaintiff began her preparations for filing for class

certification and completing discovery. Thus, the likelihood of substantial future costs favors

approving the proposed settlement.

### iii.  The Solvency of the Defendant and the Likelihood of Recovery

Defendant is solvent and could pay a reasonable judgment.

### iv.  The Proposed Class Notice is the Best Notice Practicable under the Circumstances

"Adequate notice is critical to court approval of a class settlement under

Rule 23(e)." *Hanlon*, 150 F.3d at 1025.  Pursuant to Rule 23(c)(2)(B):

> The notice [for Rule 23(b)(3) classes] must concisely and clearly state in
> plain, easily understood language: (i) the nature of the action; (ii) the
> definition of the class certified; (iii) the class claims, issues, or defenses; (iv)
> that a class member may enter an appearance through an attorney if the
> member so desires; (v) that the court will exclude from the class any member
> who requests exclusion; (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on class members under Rule
> 23(c)(3).

Further, "[t]he court must direct notice in a reasonable manner to all class members

who would be bound by" the proposed settlement. Fed. R. Civ. P. 23(e)(1).

Individual notice is being provided directly to each Class Member.   In addition, Class

Counsel will establish a website with relevant information concerning the case and the

Agreement. Before sending the written notice, Defendant and the Settlement Administrator

will confirm and, if necessary, update the addresses for the Class Members through the

standard methodology the administrator currently uses to update addresses so as to ensure the

last known address for each Class Member is used.

The Parties propose that any Class Member who desires to be excluded from the class send a written request for exclusion to the class administrator with a postmark date no later than the date to file written objections. The administrator shall provide a list of the names of each Class Member who submitted a timely exclusion to Class Counsel after the deadline passes, and the parties shall include a copy of the list along with the Motion for Final Approval of Class Action Settlement. Any Class Member who submits a valid and timely request for exclusion shall not be bound by the terms of this Agreement. Further, any Class Member who desires to enter an appearance in this case may do so.

The Class Members also have the opportunity to object to the proposed settlement. Any Class Member who intends to object to the fairness of this settlement must file a written objection with the Court after the Notice is mailed to the Class Members, and provide a copy to Class Counsel and counsel for Defendant. The class members will be notified that they may enter an appearance through an attorney at their own expense if the member so desires.

The proposed notice is appropriate and complies with both Rule 23(c)(2)(B) and (e)(1). The notice contains all of the required Rule 23 information and properly advises the Class Members of their rights. The proposed method for notifying the Class Members thus satisfies both Rule 23 and due process and constitutes the best notice practicable under the circumstances.

## II. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests the Court grant the consent motion and enter the Preliminary Approval Order:

(1) preliminarily approving a proposed class settlement,

Case 3:15-cv-00391-MHL   Document 46   Filed 10/08/15   Page 20 of 23 PageID# 246

(2) scheduling a fairness hearing,

(3) certifying the Settlement Class for purposes of the proposed class settlement,

(4) appointing Class Counsel, and

(5) approving the form and manner of notice proposed to be sent to all members of the

Settlement Class.

Respectfully submitted,
**DONNA K. SOUTTER,**
*For herself and on behalf of all*
*Similarly situated individuals,*

By: _____ /s/ _____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail:  lenbennett@clalegal.com

Susan M. Rotkis
VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail:  srotkis@clalegal.com

Janelle Mason Mikac
VSB# 82389
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Phone: (703) 273-7770
Fax: (888) 892-3513
E-mail: janelle@clalegal.com

*Attorneys for Plaintiff and the Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5<u>th</u> day of December, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Grant E. Kronenberg
Michael Robert Ward
Morris & Morris PC
11 South 12th Street
5th Floor
PO Box 30
Richmond, VA 23218
E-mail: gkronenberg@morrismorris.com
Email: mward@morrismorris.com

Matthew Kasey Ratliff
Strasberger & Price, LLP
901 Main Street, Suite 4400
Dallas, TX 75202
E-mail: kasey.ratliff@strasburger.com

Paul Lee Myers
Strasburger & Price, LLP
2801 Network Boulevard
Suite 600, Frisco, TX 75034
E-mail: paul.myers@strasburger.com

Stephen Newman
Strook, Strook & Lavan, LLP
2029 Century Park East
Suite 1600
Los Angeles, CA 90067-3086
E-mail: snewman@strook.com

<div align="right">

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail: lenbennett@clalegal.com

</div>

Case 3:15-cv-00391-MHL   Document 46-1   Filed 09/09/15   Page 2 of 35 PageID# 258

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement is entered into by and between plaintiff Donna K. Soutter, individually and as putative representative of the Settlement Class, on the one hand, and Trans Union LLC, on the other hand, subject to preliminary and final approval by the Court, by and through their respective counsel.[1]

## I.    RECITALS

This Agreement is made with reference to and in contemplation of the following facts and circumstances.

### 1.1    The Pending Action.

Plaintiff claims that TransUnion's procedures for obtaining information from Virginia General District Court or Virginia Circuit Court civil court records did not adequately capture information about events subsequent to a judgment, such as satisfaction or dismissal of the judgment. As a consequence, Plaintiff alleges that TransUnion issued inaccurate credit reports about certain Virginia consumers, supposedly in violation of Sections 1681e(b), 1681i, 1681n and 1681o of the FCRA.

### 1.2    TransUnion's Denial Of Liability.

TransUnion vigorously denies all claims asserted against it in the Action, denies all allegations of wrongdoing and liability and has denied all material allegations of the Amended Complaint. TransUnion expressly and specifically contends that its past and current procedures with respect to collecting and reporting public records, and handling disputes relating thereto, are and were reasonable and compliant with all laws, including, without limitation, the FCRA. Moreover, TransUnion vigorously denies that a litigation class could be certified in this Action. TransUnion nevertheless desires to settle all claims that are asserted, or which could have been asserted, in the Action, on the terms and conditions set forth herein, solely for the purpose of

---

[1]    Section II below contains the definitions of capitalized terms utilized herein unless otherwise noted.

LA 51669002v12

avoiding the burden, expense and uncertainty of continuing litigation and for the purpose of putting to rest the controversies engendered by the Action. Nothing in this Agreement or any other document shall be construed as an admission or evidence of any violation of any federal or state statute, rule or regulation, or principle of common law or equity, or of any liability or wrongdoing whatsoever, or of the truth of any of the claims asserted or to be asserted in the Action, or of the infirmity of any defenses that have been raised or could be raised by TransUnion against the operative Amended Complaint or any other pleading or document filed in the Action or any other litigation related to the Action, including, without limitation, the First Amended Complaint filed on or about February 22, 2011. Further, TransUnion is not estopped from challenging class certification in further proceedings in the Action or in any other action if the Settlement is not finally approved.

　　1.3　　Settlement Through Mediation.

　　Plaintiff, Class Counsel, TransUnion and TransUnion's Counsel engaged in extensive, good faith arms'-length negotiations under the supervision of U.S. Magistrate Judge M. Hannah Lauck, including by participating in two mediation sessions, one supervised by the Hon. Wayne Anderson (Ret.), JAMS, and the other supervised by the Hon. Stanley Birch (Ret.), JAMS. The negotiations and mediation sessions resulted in an agreement on the principal terms of a settlement. It is the desire and intention of the Parties by entering into this Agreement to effect a full, complete and final settlement and resolution of all existing disputes and claims that relate to or arise out of the facts and claims alleged in the Action.

　　1.4　　Class Counsel's Investigation.

　　Class Counsel has concluded that a settlement with TransUnion on the terms set forth herein is fair, reasonable, adequate and in the best interests of the Settlement Class based upon their investigation and discovery, and taking into account the sharply contested issues involved, the uncertainty and cost of further prosecution of the Action, and the substantial benefits to be received by the Settlement Class pursuant to this Agreement.

LA 51669002v12

NOW, THEREFORE, in consideration of the promises and agreements set forth herein, it is hereby STIPULATED AND AGREED, subject to the Court's approval as required by Federal Rule of Civil Procedure 23, that each and every Released Claim, as described in Section 2.30 below, shall be fully and finally settled and compromised and dismissed with prejudice, and shall be fully discharged and released, upon and subject to the following terms and conditions:

## II.   **DEFINITIONS**

2.1     The "Action" means the putative class action entitled <u>Donna K. Soutter v.</u> <u>TransUnion, LLC</u>, United States District Court, Eastern District of Virginia, Case No. 3:10-cv-514-HEH.

2.2     "Activation Code" or "Activation Codes" means the alphanumeric code to be provided by TransUnion and distributed to each Settlement Class Member by the Settlement Administrator to activate a Credit Monitoring Subscription.

2.3     "Agreement" means this Stipulation and Agreement of Settlement, including all exhibits hereto.

2.4     The "Amended Complaint" means the operative Second Amended Class Action Complaint filed by Plaintiff in the Action on December 5, 2013.

2.5     "CAFA Notice" means the notice requirements imposed by 28 U.S.C. § 1715(b).

2.6     "Claim Form" means the claim form pursuant to which Settlement Class Members can submit claims, a proposed form of which is attached hereto as Exhibit C.

2.7     "Claim Payment" means a payment from the Settlement Fund to Settlement Class Members who submit a Valid Claim as set forth in Section 2.44 below.

2.8     "Class Counsel" means Leonard A. Bennett, Matthew Erausquin and Susan M. Rotkis.

2.9     "Class Notice" means the method of notice to the Settlement Class set forth in Section 7.3 below.

LA 51669002v12

2.10    "Court" means the United States District Court, Eastern District of Virginia, the

Hon. Henry Hudson presiding.

2.11    "Credit Monitoring Subscription" shall mean an internet-based, single-bureau,

six-month TransUnion credit monitoring subscription, which shall include daily access to

TransUnion credit reports and a VantageScore, and which shall be subject to the terms and

conditions of similar credit monitoring subscriptions offered by TransUnion to paying consumers

as of the time of activation.  The Parties agree that this service need not be identical, but is

intended to be comparable to TransUnion's "Credit Monitoring with a Free Credit Score"

product that otherwise is currently priced at $14.95 per month.

2.12    "Effective Date" means fifteen (15) business days after the Judgment has become

Final.

2.13    "FCRA" means the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.,

and, for purposes of the releases set forth herein, any and all similar or analogous state laws,

including, without limitation, the common law of defamation and invasion of privacy.

2.14    "File" shall have the same meaning as set forth in 15 U.S.C. § 1681a(g).

2.15    "Final" means the date the Judgment becomes final for all purposes, except as set

forth in Section 9.1(l) below, because either (i) no appeal has been filed and thirty (30) days have

lapsed since entry of the Judgment, or (ii) if a timely appeal has been filed, the appeal is finally

resolved, with no possibility of further appellate or other review, resulting in final judicial

approval of the Settlement.

2.16    "Final Approval Order" means the order to be entered by the Court in the Action

finally approving the Settlement and resolving all issues between the Parties, as provided for in

Section 9.1 below, substantially in the form attached hereto as Exhibit G.

2.17    "Final Fairness Hearing" means the hearing at which the Court will consider and

finally decide whether to approve the Settlement, enter Judgment and make such rulings

contemplated by this Agreement.

2.18    "IP Address" means an internet protocol address, whether static or dynamic.

2.19    "Judgment" means a final judgment and order of dismissal with prejudice to be entered by the Court concurrently with the Final Approval Order.

2.20    "LexisNexis" means LexisNexis Risk Data Retrieval Services, LLC and LexisNexis Risk & Information Analytics Group, Inc.

2.21    "Long-Form Notice" means the notice informing Settlement Class Members of their rights under this Agreement, substantially in the form attached hereto as Exhibit B.

2.22    "Mediator" means the Honorable Stanley Birch (Ret.), JAMS, or if he becomes unable or unwilling to serve, such other person as may be mutually acceptable to Class Counsel and TransUnion's Counsel, but in the absence of a mutually-agreeable substitute, such United States Magistrate Judge as may be appointed by the Court shall perform the function of "Mediator" solely for purposes of Section 11.2 below.

2.23    "NCOA" means the United States Postal Service National Change of Address database.

2.24    "Net Settlement Fund" has the meaning given to that term in Section 4.5 of this Agreement.

2.25    "Opt-Out Form" means a document substantially in the form attached hereto as Exhibit D.

2.26    "Parties" means TransUnion and Plaintiff.

2.27    "Permissible Purpose Order" means an order, substantially in the form attached hereto as Exhibit H, entered by the Court permitting TransUnion to provide the Settlement Administrator and Class Counsel with the Settlement Class data as set forth in Section 7.2 below and stating expressly that providing such data does not violate 15 U.S.C. § 1681b or any other provision at law or common law right of similar effect.

2.28    "Plaintiff" means named plaintiff Donna K. Soutter, individually and as proposed representative of the Settlement Class.

Case 3:15-cv-00391-MHL   Document 46-1   Filed 09/29/15   Page 28 of 38 PageID# 253

2.29    "Preliminary Approval Order" means an order to be entered by the Court in the Action, as provided for in Section 8.1 below, substantially in the form attached hereto as Exhibit F.

2.30    "Released Claim" or "Released Claims" means any and all actual or potential claims, actions, causes of action, suits, counterclaims, cross claims, third-party claims, contentions, allegations, and assertions of wrongdoing, and any demands for any and all debts, obligations, liabilities, damages (whether actual, compensatory, treble, punitive, exemplary, statutory, or otherwise), attorneys' fees, costs, expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal or statutory relief, any other benefits, or any penalties of any type whatever, whether known or unknown, suspected or unsuspected, contingent or non-contingent, or discovered or undiscovered, whether asserted in federal court, state court, arbitration or otherwise, and whether triable before a judge or jury or otherwise, including, without limitation, those based on violation of the FCRA or any other federal, state or local law, statute, regulation or common law, that were alleged (or that could have been alleged based on the same facts and circumstances) in the Action, the Amended Complaint or any other complaints, pleadings or other papers filed or to be filed in the Action or any similar or related litigation, and that involved a Virginia General District Court or Virginia Circuit Court judgment appearing on a TransUnion consumer report or File disclosure, or a consumer report or File disclosure created from data provided by TransUnion, wherein such data inaccurately stated or suggested that such judgment was valid and had not been paid or satisfied.

2.31    "Released Parties" means TransUnion and each of its members, owners, shareholders, unitholders, predecessors, successors (including, without limitation, acquirers of all or substantially all of TransUnion's assets, stock, units or other ownership interests) and assigns; the past, present, and future, direct and indirect, parents (including, without limitation, holding companies), subsidiaries and affiliates of any of the above; and the past, present and future principals, trustees, partners, insurers, officers, directors, employees, agents, advisors, attorneys,

members, owners, shareholders, unitholders, predecessors, successors, assigns, representatives, heirs, executors, and administrators of any of the above.  Released Parties also includes:  (i) any and all resellers or retransmitters of TransUnion data, and (ii) LexisNexis and any consumer reporting agencies it owns or controls (through more than 50% ownership) (together, "Additional Released Parties"), but the release under this Agreement in favor of Additional Released Parties shall only release claims based on data delivered by TransUnion, shall not release claims that might be asserted under 15 U.S.C. § 1681k or 1681s-2(b), and shall otherwise be subject to the limitations set forth in Section 2.30 above.

2.32    "Request for Exclusion" has the meaning set forth in Section 8.4 below.

2.33    "Reservation of Rights" has the meaning set forth in Section 8.5 below.

2.34    "Reservation of Rights Form" means a document substantially in the form attached hereto as Exhibit E.

2.35    "Settlement" means this Agreement between Plaintiff, on behalf of herself and as proposed representative of the proposed Settlement Class, on the one hand, and TransUnion, on the other hand, to settle, compromise and release all of the Released Parties from all of the Released Claims, fully, finally and forever.

2.36    "Settlement Administrator" means such administrator as may be appointed by the Court in the Preliminary Approval Order upon Plaintiff's motion, or any successor or replacement administrator as the Court may appoint.

2.37    "Settlement Class," solely for purposes of this Settlement, means, includes and refers to all consumers in the United States who, between July 26, 2008, and the date of preliminary approval of the Settlement, had a hard inquiry on their TransUnion File resulting in the delivery of a TransUnion consumer report that reflected an unsatisfied Virginia General District Court or Virginia Circuit Court civil judgment, if at least 31 days prior to delivery of the consumer report, and on the date of delivery of the consumer report, such judgment had been satisfied, vacated or dismissed, as shown by the VSC Master File.

2.38 "Settlement Class Member" means, includes and refers to any individual within the Settlement Class who has not validly opted out of the Settlement pursuant to Section 8.4 below.

2.39 "Settlement Fund" means the amounts paid as described in Section 4.3 below.

2.40 "Summary Mailed Notice" means the form of notice set forth in Section 7.3(a) below, substantially in the form attached hereto as Exhibit A.

2.41 "Taxes" and "Tax Expenses" have the meanings set forth in Section 4.9(c) below.

2.42 "TransUnion" means and refers to Trans Union LLC.

2.43 "TransUnion's Counsel" means Strasburger & Price, LLP and Stroock & Stroock & Lavan LLP.

2.44 "Valid Claim" means a Claim Form that is submitted by a Settlement Class Member that: (i) is postmarked or received by the Settlement Administrator on or before the deadline set forth in the Class Notice; (ii) is sent to the address specified in the Class Notice; (iii) includes the Settlement Class Member's statement that he or she was injured by the inaccurate appearance on a TransUnion consumer report of an unsatisfied Virginia General District Court or Virginia Circuit Court civil judgment; and (iv) is personally signed by the Settlement Class Member. If the Settlement Administrator reasonably determines that the Class Member's statement is untrue or unverifiable, the Claim Form may be deemed invalid.

2.45 "VSC Master File" means the master file of the Virginia Supreme Court that reflects judgments and the status thereof entered in the Virginia General District Court or Virginia Circuit Court, as delivered to Plaintiff pursuant to a subpoena issued by Class Counsel on or about August 19, 2013.

2.46 "Website Code" or "Website Codes" means the alphanumeric code to be included on the Summary Mailed Notice and distributed to the Settlement Class by the Settlement Administrator as set forth in Section 7.3(a) below.

LA 51669002v12

## III.  THE SETTLEMENT CLASS

3.1    Certification Of Settlement Class For Settlement Purposes Only.  TransUnion disputes that the elements of Federal Rule of Civil Procedure 23 are satisfied for purposes of a litigation class, disputes that a litigation class would be manageable and denies that any litigation class may be certified in the Action.  However, solely for purposes of avoiding the expense and inconvenience of further litigation, TransUnion does not oppose certification of the Settlement Class for settlement purposes only.  No statements, representations or agreements made by TransUnion in connection with the Settlement may be used to establish any of the elements of class certification, other than for settlement purposes.  Preliminary certification of a Settlement Class shall not be deemed a concession that certification of a litigation class is appropriate, nor is TransUnion estopped from challenging class certification in further proceedings in the Action or in any other action, if the Settlement is not finally approved.

## IV.  SETTLEMENT CONSIDERATION

4.1    Credit Monitoring Subscriptions.  All Settlement Class Members shall be entitled to a Credit Monitoring Subscription without having to supply a credit card or other method of payment to activate the Credit Monitoring Subscription.  TransUnion will provide the Settlement Administrator with a sufficient number of Activation Codes which shall be distributed to the Settlement Class as described in Sections 7.3(a), (b) below.  Activation Codes will expire one hundred and eighty (180) days after the date on which they are sent to Settlement Class Members as described in Sections 7.3(a), (b) below.  To activate a Credit Monitoring Subscription, the Settlement Class Member must provide TransUnion with a valid Activation Code, a valid electronic mail address, a valid mailing address and such other personal identifying information as may ordinarily be required by TransUnion to verify the identity of the Settlement Class Member for the delivery of this service.  The dispute resolution provision of Section 11.2 below shall apply to Settlement Class Members with respect to any dispute relating to the credit monitoring subscription in lieu of any arbitration provision set forth in the subscription terms and conditions.  Nor shall TransUnion assert, during the term or because of the Credit Monitoring

Page 9 of 34

Subscription with respect to any Settlement Class Members who accept the Credit Monitoring

Subscription, that any arbitration provision set forth in the subscription terms and conditions

applies to FCRA claims, unless the Settlement Class Member provides express consent to

arbitration in writing.

    4.2    <u>Suspension of Credit Monitoring Subscription Pending Investigation</u>. If

TransUnion reasonably believes that a Credit Monitoring Subscription is being used to engage in

identity theft, invasion of privacy, violations of the federal Credit Repair Organizations Act, or

fraud, including, without limitation, the kind of activity described under the "Credit Repair

Scams" and "Identity Theft" sections of the Federal Trade Commission's website located at

www.ftc.gov/bcp/edu/pubs/consumer/credit/cre03.shtm (or a similar Federal Trade Commission

website or other publication), TransUnion may initially decline to activate or may temporarily

suspend the Credit Monitoring Subscription pending its investigation of the suspected activity.

TransUnion will give notice to Class Counsel of such action within five (5) business days thereof

along with the reason(s) for suspension. Any dispute regarding any suspension of a Credit

Monitoring Subscription shall be resolved pursuant to Section 11.2 below.

    4.3    <u>The Settlement Fund</u>. TransUnion will pay a cash amount of one million four

hundred and twenty-five thousand dollars ($1,425,000), less credits allowed pursuant to Sections

4.5 and 4.7 below, into a cash fund, not later than ten (10) business days following the Effective

Date. For purposes of this definition, the term "Settlement Fund" is not intended to describe all

monetary consideration provided to Settlement Class Members pursuant to the Settlement as it

does not include the additional consideration provided herein in the form of the Credit

Monitoring Subscription.

    4.4    <u>Review of VSC Master File</u>: Class Counsel represents that it has obtained and

delivered the VSC Master File to TransUnion. TransUnion will at its own expense make a good

faith effort to: (a) prepare a list of Settlement Class Members as set forth in Section 7.2, below;

and (b) confirm that file data for all Virginia judgments used to prepare consumer reports is

LA 51669002v12

appropriately updated in light of any satisfactions, vacaturs or dismissals set forth in the VSC Master File.

     4.5    <u>Net Settlement Fund</u>.  The Net Settlement Fund is equal to the Settlement Fund plus interest accrued thereon subsequent to deposit, and less the following:

        a.    All costs and fees incurred by the Settlement Administrator, including, without limitation, all costs of Class Notice, and claims administration;

        b.    All Taxes and Tax Expenses;

        c.    Any Court-approved attorneys' fees, costs and expenses; and

        d.    Any Court-approved service award to Plaintiff.

     4.6    <u>Maintenance And Distribution Of The Settlement Fund</u>.  The Settlement Administrator shall maintain the Settlement Fund until all money within the Settlement Fund is distributed pursuant to this Agreement.  Upon determination of the Net Settlement Fund, the Settlement Administrator shall distribute the Net Settlement Fund to Settlement Class Members as set forth in Section 7.7 below.

     4.7    <u>Credit For Advances On Behalf Of The Settlement Fund</u>.  Out-of-pocket payments by or on behalf of TransUnion of any and all amounts chargeable to the Settlement Fund, whether before or after the Settlement Fund is created, are to be treated as contributions to the Settlement Fund as set forth above in Section 4.3 and shall be credited in their entirety (100%) towards TransUnion's obligation thereunder.

     4.8    <u>Credit Based On Other Settlements</u>.  If Plaintiff or Class Counsel, on behalf of a substantially congruent class to the Settlement Class herein or a class that includes a substantial portion of the Settlement Class herein, settles any Released Claim with any other consumer reporting agency (or affiliate thereof) meeting the criteria of 15 U.S.C. § 1681a(p) (<u>i.e.</u>, a consumer reporting agency that compiles and maintains Files, and sells credit reports about consumers on a nationwide basis), then TransUnion shall be entitled to a credit against the Settlement Fund (or a refund of amounts previously deposited) equal to one million four hundred

and twenty-five thousand dollars ($1,425,000) minus the cash consideration paid or promised to be paid in connection with each such other settlement, unless Class Counsel reasonably determine in the exercise of their professional judgment, based on a thorough analysis of the evidence, the posture and leverages of such case and the contemporaneous state of the law, that it is not feasible to recover more than one million four hundred and twenty-five thousand dollars ($1,425,000) on a classwide basis in a litigated case against such other consumer reporting agency, that litigation of such other claim(s) are not likely effective on a class basis or are more effective on an individual basis, or that such restriction would impair their ability to adequately represent such substantially congruent class.  In no event shall the credit or refund allowed pursuant to this Section 4.8 exceed the amount awarded by the Court to Class Counsel.

    4.9    <u>Settlement Fund Tax Status.</u>

        a.    The Parties agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. In addition, the Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Section, including the "relation back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

        b.    For the purpose of Treasury Regulation § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator.  The Settlement Administrator shall timely and properly file all informational and other tax

returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the election described in Section 4.8(a) above) shall be consistent with this Section and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Section 4.9(c).

c.      All (a) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (b) expenses and costs incurred in connection with the operation and implementation of this Section (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Section 4.9(b) ("Tax Expenses"), shall be paid out of the Settlement Fund; in no event shall the Released Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses. Taxes and Tax Expenses shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order from the Court, and the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be

Page 13 of 34

withheld under Treas. Reg. § 1.468B-2(l)); the Released Parties are not responsible therefor nor shall they have any liability with respect thereto. The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

## V.   ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS TO PLAINTIFF

5.1   Class Counsel intends to apply to the Court for attorneys' fees and costs, and a service award for Plaintiff to be paid solely from the Settlement Fund.  TransUnion will not oppose Class Counsel's petition for fees, costs and a service award.  Failure by the Court to approve attorneys' fees, costs or the service award shall not be grounds for Plaintiff to withdraw from the Settlement, and shall not delay the Settlement's becoming Final as set forth in Section 2.15 above, and shall not delay the Effective Date of the releases described in Section 6.1 below. PLAINTIFF RECOGNIZES AND UNDERSTANDS THAT THE COURT MAY NOT APPROVE ANY SERVICE AWARD TO HER WHATSOEVER AND THAT HER SUPPORT OF THE SETTLEMENT IS IN NO WAY CONTINGENT ON ANY SERVICE AWARD. PLAINTIFF REPRESENTS AND WARRANTS THAT NO PROMISES OF ANY KIND HAVE BEEN MADE TO HER WITH RESPECT TO ANY SERVICE AWARD.

## VI.   RELEASE AND DISMISSAL

6.1   Release of Released Claims.  As of the Effective Date of the Settlement, the Plaintiff and each Settlement Class Member, their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, shall be deemed to have fully, finally and forever released the Released Parties from all Released Claims described in Section 2.30 above.  Without limiting the foregoing, the Released Claims released pursuant to this Settlement specifically extend to all claims and potential claims that Settlement Class Members do not know or suspect to exist in their favor as of or prior to the Effective Date.  The Parties, and all Settlement Class Members,

Page 14 of 34

agree that this paragraph constitutes a waiver of any statutory provision, right or benefit of any

state or territory of the United States or any jurisdiction, and any principle of common law at law

or in equity that prohibits the waiver of unknown claims. THIS WAIVER INCLUDES

WITHOUT LIMITATION WAIVER OF ALL RIGHTS UNDER CALIFORNIA CIVIL CODE

SECTION 1542, WHICH PROVIDES, "A GENERAL RELEASE DOES NOT EXTEND TO

CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS

OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY

HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT

WITH THE DEBTOR." Plaintiff and each Settlement Class Member understands and

acknowledges the significance of this waiver relating to limitations on releases. In connection

with such waiver and relinquishment, Plaintiff and each Settlement Class Member acknowledge

that they are aware that they may hereafter discover facts in addition to, or different from, those

facts which they now know or believe to be true with respect to the subject matter of the

Settlement, but that they release fully, finally and forever all Released Claims, and in furtherance

of such intention, the release will remain in effect notwithstanding the discovery or existence of

any such additional or different facts. The Parties acknowledge (and all Settlement Class

Members by operation of law shall be deemed to have acknowledged) that the release of

unknown Released Claims as set forth herein was separately bargained for and was a key

element of the Settlement.

6.2    Dismissal. Upon entry of the Final Approval Order, Plaintiff shall take all actions

necessary to dismiss with prejudice all litigation by Plaintiff against TransUnion in any court,

including, without limitation, the Action.

## VII.   NOTICE AND SETTLEMENT ADMINISTRATION

7.1    Costs Of Notice And Administration. The costs of Class Notice and

administration shall be paid or deducted from the Settlement Fund as described in Section 4.5

above. Prior to creation of the Settlement Fund, reasonable costs of Class Notice and

LA 51669002v12

administration shall be advanced to the Settlement Administrator by TransUnion, subject to the limit set forth in Section 4.3 above, and TransUnion shall be entitled to credit for all advancement as set forth in Section 4.7 above.

       7.2    <u>Settlement Class Data To Be Provided To Settlement Administrator</u>.  Within five (5) business days after entry of the Permissible Purpose Order, TransUnion will provide the following data, if present, readily determinable and capable of being reasonably matched to the TransUnion Files of individuals within the Settlement Class, regarding each individual within the Settlement Class, to the Settlement Administrator.

       a.    Name as it appears in his or her TransUnion File at the time the data is retrieved;

       b.    Address as it appears in his or her TransUnion File at the time the data is retrieved;

       c.    Court name as it appears in his or her TransUnion File at the time the data is retrieved;

       d.    Docket number as it appears in the individual's TransUnion File at the time the data is retrieved;

       e.    Original amount owed associated with the Docket Number in Section 7.2(d) as reflected in the individual's TransUnion File;

       f.    Filed date as reflected in the individual's TransUnion File;

       g.    Judgment data create date and update timestamp as can reasonably be determined by TransUnion.

The Settlement Administrator shall use the data to develop a list of individuals within the Settlement Class and may share the data provided by TransUnion pursuant to this section with Class Counsel.  The deadlines set forth in this Agreement for sending Notice to the Settlement Class, for the Settlement Class to submit Claim Forms, Reservation of Rights Forms or Opt Out Forms are subject to change if, based on the data within and format of the VSC Master File,

LA 51669002v12

TransUnion is not able to provide the data set forth in this Section 7.2 with sufficient time for the Settlement Administrator to mail Notice to the Settlement Class as set forth in Section 7.3. The Parties agree to cooperate reasonably in any request made to the Court to amend dates and deadlines pertinent to approval of this Settlement.

    7.3    <u>Class Notice</u>. Notice to the Settlement Class shall be mailed no later than January 20, 2014, as follows:

    a.    Summary Mailed Notice, substantially in the form attached hereto as Exhibit A, that are approved by the Court, will be mailed to the Settlement Class using the data TransUnion provides to the Settlement Administrator as set forth in Section 7.2 above. Addresses will be run once through the NCOA before mailing. The Summary Mailed Notice will contain a Website Code, and will direct its recipient to an Internet website established and operated by the Settlement Administrator. The Internet website will make available the Summary Mailed Notice, the Long-Form Notice, this Agreement, contact information for the Settlement Administrator, contact information for Class Counsel, the process for obtaining an Activation Code and any other material the Parties agree in writing to include. The Internet website also will direct visitors to enter his or her Website Code. Upon entry of the Website Code, visitors will be directed to a webpage that will make available the Claim Form, the Opt-Out Form and the Reservation of Rights Form, as well as give Settlement Class Members the option to provide the Settlement Administrator with an e-mail address to which the Settlement Administrator will send an Activation Code after the Settlement becomes Final.

    b.    Settlement Class Members who decline to submit an e-mail address will receive their Activation Code by mail after the Settlement becomes Final.

<div align="center">Page 17 of 34</div>

At TransUnion's request, all Activation Codes will be sent on a staggered basis, beginning not less than ten (10) days after the Effective Date and ending not more than sixty (60) days after the Effective Date.

c.   The Settlement Administrator shall also establish a physical address and toll-free telephone number that individuals within the Settlement Class may write or call to obtain information about the Settlement, request mailing of the Long-Form Notice, Claim Form, an Opt-Out Form or a Reservation of Rights Form. Every individual in the Settlement Class shall be permitted to request a Claim Form, an Opt-Out Form or a Reservation of Rights Form by physical mail or by telephone.

7.4    Submission of Claim Forms. Claim Forms shall be submitted and signed electronically via the Settlement Administrator's website, by no later than March 3, 2014. Settlement Class Members who request by telephone or by physical mail that the Settlement Administrator provide them with a paper Claim Form may submit a Claim Form by mail to the Settlement Administrator, but all mailed Claim Forms must be personally signed by the Settlement Class Member and postmarked no later than March 3, 2014. The Settlement Administrator shall determine what procedures are necessary to ensure that fraudulent, duplicative or bulk requests for Claim Payments are identified and rejected. If more than five Claim Forms are submitted electronically from the same IP Address, the Settlement Administrator shall presume that all such Claim Forms are fraudulent, subject to further determination by the Parties and their counsel.

7.5    Calculation Of Claim Payments. TransUnion shall provide to the Settlement Administrator such data as is reasonably necessary to determine whether a Settlement Class Member has submitted a Valid Claim and the amount of any corresponding Claim Payment using the following formula, permitting a point value of as low as one point and as high as five (5) points:

LA 51669002v12

a.   Submission of a Valid Claim will be assigned a value of one point.

b.   If TransUnion's records show that a Settlement Class Member who submits a Valid Claim had, prior to the date of this Agreement, submitted a dispute to TransUnion regarding a Virginia General District Court and/or Virginia Circuit Court civil judgment, then the Settlement Class Member's Claim Form will be assigned two points in addition to the points awarded pursuant to Sections 7.5(a) or (c).

c.   If the Settlement Class Member's VantageScore™ increased by fifty or more points due to updating of judgment data pursuant to this Settlement, then the Settlement Class Member's Claim Form will be assigned two points in addition to the points awarded pursuant to Sections 7.5(a) or (b).

7.6   <u>Point Value</u>. The value of each point will be equal to the total amount in the Net Settlement Fund divided by the total number of points awarded to Settlement Class Members who submit Valid Claims. The Settlement Administrator will calculate this value. TransUnion shall make reasonable efforts to provide the dispute history and VantageScore™ information to the Settlement Administrator in a format and manner designed to minimize the costs of administration to be paid from the Settlement Fund.

7.7   <u>Distribution Of Claim Payments</u>. The Settlement Administrator will mail checks to Settlement Class Members entitled to a Claim Payment, based on the number of points awarded pursuant to Section 7.5 above and the point value calculated pursuant to Section 7.6 above, as promptly as is feasible after the Effective Date and after the total number of Valid Claims and associated point values are determined. No payments to Settlement Class Members shall be made prior to the Effective Date.

7.8   <u>CAFA Notice</u>. All relevant approval and court filing dates will be scheduled to ensure compliance with the Class Action Fairness Act. Plaintiff will cooperate reasonably with TransUnion to ensure compliance so that the releases described in Section 6.1 above are fully

LA 51669002v12

enforceable.  TransUnion and/or TransUnion's Counsel will be responsible for printing and sending CAFA Notice.  The expense of printing and sending the CAFA Notice will not be charged against the Settlement Fund.

## VIII.  PRELIMINARY APPROVAL

8.1     Preliminary Approval Order.  Plaintiff will seek the Court's approval of this Agreement by filing an appropriate Motion for Preliminary Approval and seeking entry of a Preliminary Approval Order substantially in the form attached hereto as Exhibit F.  The Parties shall cooperate in presenting such papers to the Court as may be necessary to effectuate the intent and purposes of this Agreement.  Among other things, the Preliminary Approval Order shall specifically include the following:

   a.     A determination that, for settlement purposes only, the Action may be maintained as a class action on behalf of the Settlement Class;

   b.     An appointment of the Settlement Administrator and a finding that the Class Notice as described in Section 7.3 above is the only notice to the Settlement Class that is required, and that such notice satisfies the requirements of Due Process, the Federal Rules of Civil Procedure and any other applicable laws;

   c.     A preliminary finding that the Settlement is fair, reasonable and adequate for the Settlement Class and within the range of possible approval;

   d.     A preliminary finding that Plaintiff fairly and adequately represents the interests of the Settlement Class;

   e.     A preliminary appointment of Class Counsel finding that Class Counsel are adequate to act as counsel for the Settlement Class;

   f.     Set a date for the Final Fairness Hearing, to determine whether there exists any reasonable basis why the Settlement should not be approved as being

fair, reasonable and adequate, and in the best interests of the Settlement Class and why Judgment should not be entered thereon;

g.   Establishment of a procedure for submitting Claim Forms and setting a deadline to submit Claim Forms of March 3, 2014;

h.   Establishment of a procedure for the Settlement Class to opt-out as set forth in Section 8.4 and setting a postmark deadline of March 3, 2014, after which no Settlement Class Member shall be allowed to opt-out;

i.   Establishment of a procedure for Settlement Class Members to object to the proposed Settlement and setting a postmark deadline of March 3, 2014, after which no Settlement Class Member shall be allowed to object to the proposed Settlement;

j.   Establishment of a procedure for Settlement Class Members to reserve their right to seek compensatory damages as set forth in Section 8.5 and setting a postmark deadline of March 3, 2014, after which no Settlement Class Member shall be allowed to submit a Reservation of Rights;

k.   Entry of a preliminary injunction as to Plaintiff, the Settlement Class and any person or entity allegedly acting on behalf of the Settlement Class, either directly, representatively or in any other capacity, enjoining them from commencing or prosecuting against the Released Parties, any action or proceeding in any court or tribunal asserting any of the Released Claims; and

l.   Entry of a stay of all proceedings in the Action except as may be necessary to implement the Settlement or comply with the terms of the Agreement.

8.2   <u>Stay Following Preliminary Approval Order</u>.  Upon entry of the Preliminary Approval Order, the Parties shall promptly cooperate in filing such papers as may be necessary

to obtain a stay of the proceedings in the Action, except as may be necessary to implement the Settlement or comply with the terms of the Agreement.

    8.3   <u>Denial Of Preliminary Approval Order</u>. If the Court fails for any reason to enter the Preliminary Approval Order substantially in the form attached hereto as Exhibit F or to certify the Settlement Class for settlement purposes consistent with the provisions hereof, and if all Parties do not agree jointly to appeal such ruling, this Agreement shall terminate and be of no further force or effect without any further action by the Parties. In the event that the Court fails to enter the Preliminary Approval Order substantially in the form attached hereto as Exhibit F, the Parties shall return to the <u>status quo ante</u> as of July 24, 2013, as if no Agreement had been negotiated or entered into. Moreover, the Parties shall be deemed to have preserved all of their rights or defenses as of July 24, 2013, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any individual within the proposed Settlement Class. In such an event, nothing in this Agreement or filed in connection with seeking entry of the Preliminary Approval Order shall be construed as an admission or concession by TransUnion of the allegations raised in the Action, or any other action, of any fault, wrongdoing or liability of any kind, nor is TransUnion estopped from challenging those allegations in further proceedings in the Action or in any other action.

    8.4   <u>Opt-Out/Requests For Exclusion From Settlement</u>.

        a.   <u>Requests For Exclusion</u>. All Settlement Class Members shall be given the opportunity to opt out of the Settlement Class by submitting a Request for Exclusion. All Requests for Exclusion must be in writing, sent to the Settlement Administrator and postmarked no later than March 3, 2014. To be valid, a Request for Exclusion must be personally signed and must include: (i) name, address and telephone number; (ii) a sentence stating that he or she is in the Settlement Class; and (iii) the following statement: "I request to be excluded from the class settlement in <u>Donna K. Soutter v.</u>

TransUnion LLC, United States District Court, Eastern District of Virginia, Case No. 3:10-cv-00514-HEH." A Request for Exclusion submitted on the Opt-Out Form shall be presumed valid. Notwithstanding the foregoing, no person within the Settlement Class, or any person acting on behalf of or in concert or participation with that person, may submit a Request for Exclusion of any other person within the Settlement Class. Requests for Exclusion submitted en masse will be presumed invalid.

b.   Delivery To Parties; Certification To The Court. The Settlement Administrator shall provide copies of the Requests for Exclusion to the Parties no later than March 10, 2014. The Settlement Administrator shall file with the Court a declaration verifying that Class Notice has been provided to the Settlement Class as set forth herein and listing all of the valid opt-outs received also by March 10, 2014.

c.   Effect. All individuals within the Settlement Class who timely submit a valid Request for Exclusion will exclude themselves from the Settlement Class and will preserve their ability to independently pursue, at their own expense, any individual, non-class, non-representative claims he or she claims to have against TransUnion. Any such individual within the Settlement Class who so opts out will not be bound by further orders or judgments in the Action as it relates to the Settlement Class, and will preserve their ability to independently pursue, at their own expense, any individual, non-class, non-representative claims for damages they may have against TransUnion. In the event of ambiguity as to whether someone has requested to be excluded (such as through submission of both an Opt-Out Form and a Claim Form), the Settlement Class Member

shall be deemed <u>not</u> to have requested exclusion pursuant to this Section 8.4.

8.5    <u>Reservation Of Right To Seek Compensatory Damages.</u>

    a.    <u>Reservation Of Rights.</u>  All Settlement Class Members may obtain the Credit Monitoring Subscription and reserve the right to seek compensatory damages by following the procedure set forth in this Section 8.5.

    b.    <u>Procedure.</u>  A Settlement Class Member may reserve his right to seek compensatory damages only if he submits to the Settlement Administrator a fully-completed and personally-signed Reservation of Rights Form postmarked no later than March 3, 2014.  Within ninety (90) days thereafter, the electing Settlement Class Member must also submit to the Settlement Administrator (i) non-binding evidence and documentation the Settlement Class Member contends supports his or her claim for compensatory damages, and (ii) a non-binding estimate of the compensatory damages the Settlement Class Member claims to have suffered (the "NBE").  Within forty-five (45) days of TransUnion's Counsel's receipt from the Settlement Administrator of (i) and (ii) from a Settlement Class Member who submits a Reservation of Rights Form, TransUnion will make a good faith settlement proposal to the Settlement Class Member, to be communicated by the Settlement Administrator, which will remain open for thirty (30) days following the Settlement Administrator's sending the good faith settlement proposal to the Settlement Class Member.  A Settlement Class Member's failure to strictly follow the procedures set forth in this Section 8.5(b) shall result in the release, on the Effective Date, of any and all purportedly reserved claims.

    c.    <u>Effect</u>.  If the Settlement Class Member who had submitted a valid Reservation of Rights and who had otherwise complied with the provisions of this Section 8.5 declines TransUnion's good faith settlement proposal, such Settlement Class Member (a "Reserving Member") may proceed in a separate action on an individual, non-class, non-representative basis only, at his or her own expense, against TransUnion to attempt recovery of his or her individual compensatory damages, but the Reserving Member will not be entitled to seek statutory or punitive damages or attorneys' fees pursuant to 15 U.S.C. § 1681n or attorneys' fees pursuant to 15 U.S.C. § 1681o.  Notwithstanding the forgoing, the Reserving Member may seek attorneys' fees in the separate action if the Reserving Member prevails in the separate action and only if the damages award in his or her favor in the separate action exceeds the NBE described in Section 8.5(b) above.  The right to sue pursuant to this Section 8.5 expires on the earlier of ninety (90) days after the expiration date of TransUnion's good faith settlement proposal, or the date the Reserving Member's claim is time-barred pursuant to 15 U.S.C. § 1681p.

    d.    <u>Withdrawal of Reservation of Rights</u>.  Submission of a Claim Form concurrent with or subsequent to submission of a Reservation of Rights shall be deemed a withdrawal of the Reservation of Rights and a waiver of all claims thereunder.

8.6    <u>TransUnion's Right To Withdraw For Excessive Opt-Outs Or Reservations Of Rights</u>.  If the sum of Requests for Exclusion plus Reservations of Rights exceeds the lesser of 750 individuals or one-half of one percent (0.5%) of the entire Settlement Class (the "triggering amount"), then TransUnion may, in its sole discretion, terminate the Agreement.  If TransUnion exercises its right to terminate the Agreement pursuant to this paragraph, the Parties shall be

returned to the status quo ante as of July 24, 2013, for all litigation purposes, as if no settlement
had been negotiated or entered into.  If TransUnion declares this Agreement void, nothing in this
Agreement or filed in connection with seeking entry of the Preliminary Approval Order shall be
construed as an admission or concession by TransUnion of the allegations raised in the Action,
or any other action, of any fault, wrongdoing or liability of any kind, nor is TransUnion estopped
from challenging those allegations in further proceedings in the Action or in any other action.
TransUnion's right to terminate pursuant to this Section 8.6 shall expire thirty (30) calendar days
after TransUnion is sent written notice from the Settlement Administrator that the sum of
Requests for Exclusion plus Reservations of Rights exceeds the triggering amount set forth in
this Section.

      8.7     <u>Plaintiff's Right To Withdraw For Excessive Class Size</u>.  If the Settlement Class
population is determined to exceed 159,000 unique individuals and subsequent good faith
negotiations over the appropriate size of the Settlement Fund are unsuccessful, Plaintiff may
terminate the Agreement and the Parties shall be returned to the status quo ante as of July 24,
2013, for all litigation purposes, as if no settlement had been negotiated or entered into.  If
Plaintiff declares this Agreement void, nothing in this Agreement or filed in connection with
seeking entry of the Preliminary Approval Order may be used or shall be construed as an
admission or concession by TransUnion of any of the elements of class certification, or any of
Plaintiff's other allegations, including but not limited to that any proposed litigation class is
ascertainable.  Plaintiff's right to terminate pursuant to this Section 8.7 shall expire thirty (30)
calendar days after written notice is sent to Class Counsel from the Settlement Administrator that
the Settlement Class population exceeds 159,000 unique individuals.

      8.8     <u>Objections To Settlement</u>.

          a.     <u>Right To Object</u>.  Any Settlement Class Member may appear at the Final
                Fairness Hearing to argue that the proposed Settlement should not be

approved and/or to oppose the application of Class Counsel for an award of attorneys' fees and costs and the service award to Plaintiff.

    b.    <u>Deadline</u>.  Any such objection must be filed with the Clerk of the United States District Court, Eastern District of Virginia, 701 East Broad Street, Richmond, Virginia 23219, not later than March 3, 2014.  Copies of all objections also must be served electronically via the Court's ECF system or mailed, postmarked no later than March 3, 2014, to each of the following:  Class Counsel, Leonard A. Bennett, Consumer Litigation Associates, 763 J Clyde Morris Boulevard, Suite 1A, Newport News, Virginia 23601; and TransUnion's Counsel, Paul L. Myers, Esq., Strasburger & Price, LLP, 2801 Network Blvd., Suite 600, Frisco, Texas 75034 and Stephen J. Newman, Esq., Stroock & Stroock & Lavan LLP, 2029 Century Park East, 16th Floor, Los Angeles, California 90067.

    c.    <u>Content Of Objections</u>.  All objections must include: (i) the objector's name, address and telephone number; (ii) a sentence stating that to the best of his or her knowledge he or she is a member of the Settlement Class; (iii) the factual basis and legal grounds for the objection to the Settlement; (iv) the identity of witnesses whom the objector may call to testify at the Final Fairness Hearing; and (v) copies of exhibits the objector may seek to offer into evidence at the Final Fairness Hearing.

## IX.    <u>FINAL APPROVAL OF SETTLEMENT AND OTHER CONDITIONS</u>

9.1    <u>Final Fairness Hearing</u>.  On a date to be set by the Court, Plaintiff will seek entry of the Final Approval Order granting final approval of the Settlement and entering Judgment in the Action, substantially in the form attached hereto as Exhibit G.  The Final Approval Order will:

LA 51669002v12

a.   Provide that the Action, only for purposes of the Settlement, may be maintained as a class action on behalf of the Settlement Class;

b.   That Plaintiff fairly and adequately represents the interests of the Settlement Class;

c.   That Class Counsel adequately represents Plaintiff and the Settlement Class;

d.   That the Class Notice satisfied the requirements of Due Process, the Federal Rules of Civil Procedure and any other applicable laws;

e.   That the Settlement is fair, reasonable and adequate to the Settlement Class and that each Settlement Class Member shall be bound by the Settlement, including the releases contained in Section 6.1 above;

f.   That the Settlement represents a fair resolution of all Released Claims asserted on behalf of the Settlement Class and fully and finally resolves and releases all such Released Claims;

g.   That the Settlement should be, and is, approved;

h.   The amount of any attorneys' fees and costs awarded to Class Counsel and any service award to Plaintiff that may be paid from the Settlement Fund;

i.   Confirm the opt-outs from the Settlement;

j.   Overrule any objections;

k.   Dismiss, on the merits and with prejudice, all claims in the Action, and permanently enjoin each and every Settlement Class Member from bringing, joining or continuing to prosecute against the Released Parties any Released Claims, and enter Judgment thereon; and

l.   Retain jurisdiction of all matters relating to the modification, interpretation, administration, implementation, effectuation and enforcement of this Agreement and the Settlement.

## X.   **TERMINATION OF AGREEMENT**

10.1   <u>Non-Approval Of Agreement</u>. This Agreement is conditioned upon final approval without material modification by the Court in the Action. In the event that the Agreement is not so approved, the Parties shall return to the <u>status quo ante</u> as of July 24, 2013, as if no Agreement had been negotiated or entered into. Moreover, the Parties shall be deemed to have preserved all of their rights or defenses as of July 24, 2013, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any member of the proposed Settlement Class. In the event that the Agreement is approved without material modification by the Court, but is later reversed or vacated on appeal, each of the Parties shall have the right to withdraw from the Agreement and return to the <u>status quo ante</u> as of July 24, 2013, for all litigation purposes, as if no Agreement had been negotiated or entered into, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any member of the proposed Settlement Class.

## XI.   **MISCELLANEOUS PROVISIONS**

11.1   <u>Further Assurances</u>. Each of the Parties shall execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

11.2   <u>Dispute Resolution</u>. The Parties agree to meet and confer in good faith in regard to any dispute relating to the Settlement or to administration of the Settlement, including, without limitation, any disputes relating to the validity of any request for a Claim Payment and disputes relating to the suspension of a Credit Monitoring Subscription pursuant to Section 4.2 above. Any dispute that cannot be resolved by the Parties shall be submitted to the Mediator for a written recommendation. If the Mediator's recommendation does not resolve the dispute, either Party may seek appropriate relief from the Court, and in ruling on the dispute the Court may consider but shall not be bound by the Mediator's recommendation. The Parties shall bear their own attorneys' fees and costs, except that the Party against whom the Mediator's recommendation is made shall pay the Mediator's costs, with respect to resolving any disputes

pursuant to this Section (except if the Court rejects the Mediator's recommendation, in which case the other Party shall pay the Mediator's costs).

11.3    Publicity And Non-Disparagement.   The Parties shall refrain from disparaging each other or taking any action designed to harm the public perception of each other regarding any issue related to the Settlement or the Action.  The Parties, Class Counsel and TransUnion's Counsel further agree not to issue press releases or otherwise initiate communications with the media regarding this Settlement or the Action.  Nothing in this Section shall be construed to preclude Class Counsel from communicating with Plaintiff or any Settlement Class Member.  In particular, nothing in this Section shall be construed to preclude Class Counsel from advising Settlement Class Members on how to submit claims or how to obtain any of the other benefits of the Settlement.

11.4    Entire Agreement.   This Agreement constitutes the entire agreement between and among the Parties with respect to the Settlement.  This Agreement supersedes all prior negotiations and agreements, including, without limitation, all proposals made by the Mediator, all term sheets exchanged at or prior to the mediation and all correspondence relating thereto. The Parties, and each of them, represent and warrant that no other party or any agent or attorney of any of the Parties has made any promise, representation or warranty whatsoever not contained in this Agreement to induce them to execute the same.  The Parties, and each of them, represent and warrant that they have not executed this Agreement in reliance on any promise, representation or warranty not contained in this Agreement.

11.5    Confidentiality.   Any and all drafts of this Agreement and other settlement documents relating to the negotiations between the Parties will remain confidential and will not be disclosed or duplicated except as necessary to obtain preliminary and/or final Court approval. This provision will not prohibit the Parties from submitting this Agreement to the Court in order to obtain preliminary and/or final approval of the Settlement.  It is agreed that, within thirty (30) days after the Effective Date, the originals and all copies of all confidential or highly confidential

Page 30 of 34

documents and/or information subject to the protective order in the Action shall be destroyed or returned to the designating Parties.

11.6    Successors And Assigns.  The Agreement shall be binding upon, and inure to the benefit of, the heirs, successors and assigns of the Parties.

11.7    Competency Of Parties.  The Parties, and each of them, acknowledge, warrant, represent and agree that in executing and delivering this Agreement, they do so freely, knowingly and voluntarily, that they had an opportunity to and did discuss its terms and their implications with legal counsel, that they are fully aware of the contents and effect of the Agreement and that such execution and delivery is not the result of any fraud, duress, mistake or undue influence whatsoever.

11.8    Authority.  The person signing this Agreement on behalf of TransUnion warrants and represents that he or she is authorized to sign on its behalf.  The Plaintiff has personally signed this Agreement.

11.9    Modification.  No modification of or amendment to this Agreement shall be valid unless it is in writing and signed by all Parties hereto.

11.10    Construction.  Each of the Parties has cooperated in the drafting and preparation of this Agreement.  Hence, in any construction to be made of this Agreement, the same shall not be construed against any of the Parties.  Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provision valid to the fullest extent possible consistent with applicable precedent so as to find all provisions of this Agreement valid and enforceable.  After applying this rule of construction and still finding a provision invalid, the Court shall thereupon interpret the invalid provision to the fullest extent possible to otherwise enforce the invalid provision.  The invalidity of any one provision shall not render this Agreement otherwise invalid and unenforceable unless the provision found to be invalid materially affects the terms of this Agreement after application of the rules of construction set forth in this paragraph.

LA 51669002v12

11.11   No Waiver.  The failure of any of the Parties to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, or any other provision, nor in any way to affect the validity of this Agreement or any part hereof, or the right of any of the Parties thereafter to enforce that provision or each and every other provision.  No waiver of any breach of this Agreement shall constitute or be deemed a waiver of any other breach.

11.12   Notices/Communications.  All requests, demands, claims and other communications hereunder shall:  (a) be in writing; (b) be delivered by U.S. Mail and facsimile; (c) be deemed to have been duly given on the date received; and (d) be addressed to the intended recipients as set forth below:

> If to Plaintiff or the Settlement Class:
> Leonard A. Bennett, Esq.
> Consumer Litigation Associates
> 763 J Clyde Morris Boulevard, Suite 1A
> Newport News, VA 23601
> Fax:  (757) 930-3662
>
> If to TransUnion:
> Daniel Halvorsen, Esq.
> TransUnion LLC
> 555 West Adams Street
> Chicago, IL 60661
> Fax:  (312) 466-6307
>
> and
>
> Stephen J. Newman, Esq.
> Stroock & Stroock & Lavan LLP
> 2029 Century Park East, 16th Floor
> Los Angeles, CA 90067
> Fax:  (310) 556-5959

Page 32 of 34

and

Paul L. Myers, Esq.
Strasburger & Price, LLP
2801 Network Blvd., Suite 600
Frisco, TX 75034
Fax: (469) 227-6584

Each of the Parties may change the address to which requests, demands, claims or other communications hereunder are to be delivered by giving the other Parties notice in the manner set forth herein.

11.13   Counterparts.  This Agreement may be executed in one or more counterparts and, if so executed, the various counterparts shall be and constitute one instrument for all purposes and shall be binding on each of the Parties that executed it, provided, however, that none of the Parties shall be bound unless and until all Parties have executed this Agreement.  For convenience, the several signature pages may be collected and annexed to one or more documents to form a complete counterpart.  True and correct photocopies or electronic images (such as PDFs) of executed copies of this Agreement may be treated as originals.

[SIGNATURES APPEAR ON THE FOLLOWING PAGES]

LA 51669002v12

Agreed and accepted:

Dated: _____, 2013          By:_____
                                          Donna K. Soutter


Dated: _____, 2013          TRANSUNION LLC

                                By_____
                                    Name:
                                    Title:


Approved as to form and content:

Dated: _____, 2013          CONSUMER LITIGATION ASSOCIATES

                                By_____
                                          Leonard A. Bennett
                                Attorneys for Plaintiff and the Settlement Class


Approved as to form:

Dated: _____, 2013          STROOCK & STROOCK & LAVAN LLP

                                By_____
                                          Stephen J. Newman
                                Attorneys for TransUnion LLC


Page 34 of 34

Agreed and accepted:

Dated: _____, 2013          By:_____
                                            Donna K. Soutter


Dated: _____, 2013          TRANSUNION LLC

                                 By _____
                                    Name: JOHN W. BLENKE
                                    Title: EXECUTIVE VICE PRESIDENT


Approved as to form and content:

Dated: _____, 2013          CONSUMER LITIGATION ASSOCIATES

                                 By_____
                                            Leonard A. Bennett
                                 Attorneys for Plaintiff and the Settlement Class


Approved as to form:

Dated: _____, 2013          STROOCK & STROOCK & LAVAN LLP

                                 By_____
                                            Stephen J. Newman
                                    Attorneys for TransUnion LLC


Page 34 of 34

LA 51669002v12

Case 3:15-cv-00391-MHL   Document 48-2   Filed 09/28/15   Page 58 of 88 PageID# 683

**NOTICE OF CLASS ACTION SETTLEMENT**

*Soutter v. Trans Union, LLC,* Case No. 3:10-CV-514 (E.D.Va.)

An unpaid Virginia court judgment was included in your Trans Union LLC ("TransUnion") credit report when that judgment actually had been paid, vacated or dismissed.

**A COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.**

Donna Soutter has sued TransUnion in the above class action case alleging that it violated the Fair Credit Reporting Act (the "FCRA"), a federal law, by furnishing credit reports that included inaccurate information about a Virginia civil court judgment between July 26, 2008 and December ___, 2013, because that judgment had actually been paid, satisfied, vacated or dismissed at least 31 days before issuing the credit report. TransUnion denies the allegations and contends that it acted lawfully and in compliance with the FCRA at all times. The court has not yet ruled in favor of either side. Nevertheless the parties have reached a settlement *that affects your legal rights.*

**SUMMARY OF PAYMENT AND BENEFIT TO YOU:**

- You are entitled to make a claim for a cash payment. TransUnion has agreed to pay $1.4 million into a settlement fund. Settlement Class Members *whose reports were inaccurate may submit a Claim Form to receive an additional payment.* (The amount paid will primarily depend on how many people submit claims.) The amount of your claim will be greater if you have previously made a dispute to TransUnion or if your credit score was substantially harmed by the inaccurate judgment.

- You also are entitled to six months of Credit Monitoring from TransUnion at no cost to you. The retail monetary value of this service is $89.70. Through this free service, you will have online access to your TransUnion credit report and VantageScore credit score at no cost to you for the entire six-month period.

- Your TransUnion credit report will be automatically corrected to report the Virginia civil court judgment as paid, satisfied, vacated or dismissed. Depending on your individual circumstances, this may substantially increase your credit score.

---

**IMPORTANT: This Settlement will only correct your TransUnion credit report. Your credit report with other credit reporting agencies may still be inaccurate. You may have a claim and right to bring a lawsuit against another credit reporting agency.**
For more information about your rights, you may contact the Attorneys at
Consumer Litigation Associates, P.C. at:
email: intake@clalegal.com
nationwide toll-free: 877-FCRA-LAW (877-327-2529)
Northern Virginia office: 703-273-7770
Hampton Roads office: 757-930-3660

## YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

Your legal rights are affected whether or not you act. Please read this notice carefully! You may do one of the following:

- **IF YOU DO NOTHING:** Your TransUnion credit report will be corrected. You will not receive a cash payment or free credit monitoring service. You will not be able to sue TransUnion related to the inaccurate judgment.

- **IF YOU SUBMIT A CLAIM FORM:** Your TransUnion credit report will be corrected. You will also receive a cash payment and six months of TransUnion's credit monitoring service. If you believe you have been harmed because the credit report TransUnion furnished was inaccurate, *you can claim a payment under the settlement by completing and submitting the enclosed Claim Form.* (A copy of the form is also available at http://SoutterClassAction.clalegal.com.) You will <u>not</u> be able to sue TransUnion related to the inaccurate judgment.

- **IF YOU SUBMIT A RESERVATION OF ACTUAL DAMAGES FORM**: You will ***not*** receive a cash payment from this settlement. You can remain in the class, receive correction of your TransUnion credit report and six months of TransUnion's credit monitoring service, but reserve your right to sue TransUnion individually for any actual damages. If you believe a credit report TransUnion furnished was inaccurate and you want to reserve your right to sue for actual damages resulting from the inaccuracy, you should consult your own attorney and *fill out the enclosed Reservation of Actual Damages Form.* (A copy of the form is also available on the Settlement Website, http://SoutterClassAction.clalegal.com.) If you do this, you will *not* be eligible to submit a Claim Form or receive a cash payment in this settlement. You will be able to sue TransUnion on your own for actual damages that you can prove were caused by TransUnion's reporting of an inaccurate Virginia civil court judgment. However, before you sue, you must provide information about your alleged damages to the settlement administrator and allow TransUnion an opportunity to make a good faith settlement offer. Additionally, you will not be able to sue TransUnion for punitive damages, statutory damages or attorneys' fees even if you reject the good faith settlement offer.

- **IF YOU EXCLUDE YOURSELF FROM THE SETTLEMENT:** You can exclude yourself from the settlement completely by "opting out." You may opt out by following the instructions on the Settlement Website by [date] http://SoutterClassAction.clalegal.com. You will not receive any monetary payments from the Settlement, or receive TransUnion's credit monitoring service for six months. You will not have any right to object, but you will not be bound by the terms of this Settlement. You also will have the right to sue TransUnion without following the Reservation of Actual Damages process or being subject to its conditions.

If you do not exclude yourself, you may object to the settlement. You can remain in the Settlement Class but file written objections to the Settlement. The Court will consider the objections in deciding whether to approve the Settlement. Instructions for mailing an objection are on the Settlement Website, http://SoutterClassAction.clalegal.com. If the Settlement is approved, you will not be able to sue TransUnion related to the inaccurate judgment.

If you do not exclude yourself from the Settlement and it is approved, you will release all claims you may or could based on violation of the FCRA or any other federal, state or local law, statute, regulation or common law, that involve a Virginia General District Court or Virginia Circuit Court judgment appearing on a TransUnion consumer report or file disclosure, or a consumer report or file disclosure created from data provided by TransUnion, wherein such data inaccurately stated that the judgment was valid and had not been paid or satisfied. The Full Release and Released Parties are available on the Settlement website, http://SoutterClassAction.clalegal.com.

The Court has appointed lawyers to represent the Class, but you may enter an appearance in the case through an attorney if you want. If you do so, you will have to pay for your own lawyer.

**ADDITIONAL INFORMATION ABOUT THE LAWSUITS, THE SETTLEMENT, AND YOUR RIGHTS IS ON THE SETTLEMENT WEBSITE,**

**http://SoutterClassAction.clalegal.com**

*A FEDERAL COURT ORDERED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

---

DONNA K. SOUTTER
on behalf of herself and all
similarly situation individuals,

        **Plaintiff**

v.                                                   CIVIL NO. 3:10cv514

TRANS UNION, LLC

        **Defendant.**

---

### NOTICE OF CLASS ACTION SETTLEMENT

**An unpaid Virginia civil court judgment was included in your Trans Union credit report when that judgment actually had been paid, satisfied, vacated or dismissed.**

Donna Soutter has sued Trans Union, LLC ("TransUnion") in the above class action case alleging that it violated the Fair Credit Reporting Act (the "FCRA"), a federal law, by furnishing credit reports that included inaccurate information about a Virginia civil court judgment between July 26, 2008 and December ___, 2013, because that judgment had actually been paid, satisfied, vacated or dismissed at least 31 days before TransUnion issued the credit report. TransUnion denies the allegations and contends that it acted lawfully and in compliance with the FCRA at all times. The court has not yet ruled in favor of either side. Nevertheless, the parties have reached a settlement *that affects your legal rights*.

The settlement has been proposed on behalf of consumers who, on or after July 26, 2008, but on or before December __, 2013, had a hard inquiry on their TransUnion credit File resulting in the delivery of a TransUnion consumer credit report that reflected an unsatisfied Virginia General District Court or Virginia Circuit Court civil court judgment, if at least 31 days prior to the delivery of the consumer credit report, and on the date of delivery of the consumer credit report, such judgment had been satisfied, vacated, or dismissed (the "Class").

You have received this notice because records indicate that you are a member of the above-defined Class.

Your legal rights will be affected by the settlement of this lawsuit. Please read this notice carefully. It explains the lawsuit, the settlement, and your legal rights, including the process for receiving a settlement check, reserving your rights to seek actual damages, excluding yourself from the settlement, or objecting to the settlement.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **IF YOU DO NOTHING** | If the Court approves the settlement and you do nothing, your TransUnion credit report will be corrected. You will not receive a cash payment or free credit monitoring service. You will not be able to sue TransUnion related to any inaccurately reported Virginia civil court judgment. |
| **IF YOU SUBMIT A CLAIM FORM BY _____, 2014** | Your TransUnion credit report will be corrected. You will also receive a cash payment and six months of TransUnion's credit monitoring service. If you believe you have been harmed because a consumer credit report TransUnion issued about you was inaccurate, *you can claim damages by completing and submitting the enclosed Claim Form.* (A copy of the form is also available at http://SoutterClassAction.clalegal.com.) You will not be able to sue Trans Union related to the inaccurate judgment. The claim form deadline is _____ |
| **IF YOU SUBMIT A RESERVATION OF ACTUAL DAMAGES FORM BY _____,** | You will *not* receive a cash payment from this settlement. You can remain in the class, receive correction of your TransUnion credit report and six months of TransUnion's credit monitoring service, but reserve your right to sue TransUnion individually for any actual damages after going through an individual dispute resolution process. If you do this, you will *not* be eligible to submit a Claim Form or receive a cash payment in this settlement. Instead, you will be able to sue TransUnion on your own for actual damages that you can prove were caused by TransUnion's inaccurate reporting of a Virginia civil court judgment. However, before you sue, you must provide information about your alleged damages to the settlement administrator and allow TransUnion an opportunity to make a good faith settlement offer. Additionally, you will not be able to sue |

| 2014 | TransUnion for punitive damages, statutory damages or attorneys' fees even if you reject the good faith settlement offer. The reservation of actual damages deadline is _____ |
|---|---|
| **IF YOU EXCLUDE YOUSRSELF FROM THE SETTLEMENT** | You have the right to exclude yourself from the settlement completely ("opt out").  You can opt out by following the instructions on the Settlement website http://SoutterClassAction.clalegal.com.  You will not receive any monetary payments from the Settlement, or receive the free credit monitoring service for six months.  You will not have any right to object, but you will not be bound by the terms of this Settlement.  You instead will have the right to sue TransUnion without following the Reservation of Actual Damages process or being subject to its conditions.  The opt out deadline is _____. |

You have the right to object to the settlement if you do not opt out.  You can remain in the Settlement Class but file written objections to the Settlement.  The Court will consider the objections in deciding whether to approve the Settlement.  Instructions for making an objection are on the Settlement Website, http://SoutterClassAction.clalegal.com.  If the Settlement is approved, you will not be able to sue TransUnion related to the inaccurate judgment.

If you do not completely exclude yourself from the Settlement and if the Settlement is approved, you will not be allowed to sue TransUnion (or continue to sue TransUnion) on any of the claims that are settled.  You will release all claims you may or could base on violation of the FCRA or any other federal, state or local law, statute, regulation or common law, that involve a Virginia General District Court or Virginia Circuit Court civil judgment appearing on your TransUnion consumer credit report or File disclosure, or a consumer report or File disclosure created from data provided by TransUnion, wherein such data inaccurately stated that the Virginia civil court judgment was valid and had not been paid, satisfied, vacated or dismissed.  The formal release language and description of the Released Parties are included in the formal settlement Agreement, which is available on the Settlement website, http://SoutterClassAction.clalegal.com.

Please be mindful of the following deadlines:

                    Request for Exclusion ("Opt Out") Deadline

                    Claims Deadline

                    Reservation of Actual Damages Deadline

The Court has appointed lawyers to represent the Class, but you may enter an appearance in the case through your own attorney if you want.  If you do so, you will have to pay for your own lawyer.

The Court has scheduled a "Fairness Hearing" to occur on [date/time] at [address], to consider whether the Settlement is fair, reasonable and adequate, and to consider any objections to the Settlement.  You have the right to attend this hearing.


**ADDITIONAL INFORMATION ABOUT THE LAWSUITS, THE SETTLEMENT, AND YOUR RIGHTS IS ON THE SETTLEMENT WEBSITE,**

**http://SoutterClassAction.clalegal.com**

## BASIC INFORMATION

| 1. | WHY DID I RECEIVE THIS NOTICE? |
|----|----|

A Court authorized the notice because you have a right to know about a proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to give "final approval" to the settlement. This notice explains the lawsuit, the settlement, and your legal rights. Judge Henry E. Hudson, of the United States District Court for the Eastern District of Virginia, is overseeing this class action. The case is known as *Soutter v. Trans Union, LLC,* Civil No. 3:10cv514.

| 2. | WHAT IS THIS LAWSUIT ABOUT? |
|----|----|

Plaintiff Donna Soutter is a consumer who was sued for money and suffered a civil judgment in a Virginia General District Court. That judgment was later set aside and dismissed. Ms. Soutter alleges that TransUnion, a consumer reporting agency, continued to report Ms. Soutter's Virginia civil court judgment as unpaid in her credit reports after it was set aside and dismissed.

Ms. Soutter sued TransUnion in Richmond federal court because she believes that TransUnion violated the Fair Credit Reporting Act (FCRA), a federal law. The FCRA requires TransUnion to "follow reasonable procedures to assure maximum possible accuracy" of every credit report it sells. 15 U.S.C. §1681e(b). Ms. Soutter has alleged that TransUnion systemically failed to include records that Virginia civil court judgments had been paid, satisfied, vacated or dismissed in its credit reports and that this violated the FCRA.

### How TransUnion Responded

TransUnion has denied all charges and allegations of wrongdoing asserted in the Lawsuit and contends that it acted lawfully and in compliance with the FCRA at all times. Notwithstanding the denials of liability and alleged unlawful conduct, TransUnion has decided it is in its best interest to settle the Lawsuit to avoid the burden, expense, risk and uncertainty of continuing the Lawsuit.

## WHO IS AFFECTED BY THE SETTLEMENT?

| 3. | HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? |
|----|----|

You are a member of the Settlement Class and are affected by the settlement because TransUnion's records indicate that a copy of your TransUnion consumer credit report reflecting an unsatisfied Virginia General District Court or Virginia Circuit Court civil court judgment that had been paid, satisfied, vacated, or dismissed at least 31 days prior to the date TransUnion issued the consumer credit report to a third party.

Specifically, for the purposes of settlement only, the Court has provisionally certified a Settlement Class defined as follows:

> Consumers who on or after July 26, 2008 but on or before December __, 2013 had a hard inquiry on their TransUnion file resulting in the delivery of a TransUnion consumer report that reflected an unsatisfied Virginia General District Court or Virginia Circuit Court civil court judgment, if at least 31 days prior to the delivery of the consumer report, and on the date of delivery of the consumer report, such judgment had been satisfied, vacated, or dismissed.

If you fall within the foregoing Settlement Class definition, you will be a Settlement Class Member unless you exclude yourself from the Settlement Class.

## WHAT BENEFITS ARE PROVIDED?

| 4. | WHAT DOES THE SETTLEMENT PROVIDE? |
|----|----|

:

- You are entitled to make a claim for a cash payment. TransUnion has agreed to pay $1.4 million into a settlement fund. Settlement Class Members *whose reports were inaccurate may submit a Claim Form to receive an additional payment.* (The amount paid will primarily depend on how many people submit claims.) The amount of your payment will be greater if you previously disputed the status and presence of a Virginia civil court judgment on your TransUnion consumer credit report or File disclosure to Trans Union or if your VantageScore credit score was substantially reduced by an

inaccurately reported Virginia civil court judgment.

- You are entitled to six months of TransUnion's Credit Monitoring service at no cost to you. The retail monetary value of this service is $89.70. Through this service, you will have online access to your TransUnion credit report and VantageScore credit score at no cost to you for the entire six-month period.

- Your TransUnion credit report will be automatically corrected to report the Virginia judgment as paid, satisfied, vacated or dismissed (or the Virginia judgment may be deleted from your TransUnion credit report). Depending on your individual circumstances, this may substantially increase your credit score. This settlement does not affect reports that may be issued by other credit bureaus.

## HOW YOU GET SETTLEMENT BENEFITS

**5.     WHAT DO I DO IF I WANT TO SUBMIT A CLAIM FOR MONETARY COMPENSATION?**

You are permitted to submit a claim for monetary compensation if you can truthfully state that you believe you were damaged as the result of an inaccurate TransUnion report or if you submitted a dispute to TransUnion.

**READ THE FOLLOWING VERY CAREFULLY. You need to submit a claim form no later than _____, 2014 if you complete the claim form online or, if you are submitting the claim form by mail, your submission must be postmarked by _____, 2014. You may also obtain assistance at http://SoutterClassAction.clalegal.com or by calling the Settlement Administrator at (\_\_\_\_\_) _____ or (2.) the Attorneys Appointed to represent you at 1-877-FCRA-LAW. (1-877-327-2529)**

STEP ONE:  Complete the Claim Form

In order to submit a claim, you need to follow the instructions on the "Claim Form" attached at the end of this notice.  You may submit a Claim Form in either of two ways:

(1)  Submit your Claim Form online at **http://SoutterClassAction.clalegal.com.**

OR

(2)  Return the completed Claim Form to the Settlement Administrator, by U.S. mail, to the address stated in the Claim Form.

The Claim Form – by mail or on the website – requires that you provide some basic information:  your name, current postal address, current telephone number, and your confirmation that you either disputed a Virginia civil court judgment with TransUnion, or you believe that you were damaged as a result of TransUnion providing a consumer credit report about you to a third party that inaccurately reflected the status of a Virginia civil court judgment.  *All of this information will be kept strictly confidential.*  Be sure to state on the Claim Form whether you are choosing to accept your six months of free credit monitoring service, your right to payment of your portion of the settlement fund, or both.

STEP TWO:  Settlement Administrator will Determine the Validity of the Claims

Claim Forms and substantiating documents, whether submitted electronically via the Settlement Website or by U.S. Mail, that do not meet the requirements as set forth in the Settlement Agreement will be rejected.  If you do not provide accurate information, fail to make the required representations and attestations concerning membership in the Settlement Class, fail to sign a registration form submitted by U.S. Mail by the deadline (or e-sign the form submitted on the website), your claim will be rejected.

The Settlement Administrator shall have the authority to determine whether a claim made by any Settlement Class Member is a Valid Claim.  The Settlement Administrator's determinations in this regard shall be final and non-appealable unless TransUnion's Counsel or Class Counsel disagree, in which case the determination shall be made by United States District Court Magistrate Judge Lauck.

If your Claim is determined to be invalid, you will still have your TransUnion credit report fixed and you are still entitled to free credit monitoring for 6 months.

Settlement benefits will not be provided until after the Settlement is approved and the "Effective Date" occurs.  Claims processing may take significant time.  Please be patient!

**6.     HOW MUCH MONEY WILL I RECEIVE IF I SUBMIT A VALID CLAIM?**

The amount of money paid to each person who submits a valid claim depends on several factors and will be determined by a weighted formula approved by the Court. If you submit a valid claim, you will receive 1 point. If you are confirmed to have sent a dispute to TransUnion about a Virginia civil court judgment, you will receive an additional 2 points. If it is confirmed that your VantageScore credit score would have been at least 50 points higher if the Virginia civil court judgment was reported correctly, you will receive another 2 points. Therefore, all class members that submit a valid claim will be scored between 1 and 5 points. The net settlement fund will be distributed based on the number of points that your claim is determined to be. For example, a class member with a claim that receives a 5 point score will receive a larger payment than a class member with a claim that receives a 1 point score.

## 7.  WHAT HAPPENS IF I DO NOTHING?

If you do nothing, you remain in the class. TransUnion will correct any inaccurate Virginia civil court judgment(s) in your TransUnion credit File. However, you will also be precluded from suing TransUnion later regarding the claims settled by the Lawsuit. You will not receive any cash payment or credit monitoring service.

## 8.  WHEN WOULD I GET MY SETTLEMENT CHECK?

The Court will hold a hearing on _____, 2014 to decide whether to approve the settlement. If the Court approves the settlement, after that, there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year after Court approval. The progress of the settlement will be reported at the website http://SoutterClassAction.clalegal.com. Please be patient.

## 9.  WHAT AM I GIVING UP TO GET A BENEFIT OR STAY IN THE SETTLEMENT CLASS?

Unless you exclude yourself, you are staying in the Settlement Class, which means that you cannot be part of any other lawsuit against TransUnion (or other parties released by the settlement) about the legal claims in this case and legal claims that could have been brought in this case. It also means that all of the Court's orders will apply to you and legally bind you. If you do not exclude yourself from the Settlement Class, you will agree to a "Release of Claims," stated below, which describes exactly the legal claims that you give up if you get settlement benefits. Basically, you are releasing your right to individually sue for any violation of Federal or State law arising from or in connection with TransUnion's furnishing of a consumer report or other information regarding you or related to you, as described above.

The "Release" contained in the Settlement Agreement states:

> As of the Effective Date of the Settlement, the Plaintiff and each Settlement Class Member, their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, shall be deemed to have fully, finally and forever released the Released Parties from all Released Claims described in Section 2.30 above. Without limiting the foregoing, the Released Claims released pursuant to this Settlement specifically extend to all claims and potential claims that Settlement Class Members do not know or suspect to exist in their favor as of or prior to the Effective Date. The Parties, and all Settlement Class Members, agree that this paragraph constitutes a waiver of any statutory provision, right or benefit of any state or territory of the United States or any jurisdiction, and any principle of common law at law or in equity that prohibits the waiver of unknown claims. THIS WAIVER INCLUDES WITHOUT LIMITATION WAIVER OF ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES, "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." Plaintiff and each Settlement Class Member understands and acknowledges the significance of this waiver relating to limitations on releases. In connection with such waiver and relinquishment, Plaintiff and each Settlement Class Member acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Settlement, but that they release fully, finally and forever all Released Claims, and in furtherance of such intention, the release will remain in effect notwithstanding the discovery or existence of any such additional or different facts. The Parties acknowledge (and all Settlement Class Members by operation of law shall be deemed to have acknowledged) that the release of unknown Released Claims as set forth herein was separately bargained for and was a key element of the Settlement.

The "Released Claims" are as follows:

Any and all actual or potential claims, actions, causes of action, suits, counterclaims, cross claims, third-party claims, contentions, allegations, and assertions of wrongdoing, and any demands for any and all debts, obligations, liabilities, damages (whether actual, compensatory, treble, punitive, exemplary, statutory, or otherwise), attorneys' fees, costs, expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal or statutory relief, any other benefits, or any penalties of any type whatever, whether known or unknown, suspected or unsuspected, contingent or non-contingent, or discovered or undiscovered, whether asserted in federal court, state court, arbitration or otherwise, and whether triable before a judge or jury or otherwise, including, without limitation, those based on violation of the FCRA or any other federal, state or local law, statute, regulation or common law, that were alleged (or that could have been alleged based on the same facts and circumstances) in the Action, the Amended Complaint or any other complaints, pleadings or other papers filed or to be filed in the Action or any similar or related litigation, and that involved a Virginia General District Court or Virginia Circuit Court judgment appearing on a TransUnion consumer report or File disclosure, or a consumer report or File disclosure created from data provided by TransUnion, wherein such data inaccurately stated or suggested that such judgment was valid and had not been paid or satisfied.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a benefit from this settlement, and you want to maintain your right to sue or continue to sue TransUnion on your own about the legal issues in this case, you must take steps to exclude yourself from the Settlement Class.  This is called excluding yourself – or is sometimes referred to as "opting out" of the Settlement Class.  Opting out gives you the right to bring your own lawsuit but may preclude you from participating in any future class action against TransUnion and does not guarantee that your own lawsuit will be successful.

**10.      HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?**

You may "opt out" or completely exclude yourself from the settlement as explained below.

REQUESTS FOR EXCLUSION THAT ARE NOT POSTMARKED ON OR BEFORE _____, 2014 WILL NOT BE HONORED.

You cannot exclude yourself on the phone or by email.

If you exclude yourself, you should promptly consult your own attorney about your rights, as the time to file an individual lawsuit is limited.

To completely exclude yourself from the settlement, you must complete the attached Exclusion Request, selecting "I am opting out" where indicated, or send a letter stating that you want to be excluded from the settlement of the *Soutter v. Trans Union, LLC* case.  Be sure to include: (1) the name of this lawsuit, *Donna K. Soutter v. Trans Union, LLC*, Civil Action No. 3:10cv514-HEH; (2) your full name, current address, and telephone number; (3) the following statement: "I request to be excluded from the class settlement in *Donna K. Soutter v. Trans Union, LLC*, United States District Court, Eastern District of Virginia, Case No. 3:10cv514-HEH"; and (4) your signature.  You must mail your Exclusion Request so that it is postmarked no later than _____, 2014, to:

> Exclusion Requests – *Soutter v. Trans Union* Settlement Administrator
> Post Office Box 1387
> Blue Bell, PA 19422

**11.      IF I DO NOT EXCLUDE MYSELF, CAN I SUE TRANSUNION FOR THE SAME THING LATER?**

No.  Unless you exclude yourself or submit a Reservation of Actual Damages form and follow the Reservation of Actual Damages procedures, you will give up the right to sue TransUnion as described above.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You may need to exclude yourself from *this* class action in order to continue your own lawsuit.  Remember, _____, 2014 is the deadline by which your Exclusion Request or Reservation of Actual Damages must bepostmarked.

You have the right to have the attorney of your choosing (but at your own expense) advise you whether you should file a Request for Exclusion or a Reservation of Actual Damages form.

**12.      IF I EXCLUDE MYSELF, CAN I GET ANY MONETARY BENEFIT FROM THIS SETTLEMENT?**

No.

## THOSE REPRESENTING YOU

**13.  DO I HAVE A LAWYER IN THIS CASE?**

The Class Representative retained **Leonard A. Bennett** and **Matthew J. Erausquin**, Consumer Litigation Associates, P.C., 763 J. Clyde Morris Blvd., Suite 1-A, Newport News, VA 23601 to represent her. In connection with the preliminary approval of the settlement, the Court appointed these attorneys to represent you and other Class Members. Together, the lawyers are called Class Counsel. You will not be separately charged by these lawyers for their work on the case. If you want to be represented by your own lawyer, you may hire one at your own expense.

**14.  HOW WILL THE LAWYERS BE PAID?**

Class Counsel will ask the Court for an award of attorneys' fees of $500,000 to be paid from the settlement fund, which TransUnion has agreed not to oppose. However, the Court may ultimately award less than the amount requested, or nothing at all. Class Counsel will also ask the Court to reimburse the costs and expenses incurred by them and by the Class Representative in litigating this matter. The costs of this notice to you and the costs of administering the settlement are paid from the Settlement Fund.

**15.  IS THE CLASS REPRESENTATIVE ENTITLED TO A SEPARATE PAYMENT?**

The Class Representative will ask the Court to approve a payment to her of an amount not to exceed $7,500 as a service award for her efforts and time expended in prosecuting this case. However, the Court may ultimately award less than this amount or nothing at all.

## OBJECTING TO THE SETTLEMENT

**16.  HOW DO I TELL THE COURT THAT I DO NOT LIKE THE SETTLEMENT?**

If you are a Settlement Class Member who does not exclude themselves entirely from the Settlement, you can object to the settlement if you think any part of the settlement is unfair, unreasonable, and/or inadequate. If you choose to object, you can and should explain the detailed reasons why you think the Court should not approve the settlement. The Court and Class Counsel will consider your views carefully. To object, you must send a letter stating that you object to the settlement in the *Soutter v. Trans Union, LLC* case. Be sure to include (1) the name of this lawsuit, *Donna K. Soutter v. Trans Union, LLC*, Civil Action No. 3:10cv514-HEH; (2) your full name, current address and telephone number; (3) a sentence stating that to the best of your knowledge, you are a member of the settlement class (4) the factual basis and legal grounds for the objection to the settlement; (5) the identity of any witnesses who you may call to testify at the Final Fairness Hearing; and (6) copies of exhibits that you may seek to offer into evidence at the Final Fairness Hearing. Mail these materials to these three different places so that they are postmarked no later than _____, 2014.

| COURT | CLASS COUNSEL | TRANSUNION'S COUNSEL |
|---|---|---|
| **Clerk of the Court** | **Leonard A. Bennett** | **Stephen J. Newman** |
| United States District Court | Consumer Litigation Associates, P.C. | Stroock & Stroock & Lavan, LLP |
| 701 East Broad Street | 763 J. Clyde Morris Blvd., Suite 1-A | 2029 Century Park East, 16th Floor |
| Richmond, VA 23219 | Newport News, VA 23601 | Los Angeles, CA 90067 |

You also must file a statement with the Court that tells the Court the date that you also mailed or delivered copies of these papers to Class Counsel and Defense Counsel.

There are additional requirements necessary for your attorney if you retain one. These requirements are stated in the Settlement Agreement and Preliminary Approval Order available at **http://SoutterClassAction.clalegal.com**.

**17.  WHAT IS THE DIFFERENCE BETWEEN OBJECTING, EXCLUDING AND RESERVING RIGHTS TO PURSUE ACTUAL DAMAGES?**

Objecting is simply telling the Court that you do not like something about the settlement. You can object only if you remain in the Class. Excluding yourself is telling the Court that you do not want to be part of the Class. If you exclude yourself, you have no basis to object to this settlement because the case no longer affects you. If you file a Reservation of Actual Damages form, you

will have the right to continue to seek actual damages from TransUnion, but you will be required to follow the procedure set forth in the Settlement Agreement before you sue and you will give up certain other rights (such as the right to recover punitive or statutory damages).

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend, and you may ask to speak, but you do not have to.

**18.   WHEN AND WHERE WILL THE COURT DECIDE TO APPROVE THE SETTLEMENT?**

The Court will hold a Fairness Hearing on _____, 2014 of the United States District Court for the Eastern District of Virginia, 701 East Broad Street, Richmond, VA 23219. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have submitted timely requests to speak at the hearing. The Court may also decide the amount that Class Counsel and Class Representatives shall be paid. After the hearing, the Court will decide whether to finally approve the settlement.

**19.   DO I HAVE TO COME TO THE HEARING?**

No. Class Counsel will answer questions the Court may have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**20.   MAY I SPEAK AT THE HEARING?**

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in the *Soutter v. Trans Union, LLC* case." Be sure to include your name, address, telephone number and your signature. Your Notice of Intention to Appear must be sent to the Clerk of the Court, Class Counsel and TransUnion's Counsel, at the three addresses provided above and must be received by the Clerk of the Court by _____, 2014. You cannot speak at the hearing if you have excluded yourself.

## GETTING MORE INFORMATION

**21.   ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?**

This notice summarizes the proposed settlement. More details can be found on the settlement website at **http://SoutterClassAction.clalegal.com**, which includes the complaint, Settlement Agreement, and other governing settlement documents.

**22.   HOW DO I GET MORE INFORMATION?**

You can visit the website at **http://SoutterClassAction.clalegal.com.** If you have questions about the case, you can call toll free (877) FCRA-LAW (877-327-2529), or write to the Class Counsel, **Leonard A. Bennett**, Consumer Litigation Associates, P.C., 763 J. Clyde Morris Blvd., Suite 1-A, Newport News, VA 23601.

**PLEASE, DO NOT CALL THE COURT, THE CLERK, TRANSUNION OR TRANSUNION'S COUNSEL REGARDING THIS SETTLEMENT.**

Your Unique Claim Number: #####

First Name M.I. Last Name
Street Address 1
Street Address 2
City, ST Zip Code

| INACCURACY CLAIM FORM: | COMPLETE THIS FORM TO OBTAIN A CASH PAYMENT SUBJECT TO VERIFICATION AS DESCRIBED IN THE CLASS NOTICE. |

**INSTRUCTIONS:**

1.  VERIFY THAT YOUR NAME AND ADDRESS INFORMATION IS CORRECT.

2.  ADD YOUR TELEPHONE NUMBER AND E-MAIL ADDRESS.

3.  SIGN BELOW VERIFYING THAT YOU EITHER DISPUTED YOUR JUDGMENT WITH TRANS UNION OR BELIEVE THAT YOU WERE DAMAGED AS A RESULT OF AN INACCURATE TRANS UNION REPORT.

4.  CHECK THE BOX TO INDICATE THAT YOU WOULD LIKE YOUR FREE 6 MONTHS CREDIT MONITORING SERVICE (A $89.70 VALUE).

The deadline to submit a claim is _____.  You may also submit this claim online at http://SoutterClassAction.clalegal.com.

---

**Section I: Updated Personal Information**

If the preprinted information at the top of this form is not correct, make any changes here.
(STOP! Do not complete this section if the preprinted information above is correct)

First Name, MI, Last Name:_____ _____ _____

Mailing Address:_____

City, State, Zip Code: _____

---

**Section II: Additional Information:**

Telephone Number (**required**): (_____) _____--_____

Email Address (if you have one):_____

I would like to receive my free 6 month credit monitoring service from TransUnion so that I can receive alerts and view my credit report anytime I want.   YES   ☐ NO  ☐

---

**Section III:**          **Signature:**

Name:_____

**Exclusion Request – *Soutter v. Trans Union* Settlement Administrator**
**Receive No Settlement Benefits**

**(If you choose this option, you will not receive a settlement check)**

To exclude yourself from the settlement, you must complete the attached Exclusion Request, selecting "I am opting out" where indicated, or send a letter stating that you want to be excluded from the settlement of the *Soutter v. Trans Union* case. Be sure to include: (1) the name of this lawsuit, *Donna K. Soutter v. Trans Union, LLC*, Civil Action No. 3:10cv514-HEH; (2) your full name, current address, and telephone number; (3) the following statement: "I request to be excluded from the class settlement in *Donna K. Soutter v. Trans Union, LLC*, United States District Court, Eastern District of Virginia, Case No. 3:10cv514-HEH."; and (4) your signature.

You must mail your Exclusion Request so that it is postmarked no later than January 15, 2014, to:

> Exclusion Requests – *Soutter v. Trans Union* Settlement Administrator
> P.O. Box 1387
> Blue Bell, PA 19422

---------------------------------------------------------------------------------------------------------------------

**Exclusion Request – *Soutter v. Trans Union* Settlement Administrator**

FILL OUT AND RETURN THIS FORM **ONLY** IF YOU WISH TO EXCLUDE YOURSELF FROM THE SETTLEMENT.  IF YOU WISH TO PARTICIPATE IN THE SETTLEMENT, YOU DO NOT NEED TO RETURN THIS FORM.

_____   I am opting out of the Settlement in *Donna K. Soutter v. Trans Union, LLC*, Civil Action No. 3:10cv514-HEH.


Full name:          _____

Current address:    _____

                    _____

                    _____

Phone number:       _____


                    _____
                    Signature

Case 3:10-cv-00391-MHL   Document 55-1   Filed 07/28/13   Page 71 of 88 PageID# 286

*Souter v. Trans Union, LLC*, Case No. 3:10-CV-514 (E.D.Va.)

Class Administrator
PO Box 1387
Blue Bell, PA 19422-1387

<<Name1>>
<<Address1>>
<<Address2>>
<<City>><<State>><<Zip>>         <<Date>>

**ACTUAL DAMAGE
RESERVATION OF RIGHTS
FORM**

Your Unique ID:

**THIS IS NOT A CLAIM FORM. THIS IS NOT AN OPT-OUT FORM.
IF YOU SUBMIT THIS FORM, YOU WILL NOT BE ELIGIBLE TO RECEIVE A CASH PAYMENT FROM THE SETTLEMENT FUND.**

COMPLETE AND RETURN THIS FORM ONLY IF YOU INTEND TO FILE A SEPARATE LAWSUIT ON YOUR OWN TO PROVE THAT YOU HAVE SUFFERED ACTUAL DAMAGES BECAUSE OF INACCURACIES IN TRANSUNION CREDIT REPORTS BASED ON REPORTING OF VIRGINIA COURT JUDGMENTS. THE ATTORNEYS WHO REPRESENT THE CLASS WILL NOT REPRESENT YOU. YOU MAY ONLY PURSUE SUCH A LAWSUIT ON AN INDIVIDUAL BASIS. TRANSUNION HAS NOT AGREED TO PAY YOU ANY MONEY, AND IT WILL BE ABLE TO ASSERT DEFENSES TO YOUR CLAIMS. A JUDGE OR JURY WILL DECIDE WHETHER YOU ARE IN FACT ENTITLED TO ANY ACTUAL DAMAGES.

By submitting this Actual Damage Reservation of Rights Form, you may still receive the free six months of TransUnion's credit monitoring service by selecting the box below.

**You must fill out all of the information required below or your Actual Damage Reservation of Rights Form may be invalid.** If you complete this form, the Settlement Administrator will mail you instructions for the submission of evidence and documentation you contend supports your claim for compensatory damages, and a non-binding estimate of the compensatory damages you claim to have suffered. TransUnion will then make you a good faith settlement proposal. If you do not accept TransUnion's offer, you may file a separate lawsuit on your own. However, you may not file your separate lawsuit until after you receive TransUnion's good faith settlement proposal and reject it. **Failure to strictly follow these procedures shall result in the release of any and all reserved claims. More detailed information is available at the Settlement website, http://SoutterClassAction.clalegal.com.**

**The deadline to submit this Actual Damage Reservation of Rights Form is** _____, **2014.** If the Settlement Administrator does not receive your form on or before that date, you will be bound by the Settlement Agreement and will be barred from bringing a separate action against TransUnion for inaccuracies in credit reports based on reporting of Virginia civil court judgments.

**Section I: Your Personal Information**

First Name          MI          Last Name

Mailing Address: _____

City: _____          State: _____          Zip Code: _____

**Section II: Credit Monitoring Information:**

**QUESTIONS?** Call 1-800-XXX-XXXX, or visit http://SoutterClassAction.clalegal.com

Telephone Number (**required**): (____) ____—____

Email Address (if you have one): _____

I would like to receive my free 6 month credit monitoring service from TransUnion so that I can receive alerts and view my credit report anytime I want.    YES ☐   NO ☐

**Section III:  Signature**

I AGREE TO FOLLOW THE RESERVATION OF RIGHTS PROCEDURES DESCRIBED IN THE SETTLEMENT AGREEMENT.

Signature: _____     Date: _____

Printed Name: _____

**QUESTIONS?**  Call 1-800-XXX-XXXX, or visit http://SoutterClassAction.clalegal.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DONNA K. SOUTTER,
For herself and on behalf of all
similarly situated individuals,

        Plaintiff,

v.                         Civil Action No. 3:10-cv-00514-HEH

TRANS UNION, LLC,

        Defendant.

**[PROPOSED] PRELIMINARY APPROVAL ORDER**

WHEREAS, Plaintiff has made a motion (the "Motion"), pursuant to Federal Rule of Civil Procedure 23, for an order preliminarily approving a settlement of the above-captioned action (the "Action") in accordance with the Stipulation and Agreement of Settlement filed with this Court on December 4, 2013 (the "Agreement"), which, together with the Exhibits attached thereto, sets forth the terms and conditions for a proposed settlement of the Action and its dismissal with prejudice; and

WHEREAS, as a condition of the Agreement, Plaintiff, on behalf of herself individually and on behalf of the Settlement Class, has agreed to release all claims arising under federal, state or common law as specified in Section 6.1 of the Agreement in exchange for the benefits provided under the Agreement, subject to the Court's approval; and

WHEREAS, this Court having read and considered Plaintiff's Motion, the Agreement and Exhibits attached thereto, as well as all arguments and submissions from the Parties; and

WHEREAS, all defined terms shall have the same meaning as set forth in the Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED:

-1-

1.      For purposes of this Action, this Court has subject matter jurisdiction and, for purposes of the Settlement only, this Court has personal jurisdiction over the Parties, including the Settlement Class.

2.      For purposes of this Settlement only, this Court preliminarily certifies the following Settlement Class:

All consumers in the United States who, between July 26, 2008, and the date of preliminary approval of the Settlement, had a hard inquiry on their TransUnion File resulting in the delivery of a TransUnion consumer report that reflected an unsatisfied Virginia General District Court or Virginia Circuit Court civil judgment, if at least 31 days prior to delivery of the consumer report, and on the date of delivery of the consumer report, such judgment had been satisfied, vacated or dismissed, as shown by the VSC Master File.

The Settlement Class preliminarily is certified pursuant to Federal Rule of Civil Procedure 23(b)(3), and all individuals in the Settlement Class shall have the right to exclude themselves by way of the opt-out procedure set forth below in Paragraph 8.4.

3.      This Court preliminarily finds, solely for purposes of the Settlement, that the Action may be maintained as a class action on behalf of the Settlement Class because:  (a) the Settlement Class is so numerous that joinder of all individuals in the Settlement Class in the Action is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) Plaintiff's claims are typical of the claims of the Settlement Class; (d) Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

-2-

    4.     This Court preliminarily approves the Agreement as being fair, reasonable and adequate and within the range of possible approval, subject to further consideration at the Final Fairness Hearing as set forth below in Paragraph 9.1.

    5.     This Court preliminarily finds that Plaintiff fairly and adequately represents the interests of the Settlement Class and therefore designates Plaintiff as the representative of the Settlement Class.

    6.     Pursuant to Federal Rule of Civil Procedure 23(g), and after consideration of the factors described therein and oral and written arguments, this Court designates as Class Counsel, only for purposes of the Settlement, Leonard A. Bennett, Matthew Erausquin and Susan M. Rotkis of the law firm Consumer Litigation Associates, P.C.  This Court preliminarily finds that, based on the work Class Counsel have done in identifying, investigating and prosecuting the claims in the action, Class Counsel's experience in handling class actions, other complex litigation and claims of the type asserted in this action, Class Counsel's knowledge of the applicable law and the resources Class Counsel have and will commit to representing the class, Class Counsel have and will fairly and adequately represent the interests of the Settlement Class. Plaintiff and Class Counsel, on behalf of the Settlement Class, are authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Agreement to effectuate its terms.

    7.     The Final Fairness Hearing shall take place before the Honorable _____ on _____, 2014 at _____ a.m./p.m. at the United States District Court, Eastern District of Virginia, Courtroom __, [ADDRESS], to determine:  whether the proposed Settlement of the Action on the terms and conditions provided for in the Agreement is fair, reasonable and adequate as to the Settlement Class Members and should be approved; whether the Judgment, as

provided for in the Agreement, should be entered; and the amount of any fees and costs that may be awarded to Class Counsel, and the amount of any service award that may be awarded to Plaintiff, as provided for in the Agreement.  The Court will also hear and consider any properly lodged objections at that time.

8.     This Court finds that Class Notice, as set forth in Section 7.3 of the Agreement fully satisfies the requirements of Due Process, the Federal Rules of Civil Procedure and any other applicable laws, and constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.  This Court approves the form and content of the Summary Mailed Notice and Long-form Notice attached as Exhibits __ and __ to the Agreement.

9.     This Court approves the form and content of the Claim Form, Opt-Out Form and Reservation of Rights Form attached as Exhibits C, D and E to the Agreement.

10.    This Court approves _____ as Settlement Administrator.

11.    The Court approves the claims procedures set forth in Section 7 of the Agreement. To be treated as valid, Claim Forms must be submitted electronically or postmarked by March 3, 2014.

12.    All individuals within the Settlement Class who do not request exclusion ("opt-out") from the Settlement Class certified pursuant to Federal Rule of Civil Procedure 23(b)(3), pursuant to the procedure set forth below, shall be bound by all determinations and judgments in this Action concerning the Settlement, including, but not limited to, the validity, binding nature and effectiveness of the releases set forth in Section 6.1 of the Agreement.

13.    The Settlement Class shall be given the opportunity to opt out of the Settlement Class.  All requests by the individuals within the Settlement Class to be excluded must be in

writing, sent to the Settlement Administrator and postmarked not later than March 3, 2014. To

be valid, a request for exclusion must be personally signed and must include: (i) name, address

and telephone number; (ii) a sentence stating that he or she is in the Settlement Class; and (iii)

the following statement: "I request to be excluded from the class settlement in <u>Donna K. Soutter</u>

<u>v. TransUnion, LLC</u>, United States District Court, Eastern District of Virginia, Case No. 3:10-

cv-514-HEH." No person within the Settlement Class, or any person acting on behalf of or in

concert or participation with that person, may exclude any other person within the Settlement

Class from the Settlement Class.

     14.     Any individual within the Settlement Class, who has not previously opted-out in

accordance with the terms of Paragraph 13 above, may appear at the Final Fairness Hearing to

argue that the proposed Settlement should not be approved and/or to oppose the application of

Class Counsel for an award of attorneys' fees and costs and the service award to Plaintiff;

provided, however, that no individual within the Settlement Class shall be heard, and no

objection may be considered, unless the individual files with this Court a written statement of the

objection postmarked no later than March 3, 2014. Copies of all objection papers also must be

served electronically via the Court's ECF system or mailed, postmarked no later than March 3,

2014, to each of the following: Class Counsel, Leonard Anthony Bennett, Consumer Litigation

Associates, P.C., 763 J. Clyde Morris Boulevard, Suite 1-A, Newport News, VA 23601 and

TransUnion's Counsel, Stephen J. Newman, Esq., Strook & Stroock & Lavan LLP, 2029

Century Park East, 16th Floor, Los Angeles, California 90067. All objections must include: (i)

the objector's name, address and telephone number; (ii) a sentence stating that to the best of his

or her knowledge he or she is a member of the Settlement Class; (iii) the factual basis and legal

grounds for the objection to the Settlement; (iv) the identity of witnesses whom the objector may

call to testify at the Final Fairness Hearing; and (v) copies of exhibits the objector may seek to offer into evidence at the Final Fairness Hearing.

15.     The costs of notice and settlement administration shall be paid from the Settlement Fund as described in Section 7.1 of the Agreement.

16.     All proceedings in this Action are stayed pending final approval of the Settlement, except as may be necessary to implement the Settlement or comply with the terms of the Agreement.

17.     Pending final determination of whether the Settlement should be approved, Plaintiff, all Settlement Class Members and any person or entity allegedly acting on behalf of Settlement Class Members, either directly, representatively or in any other capacity, are preliminarily enjoined from commencing or prosecuting against the Released Parties any action or proceeding in any court or tribunal asserting any of the Released Claims; provided, however, that this injunction shall not apply to individual claims of anyone who timely excludes themselves from the Settlement in a manner that complies with Paragraph 13 above.  This injunction is necessary to protect and effectuate the Settlement, this Order, and this Court's flexibility and authority to effectuate the Settlement and to enter Judgment when appropriate, and is ordered in aid of this Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. § 1651(a).

18.     This Court reserves the right to adjourn or continue the date of the Final Fairness Hearing without further notice to the Settlement Class, and retains jurisdiction to consider all further applications arising out of or connected with the Settlement.  This Court may approve or modify the Settlement without further notice to the Settlement Class.

LA 51690734

IT IS SO ORDERED.

Dated: _____        _____

United States District Judge

LA 51690734

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DONNA K. SOUTTER,
For herself and on behalf of all
similarly situated individuals,

                Plaintiff,

v.                                      Civil Action No. 3:10-cv-00514-HEH

TRANS UNION, LLC,

                Defendant.

## [PROPOSED] FINAL APPROVAL ORDER

Plaintiff, on his own behalf and on behalf of all similarly situated consumers, submitted to the District Court a Motion for Final Approval of the Class Action Settlement ("Motion") seeking final approval of the Stipulation and Agreement of Settlement (the "Agreement"), and the exhibits attached thereto, entered into by and between Plaintiff and Defendant. Defendant does not oppose Plaintiff's Motion.

By Order dated _____, 2013, the District Court entered an Order that preliminarily approved the Agreement and conditionally certified the Settlement Class for settlement purposes only (the "Preliminary Approval Order"). In compliance with the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, Defendant served written notice of the proposed class settlement on the United States Attorney General and the Attorneys General of all 50 states and the District of Columbia. Due and adequate notice having been given to the Settlement Class in compliance with the procedures set forth in the Agreement and the Preliminary Approval Order, this Court having considered all papers filed and proceedings had herein, and otherwise being fully informed of the premises and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

-1-

1.      This Final Approval Order incorporates by reference the definitions in the
Agreement, and all terms used herein shall have the same meanings as set forth in the
Agreement.

2.      This Court has jurisdiction over the subject matter and, for purposes of this
Settlement only, personal jurisdiction over all the Parties, including all Settlement Class
Members.

3.      Pursuant to Federal Rule of Civil Procedure 23, and consistent with Due Process,
the Court finds that the settlement of the lawsuit, on the terms and conditions set forth in the
Agreement, is in all respects fair, reasonable, adequate, and in the best interest of the Settlement
Class Members, especially in light of the benefits to the Settlement Class Members; the strength
of the Parties' cases and defenses; the complexity, expense, and probable duration of further
litigation; the risk and delay inherent in possible appeals; the risk of collecting any judgment
obtained on behalf of the Settlement Class; and, the limited amount of any potential total
recovery for Settlement Class Members if litigation continued..

4.      Pursuant to Federal Rule of Civil Procedure 23(b)(3), this Court hereby certifies
the Settlement Class solely for purposes of effectuating this Settlement.

a.      The Settlement Class is defined as follows:

All consumers in the United States who, between July 26, 2008, and the date of
preliminary approval of the Settlement, had a hard inquiry on their TransUnion File
resulting in the delivery of a TransUnion consumer report that reflected an unsatisfied
Virginia General District Court or Virginia Circuit Court civil judgment, if at least 31
days prior to delivery of the consumer report, and on the date of delivery of the consumer

report, such judgment had been satisfied, vacated or dismissed, as shown by the VSC

Master File.

   b.      Individuals within the Settlement Class had the right to exclude themselves by

way of the opt-out procedure set forth in the Preliminary Approval Order.  Excluded from the

Settlement Class are those persons who validly and timely requested exclusion from the

Settlement Class by way of the opt-out procedure, as identified in Exhibit 1 hereto (the "Opt-

Outs").

   c.      Individuals within the Settlement Class had the ability to reserve their right to

seek compensatory damages by submitting to the Settlement Administrator a fully-completed

and personally-signed Reservation of Rights Form.  Settlement Class Members who submitted

valid Reservation of Rights Forms are identified in Exhibit 2 hereto.  Such Settlement Class

Members are bound by the terms of Section 8.5 of the Agreement and the Parties will carry out

the procedures set forth therein.  In the event that the parties are unable to resolve the claims of

the Settlement Class Members who submitted Reservation of Rights Forms pursuant to the

procedures sect forth in Section 8.5 of the Agreement, then such individuals may proceed in a

separate action on an individual, non-class, non-representative basis only, at his or her own

expense, against Defendant to attempt recovery of his or her individual compensatory damages,

but the individual will not be entitled to seek statutory or punitive damages or attorneys' fees

pursuant to 15 U.S.C. § 1681n or attorneys' fees pursuant to 15 U.S.C. § 1681o.

Notwithstanding the foregoing, such individuals may seek attorneys' fees in a separate action if

the individual prevails in the separate action and only as set forth in Section 8.5(c) of the

Agreement.  The right to sue pursuant to a valid Reservation of Rights shall expire as set forth in

Section 8.5(c) of the Agreement.

5.      For purposes of this Settlement only, this Court finds and concludes that:  (a) the

Settlement Class is so numerous that joinder of all individuals in the Settlement Class is

impracticable; (b) there are questions of law and fact common to the Settlement Class which

predominate over any individual questions; (c) Plaintiff's claims are typical of the claims of the

Settlement Class; (d) Plaintiff and Class Counsel have fairly and adequately represented and

protected the interests of all individuals in the Settlement Class; and (e) a class action is superior

to other available methods for the fair and efficient adjudication of the controversy, considering:

(i) the interests of the Settlement Class Members in individually controlling the prosecution of

the separate actions; (ii) the extent and nature of any litigation concerning the controversy

already commenced by Settlement Class Members; (iii) the desirability or undesirability of

continuing the litigation of these claims in this particular forum; and (iv) the difficulties likely to

be encountered in the management of this class action.

6.      Pursuant to the Court's Preliminary Approval Order, the approved mail notice

was mailed.  The form and method for notifying the class members of the settlement and its

terms and conditions were in conformity with this court's Preliminary Approval Order satisfied

the requirements of Fed. R. Civ. P. 23(c)(2)(b) and due process, and constituted the best notice

practicable under the circumstances.  The Court further finds that the notice was clearly designed

to advise the settlement class members of their rights and clearly and concisely stated, in plain,

easily understood language, all features of the lawsuit and settlement set forth in Fed. R. Civ. P.

23(C)(2)(B).

7.      This Court has considered and hereby overrules all objections to the Settlement on

their merits.

8.      This Court hereby dismisses with prejudice on the merits and without costs or attorneys' fees (except as otherwise provided in the Agreement) the above-captioned action (subject to retention of jurisdiction to enforce the Settlement).

9.      The Released Parties include Defendant, together with its members, owners, shareholders, unitholders, predecessors, successors (including, without limitation, acquirers of all or substantially all of their assets, stock, units or other ownership interests) and assigns; the past, present, and future, direct and indirect, parents (including, but not limited to holding companies), subsidiaries and affiliates of any of the above; and the past, present and future principals, trustees, partners, insurers, officers, directors, employees, agents, advisors, attorneys, members, owners, shareholders, unitholders, predecessors, successors, assigns, representatives, heirs, executors, and administrators of any of the above.  Released Parties also includes:  (i) any and all resellers or retransmitters of TransUnion data, and (ii) LexisNexis and any consumer reporting agencies it owns or controls (through more than 50% ownership) (together, "Additional Released Parties"), but the release under this Agreement in favor of Additional Released Parties shall only release claims based on data delivered by TransUnion, shall not release claims that might be asserted under 15 U.S.C. § 1681k or 1681s-2(b), and shall otherwise be subject to the limitations set forth in Section 2.30 of the Agreement.

10.     Plaintiff and each Settlement Class Member, their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, are deemed to have fully, finally and forever released all Released Parties from any and all actual or potential claims, actions, causes of action, suits, counterclaims, cross claims, third-party claims, contentions, allegations, and assertions of wrongdoing, and any demands for any and all debts, obligations, liabilities, damages (whether

-5-

actual, compensatory, treble, punitive, exemplary, statutory, or otherwise), attorneys' fees, costs,

expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal or

statutory relief, any other benefits, or any penalties of any type whatever, whether known or

unknown, suspected or unsuspected, contingent or non-contingent, or discovered or

undiscovered, whether asserted in federal court, state court, arbitration or otherwise, and whether

triable before a judge or jury or otherwise, including, without limitation, those based on violation

of FCRA or any other federal, state or local law, statute, regulation or common law, that were

alleged (or that could have been alleged based on the same facts and circumstances) in the

Action, the Amended Complaint or any other complaints, pleadings or other papers filed or to be

filed in the Action or any similar or related litigation, and that involved a Virginia General

District Court or Virginia Circuit Court judgment appearing on a consumer report or File

disclosure issued by Defendant, or a consumer report or File disclosure created from data

provided by Defendant, wherein such data inaccurately stated or suggested that such judgment

was valid and had not been satisfied, vacated or dismissed.

      11.    Plaintiff and each Settlement Class Member are deemed to acknowledge that they

are aware that they may hereafter discover facts in addition to, or different from, those facts

which they now know or believe to be true with respect to the subject matter of the settlement,

but that they release fully, finally and forever all Released Claims, and in furtherance of such

intention, the release will remain in effect notwithstanding the discovery or existence of any such

additional or different facts.  Plaintiff and all Settlement Class Members agree, as set forth in

Section 6.1 of the Agreement, that this release constitutes a waiver of any statutory provision,

right or benefit of any state or territory of the United States or any jurisdiction, and any principle

of common law at law or in equity that prohibits the waiver of unknown claims.

12.   This Final Approval Order, the Preliminary Approval Order, the Agreement, and any act performed or document executed pursuant to or in furtherance thereof:

a.   Will not be offered or received against the Released Parties as evidence of, or be construed as or deemed to be evidence of, any admission or concession by the Released Parties as to the truth or relevance of any fact alleged by Plaintiff, the existence of any class alleged by Plaintiffs, the propriety of class certification had the Action been litigated rather than settled, or the validity of any claim that has been or could have been asserted in the Amended Complaint or in any other litigation, or the deficiency of any defense that has been or could have been asserted in the Amended Complaint or in any other litigation, or of any liability, negligence, fault, or wrongdoing of the Released Parties;

b.   Will not be offered as or received against any of the Released Parties as evidence of, or construed as or deemed to be evidence of, any admission or concession of any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to the Agreement, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Agreement, except that the Released Parties may refer to it to effectuate the liability protection granted them thereunder;

c.   Will not be deemed an admission by Defendant that it is subject to the jurisdiction of any court;

d.   Will not be construed against Defendant as an admission or concession that the consideration to be given under the Agreement represents the amount which could be or would have been recovered after trial.

-7-

13.     The Released Parties may file the Agreement and/or this Final Approval Order in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, reduction, set-off or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

14.     Settlement Class Members, and any person or entity allegedly acting on behalf of Settlement Class Members, either directly, representatively or in any other capacity, are enjoined from commencing or prosecuting against any and all of the Released Parties any action or proceeding in any court or tribunal asserting any of the Released Claims; provided, however, that this injunction shall not apply to non-released claims of Opt-Outs or, as set forth in Section 8.5 of the Agreement, compensatory damages claims of Settlement Class Members who submitted valid Reservation of Rights Forms.

15.     Plaintiff and Class Counsel have moved for a service award for the Class Representative in the amount of _____ thousand dollars (**$___,000.00**).  The Court awards the Class Representative _____ dollars (**$_____.00**), which shall be paid in accordance with the Agreement.

16.     Plaintiff and Class Counsel have moved for an award of attorneys' fees (including costs and expenses) in the amount of _____ dollars (**$_____**).  The Court awards attorneys' fees (including costs and expenses) in the amount of _____ dollars ($ _____) which shall be paid in accordance with the Agreement.

17.     Without affecting the finality of this Final Approval Order in any way, this Court retains continuing jurisdiction to implement the Agreement and to construe, enforce and administer the Agreement and the Settlement.  Class Counsel are to continue in their role to

oversee all aspects of the Agreement and Settlement.  Upon notice to Class Counsel, Defendant

may seek from this Court, pursuant to 28 U.S.C. § 1651(a), such further orders or process as may

be necessary to prevent or forestall the assertion of any of the Released Claims in any other

forum, or as may be necessary to protect and effectuate the Settlement and this Final Approval

Order.

      18.    If an appeal, writ proceeding or other challenge is filed as to this Final Approval

Order, and if thereafter the Final Approval Order is not ultimately upheld, all orders entered,

stipulations made and releases delivered in connection herewith, or in the Agreement or in

connection therewith, shall be null and void to the extent provided by and in accordance with the

Agreement.

      IT IS SO ORDERED, ADJUDGED AND DECREED.


      IT IS SO ORDERED.

Dated:   _____      _____

                                 United States District Judge

# EXHIBIT "E"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DONNA K. SOUTTER,
For herself and on behalf of all
similarly situated individuals,

                   Plaintiff,

v.                                             Civil Action No. 3:10-cv-00514-HEH

TRANS UNION, LLC,

                   Defendant.

## PRELIMINARY APPROVAL ORDER

WHEREAS, Plaintiff has moved the court (the "Motion"), pursuant to Federal Rule of Civil Procedure 23, for an order preliminarily approving a settlement of the above-captioned action (the "Action") in accordance with the Stipulation and Agreement of Settlement filed with this Court on December 4, 2013 (the "Agreement"), which, together with the Exhibits attached thereto, sets forth the terms and conditions for a proposed settlement of the Action and its dismissal with prejudice; and

WHEREAS, as a condition of the Agreement, Plaintiff, on behalf of herself individually and on behalf of the Settlement Class, has agreed to release all claims arising under federal, state or common law as specified in Section 6.1 of the Agreement in exchange for the benefits provided under the Agreement, subject to the Court's approval; and

WHEREAS, this Court having read and considered Plaintiff's Motion, the Agreement and Exhibits attached thereto, as well as all arguments and submissions from the Parties; and

WHEREAS, all defined terms shall have the same meaning as set forth in the Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED:

-1-

1.      For purposes of this Action, this Court has subject matter jurisdiction and, for purposes of the Settlement only, this Court has personal jurisdiction over the Parties, including the Settlement Class.

2.      For purposes of this Settlement only, this Court preliminarily certifies the following Settlement Class:

All consumers in the United States who, between July 26, 2008, and the date of preliminary approval of the Settlement, had a hard inquiry on their TransUnion File resulting in the delivery of a TransUnion consumer report that reflected an unsatisfied Virginia General District Court or Virginia Circuit Court civil judgment, if at least 31 days prior to delivery of the consumer report, and on the date of delivery of the consumer report, such judgment had been satisfied, vacated or dismissed, as shown by the VSC Master File.

The Settlement Class preliminarily is certified pursuant to Federal Rule of Civil Procedure 23(b)(3), and all individuals in the Settlement Class shall have the right to exclude themselves by way of the opt-out procedure set forth below in Paragraph 13.

3.      This Court preliminarily finds, solely for purposes of the Settlement, that the Action may be maintained as a class action on behalf of the Settlement Class because: (a) the Settlement Class is so numerous that joinder of all individuals in the Settlement Class in the Action is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) Plaintiff's claims are typical of the claims of the Settlement Class; (d) Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

4.      This Court preliminarily approves the Agreement as being fair, reasonable and
adequate and within the range of possible approval, subject to further consideration at the Final
Fairness Hearing as set forth below in Paragraph 7.

5.      This Court preliminarily finds that Plaintiff fairly and adequately represents the
interests of the Settlement Class and therefore designates Plaintiff as the representative of the
Settlement Class.

6.      Pursuant to Federal Rule of Civil Procedure 23(g), and after consideration of the
factors described therein and oral and written arguments, this Court designates as Class Counsel,
only for purposes of the Settlement, Leonard A. Bennett, Matthew Erausquin and Susan M.
Rotkis of the law firm Consumer Litigation Associates, P.C.  This Court preliminarily finds that,
based on the work Class Counsel have done in identifying, investigating and prosecuting the
claims in the action, Class Counsel's experience in handling class actions, other complex
litigation and claims of the type asserted in this action, Class Counsel's knowledge of the
applicable law and the resources Class Counsel have and will commit to representing the class,
Class Counsel have and will fairly and adequately represent the interests of the Settlement Class.
Plaintiff and Class Counsel, on behalf of the Settlement Class, are authorized to take all
appropriate action required or permitted to be taken by the Settlement Class pursuant to the
Agreement to effectuate its terms.

7.      The Final Fairness Hearing shall take place before the Honorable Henry E.
Hudson on March 19, 2014 at 2:30 p.m. at the United States District Court, Eastern District of
Virginia, Spottswood W. Robinson III and Robert R. Merhige, Jr., Federal Courthouse, 701 East
Broad Street, Richmond, VA 23219, to determine:  whether the proposed Settlement of the
Action on the terms and conditions provided for in the Agreement is fair, reasonable and

-3-

adequate as to the Settlement Class Members and should be approved; whether the Judgment, as provided for in the Agreement, should be entered; and the amount of any fees and costs that may be awarded to Class Counsel, and the amount of any service award that may be awarded to Plaintiff, as provided for in the Agreement. The Court will also hear and consider any properly lodged objections at that time.

8.     This Court finds that Class Notice, as set forth in Section 7.3 of the Agreement fully satisfies the requirements of Due Process, the Federal Rules of Civil Procedure and any other applicable laws, and constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto. This Court approves the form and content of the Summary Mailed Notice and Long-form Notice attached as Exhibits A and B to the Agreement.

9.     This Court approves the form and content of the Claim Form, Opt-Out Form and Reservation of Rights Form attached as Exhibits C, D and E to the Agreement.

10.    This Court approves McGladrey LLP as Settlement Administrator.

11.    The Court approves the claims procedures set forth in Section 7 of the Agreement. To be treated as valid, Claim Forms must be submitted electronically or postmarked by March 3, 2014.

12.    All individuals within the Settlement Class who do not request exclusion ("opt-out") from the Settlement Class certified pursuant to Federal Rule of Civil Procedure 23(b)(3), pursuant to the procedure set forth below, shall be bound by all determinations and judgments in this Action concerning the Settlement, including, but not limited to, the validity, binding nature and effectiveness of the releases set forth in Section 6.1 of the Agreement.

-4-

13.     The Settlement Class shall be given the opportunity to opt out of the Settlement Class. All requests by the individuals within the Settlement Class to be excluded must be in writing, sent to the Settlement Administrator and postmarked not later than March 3, 2014.  To be valid, a request for exclusion must be personally signed and must include: (i) name, address and telephone number; (ii) a sentence stating that he or she is in the Settlement Class; and (iii) the following statement: "I request to be excluded from the class settlement in <u>Donna K. Soutter v. TransUnion, LLC</u>, United States District Court, Eastern District of Virginia, Case No. 3:10-cv-514-HEH." No person within the Settlement Class, or any person acting on behalf of or in concert or participation with that person, may exclude any other person within the Settlement Class from the Settlement Class.

14.     Any individual within the Settlement Class, who has not previously opted-out in accordance with the terms of Paragraph 13 above, may appear at the Final Fairness Hearing to argue that the proposed Settlement should not be approved and/or to oppose the application of Class Counsel for an award of attorneys' fees and costs and the service award to Plaintiff; provided, however, that no individual within the Settlement Class shall be heard, and no objection may be considered, unless the individual files with this Court a written statement of the objection postmarked no later than March 3, 2014.  Copies of all objection papers also must be served electronically via the Court's ECF system or mailed, postmarked no later than March 3, 2014, to each of the following:  Class Counsel, Leonard Anthony Bennett, Consumer Litigation Associates, P.C., 763 J. Clyde Morris Boulevard, Suite 1-A, Newport News, VA 23601 and TransUnion's Counsel, Stephen J. Newman, Esq., Stroock & Stroock & Lavan LLP, 2029 Century Park East, 16th Floor, Los Angeles, California 90067.  All objections must include:  (i) the objector's name, address and telephone number; (ii) a sentence stating that to the best of his

-5-

or her knowledge he or she is a member of the Settlement Class; (iii) the factual basis and legal grounds for the objection to the Settlement; (iv) the identity of witnesses whom the objector may call to testify at the Final Fairness Hearing; and (v) copies of exhibits the objector may seek to offer into evidence at the Final Fairness Hearing.

15. The costs of notice and settlement administration shall be paid from the Settlement Fund as described in Section 7.1 of the Agreement.

16. All proceedings in this Action are stayed pending final approval of the Settlement, except as may be necessary to implement the Settlement or comply with the terms of the Agreement.

17. Pending final determination of whether the Settlement should be approved, Plaintiff, all Settlement Class Members and any person or entity allegedly acting on behalf of Settlement Class Members, either directly, representatively or in any other capacity, are preliminarily enjoined from commencing or prosecuting against the Released Parties any action or proceeding in any court or tribunal asserting any of the Released Claims; provided, however, that this injunction shall not apply to individual claims of anyone who timely excludes themselves from the Settlement in a manner that complies with Paragraph 13 above. This injunction is necessary to protect and effectuate the Settlement, this Order, and this Court's flexibility and authority to effectuate the Settlement and to enter Judgment when appropriate, and is ordered in aid of this Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. § 1651(a).

18. This Court reserves the right to adjourn or continue the date of the Final Fairness Hearing without further notice to the Settlement Class, and retains jurisdiction to consider all

-6-

further applications arising out of or connected with the Settlement.  This Court may approve or modify the Settlement without further notice to the Settlement Class.


IT IS SO ORDERED.


Dated: Dec 19 2013
Richmond, VA

/s/
Henry E. Hudson
United States District Judge

# EXHIBIT "F"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DONNA K. SOUTTER,
For herself and on behalf of all
similarly situated individuals,

               Plaintiff,

v.                                 Civil Action No. 3:10-cv-00514-HEH

TRANS UNION, LLC,

               Defendant.

## FINAL APPROVAL ORDER

      Plaintiff, on her own behalf and on behalf of all similarly situated consumers, submitted

to the District Court a Motion for Final Approval of the Class Action Settlement ("Motion")

seeking final approval of the Stipulation and Agreement of Settlement (the "Agreement"), and

the exhibits attached thereto, entered into by and between Plaintiff and Defendant.  Defendant

does not oppose Plaintiff's Motion.

      By Order dated December 19, 2013, the District Court entered an Order that preliminarily

approved the Agreement and conditionally certified the Settlement Class for settlement purposes

only (the "Preliminary Approval Order").(Doc. 47.)   In compliance with the Class Action

Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, Defendant served written notice of the

proposed class settlement on the United States Attorney General and the Attorneys General of all

50 states and the District of Columbia.  (Doc. 53-1.) Adequate notice having been given to the

Settlement Class in compliance with the procedures set forth in the Agreement and the

Preliminary Approval Order, this Court having considered all papers filed and proceedings had

herein, and otherwise being fully informed of the premises and good cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1.      This Final Approval Order incorporates by reference the definitions in the Agreement, and all terms used herein shall have the same meanings as set forth in the Agreement.

2.      This Court has jurisdiction over the subject matter and, for purposes of this Settlement only, personal jurisdiction over all the Parties, including all Settlement Class Members.

3.      Pursuant to Federal Rule of Civil Procedure 23, and consistent with Due Process, the Court finds that the settlement of the lawsuit, on the terms and conditions set forth in the Agreement, is in all respects fair, reasonable, adequate, and in the best interest of the Settlement Class Members, especially in light of the benefits to the Settlement Class Members; the strength of the Parties' cases and defenses; the complexity, expense, and probable duration of further litigation; the risk and delay inherent in possible appeals; the risk of collecting any judgment obtained on behalf of the Settlement Class; and, the limited amount of any potential total recovery for Settlement Class Members if litigation continued..

4.      Pursuant to Federal Rule of Civil Procedure 23(b)(3), this Court hereby certifies the Settlement Class solely for purposes of effectuating this Settlement.

a.      The Settlement Class is defined as follows:

All consumers in the United States who, between July 26, 2008, and the date of preliminary approval of the Settlement, had a hard inquiry on their TransUnion File resulting in the delivery of a TransUnion consumer report that reflected an unsatisfied Virginia General District Court or Virginia Circuit Court civil judgment, if at least 31 days prior to delivery of the consumer report, and on the date of delivery of the consumer

report, such judgment had been satisfied, vacated or dismissed, as shown by the VSC Master File.

b.       Individuals within the Settlement Class had the right to exclude themselves by way of the opt-out procedure set forth in the Preliminary Approval Order. Excluded from the Settlement Class are those persons who validly and timely requested exclusion from the Settlement Class by way of the opt-out procedure, as identified in Exhibit 1 hereto (the "Opt-Outs").

c.       Individuals within the Settlement Class had the ability to reserve their right to seek compensatory damages by submitting to the Settlement Administrator a fully-completed and personally-signed Reservation of Rights Form. Settlement Class Members who submitted valid Reservation of Rights Forms are identified in Exhibit 2 hereto. Such Settlement Class Members are bound by the terms of Section 8.5 of the Agreement and the Parties will carry out the procedures set forth therein. In the event that the parties are unable to resolve the claims of the Settlement Class Members who submitted Reservation of Rights Forms pursuant to the procedures sect forth in Section 8.5 of the Agreement, then such individuals may proceed in a separate action on an individual, non-class, non-representative basis only, at his or her own expense, against Defendant to attempt recovery of his or her individual compensatory damages, but the individual will not be entitled to seek statutory or punitive damages or attorneys' fees pursuant to 15 U.S.C. § 1681n or attorneys' fees pursuant to 15 U.S.C. § 1681o. Notwithstanding the foregoing, such individuals may seek attorneys' fees in a separate action if the individual prevails in the separate action and only as set forth in Section 8.5(c) of the Agreement. The right to sue pursuant to a valid Reservation of Rights shall expire as set forth in Section 8.5(c) of the Agreement.

-3-

5.     For purposes of this Settlement only, this Court finds and concludes that: (a) the Settlement Class is so numerous that joinder of all individuals in the Settlement Class is impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) Plaintiff's claims are typical of the claims of the Settlement Class; (d) Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of all individuals in the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering: (i) the interests of the Settlement Class Members in individually controlling the prosecution of the separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by Settlement Class Members; (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum; and (iv) the difficulties likely to be encountered in the management of this class action.

6.     Pursuant to the Court's Preliminary Approval Order, the approved mail notice was mailed.  The form and method for notifying the class members of the settlement and its terms and conditions were in conformity with this court's Preliminary Approval Order satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(b) and due process, and constituted the best notice practicable under the circumstances.  The Court further finds that the notice was clearly designed to advise the settlement class members of their rights and clearly and concisely stated, in plain, easily understood language, all features of the lawsuit and settlement set forth in Fed. R. Civ. P. 23(C)(2)(B).

7.     This Court finds that no objections to the Settlement have been timely filed.

8.      This Court hereby dismisses with prejudice on the merits and without costs or
attorneys' fees (except as otherwise provided in the Agreement) the above-captioned action
(subject to retention of jurisdiction to enforce the Settlement).

9.      The Released Parties include Defendant, together with its members, owners,
shareholders, unitholders, predecessors, successors (including, without limitation, acquirers of all
or substantially all of their assets, stock, units or other ownership interests) and assigns; the past,
present, and future, direct and indirect, parents (including, but not limited to holding companies),
subsidiaries and affiliates of any of the above; and the past, present and future principals,
trustees, partners, insurers, officers, directors, employees, agents, advisors, attorneys, members,
owners, shareholders, unitholders, predecessors, successors, assigns, representatives, heirs,
executors, and administrators of any of the above.  Released Parties also includes:  (i) any and all
resellers or retransmitters of TransUnion data, and (ii) LexisNexis and any consumer reporting
agencies it owns or controls (through more than 50% ownership) (together, "Additional Released
Parties"), but the release under this Agreement in favor of Additional Released Parties shall only
release claims based on data delivered by TransUnion, shall not release claims that might be
asserted under 15 U.S.C. § 1681k or 1681s-2(b), and shall otherwise be subject to the limitations
set forth in Section 2.30 of the Agreement.

10.     Plaintiff and each Settlement Class Member, their respective heirs, executors,
administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest,
assigns and all persons acting for or on their behalf, are deemed to have fully, finally and forever
released all Released Parties from any and all actual or potential claims, actions, causes of action,
suits, counterclaims, cross claims, third-party claims, contentions, allegations, and assertions of
wrongdoing, and any demands for any and all debts, obligations, liabilities, damages (whether

actual, compensatory, treble, punitive, exemplary, statutory, or otherwise), attorneys' fees, costs, expenses, restitution, disgorgement, injunctive relief, any other type of equitable, legal or statutory relief, any other benefits, or any penalties of any type whatever, whether known or unknown, suspected or unsuspected, contingent or non-contingent, or discovered or undiscovered, whether asserted in federal court, state court, arbitration or otherwise, and whether triable before a judge or jury or otherwise, including, without limitation, those based on violation of FCRA or any other federal, state or local law, statute, regulation or common law, that were alleged (or that could have been alleged based on the same facts and circumstances) in the Action, the Amended Complaint or any other complaints, pleadings or other papers filed or to be filed in the Action or any similar or related litigation, and that involved a Virginia General District Court or Virginia Circuit Court judgment appearing on a consumer report or File disclosure issued by Defendant, or a consumer report or File disclosure created from data provided by Defendant, wherein such data inaccurately stated or suggested that such judgment was valid and had not been satisfied, vacated or dismissed.

11.    Plaintiff and each Settlement Class Member are deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the settlement, but that they release fully, finally and forever all Released Claims, and in furtherance of such intention, the release will remain in effect notwithstanding the discovery or existence of any such additional or different facts. Plaintiff and all Settlement Class Members agree, as set forth in Section 6.1 of the Agreement, that this release constitutes a waiver of any statutory provision, right or benefit of any state or territory of the United States or any jurisdiction, and any principle of common law at law or in equity that prohibits the waiver of unknown claims.

-6-

12.     This Final Approval Order, the Preliminary Approval Order, the Agreement, and any act performed or document executed pursuant to or in furtherance thereof:

a.     Will not be offered or received against the Released Parties as evidence of, or be construed as or deemed to be evidence of, any admission or concession by the Released Parties as to the truth or relevance of any fact alleged by Plaintiff, the existence of any class alleged by Plaintiffs, the propriety of class certification had the Action been litigated rather than settled, or the validity of any claim that has been or could have been asserted in the Amended Complaint or in any other litigation, or the deficiency of any defense that has been or could have been asserted in the Amended Complaint or in any other litigation, or of any liability, negligence, fault, or wrongdoing of the Released Parties;

b.     Will not be offered as or received against any of the Released Parties as evidence of, or construed as or deemed to be evidence of, any admission or concession of any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to the Agreement, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Agreement, except that the Released Parties may refer to it to effectuate the liability protection granted them thereunder;

c.     Will not be deemed an admission by Defendant that it is subject to the jurisdiction of any court;

d.     Will not be construed against Defendant as an admission or concession that the consideration to be given under the Agreement represents the amount which could be or would have been recovered after trial.

-7-

13.     The Released Parties may file the Agreement and/or this Final Approval Order in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar, reduction, set-off or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

14.     Settlement Class Members, and any person or entity allegedly acting on behalf of Settlement Class Members, either directly, representatively or in any other capacity, are enjoined from commencing or prosecuting against any and all of the Released Parties any action or proceeding in any court or tribunal asserting any of the Released Claims; provided, however, that this injunction shall not apply to non-released claims of Opt-Outs or, as set forth in Section 8.5 of the Agreement, compensatory damages claims of Settlement Class Members who submitted valid Reservation of Rights Forms.

15.     Plaintiff and Class Counsel have moved for a service award for the Class Representative in the amount of seven thousand five hundred dollars (**$ 7,500.00**).  The Court awards the Class Representative __7 5 0 0__ dollars (**$**_____.00), which shall be paid in accordance with the Agreement.

16.     Plaintiff and Class Counsel have moved for an award of attorneys' fees (including costs and expenses) in the amount of five hundred thousand dollars (**$ 500,000.00** ).  The Court awards attorneys' fees (including costs and expenses) in the amount of __$ 500,000__ dollars (**$** _____) which shall be paid in accordance with the Agreement.

17.     Without affecting the finality of this Final Approval Order in any way, this Court retains continuing jurisdiction to implement the Agreement and to construe, enforce and administer the Agreement and the Settlement.  Class Counsel are to continue in their role to

oversee all aspects of the Agreement and Settlement.  Upon notice to Class Counsel, Defendant may seek from this Court, pursuant to 28 U.S.C. § 1651(a), such further orders or process as may be necessary to prevent or forestall the assertion of any of the Released Claims in any other forum, or as may be necessary to protect and effectuate the Settlement and this Final Approval Order.

18.     If an appeal, writ proceeding or other challenge is filed as to this Final Approval Order, and if thereafter the Final Approval Order is not ultimately upheld, all orders entered, stipulations made and releases delivered in connection herewith, or in the Agreement or in connection therewith, shall be null and void to the extent provided by and in accordance with the Agreement.

IT IS SO ORDERED, ADJUDGED AND DECREED.


IT IS SO ORDERED.

Dated:  _June 4, 2014_

_/s/_
Henry E. Hudson
United States District Judge

# EXHIBIT 1

## Persons Who Requested Exclusion From The Settlement Class By Opting Out

Leon Wright Jester, Jr.
Beatrice Deloris Russell

## EXHIBIT 2

### Settlement Class Members Who Submitted Valid Reservation Of Rights Forms

Tolbert Adkins
Shawnte Datrelle Barley
April K. Barnes
Suwanda L. Beeman
James A. Bullion
Danielle M. Bumbrey
Melanie Carter
Timothy Clark
Wayne A. Clark
Betty L. Cook
Kim Diehl
Christie M. Dooley
Jason P. Doss
Tammy H. Fells
Felicia Fennell
Nakita Ferguson
Grisel G. Figueroa
Dwayne Forrest
Sherry M. Grayson
James Hall
Lolita J. Hall
Lucy A. Harris
Joe Hill
Ricardo A. Jimenez
Lila Johnson
Sharron D. Johnson
David Lewis
Tawanda J. Long
Jennifer Martin
Carol B. Mason
Leslie Mcguire
Cort D. Moore
Floxy Ogu
Cindy Petika
Sharon C. Salou
Tommy A. Shearer
Christopher B. Smith
Lakita T. Spencer
Chandra F. Stewart
Hassan A. Suluki
Deana Jean Valade
Starnell S. Walker
Cleties Wardell Welch, Jr

Carlein L. White
Jonothan Wilson
Maraschino A. Wright
Katharine L. Zwart
Jeanne A. Duhamel

# EXHIBIT "G"

1

```
                 IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                         RICHMOND DIVISION

    - - - - - - - - - - - - - - - - - -)
                                       )
    JAMES JENKINS, on behalf of         )
      himself and all other similarly   )
      situated individuals              )
                                       )
    v.                                  )   Criminal No.
                                       )   3:15CV443
    EQUIFAX INFORMATION SERVICES, LLC   )
                                       )   June 14, 2016
    - - - - - - - - - - - - - - - - - -)
                                       )


                    COMPLETE TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE M. HANNAH LAUCK
                      UNITED STATES DISTRICT JUDGE



    APPEARANCES:

    Leonard A. Bennett, Esquire
    Consumer Litigation Associates
    763 J. Clyde Morris Boulevard, Suite 1A
    Newport News, Virginia    23601

    Kristi C. Kelly, Esquire
    Kelly & Crandall PLC
    4084 University Drive, Suite 202A
    Fairfax, VA    22030

    Lauren K.W. Brennan, Esquire
    Francis & Mailman PC
    Land Title Building
    100 S. Broad Street, Suite 1902
    Philadelphia, PA    19110

                    Counsel for the Plaintiffs

                      DIANE J. DAFFRON, RPR
                      OFFICIAL COURT REPORTER
                 UNITED STATES DISTRICT COURT
```

2

1    APPEARANCES:   (Cont.)

2    Phyllis B. Sumner, Esquire
     King & Spalding
3    1180 Peachtree Street, NE
     Atlanta, GA  30309
4
              Counsel for the Defendant Equifax
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (The proceedings in this matter commenced at

2  10:40 a.m.)

3

4        THE CLERK:  Civil action 3:15CV443, James

5  Jenkins, et al. versus Equifax Information Services,

6  LLC.

7        Mr. Leonard Bennett, Ms. Kristi Kelly, and

8  Ms. Lauren Brennan represent the plaintiffs.  Ms.

9  Phyllis Sumner represents the defendant.

10        Are counsel ready to proceed?

11        MR. BENNETT:  The plaintiffs are, Your Honor.

12        MS. SUMNER:  Yes, Your Honor.  Thank you.

13        THE COURT:  Thank you.

14        MR. BENNETT:  Good morning, Your Honor.  May

15  it please the Court:

16        We're here today to ask the Court to

17  preliminarily approve a proposed class settlement

18  negotiated on behalf of a putative class of nationwide

19  consumers who allege that Equifax, a consumer

20  reporting agency, violated 15 U.S. Code 1681g(a),

21  which requires a consumer reporting agency to fully

22  identify the sources of its information.

23        In this case, Your Honor, the source of the

24  information that was challenged was LexisNexis, a

25  private vendor, that reported the public record

1   information in consumer credit reports.

2        The class is gigantic.  It would consist of

3   everyone during the statute of limitations period who

4   requested a copy of their consumer file.  It would be

5   anywhere between one and two and a half million by our

6   estimations - two million is the rough estimate I'll

7   use in this discussion - which means that a class

8   action that proceeded to seek money damages for a

9   willful violation of the Fair Credit Reporting Act

10   would entitle consumers, if we were successful, to

11   somewhere between $200 million at a minimum at $100 a

12   class member to $2 billion, which would dwarf the net

13   worth of this company.  And, of course, that's not

14   counting putative damages.

15        In this case, that caused us to shift from

16   our customary common fund method of negotiating to one

17   that focused on correcting the problem.  It meant

18   because we expected in the negotiation we would not be

19   able to force a cash fund for class members the class

20   members should not have to give up their claims.

21        In this case, we faced - I say this not just

22   publicly now that we've shaken hands, but beforehand

23   as well - as formidable a defense team as we can.

24   The Equifax defense lawyers know the weaknesses.  They

25   know the challenges.  They knew the challenges.  They

1  pressed the buttons in the settlement discussions

2  regarding the proof of willfulness, the fact that the

3  breadth of the class, and the fact that Equifax --

4  shifting to the carrot and the stick, the carrot

5  arguments from Equifax were:  This would fix the

6  problem.  This would give consumers actual monetary

7  value in the form of, as I'll detail in a moment, the

8  credit monitoring, the retail product, and this would

9  serve as the catalyst for industry change both in the

10  courtroom, as we are suing Equifax's competitors for

11  the same class, essentially, as well as in industry

12  practice.

13        That caused us -- it certainly didn't short

14  circuit our negotiation cycle.  We had multiple

15  mediations both before retired Eleventh Circuit Judge

16  Birch and directly before we could agree on much of

17  anything.  The settlement agreement was negotiated

18  down to the last word, the letter, the notice, the

19  choice of administrator.  That's a broad conclusion.

20        The summary of the case, Judge, is that this

21  is a settlement that would not release anything other

22  than the ability to bring this specific claim on a

23  class basis.  It would pay every single class member

24  18 months of a product that is retail sold, not

25  contrived, for roughly $15, and it would reform

1    Equifax's reporting and disclosure practices so that

2    every consumer who gets a report going forward would

3    know the source of that information.   It's an

4    important term because the source of the information

5    has its own set of responsibilities.   LexisNexis is

6    liable under different sections of the Fair Credit

7    Report Act, that consumers can contact the vendor who

8    may have mistakenly reported a judgment as

9    unsatisfied.   A bankruptcy -- in my case, I had

10   TransUnion reported a bankruptcy on Leonard Bennett's

11   credit report ages ago.   Michael C. Bennett, a

12   gentleman, a lawyer up in Pennsylvania.   And certainly

13   the firms that represent the putative class here,

14   Judge, have represented, besides Leonard Bennett,

15   countless, hundreds, thousands of consumers in an

16   individual basis who had public records that were

17   inaccurately attributed to them.

18          It would empower consumers.   Even if we get

19   to fairness and the Court denies approval, every class

20   member will have been told in this process by a notice

21   of the fact pattern that's at issue here so that every

22   class member will now know, all these individuals who

23   requested their file, that LexisNexis was the real

24   source of the public records at issue in the case.

25          At this stage, of course, Judge, there's no

1  opposition.   The standard of preliminary approval is

2  low, but the basic law requires the Court to agree

3  that the case can be certified.

4          Typically, on preliminary approval or any

5  settlement approval of a class, the Court emphasizes

6  or looks at the Rule 23(a) factors, numerosity,

7  commonality, typicality, and adequacy the same way

8  Your Honor would look at it if it was contested.   But

9  the law is that the 23(b)(2) or 23(b)(3) elements

10  are -- the Court has more flexibility so that we don't

11  need to prove that we can manageably present the

12  evidence at trial, for example.

13          We do need to prove that the class is

14  numerous.   It is.   It's millions.   We do need to prove

15  that there are common issues.   And here the claims are

16  common.   The allegation of the incorrectness of the

17  source, the failure to disclose it, the allegation

18  that this was illegal under 1681g(a), and that the

19  conduct was willful on all common issues.   We've cited

20  some of the cases; *Dreher v. Experian*, *Soutter v.*

21  *Equifax*.   The law in this district is pretty well

22  established there.

23          Typicality.   The Fourth Circuit's decision in

24  *Soutter* that initially reversed and remanded before

25  Judge Payne held that you need to explain that we need

1   to have facts that establish the named plaintiffs'

2   claims that are typical of those of the class.  And

3   that's very simple here.  Requested the file.  Had a

4   public record in it.  The source, LexisNexis, was

5   withheld or not disclosed.  The fact pattern here, the

6   facts to establish the named plaintiffs' claims, are

7   typical of those for the class.

8             Inadequacy.  All of these plaintiffs have

9   been with us for quite a long time, even before we

10  filed the cases.  This was a project that's been going

11  on for a while.  They have been responsive.  They

12  vetted and actually approved the specific settlement

13  before we could negotiate its terms to completion.

14            The counsel in this case, I have and my firm

15  has considerable experience in this court and

16  otherwise, but behind me also sit, Your Honor,

17  attorneys for two of the three best Fair Credit

18  Reporting Act firms in the country.  If I can

19  introduce Lauren --

20            MS. BRENNAN:  Good morning, Your Honor.

21            THE COURT:  Good morning.

22            MR. BENNETT:  -- who is with Francis &

23  Mailman.  Was my business rival for quite some time

24  until now we've decided it's better to help class

25  members together, but in Philadelphia they have been

1  doing this as long and as effectively as we have.  If

2  the jurisprudence out there is not ours, it's theirs.

3         The fact pattern for this case began ages ago

4  in a case styled *Dennis v. TransUnion*.  That was their

5  win.

6         Your Honor has already, I think, met Kristi

7  Kelly, who is winning all kinds of accolades and

8  quickly pushed Consumer Litigation Associates out as

9  the big firm in Virginia.  We're now the old graying

10 guy who hopes that she'll keep us around.

11        There is no comparable team, without

12 exaggeration, I could have put together that would be

13 as effective at litigating these cases, and I think

14 that that certainly, both the unity and the

15 competence, satisfies adequacy, and it's proven by the

16 fact that we are able to negotiate this particular

17 deal.

18        We've proposed a class notice.  We have tried

19 to reduce some expenses here, but the notice, as we

20 discussed at a 16(b) status update, Your Honor, is a

21 hybrid notice where we will send to electronically

22 verified email addresses.  A number of individuals

23 requested their file and communicate with Equifax via

24 Internet and using a communication domain that will

25 avoid spam blocks and that will show as an Equifax

1  associated communication the way that the previous
2  communications with the class member took place.
3  That's a percentage.  That's a minority.  A
4  significant percentage but a minority of the class
5  members.  And the others, we actually have a direct
6  notice plan.  And that's expensive given the size of
7  the class, and that was a big hold up that held us up
8  from getting to Your Honor our proposed settlement
9  terms on our original schedule.
10           Either way, it's direct notice.  We are not
11 relying on a one-inch ad in the back of a *USA Today*
12 newspaper.  And we have a top flight class
13 administrator that will run the settlement.
14           The data from Equifax as to class members is
15 pretty airtight.  Frankly, when you sue a company such
16 as Equifax, that's the source for a lot of the credit
17 header information, the identifying information that
18 if we were to sue Bank of America, we would rely on.
19 That is, the class administrator would buy from
20 Equifax class member, credit header, or credit history
21 information, identifying information.
22           In this case, we have it directly from the
23 CRA's mouth, so to speak.  And so the notice will be
24 as effective as possible and will certainly satisfy
25 Rule 23(c).

1          The release is narrow.  We don't yet have to

2    convince Your Honor that the ungodly amount of

3    attorneys' fees that we always seek are justified, but

4    we will.  I can answer questions about that, but we

5    will brief it substantially after class members have

6    had a say, unless the Court suggests otherwise.  And,

7    of course, this is an amount that the Court has to

8    approve.  It was negotiated after settlement.

9    Entirely after settlement.  And it is only paid by

10   Equifax, which in *Berry v. LexisNexis*, the Fourth

11   Circuit, as well as this court with Judge Spencer,

12   found appropriate and important.

13          I don't have any other questions for Your

14   Honor unless you have any questions for me.

15          THE COURT:  I do have questions.  I just want

16   to be clear.  You have submitted this proposed class

17   both under (b)(2) and (b)(3).  The proposed order,

18   which is always helpful for me to review, suggests

19   only a (b)(3) certification, and I really want to hear

20   from both of you about exactly what you're seeking and

21   why, which class you think is most appropriate to

22   certify under and why.

23          MR. BENNETT:  Your Honor, as a practical

24   matter, it is because one lawyer made the final edits

25   in one document and not in the other.  That's me.  And

1    so I did not add the 23(b)(2) term into the proposed

2    order, and I would ask to be able to do that.  It's a

3    mistake that I have only now learned that I committed.

4         THE COURT:  So you're seeking certification

5    under both?

6         MR. BENNETT:  Under both.  But it's

7    unnecessary to seek it under both.  The biggest

8    difference between a 23(b)(2) and (b)(3) from a

9    practical standpoint is the ability to opt out and the

10   need for direct notice.  And the law is that with Rule

11   23(b)(2) settlements you don't have to provide an opt

12   out.  It doesn't violate due process because it is

13   injunctive relief that affects the class as a whole,

14   and it is, in addition to that, direct notice,

15   therefore it's not important because there's no need

16   to opt out.  The direct notice is cosmetic.

17        That doesn't mean the Court in a 23(b)(2)

18   settlement will always conclude that.  I could bring a

19   23(b)(2) pure injunction settlement hearing.  Your

20   Honor could say, "I want notice," and you're right

21   down the middle of the plate with case law.  The same

22   is true with the right to opt out.  You do not have to

23   have them, but you can have them.

24        In this case, there is a right to opt out and

25   there is direct notice.  But the injunction is also a

1   big part of what we do.  If the Court decides that we

2   don't need a 23(b)(2) component to it, then we don't

3   need it.  It doesn't add the same effect as it does --

4   it doesn't change anything for class members.

5       What it does from a legal standpoint is it

6   means that if class certification were contested or

7   either sua sponte by the Court or by an objector or

8   intervenor that the standard for certification of a

9   23(b)(2) settlement is different than a standard of

10  certification of a 23(b)(3).

11      Now, with that said, this is clearly

12  predominately a Rule 23(b)(3) settlement because you

13  have a payment being made, albeit not in pennies,

14  dollars, but in the form of the credit monitoring

15  retail product.  You have that payment being made to

16  class members.  You have a release, as modest as it

17  is, that is your ability to bring this specific claim

18  in a class basis again of some nature.

19      The Court in *Berry v. LexisNexis* held that

20  the injunctive relief settlement released statutory

21  damages, and that's not this case because here even

22  those aren't released.  If even in that case, which

23  was much more of an imposition on class members, that

24  the Court could certify a Rule 23(b)(2) settlement

25  despite that there was no right to opt out and despite

1  that direct notice was imperfect.  It was publication

2  in that case.

3       It probably doesn't get us to an end point,

4  Your Honor, but we believe it's predominately a

5  23(b)(3) settlement but that the Court could also

6  certify it if it elected under Rule 23(b)(2).

7       THE COURT:  Right.  It seems a bit of a

8  hybrid, I think.

9       MR. BENNETT:  It does, Your Honor.

10      THE COURT:  So certification under both would

11 not be inappropriate in my mind, but I wanted to be

12 clear that you weren't sort of hedging your bets

13 because the way that your notice or your preliminary

14 approval motion says it could be one, it could be the

15 other.  It wasn't clear to me you were seeking both.

16      MR. BENNETT:  Yes, Your Honor.

17      THE COURT:  So you just indicated it's clear

18 in your papers that there's no monetary payment, and I

19 think you just said it was $15, but it's for the

20 credit monitoring.

21      MR. BENNETT:  Correct.

22      THE COURT:  And it's $15 a month, right?  So

23 it's $270 total.

24      MR. BENNETT:  Yes, Your Honor.

25      THE COURT:  Okay.  So that's the cash

1    equivalent of what the consumers would be receiving.

2             MR. BENNETT:  Yes, Your Honor.

3             THE COURT:  And I'm aware that there's no

4    individual release of claim and that your firm has

5    committed to making your number, or your firms, I

6    guess, my apologies, have committed to making

7    yourselves available by contact information through

8    the notice process or otherwise?

9             MR. BENNETT:  Yes, Your Honor.

10            THE COURT:  And so I guess I want to be

11   clear, have the parties discussed representation with

12   respect to an individual claim?  Are there any

13   potential issues there?  I know that Equifax would

14   never say you can't represent an individual claimant,

15   but I want to be sure that we don't have any potential

16   issues down the way that I should be aware of in any

17   form.

18            MR. BENNETT:  There is no secret contract.

19   If I can step back, the big issue in terms of Virginia

20   ethics, which is what I live mostly by, there's no

21   restriction on restricting yourself from solicitation.

22   There are restrictions, as the Court is aware, on

23   committing not to represent people.

24            There is one niche, and it's really Virginia

25   specific.  It's our specific rule that if the Court

1   approves a prohibition on suing, and it gives an

2   example of a mass or collective action as part of a

3   settlement process, then we can do that.  We've not

4   agreed here.

5          With that said, to give the Court, at least

6   on the record, background is all of our firms every

7   day select who we will represent and who we will sue.

8   Equifax, I can't understate, well, I can't overstate.

9   I can't overstate how significant I think it is from

10  our perspective that Equifax stepped up, acknowledged

11  the problem, worked to resolve it, didn't like to

12  resolve it, but did, and the effect it will have on

13  other class members with respect to TransUnion,

14  Experian, and getting the reports fixed.

15         The way that my firm, I know this is true

16  with my colleagues as well, is when consumers contact

17  us, we will inform them of their rights.  If they have

18  a claim, we will take that case.  We will not be

19  farming those or trying to build new cases against

20  Equifax from these people, but when it comes in, it

21  comes in.

22         But every day, Your Honor, there are cases

23  that don't have a docket number on them where we solve

24  their problem or obtain a cash settlement for the

25  consumers.

1          From our perspective -- I mean, my

2    understanding is that I will have shaken my

3    colleague's hand and say that we will treat your

4    client fairly, and well, and this is not a business

5    venture for us here.  This is not the purpose of this.

6          And I can tell the Court that whenever we

7    have done, and we do it with almost all of these, when

8    my firm is a contact point, it shuts us down when we

9    have had large classes like this.  And so we have

10   everybody who works for me, we divide up between

11   individual law firms, almost all our time is spent

12   answering questions, helping people, telling them how

13   to make disputes and the like.  So we expect that we

14   will be a really well paid, if we're effective, group

15   of class action firms on fairness approval and

16   Virginia's best darn pro bono firm hereafter for quite

17   sometime.  It evens out.  That's part of our job as

18   part of that big overpay if we get that way.

19         In this case, Your Honor, I know that doesn't

20   answer the questions.  It's sort of squishy, but it's

21   sort of where we are.  There's not a secret plan.

22         THE COURT:  Right.  Well, I just want to be

23   sure that, you know, it does -- I can tell the amount

24   of work that everybody has put into this settlement.

25   And so I'm aware that any time this kind of injunctive

1   relief, certainly when educated by your papers,

2   involves a changing of what kind of information a

3   consumer gets, I presume, without knowing, that that's

4   a major business change and a costly one on behalf of

5   Equifax, in this instance, because often those kinds

6   of changes require computer system changes.  That may

7   not be the case here, and I'll ask you, Ms. Sumner, to

8   address that.  But I'm aware that when any company is

9   involved in large collecting and disseminating large

10  amounts of information, when you change how the

11  information is given or taken in, it is generally

12  costly.

13         So I am presuming that your settlement

14  negotiations didn't just include what I am seeing here

15  but a significant amount of background work about how

16  those systems would change.  And you can disabuse me

17  of that notion.

18         So, really, I just want to -- I have reviewed

19  everything that you have, and I think it is very well

20  put together, but I want to be sure that I cover

21  anything that may be a potential issue.

22         I also want to educate myself a bit.  I'm

23  aware about the *Dennis* case because you all referred

24  to it.  What is the status of the *Dennis* case?

25         MR. BENNETT:  The *Dennis* case was stayed for

1    *Spokeo* and is no longer stayed.

2              It is still?

3              MS. BRENNAN:   Your Honor, it's no longer

4    stayed.   We would file a motion for class

5    certification.

6              THE COURT:   Okay.

7              MR. BENNETT:   The firms that you see here are

8    also now working in *Dennis* and vice versa.   The Court

9    has two cases, the *Clark* cases, with respect to

10   Equifax's competitors.   One of those with Experian.

11   Experian wants to go to mediation as soon as we can

12   get dates, and we are already setting dates.   And the

13   other unnamed entity thinks *Spokeo* is a silver bullet,

14   and we are trying to find a way to disavow of that

15   self confidence before too long.   But I suspect in

16   that other case, the *Clark v. TransUnion* case, the

17   plan is a very rapid, as you will learn shortly, that

18   we plan a very rapid, and the defense knows this,

19   motion for class certification process just as *Dennis*

20   handles their narrow geographic area and *Clark* handles

21   ours.

22             THE COURT:   All right.

23             MR. BENNETT:   So you won't be done with this

24   stuff unfortunately for quite some time.

25             THE COURT:   I just want to be clear.   I know

1  we will deal with fees in the future, but you've

2  suggested an amount, which is significant, and I want

3  to be clear that you all have been careful.  I guess I

4  want to be clear that it's on the record how you all

5  have been careful about separating fees amounts to

6  related cases.

7           So I think you suggest that the amount

8  they've agreed upon has been 2.8 million.

9           MR. BENNETT:  Yes, Your Honor.

10          THE COURT:  And so I want to be sure that as

11  you're putting that information together, that the

12  Jenkins fees are the Jenkins fees and the Dennis fees

13  are the Dennis fees, and that you all have been

14  careful about that.

15          MR. BENNETT:  We have.  And we'll be even

16  more so moving forward as we get to the fairness

17  hearing and the motion for approval of a fee award

18  for not just in this case, but in Dennis and in Clark,

19  if we ever get to the stages there.

20          Behind the scenes, we refer to it as the

21  *Equifax-Dennis* case, and it's been some time that all

22  of our firms have been finding reps, getting reps,

23  putting together the case, and the evidence.  But I

24  think it is fairly easy to differentiate the time

25  spent on this.

1        THE COURT:  I'm sure it is.  I just want to
2   be sure it's on the record, especially because you're
3   referring to these cases as you talk to me about this
4   one, and obviously I think some of the information
5   overlaps what you're talking about and discovering in
6   other issues.

7        All right.  So I think those are the
8   questions that I have of you, Mr. Bennett.

9        MR. BENNETT:  Yes, Your Honor.

10       THE COURT:  I'd love to hear from Ms. Sumner.

11       MS. SUMNER:  Good morning, Your Honor.
12  Phyllis Sumner on behalf of Equifax.

13       I appreciate you allowing me to appear today
14  without Mr. Montgomery, who would normally be here as
15  local counsel.  He had a conflict today.

16       We did put in a lot of time and effort, as I
17  think is clear from the papers.  I would like to
18  mention, and I think I said this to you before,
19  obviously we have had a dispute about whether or not
20  this conduct was a violation of the FCRA.  We are
21  talking about public records.  What we would consider
22  to be the source would be the courts or the government
23  entity from which those records came.  The dispute
24  really was about whether or not there should be a
25  disclosure as to the vendor that was retrieving those

1    records from those public sources.  And, of course,

2    here in most instances that would be LexisNexis.

3         Ultimately, after much discussion, both

4    informally amongst the lawyers as well as in lengthy

5    mediations, we agreed to essentially change an

6    industry practice.  Because, as you know, this is not

7    Equifax alone, this impacts the way that the national

8    credit reporting agencies report public records.

9         And so Equifax did step up and agree to make

10   a change that would ultimately impact the industry in

11   the way that this information is reported.

12        The company also felt in an effort to be as

13   transparent as possible to consumers and to improve

14   the consumer experience that it would disclose not

15   only the source being, for example, a courthouse, but

16   also that LexisNexis was the vendor who obtained those

17   records.

18        And you're right, it is an operational

19   change, and when we are talking about a change that

20   potentially impacts disclosures to millions of

21   consumers, it is not a task that goes without a lot of

22   vetting.  And Equifax does take a look at that to see

23   if it would create other problems because oftentimes

24   what seems like an easy solution to what appears to be

25   a problem can create other problems.  Hopefully, that

1   will not be the case here once this actually takes

2   place and those consumers will receive the disclosures

3   that have this additional information.  But it was a

4   big change for the company, and we did agree to be the

5   first to make this change as part of this resolution,

6   and in addition to offer to the consumers the credit

7   monitoring product which allows them to take

8   additional steps.

9       We don't believe that this is the case that

10  ultimately would result in a lot of individual cases

11  because we don't think it is a case where there are a

12  lot of individual damages that would come at issue,

13  but as part of the negotiations we agreed to separate

14  that out and to leave that option to consumers.  They

15  will obviously receive the notifications either by

16  email or by direct mail, and they through that process

17  will understand what we are doing and that they have

18  additional opportunities, if they so chose.

19      And I think, Your Honor, that primarily

20  answers the questions.  I did want to say that with

21  respect to the attorneys' fees, we separately

22  negotiated all of the aspects of the settlement

23  agreement before even broaching that issue, and then

24  when we discussed the fees, we also discussed that

25  informally and through the mediation process.

1    So we had Judge Birch's assistance in working
2  through that process as well, which ultimately got us
3  to an agreement, and we are comfortable with that in
4  terms of what is being proposed to Your Honor along
5  those lines.
6    So I just wanted to make sure you're aware of
7  that as well.
8    THE COURT:  Thank you.  I appreciate that.
9    I do want to just confirm with you
10 separately, you think that approval is appropriate
11 under both (b)(2) and (b)(3)?
12   MS. SUMNER:  I do, Your Honor.
13   THE COURT:  All right.  Well, I think those
14 are the -- yes.
15   MR. BENNETT:  I do have one other point as I
16 think about this, Judge.
17   THE COURT:  All right.
18   Thank you, Ms. Sumner.
19   MR. BENNETT:  In regard to Your Honor's
20 questions about practice restrictions, and as I'm
21 thinking about this, I made an additional commitment
22 to Equifax, we did, our firms, that we would not
23 initiate a new class action against Equifax in, I
24 guess, a roughly 12-month period.  A big part of that
25 is because of class action fatigue.  Equifax -- we've

1  negotiated *Soutter*.  We've negotiated settlements in a

2  number of other cases that solved problems and paid

3  consumers money and paid us fees.  So that's to be

4  above board.  That was expressly discussed.

5          THE COURT:  That's actually in your papers, I

6  think.  It's part of the reason I was asking about

7  individual claims.

8          All right.  Okay.

9          MS. SUMNER:  Thank you, Your Honor.

10          THE COURT:  Thank you all very much.

11          All right.  Well, I have reviewed your

12  proposed settlement class, and I do make the finding

13  that the proposed settlement is fair and reasonable

14  and accurate and meets the requirements of Rule 23.

15          This class, defined as all consumers in the

16  United States who within two years preceding the

17  filing of this action until the date of the

18  preliminary approval received a credit file disclosure

19  from Equifax containing a public record, meets the

20  requirements under Rule 23 both ultimately (b)(2) and

21  (b)(3).

22          First, with respect to the 23(a)

23  prerequisites, it is the case that this class is so

24  numerous that joinder of all members is impracticable.

25  The estimate is that it could be approximately

1   2 million individuals and that the range, as

2   articulated today, would be 1 million to 2.5 million.

3   Certainly the joinder or individual cases with respect

4   to that is not practicable anywhere with respect to

5   the number of citizens or folks who have received

6   their credit reports are highly numerous.  I think the

7   technical term used by counsel was "gigantic."  I

8   think my children would say "ginormous," but certainly

9   it meets the numerosity requirement under Rule 23.

10          The plaintiffs certainly have the requisite

11  commonality factors.  They are in receipt of a former

12  policy and procedure or proposed former policy and

13  procedure whereby Equifax did not identify the vendor

14  through which it got information.  It is the case, and

15  it's clear on the record, that Equifax is not

16  admitting that this necessarily violated FCRA, but

17  this is a settlement that suggests that they will

18  change their practices.

19          So these consumers did get a credit file

20  disclosure from Equifax.  They requested it.  It was

21  disclosed, and the vendor was not in it.  So that

22  meets both the commonality and the typicality

23  requirements under 23(a).

24          Certainly with respect to adequacy, it is the

25  case that the unity and the confidence of counsel are

1  certainly explained more than adequately within the

2  paper filings.  Certainly this court has seen these

3  counsel on numerous occasions, and the class

4  representatives not only represent the claim

5  appropriately, but they understand and have accepted

6  the obligations that are imposed upon them, and they

7  have adequately represented the interests of the

8  putative class as have the counsel who have worked

9  with them.

10        I do want to ask a question which I forgot to

11  ask.  Do the named plaintiffs receive any kind of

12  bonus payment?

13        MR. BENNETT:  The agreement is that we can

14  ask the Court in fairness for an amount up to $5,000

15  which would be paid, of course, by Equifax.

16        THE COURT:  That may have been in your

17  papers.  I know it's the norm, and I failed to make a

18  note about it when reading it.

19        All right.  So with respect to the class

20  under 23(b)(3) and 23(b)(2), I do think that the

21  proposed approval of both classes are appropriate in

22  this case.

23        Under 23(b)(3), the common questions of law

24  or fact predominate over questions with respect to

25  individual members.  The predominance here involves

1   whether Equifax failed to clearly and accurately

2   disclose the source of the third party vendor as the

3   source of the public records.  The issue would be

4   whether or not that failure to disclose violated FCRA

5   and whether willfulness was involved.

6          So it is the case with respect to

7   predominance, that is clearly met under 23(b)(3).  The

8   class action would be superior to any other means for

9   fairly and efficiently adjudicating the controversy.

10  It is the case that certainly individual lawsuits for

11  a small statutory penalty would be costly and

12  duplicative, but the real issue here is that the class

13  claims outweigh the import of the individual claims

14  with respect to what is the issue before the Court

15  given the nature of the individual claims that would

16  be brought.

17         With respect to Rule 23(b)(2), the

18  certification would be proper if Equifax acted or

19  failed to act in a manner that affected the class as a

20  whole, and certification would be proper if the

21  members of the proposed class would benefit from

22  injunctive relief.

23         Again, the issue that is common to all of

24  these millions of potential plaintiffs involve this

25  failure to identify the vendor and whether or not that

1   is an issue under FCRA, and certainly this is a sea

2   change with respect to disclosure by Equifax, and an

3   entirely new business practice that would involve

4   listing the name and contact information of the third

5   party vendor on reports.  I'm right about that,

6   correct?  It's not just the name.  It's that the

7   consumer can know how to contact LexisNexis.

8              MS. SUMNER:  That's correct, Your Honor.

9              THE COURT:  Which is a significant benefit

10  with respect to what consumers would receive from

11  Equifax.  And Equifax under the proposed settlement

12  would forward disputes regarding public record

13  information to the vendor who supplied it.  This

14  clearly is a significant agreement reached as far as

15  what consumers would have available to them.  And

16  while there is no direct monetary payment, there is

17  the equivalent offer of 18 months of credit

18  monitoring, which is worth $270 per consumer, and

19  there is no waiver of individual claims.

20             I do think this balances the risks that both

21  parties faced with respect to potential litigation.

22  Certainly it is the case that Equifax has not conceded

23  the FCRA violation, and it was prepared to move

24  forward with litigation, and there was risk to the

25  plaintiffs especially as to damages.  Because of the

1   causation issues, it would be difficult for plaintiffs

2   to prove individual damages.  The notice in this case

3   is expensive, and a meaningful cash settlement, given

4   the amount of money that would be at issue, as

5   articulated by plaintiff's counsel here, would be

6   difficult, if not impossible, to effectuate.

7           Certainly Equifax has faced the issue of

8   whether or not it could lose a certification

9   challenge.  It could face damages at trial.  And both

10  parties face the issue of the probability of appeals,

11  the uncertainty of outcome, and the expense of formal

12  discovery.  And it is clear that these parties have

13  engaged in significant informal discovery given the

14  nature of the settlement that involves a change of the

15  business practice by a major company.

16          So as I look to what are commonly called the

17  *Jiffy Lube* factors, the posture of the case at

18  settlement with respect to the fairness of the

19  outcome, there has been significant work that was

20  conducted on the case.  There is ongoing litigation

21  elsewhere in the country which doesn't pertain to this

22  case, but it does go to the risk factors as to both

23  parties at issue here.

24          There has been a significant exchange of

25  informal discovery, which is evident by the nature of

31

1   the settlement that is proposed.  There has been a

2   thorough investigation of facts and claims also

3   evident via the specificity with respect that the

4   parties represent, the number of potential plaintiffs,

5   the type of notice that's discussed, and the outcome

6   of the case that is proposed.  There has been a series

7   of mediations.

8          There has been three with Judge Birch, is

9   that correct, or two?

10          MR. BENNETT:  Two in person, I believe.  It

11   feels like eight, Judge.

12          THE COURT:  That's fine.  I wrote down three

13   different dates, but there have been at least two

14   mediations with Judge Birch, who is a retired judge of

15   the Court of Appeals for the Eleventh Circuit and is

16   known to this court as having extensive expertise in

17   not just mediation but specifically this type of

18   mediation.  I'm sure he is expert in other types of

19   mediation.  But this court has individual experience

20   with Judge Birch in consumer credit cases, and it is

21   clear that these parties engaged a mediator who would

22   work hard with them and require hard work of them.

23          The nature of the injunctive relief is

24   groundbreaking, as articulated by both counsel here,

25   and indicates a significant amount of work on both

1   sides.   And the fact that there is not an individual

2   waiver of damage claims certainly speaks volumes to

3   the fairness of the proposed settlement whether or not

4   Equifax believes there will be a lot of claims.   It is

5   the case that they are taking that risk.   And that is

6   the product of clearly very hard work, and counsel on

7   both sides that are deeply experienced in this area of

8   litigation and who do numerous consumer actions, both

9   in this court and nationally.   So the fairness is

10  immensely evident with respect to the outcome that is

11  proposed in this case.

12          With respect to the adequacy factors under

13  the *Jiffy Lube* analysis, Equifax has disputed the

14  claims from the date the case was filed and continues

15  today to state that it's not admitting or suggesting

16  necessarily that this is a violation of FCRA, which is

17  one of the benefits of engaging in a class settlement.

18  And, as indicated with respect to the risk that the

19  parties have faced, clearly proving damages and

20  causation is a major risk as defendants could lose

21  certification and have to face damages to a class that

22  is huge.

23          The risk of individual lawsuits, the

24  probability of appeals, the uncertainty of the outcome

25  and the immense cost of formal discovery all indicate

1    that the strength of the plaintiffs' case on the

2    merits is strong enough and the risks are high enough

3    that this certainly is an adequate outcome given the

4    nature of the case.

5            The existence of any difficulties approved

6    for strong defenses that plaintiffs likely would

7    encounter if the case went to trial I think I've just

8    addressed.

9            The anticipated duration and expense of

10   additional litigation is also, I think, addressed by

11   my comments earlier, including potential appeals and

12   formal discovery.  Obviously, any class involves two

13   phases of litigation and possibly interlocutory

14   appeals, all of which go toward the adequacy of the

15   settlement that's proposed to this case.

16           In looking at the solvency of Equifax and the

17   likelihood of recovery on litigated judgment, this has

18   been addressed with respect to the nature of the size

19   of the class here.  Obviously, the potential recovery

20   could be 200 million to 2 billion, and the papers are

21   explicit as to the amount of money that this Equifax

22   entity would have available to it.  And the question

23   is quite high as to whether or not they could have

24   paid a meaningful cash settlement to a class this

25   size.  So certainly the notion of this change of

1   business practice and credit monitoring without a
2   waiver of an individual claim is exactly the type of
3   outcome the class action mechanism is meant to put
4   forward in cases like these.
5          I can't really make a finding yet as to the
6   degree of opposition to the settlement, but it is the
7   case that individual notice will be provided, and it
8   is an opt out class meaning that individuals can
9   choose to opt out, and, obviously, they will have an
10  opportunity to object under the class process.
11         With respect to the notice that is proposed,
12  obviously the parties have put before me the actual
13  notice itself.  It is adequate under 23(c)(2)(b)and
14  (e)(1) and involves direct notice.  The process is
15  detailed and specific.
16         Individual notice will go to each member by
17  email or U.S. mail.  Class counsel has indicated they
18  will set up a website.  They are establishing a
19  process under which email addresses will be gathered
20  and put forward.  Having reviewed the opt out notice,
21  I find that process sufficient also including that
22  individuals can object.
23         The choice of administrator was clearly made
24  thoughtfully.  The fact that Equifax has undertaken
25  the process of paying for the administrator is a

1    significant aspect of the fairness and adequacy

2    findings that I have made, and the release that was

3    involved in this case is narrow.  So I am prepared to

4    make the finding that this proposed settlement is fair

5    and reasonable and accurate.

6         So, obviously, we need to talk about issues

7    of scheduling the fairness hearing.  Obviously, I need

8    to appoint class counsel and approve the manner of

9    notice, all of which I am prepared to do, and certify

10   the settlement class.

11        I do need to talk to you about timeframes for

12   the fairness hearing.  I've reviewed your order.  The

13   one issue would be adding the (b)(2) to the (b)(3).

14   That is in paragraph two of the proposed settlement

15   order, and I guess I would need to hear from you all

16   about other dates and information.

17        MR. BENNETT:  Yes, Your Honor.  Shall I speak

18   from here?

19        THE COURT:  If you could approach, that would

20   be good.

21        MR. BENNETT:  Your Honor, first with respect

22   to the date, the Court has to consider both the

23   practical, the ability to get notice.  Some will get

24   kicked back.  We will be sending new notices.  There's

25   a process to send paper mail, and then to provide an

1  ample opportunity for individuals to object and make

2  their decision as they need to.

3         Then there's the legal concern, which under

4  the Class Action Fairness Act requires that the Court

5  not enter final approval on a class settlement until

6  the relevant government authorities have been notified

7  at least 90 days prior, which puts us to a point --

8  it's actually 90 days from when they receive their

9  notice, which has already occurred, but a 90-day

10 period from today would put us, assuming we started

11 that today, would put us in the middle of September,

12 which from the plaintiffs' standpoint I believe is

13 appropriate.  Ninety days is practical and it

14 satisfies the Class Action Fairness Act, more than

15 does, because the CAFA notice has already happened.

16         With respect to the order, Your Honor, we

17 would propose the plaintiffs work with defendants to

18 get a final proposed order back to Your Honor.  We

19 would add the date that Your Honor orders as the final

20 fairness hearing.  We would also add the class

21 administrator that was negotiated after that paper was

22 first drafted to paragraph 6 and the 23(b)(2) language

23 based on Your Honor's ruling from the bench as

24 paragraph 5(f).  Those last two on page three of the

25 proposed preliminary approval order.

1          My opponent might have their own issues, but

2     that's what I would suggest.

3          THE COURT:  All right.

4          MS. SUMNER:  Your Honor, that's fine.  I'm

5     perfectly willing now to work with counsel to provide

6     a revised proposed order to put that in final form.

7     It also gives us an opportunity to look at our

8     schedules.  I feel a little hamstrung not having my

9     cell phone with me and the ability to look at my

10    calendar.  So we could get back with you with dates.

11         THE COURT:  All right.  Please have a seat.

12    Thank you.

13         I'm sorry.  There is a process through which

14    you can bring your cell phone in, and I'm sorry that

15    we weren't clear about articulating that to you.

16         So I can tell you about dates that I have

17    available in September, and then maybe you all can try

18    to work from those.

19         I have a series of trials already scheduled

20    in September.  I think that I would have available

21    September 21 and the morning of the 23rd, and I can

22    work with you on the week of the 26th.  So hopefully

23    that's enough dates that you might be able to find

24    some time.

25         MR. BENNETT:  I believe so, Judge.  That

 1    should probably be fine, Your Honor.

 2            THE COURT:  Okay.  In October, I think the

 3    best day of the next week would be the 7th if you all

 4    have to go in to October, but you obviously can call

 5    my clerk and find out any other times, but hopefully

 6    that will be enough.  All right?

 7            Is there anything else I need to address for

 8    you all today?

 9            MS. SUMNER:  Not from the defendant, Your

10    Honor.

11            MR. BENNETT:  I would note that Your Honor

12    has a George Mason, or whatever we're now calling

13    them, law intern.  But we call ourselves the Yale of

14    Arlington.  I assume that you recognize the power that

15    a George Mason law student has.  The scrappiness that

16    we're stuck with.

17            THE COURT:  They are young, hungry and

18    scrappy, right?  Anybody seen *Hampton* like I have?

19            Ms. Sumner, do you want to speak on behalf of

20    your own school?  You don't have to.

21            MS. SUMNER:  Vanderbilt.  I'm disappointed,

22    Your Honor.  There is no one here from Vanderbilt

23    today.

24            THE COURT:  I will say all schools here are

25    extremely well represented, as is usually the case in

1   this court.  So I do appreciate your time.  I will

2   tell the interns who are here that this level of hard

3   fought and highly expert class litigation is rare

4   around the country, and especially well done in our

5   jurisdiction.

6           So what you're seeing is the upshot of a huge

7   amount of work, and you should watch the efforts of

8   these kinds of lawyers closely and try to emulate it.

9           So thank you all very much for your time.  I

10  appreciate it.

11          MS. SUMNER:  Thank you, Your Honor.

12          MR. BENNETT:  Thank you.

13          (The proceedings were adjourned at 11:40 a.m.)

14

15      I, Diane J. Daffron, certify that the foregoing is

16  a correct transcript from the record of proceedings

17  in the above-entitled matter.

18

                        /s/
19                _____    _____
20                DIANE J. DAFFRON, RPR, CCR        DATE

21

22

23

24

25

# EXHIBIT "H"

# Henrico General District Court

 

## Civil Case Details

### Case Information

| | |
|---|---|
| **Case Number :** GV08023896-00 | **Filed Date :** 09/04/2008 |
| **Case Type :** Warrant In Debt | **Debt Type :** Contract |

Henrico General District Co ▼

Name Search
Case Number Search
Hearing Date Search
Service/Process Search

Name Search
Case Number Search
Hearing Date Search
Service/Process Search

### Plaintiff Information

| Name | DBA/TA | Address | Judgment | Attorney |
|---|---|---|---|---|
| QUIK CASH #200 | | | Plaintiff | |

### Defendant Information

| Name | DBA/TA | Address | Judgment | Attorney |
|---|---|---|---|---|
| CLARK-BRUCE, CAROLYN A | | MECHANICSVILLE VA 23111 | Plaintiff | |

### Hearing Information

| Date | Time | Result | Hearing Type | Courtroom |
|---|---|---|---|---|
| 10/24/2008 | 10:00 AM | Continued | Civil Hearing | 3 |
| 11/21/2008 | 10:00 AM | Judgment | Civil Hearing | 3 |

### Service/Process

| Person Served | Process Type | Date Issued | Date Returned | Plaintiff | How Served |
|---|---|---|---|---|---|
| CLARK-BRUCE, CAROLYN A | Warrant In Debt | 09/04/2008 | | QUIK CASH #200 | |

### Reports

| Report Type | Reporting Agency | Date Ordered | Date Due | Date Received |
|---|---|---|---|---|
| | | | | |

### Judgment Information

| | | |
|---|---|---|
| **Judgment :** Plaintiff | **Costs :** $53.00 | **Attorney Fees :** |
| **Principal Amount :** $575.00 | **Other Amount :** | **Interest Award :** |
| **Possession :** | **Writ Issued Date :** | **Homestead Exemption Waived :** |
| **Is Judgment Satisfied :** | **Date Satisfaction Filed :** | **Other Awarded :** |
| **Further Case Information :** | | |

**Garnishment Information**

| Garnishee : | | Address : | |
|---|---|---|---|
| Garnishee Answer : | | Answer Date : | Number of Checks Received : |

**Appeal Information**

| Appeal Date : | Appealed By : | |
|---|---|---|

Back to Search Results

Home | Virginia's Court System | Online Services | Case Status and Information | Court Administration | Directories | Forms |

Judicial Branch Agencies | Programs

Build #: 5.2.2.7