### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**CAROLYN CLARK,**
*on behalf of herself and all*
*similarly situated individuals,*

   **Plaintiffs,**

v.                                                                    **Civil Action No. 3:15cv391**

**TRANS UNION, LLC,**

   **Defendant.**

### MEMORANDUM OPINION

This matter comes before the Court on two motions filed by Defendant TransUnion, LLC

("TransUnion"): (1) TransUnion's Motion to Dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(1)[1] and 12(f)[2] (the "Motion to Dismiss"), (ECF No. 52); and, (2) TransUnion's

Motion Requesting Judicial Notice of Exhibits A Through H (the "Motion Requesting Judicial

Notice"), (ECF No. 54). Carolyn Clark, on behalf of herself and all similarly situated

individuals, has responded to those motions, (ECF Nos. 56, 57), and TransUnion has replied,

(ECF Nos. 58, 59).

The Court dispenses with oral argument because the materials before it adequately

present the facts and legal contentions, and argument would not aid the decisional process.

Accordingly, the matters are ripe for disposition. The Court exercises jurisdiction pursuant to

---

[1] "[A] party may assert the following defense[ ] by motion: (1) lack of subject-matter
jurisdiction." Fed. R. Civ. P. 12(b)(1).

[2] "The court may strike from a pleading an insufficient defense or any redundant,
immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

28 U.S.C. § 1331.[3] For the reasons that follow, the Court will: (1) grant in part and deny in part the Motion Requesting Judicial Notice; and, (2) deny the Motion to Dismiss.[4]

The Court also has several motions before it regarding scheduling, discovery, or other administrative matters. The Court will address the other pending motions at the conclusion of this Memorandum Opinion.

## I. Procedural and Factual Background

Clark, the named plaintiff, asserts six counts against TransUnion: one proposed class claim, and five individual claims. Count I, the "Disclosure of Source Claim," alleges a putative class action arising out of TransUnion's violations of 15 U.S.C. § 1681g(a)(2)[5] of the FCRA,

---

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The First Amended Class Complaint alleges violations of 15 U.S.C. § 1681g(a)(2) of the Fair Credit Reporting Act (the "FCRA").

[4] Both parties have also filed multiple motions seeking leave to file supplemental authority. (ECF Nos. 60, 62, 93, 97.) The Court granted the first two motions seeking leave to file supplemental authority on August 15, 2016. (ECF No. 64.) In the interest of justice, and for good cause shown, the Court will grant the other motions seeking leave to file supplemental authority. (ECF Nos. 93, 97.) The Court will give the supplemental authorities due weight in light of the parties' arguments.

[5] Section 1681g(a)(2) provides, in full:

**(a) Information on file; sources; report recipients**

Every consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer:

. . . .

**(2)** The sources of the information; except that the sources of information acquired solely for use in preparing an investigative consumer report and actually used for no other purpose need not be disclosed: *Provided*, That in the event an action is brought under this subchapter, such sources shall be available to the plaintiff under appropriate discovery procedures in the court in which the action is brought.

15 U.S.C. § 1681g(a)(2).

which requires that consumer reporting agencies "clearly and accurately" disclose to consumers "[t]he sources of information" in their credit files.  15 U.S.C. § 1681g(a)(2).  Here, the parties do not dispute that TransUnion constitutes a consumer reporting agency.  Nor do they disagree, at this procedural juncture, that data regarding civil judgments, tax liens, and bankruptcies comprise the "information" undergirding this case.  (First Am. Class Compl. ¶¶ 2–3, ECF No. 10.)

The parties diverge when discussing what this Court should deem to be the "source" of the information.  Clark contends that TransUnion runs afoul of § 1681g(a)(2) because it never identifies LexisNexis, a third-party vendor, as the source of the public record information "that makes its way into the consumer credit files it sells."  (*Id.* ¶ 4.)  Clark contends that this systematic misrepresentation deprives consumers of receiving congressionally-mandated information and makes it more difficult for consumers to correct errors.  TransUnion, in briefing, suggests that it appropriately reports the place where consumer data originated, such as a courthouse, and that any additional information about how the data was collected or who collected it is either immaterial to this case or does not implicate § 1681g(a)(2).

Clark alleges that TransUnion's violations of § 1681g(a)(2) entitle each consumer who received his or her credit file to statutory damages under § 1681n(a) between $100 and $1,000.[6]

---

[6] Section 1681n(a) provides, in relevant part:

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000;

. . . .

(2) such amount of punitive damages as the court may allow . . . .

15 U.S.C. § 1681n(a).

### A.   The Named Plaintiff's Individual Claims (Counts II through VI)

Clark's five individual claims provide context to the entire action, so the Court will first discuss the facts giving rise to them. Clark alleges that on August 7, 2014, TransUnion provided to her a credit file that incorrectly listed two civil judgments entered against her. TransUnion listed the sources of the judgments as "Henrico District Court" and "Virginia Federal Court," respectively. (First Am. Class Compl. ¶ 27.) Clark, however, contends that the actual source of the judgments was LexisNexis, the third-party vendor that retrieved the data.

Quik Cash allegedly entered one of the judgments against Clark in November 2008 in the amount of $575, even though that judgment had been appealed and dismissed. Clark submitted multiple demand letters requesting that TransUnion correct its error. TransUnion, however, purportedly failed to conduct a "timely and reasonable reinvestigation" and continued to report the Quik Cash judgment as unpaid. (*Id.* ¶ 35.)

These events, according to Clark, give rise to five individual claims. Count II, the "Reasonable Procedure Claim," proceeds under 15 U.S.C. § 1681e(b).[7] Count III, the "Reasonable Reinvestigation Claim," invokes 15 U.S.C. § 1681i(a)(1).[8] Count Four, the "Failure to Send Furnisher all Relevant Information Claim," cites 15 U.S.C. § 1681i(a)(2).[9] Count Five,

---

[7] In Count II, Clark alleges that TransUnion failed "to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of [her] credit report and credit filed it published and maintained." (First Am. Class Compl. ¶ 75.)

[8] In Count III, Clark contends that TransUnion failed to "conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently delete the information from the file." (First Am. Class Compl. ¶ 81.)

[9] In Count IV, Clark claims that TransUnion failed to send to the furnishers all relevant information that it received in [her] dispute letter." (First Am. Class Compl. ¶ 86.)

the "Failure to Review Consumer Communication Claim" relies upon 15 U.S.C. § 1681i(a)(4).[10]

Finally, Count Six, the "Failure to Delete Claim," proceeds under 15 U.S.C. § 1681(a)(5).[11] For

each of these five individual claims, Clark seeks actual damages, statutory damages, punitive

damages, costs, and attorneys' fees under §§ 1681n and 1681o.[12]

### B.   The Class Claim (Count I)

Clark submits that TransUnion violated § 1681g(a)(2) by failing to convey on her credit

file that LexisNexis was the source of the judgment information.  To advance the claims of

similarly situated individuals, Clark proposes to certify a class as follows:

> All natural persons residing in the Fourth Circuit[:] (a) who requested their
> consumer file from Trans Union or any of its affiliated companies, subsidiaries, or
> any other Trans Union entity, (b) within five years preceding this filing of this
> action and during its pendency, and[,] (c) to whom Trans Union provided a
> response that did not include any reference to its public records vendor as the
> source of public records information within the consumer's file disclosure.
> Excluded from the class definition are any employees, officers, or directors of

---

[10] In Count V, Clark asserts that TransUnion failed to" review and consider all relevant information that it received in [Clark's] communications." (First Am. Class Compl. ¶ 91.)

[11] In Count VI, Clark alleges that TransUnion failed to "delete any information that was subject to [her] disputes that was inaccurate or could not be verified." (First Am. Class Compl. ¶ 96.)

[12] Section 1681o provides, in relevant part:

**(a) In general**

> Any person who is negligent in failing to comply with any requirement
> imposed under this subchapter with respect to any consumer is liable to
> that consumer in an amount equal to the sum of—

>> (1) any actual damages sustained by the consumer as a result of the
>> failure; and[,]

>> (2) in the case of any successful action to enforce any liability
>> under this section, the costs of the action together with reasonable
>> attorney's fees as determined by the court.

15 U.S.C. § 1681o.

Trans Union, any attorney appearing in this case, and any judge assigned to hear
this action.

(First Am. Class Compl. ¶ 62.)  Clark seeks statutory and punitive damages in the amount of not

less than $100 and not more than $1,000 per violation per class member, as set forth in 15 U.S.C.

§ 1681n(a).  Clark does not appear to allege any injury beyond the "informational injury"

purportedly suffered as a result of TransUnion's failure to convey the source of the judgment

information, as Clark maintains that the FCRA requires.  (First Am. Class Compl. ¶¶ 38–39

(contending that Clark "has suffered actual damages" because "Trans Union deprived [her] of

. . . valuable information despite the requirements of the FCRA").)

## II.  Analysis:  Motion Requesting Judicial Notice

TransUnion asks the Court to take judicial notice of eleven exhibits, Exhibits A through

H, filed in support of the Motion to Dismiss.  Clark does not object to TransUnion's request with

respect to Exhibits A through G.  Exhibits A through F are copies of documents, with docket

entry numbers indicated, in a class action mediated by the undersigned judge and approved by

the Honorable Henry E. Hudson, United States District Judge, in a 2014 case:  *Soutter v.
TransUnion, LLC*, No. 10cv514 (E.D. Va.).  Exhibit G is a transcript from a preliminary

approval hearing in a case presided over by the undersigned judge:  *Jenkins v. Equifax*, No.

3:15cv443 (E.D. Va. June 14, 2016).  Neither party disputes the accuracy or authenticity of these

documents.  Absent objection from Clark, the Court will grant the Motion Requesting Judicial

Notice as it pertains to Exhibits A through G.

As to Exhibit H, however, the Court will decline to take judicial notice.  Clark objects to

this Court taking judicial notice of Exhibit H, which appears to be a copy of a printout entitled

"Henrico County General District Court" "Civil Case Details" that came from Virginia's Court

System website.  TransUnion submits that Exhibit H is the "[o]nline court docket" from *Quik*

*Cash v. Carolyn Clark-Bruce*, Henrico County Virginia District Court Case No. GV0823896-00. (Def.'s Mem. Supp. Mot. Requesting Judicial Not. 2, ECF No. 55.) Clark contends that Exhibit H lacks a proper foundation. The Court agrees.

Under Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or[,] (2) can be accurately and readily determined from sources whose *accuracy cannot reasonably be questioned.*" Fed. R. Evid. 201(b) (emphasis added). TransUnion suggests that Exhibit H fits the latter category.

Contrary to TransUnion's position, the Virginia Courts' own website cautions users about the accuracy of its content. The website's "Terms and Conditions of Use" provide:

> The information in this system *does not constitute the official record* of judicial or administrative actions of the respective courts of the Commonwealth of Virginia, and this information is *subject to change or correction* at any time without notice. *If the official records or official printed publications of the individual courts differ from the contents of records or publications included in this system, the official records or written publications should be relied upon.*

*General District Court Online Information System*, Virginia's Judicial System, https://eapps.courts.state.va.us/gdcourts/captchaVerification.do?landing=landing (emphases added). No dispute appears to exist that someone for TransUnion conducted a search on the Virginia Court System website and that Exhibit H reflects an authentic copy of the result. The website's own disclaimer, however, prevents this Court from concluding that the accuracy of its content "cannot reasonably be questioned." Fed R. Evid. 201(b). TransUnion made no attempt to certify this docket sheet as a public record, or to offer any witness regarding its authenticity. *See* Fed. R. Evid. 902(4). Nor did TransUnion attempt to authenticate any underlying documents

to which the docket refers.  Absent this evidentiary grounding, the Court will deny the Motion

Requesting Judicial Notice as it pertains to Exhibit H.[13]

### III. Analysis: Motion to Dismiss

TransUnion files the Motion to Dismiss under two theories:  (1) that the class

certification should be struck for failure to state a claim; and, (2) that, given the recent Supreme

Court of the United States decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised*

(May 24, 2016), Clark and the proposed class lack standing to bring this lawsuit.  For the reasons

that follow, the Court will deny TransUnion's Motion to Dismiss.

---

[13] Based on inferences drawn from proposed Exhibit H, the parties expend significant resources prematurely briefing the merits of this action.  TransUnion uses the inadmissible Exhibit H to "show" that the Henrico court TransUnion identified as a "source" *still* reports an extant debt, meaning that "to the extent . . . subsequent credit reporting fails to tie a subsequent Circuit Court dismissal to the original General District Court judgment, the fault lies entirely with the court itself, or perhaps with [Clark's] counsel for failing to follow through and make sure the General District Court clerk updated its records properly."  (Def.'s Mem. Supp. Mot. Dismiss 6–7, ECF No. 53.)  LexisNexis, TransUnion contends, does not qualify as a "source" of the information, thereby depriving Clark of standing on Count I.  In response, Clark proffers inadmissible documents from the Circuit Court for the County of Henrico to support a factual contention that, on appeal, the debt had been erased.  Clark contends that TransUnion's failure to identify LexisNexis as that source prevented her from taking additional steps to correct her consumer file.

The Court declines to address these arguments at this time.  The parties disagree about what could be material facts and do so citing inadmissible documents.  Moreover, "[t]he question whether Plaintiffs have a cause of action is a merits issue that is 'analytically distinct from the question whether a federal court has subject-matter jurisdiction.'"  *Galaria v. Nationwide Mut. Ins. Co.*, No. 15-3386, 2016 WL 4728027, at *5 (6th Cir. Sept. 12, 2016) (quoting *Roberts v. Hamer*, 655 F.3d 578, 580 (6th Cir. 2011)) (addressing appeal of standing issue in post-*Spokeo* FCRA case); *see also Patel v. Trans Union, LLC*, No. 14cv00522-LB, 2016 WL 6143191, at *7 (N.D. Cal. Oct. 21, 2016) ("Whether the plaintiffs can prove liability is one question; whether they are claiming a sufficient Article III injury is another.  *Spokeo* does not turn every Rule 23 issue into a standing issue; put differently, *Spokeo* does not infuse Article III considerations throughout Rule 23.").

## A.    TransUnion's Motion to Strike Class Allegations Will be Denied Without Prejudice

One theory of TransUnion's Motion to Dismiss relies on Federal Rule of Civil Procedure 12(f) and asks that the Court strike Clark's class allegations.  TransUnion's arguments take the form of a challenge to class certification.  Clark's newly ripe Motion for Class Certification, (ECF No. 66), also remains pending before the Court.  A determination about class certification will be more appropriately made on the more complete record that the parties' briefing on the Motion for Class Certification provides.  The Court will deny, without prejudice, the Motion to Dismiss to the extent it seeks to strike Clark's class allegations.  For the same reason, TransUnion's sweeping policy arguments regarding the propriety of consumer class actions are of no moment.

## B.    TransUnion's Motion to Dismiss for Lack of Standing Will be Denied

In *Spokeo,* the Supreme Court discussed the manner in which a plaintiff must allege "injury in fact" in order to establish standing for what courts call a "statutory violation" resulting in an "informational injury."  In light of *Spokeo,* TransUnion moves to dismiss Count I pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Clark does not have standing under Article III of the Constitution of the United States.[14]  TransUnion

---

[14] Article III provides, in relevant part:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;— between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. Const. art. III, § 2, cl. 1.

specifically contends that Count I's allegations fail to set forth any "concrete" injury in fact caused by the alleged statutory violation. Clark contests that assertion, arguing that, even after *Spokeo*, an "informational injury" may be both particularized and concrete.

The Court offers background regarding Article III standing and what could constitute an injury in fact under *Spokeo* to explain why it will deny the Motion to Dismiss.

## 1.    The Three-Part Test Used to Evaluate Article III Standing

Federal district courts are courts of limited subject matter jurisdiction. *United States ex rel. Vuyvuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)).  This Court must, as a result, determine whether it has jurisdiction over the claims at issue. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).  "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . . ." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing Fed. R. Civ. P. 12(b)(1)).

Article III, Section 2, clause 1 of the Constitution limits federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1.  As the Supreme Court has explained, an "essential and unchanging part of the case-or-controversy requirement" is that a plaintiff must establish Article III standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  In *Spokeo*, the Supreme Court reiterated that, in order to establish standing, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant;[15] and[,] (3) that is likely to be redressed by a favorable judicial

decision.[16]" 136 S. Ct. at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560–61 (1992)).

As the party invoking federal jurisdiction, Clark bears the burden of properly alleging

standing. *Lujan*, 504 U.S. at 560; *see also Balzer & Assoc., Inc. v. Union Bank & Trust*,

3:09cv273, 2009 WL 1675707, at *2 (E.D. Va. June 15, 2009) ("On a motion to dismiss pursuant

to Rule 12(b)(1), the party asserting jurisdiction has the burden of proving subject matter

jurisdiction." (citing *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 764,

768 (4th Cir. 1991)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly

. . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v.

Seldin*, 422 U.S. 490, 518 (1975)).

The parties here dispute only whether, post-*Spokeo*, Clark and the class she seeks to

represent allege an injury in fact. This Court, then, must determine to what extent *Spokeo*

redefined rather than refined the injury-in-fact analysis, and whether any change *Spokeo*

announced prevents this Court from concluding that standing exists for plaintiffs to pursue their

claim.

### 2.   Standard to Demonstrate an Injury in Fact Post-*Spokeo*

TransUnion and Clark present conflicting portraits of the effect *Spokeo* had on the

requirements to allege an injury in fact. TransUnion contends that, because *Spokeo* emphasized

---

[15] To show a causal connection, "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

[16] A party may establish the third element of standing by showing "that the injury will be [likely] 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43). A plaintiff cannot have standing where redressability of an injury is merely "speculative." *Id.*

the need to establish that an injury is concrete, and not just particularized, "*Spokeo* constitutes a substantial change in the law." (Def.'s Mem. Supp. Mot. Dismiss 10 (citing cases).)  Clark, on the other hand, argues that, "*Spokeo* did not change the basic requirements of standing," (Pl.'s Opp'n to Mot. Dismiss 5), noting that "[b]oth commentators and courts have recognized that none of the principles set forth in *Spokeo* are new," (*id.* at 5 n.3 (citing cases and secondary sources)).

In *Spokeo*, the plaintiff, Thomas Robins, brought suit under the FCRA against Spokeo, a company that operates a people search engine. 136 S. Ct. at 1544, 1554. Robins invoked 1681(e), alleging that Spokeo failed to "follow reasonable procedures to assure maximum accuracy of consumer reports" when, while he was out of work, it incorrectly profiled his age, marital status, education degree, and employment status. 136 S. Ct. at 1554. While ruling, the Supreme Court confirmed that, in order to establish an injury in fact, a plaintiff must demonstrate that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court found that the United States Court of Appeals for the Ninth Circuit improperly "elided" the concreteness requirement. 136 S. Ct. at 1548. Because the Ninth Circuit addressed only the "particularization" aspect of the test, the Supreme Court remanded the case for further proceedings. *Id.* at 1550. In so finding, the *Spokeo* court defined both terms with specificity.

First, for an injury to be "particularized," the Court found that it "'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S.Ct. at 1548 (citing *Lujan*, 504 U.S. at 560 n.1). Thus, an "undifferentiated, generalized grievance" that all citizens share would not qualify as particularized. *Lance v. Coffman*, 549 U.S. 437, 442 (2007). "[T]he fact that an injury

may be suffered by a large number of people," however, "does not of itself make that injury a nonjusticiable generalized grievance." *Spokeo*, 136 S. Ct. at 1548 n.7. The proper inquiry is whether "each individual suffers a particularized harm." *Id.*

Second, the *Spokeo* Court stated that for an injury to be "concrete," it must be "de facto," meaning that it must be "real," and not "abstract." *Spokeo*, 136 S. Ct. at 1548. That said, an injury need not be "tangible" in order to be "concrete." *Id.* at 1549. An intangible injury may constitute injury in fact. *Id.* In evaluating whether an intangible injury satisfies the "concreteness" requirement, the Supreme Court reiterated two important considerations: (1) history, which may reveal "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"; and, (2) the judgment of Congress, which "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)).

With respect to this congressionally-defined, or statutory, standing, the *Spokeo* Court explained: "Article III standing requires a concrete injury even in the context of a statutory violation."[17] *Id.* Thus, a plaintiff "could not, for example, allege a bare procedural violation,

---

[17] *Spokeo* favorably discussed several cases that upheld congressional power to create a legally cognizable right to specific information, the deprivation of which would constitute a concrete injury sufficient to satisfy Article III. Many courts describe this statutory standing as flowing from an "informational injury." For instance, the Supreme Court explained in *Akins*:

> The "injury in fact" that respondents have suffered consists of their inability to obtain information—[including donor lists and campaign-related contributions and expenditures]. There is no reason to doubt their claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office . . . . Respondents' injury consequently seems concrete and particular. *Indeed, this Court has previously held that a plaintiff*

divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")). Regarding the FCRA, the Supreme Court noted that "not all inaccuracies cause harm or present any risk of harm." *Id.* at 1550. By way of example, the Supreme Court suggested that it would be "difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* at 1550.

The Court also observed, however, that in cases where "harms may be difficult to prove or measure[,]" "the violation of a procedural right granted by statute can be sufficient . . . [and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.* at 1549 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998); *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)) (emphasis in original).

---

  *suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute.*

524 U.S. at 21 (citing *Public Citizen*, 491 U.S. at 449) (emphasis added). In *Public Citizen*, relied on by *Akins*, the Supreme Court held that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitute[d] a sufficiently distinct injury to provide standing to sue." 491 U.S. at 449.

  Other pre-*Spokeo* Supreme Court cases confirm that the violation of a statutorily-prescribed procedural right can constitute injury in fact in some circumstances. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–75 (1982) (finding that housing-discrimination tester had standing to bring claims under the Fair Housing Act based on the "alleged injury to her statutorily created right to truthful housing information," even though the tester "may have approached the real estate agent fully expecting that [s]he would receive false information, and without any intention of buying or renting a home"); *see also Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014) ("The Supreme Court consistently has held that a plaintiff suffers an Article III injury when he is denied information that must be disclosed pursuant to a statute, notwithstanding '[t]he fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure.'" (quoting *Public Citizen*, 491 U.S. at 449)).

### 3.    Post-*Spokeo*, Clark Retains Standing to Pursue Her Claim Under 15 U.S.C. § 1681g(a)(2)

The Court must determine whether, by alleging a violation of 15 U.S.C. § 1681g(a)(2), Clark asserts the "invasion of a legally protected interest' that is 'concrete and particularized.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). As explained below, this Court concludes that Clark's claims satisfy *Spokeo*'s refined injury-in-fact requirement because they are both concrete and particularized. In so finding, the Court relies on the clear intent of Congress and on several well-reasoned cases that have applied *Spokeo* in the FCRA context.

Since the May 2016 Supreme Court decision, many courts have confirmed that "the proposition that '[t]he . . . injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing[,]' survives *Spokeo* subject to qualification, depending on the facts of each case and [other] considerations . . ., but nevertheless intact." *Thomas v. FTS USA, LLC*, No. 3:13cv825, 2016 WL 3653878, at *6 (E.D. Va. June 30, 2016) (evaluating a 15 U.S.C. § 1681b(2) employment claim) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). In order to evaluate standing based on "concrete" and "particularized" injury, this Court must "look to the common law and to the judgment of Congress, as reflected in the FCRA, to determine whether the violations of that statute alleged by [Clark] constitute concrete injuries that satisfy the case or controversy requirement." *Thomas*, 2016 WL 3653878, at *6. That analysis follows.

### a.    The Purpose of the FCRA

A central purpose of the FCRA is "to ensure 'fair and accurate credit reporting.'" *Spokeo*, 136 S. Ct. at 1545 (quoting 15 U.S.C. § 1681(a)(1)). Through the FCRA, "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." *Spokeo*, 136 S. Ct. at 1550. In this district, the *Thomas* court already has

correctly explained that, "Congress intended that the FCRA be construed to promote the credit industry's responsible dissemination of accurate and relevant information and to maintain the confidentiality of consumer reports." *Thomas*, 2016 WL 3653878, at \*7–8.

Congress also "emphasized that 'the consumer has a *right . . . to correct* any erroneous information in his credit file." *Id.* (citing S. Rep. No. 517, 91st Cong., 1st Sess. 2 at 2). As a result, Congress sought "to 'establish [ ] the *right of a consumer to be informed* of investigations into his [or her] personal life.'" *Id.* (citing S. Rep. No. 517, 91st Cong., 1st Sess. 2 at 1). The FCRA's disclosure provisions, including § 1681g(a), promote consumer oversight of compliance with the FCRA by informing consumers of the source of the reported information, thereby advancing the broader purposes of "fair and accurate credit reporting." *See Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 941 (7th Cir. 2007) (stating that the primary purpose of disclosure requirement is to "allow consumers to identify inaccurate information in their credit files and correct this information"); *Hauser v. Equifax, Inc.*, 602 F.2d 811, 817 (8th Cir. 1979) ("The purpose of the Act's disclosure requirement [in 15 U.S.C. § 1681g(a)] is to provide the consumer with an opportunity to dispute the accuracy of information in his file.").

### b.    Clark Alleges an Injury in Fact Under § 1681g(a)(2)

This Court follows several others in concluding that the FCRA permits a plaintiff like Clark to establish Article III standing when alleging a non-disclosure under § 1681g(a)(2) because that failure to reveal source information reflects the type of harm, or injury in fact, that *Spokeo* recognizes as "concrete" and "particularized." When looking at Clark's Count I, the Court finds persuasive the reasoning of several courts that recognize the existence of an "informational injury," especially those that have decided that FCRA "disclosure of source" claims have alleged an injury in fact.

16

Despite TransUnion's depiction of aspects of the decision as "erroneous" and improperly analyzed, (Def.'s Mem. Supp. Mot. Dismiss 13 n.6), this Court finds *Thomas*, a FCRA employment-related § 1681b(b)(2) and (b)(3) decision from this district, both on point and persuasive.[18] *Thomas* correctly acknowledged that Congress enacted several substantive, and not merely procedural or technical, rights to protect specific information in the FCRA. Analyzing § 1681b(b)(2) and an unauthorized disclosure of personal information, the *Thomas* court aptly quoted *Spokeo*'s reliance on *Akins* and *Public Citizen* when stating that "the violation of a procedural right granted by statute can be sufficient in some circumstances to establish an injury in fact." 2016 WL 3653878, at *11. "In other words," the *Thomas* court explained, "a plaintiff in such a case need not allege any <u>additional</u> harm [e.g., actual damages] beyond the one Congress has identified."[19] *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549) (emphasis in original).

---

[18] In *Thomas*, a business that purchased the company for which Thomas worked required that he undergo a background check in order to continue employment. The initial consumer report about Thomas was inaccurate and not fully disclosed to him. The *Thomas* court analyzed, *inter alia*, post-*Spokeo* standing, finding that Thomas alleged a concrete and particular informational injury.

[19] *Thomas* quoted one commentator's skilled summary of the need to confer standing in circumstances where the violation of a statute itself constitutes the harm suffered:

> In these situations, legal rights reflect social judgments about where harm has and has not occurred. Often, these kinds of injuries exist where we think the harm is in the act itself. The public disclosure of private information or defamatory falsehoods does not need downstream consequences to be hurtful; neither does differential treatment on the basis of race. Procedural wrongs are an oft-seen category where the distinction between the legal violation and the injury may be so thin as to be essentially nonexistent. Proving the injury in many of these cases just entails proving the violation itself—that certain words were spoken, certain information disclosed, or certain procedures flouted. As a result, requiring some sort of additional indicia of harm beyond the violation itself ignores the nature of the injury and the reason for the remedy.

*Thomas v. FTS USA, LLC*, No. 3:13cv825, 2016 WL 3653878, at *6 (E.D. Va. June 30, 2016) (quoting Daniel Townsend, *Who Should Define Injuries For Article III Standing?*, 68 Stan L. Rev. Online 76, 80–81 (2015)).

Again relying directly on *Spokeo*, the *Thomas* court also confirmed that even a *risk* of real harm might satisfy the concreteness requirement. *Id.* (citing *Spokeo*, 136 S. Ct. at 1549) (emphasis added). This Court agrees with *Thomas* that a consumer need not necessarily prove any more harm than that suffered as a result of the deprivation of FCRA information to which he or she is entitled. The purpose of the FCRA as articulated in legislative history supports this point.

Indeed, given congressional intent to allow consumers to correct inaccurate information reported by a consumer reporting agency, nearly every case addressing a Section 1681(g) "disclosure of source" claim has so found. The FCRA's disclosure requirements were generally "'designed to decrease [the] risk' that a credit-reporting agency will 'disseminat[e] . . . false information.'" *Patel v. TransUnion, LLC*, No. 14cv00522-LB, 2016 WL 6143191, at *4 (N.D. Cal. Oct. 21, 2016) (citation omitted);[20] *see also Thomas*, 2016 WL 3653878, at *8–9. Section

---

[20] *Patel* held that, even post-*Spokeo*, a consumer has standing to challenge non-disclosures of information under § 1681g(a)(1), which requires that consumer reporting agencies disclose "[a]ll information in the consumer's file at the time of the request." 2016 WL 6143191, at *4. In *Patel*, the plaintiff brought suit under the FCRA because his consumer report wrongly identified him as a "possible" terrorist and reported an incorrect criminal record. *Id.* at *1. When Patel sought a copy, he received an incomplete version of the offending report. The *Patel* court determined that plaintiff had standing to bring a FCRA disclosure claim because the ability for a consumer to identify, through disclosure, source information "seems exactly a device 'designed to decrease [the] risk' that a credit-reporting agency will 'disseminat[e]. . . false information. *Id.* at *4 (quoting § 1681(g)(a)(1)); *see also Ramirez v. Trans Union, LLC*, No. 12cv00632-JSC, 2016 WL 6070490, at *1 (N.D. Cal. Oct. 17, 2016) ("The circumstances of the nondisclosure violations alleged here created a material risk of real harm and thus constitute an injury sufficient for constitutional standing purposes."); *Larson v. Trans Union, LLC*, No. 12cv05726-WHO, 2016 WL 4367253 (N.D. Cal. Aug. 11, 2016) (holding that plaintiff had standing where he "accuse[d] Trans Union of willfully violating 15 U.S.C. § 1681g(a) by providing him with a credit report with allegedly misleading information"; also explaining that plaintiff had standing because his § 1681g "claim is based on the sort of 'informational' injury that the *Spokeo* Court implicitly recognized in citing *Public Citizen* and *Akins*").

TransUnion suggests that, given the nature of the inaccurate report (*i.e.*, wrongly indicating potential terrorism ties), *Patel* and similar California federal cases can be distinguished factually. Mere factual differences, however, do not end the analysis. The finding of injury in fact in these decisions rest in large part on the consumer's inability to monitor his or her file for falsity when not provided the relevant information. *See, e.g., Patel*, 2016 WL

1681g(a)(2), which requires a consumer reporting agency to disclose all information in the consumer file, enables the consumer to effectively investigate his or her file to look for inaccurate information.

A credit reporting agency's failure to provide a consumer with accurate information regarding the source of the information in the consumer's credit file precludes the consumer from swiftly acting to correct such errors. Because Congress sought to grant consumers the ability to correct errors, the United States District Court for the Eastern District of Pennsylvania, when denying a motion to dismiss for lack of standing under §§ 1681g(a)(2) and 1681g(c)(2), remarked that "the inaccurate or incomplete disclosure to a consumer of the source of a [consumer reporting agency's] reported information has been elevated by Congress to the status of a legally cognizable injury." *Stokes v. Realpage, Inc.*, No. CV 15-1520, 2016 WL 6095810, at *7 (E.D. Pa. Oct. 19, 2016).[21] In *Stokes*, the credit reporting agency disclosed an incorrect criminal record to a potential landlord at a senior housing facility. *Id.* at *1. After Stokes

---

6143191, at *4 ("[A] consumer cannot monitor [his or] her file for falsity if [he or] she is not given the relevant information. That impediment, that non-disclosure, is thus a real injury. At the very least, preventing a consumer from monitoring [his or] her file presents a 'risk of real harm' of exactly the type that [the] FCRA seeks to prevent (*i.e.*, the dissemination of incorrect information); and this risk can itself 'satisfy the requirement of concreteness.'").

[21] Other federal courts, including at least one court of appeals, have rejected challenges to standing in cases involving claims under the FCRA, even after *Spokeo*. *See, e.g., Galaria v. Nationwide Mut. Ins. Co.*, No. 15-3386, 2016 WL 4728027 (6th Cir. Sept. 12, 2016) (remanding case because the district court failed to consider standing issue under the FCRA apart from the merits); *Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458, at *5–6 (N.D. Cal. July 26, 2016) (finding standing where defendant reporting agency disclosed to a potential employer outdated criminal record information because it was "in no way" akin to other merely procedural violations). *But see Smith v. Ohio State Univ.*, No. 2:15cv3030, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016) (without applying guidance from *Spokeo* or addressing congressional power to create an informational injury, remanding case to the Ohio Court of Claims because the plaintiffs "admitted that they did not suffer a concrete consequential damage as a result of [the defendant's] alleged breach of the FCRA").

explained to the credit reporting agency that she believed the consumer report improperly disclosed expunged information, the credit reporting agency provided Stokes with a copy that omitted the original inaccurate information. *Id.* Relying on the original report, however, the potential landlord subsequently denied Stokes's application. *Id.* When Stokes applied to live at a different senior housing facility, the credit reporting agency again disclosed a consumer report with expunged information, and Stokes's application was denied. *Id.* at *2. For the second time, Stokes requested a copy of her consumer report, and again, the consumer report reflected no criminal history. *Id.*

Eventually, Stokes obtained "a 'full file disclosure,' which showed that [the credit reporting agency] had reported the expunged cases to the two prospective landlords." *Id.* Even the "full file disclosure," however, "failed to disclose all of the information [the credit reporting agency] maintain[ed] about Stokes, including the *source of the criminal records* it previously reported to [the prospective landlords]." *Id.* (emphasis added). Ultimately, "Stokes had no opportunity to correct [the credit reporting agency's] report before [the prospective landlords] made their decisions on the rental applications." *Id.* The *Stokes* court explained that "[w]ithout accurate source information, a consumer would be left confused as to where to go to correct erroneous data contained in a report and be unable to know whether any erroneous data would find its way into future consumer reports." *Id.*

The omission of LexisNexis from TransUnion's disclosure to Clark does not equate to a typographical error in a zip code. While the inaccuracy does not label Clark a potential terrorist as has occurred in cases this Court cites, the omission of LexisNexis as a source deprived Clark of her congressionally-mandated right to correct the mistake with LexisNexis, or with anyone

else to whom LexisNexis also may have disclosed the inaccurate information.[22] Moreover, the failure to include LexisNexis in the report creates a material risk that LexisNexis could continue to report inaccurate information to others in the future. *See Thomas*, 2016 WL 365878, at *11.

TransUnion's argument that it properly disclosed the "ultimate sources" of information, but not the supposedly less pertinent LexisNexis disclosure as to how the data was collected, or by whom, does not persuade. *See Dreher v. Experian*, 71 F. Supp. 3d 572, 580 (E.D. Va. 2014) (Gibney, J.) ("Although gifted legal minds can create myriad interpretations for how many sources or what kinds of sources should be included in the disclosure, the term 'sources' clearly includes, at the very least, the entity that gave the information directly to the consumer reporting agency.").[23]

Clark's allegations reflect "a substantive *de facto* violation involving undisclosed and inaccurate information of the kind Congress required be disclosed to protect consumers, namely the source of the consumer information that the [consumer reporting agency] reported." *Stokes*, 2016 WL 6095810, at *7. TransUnion's attempt to suggest otherwise relies on unpersuasive characterizations of the extant post-*Spokeo* FCRA cases, or upon inapposite non-FCRA

---

[22] One court has noted, when finding standing, that the inverse—providing too much information via unclear or prolix FCRA disclosures—may "actually make people less knowledgeable than they were before" due to phenomena such as "information overload." *Thomas*, 2016 WL 3653878 at *10 n.6 (quoting Cass R. Sunstein, *Informational Regulation and Informational Standing:  Akins and Beyond*, 147 U. Pa. L. Rev.  613, 627–28 (1999) (footnotes omitted).

[23] TransUnion's secondary attempt to sweep aside this claim by citing inadmissible evidence that the court record at issue continues to (improperly) shows a debt also founders. Any contention relying on a current court record to explain an inaccurate report about the same court record—perhaps never previously reviewed—would require awkward logical leaps at best.

decisions.[24] As such, Clark properly asserts an injury in fact by claiming that she was entitled to know the source of her consumer information, but that she received a response listing only court judgments and that TransUnion omitted the third-party vendor LexisNexis from which it directly received the information.[25] *Spokeo* refined, but did not redefine, the injury-in-fact analysis for standing. *Spokeo* admonished courts to assess both the "concrete" and the "particular" aspects of injury. Clark's Count I satisfies the injury-in-fact requirement of Article III. TransUnion's Motion to Dismiss for lack of subject matter jurisdiction will be denied.

## IV. Analysis: Motions as to Scheduling and Discovery

The pendency of two other motions has caused the parties to file several motions seeking scheduling relief or oral hearing: (1) Clark's Motion to Compel, (ECF No. 65); and, (2) Clark's Motion for Class Certification, (ECF No. 67).

---

[24] Despite the great weight of authority recognizing standing to bring claims under the FCRA, TransUnion relies on several non-FCRA cases to suggest that Clark mischaracterizes the scope of *Spokeo*. Those cases are readily distinguishable. *See Jamison v. Bank of Am., N.A.*, No. 2:16cv00422-KJM-AC, 2016 WL 3653456, at *4 (E.D. Cal. July 7, 2016) (explaining that a violation does not cause concrete harm "if the lender provides the omitted information through other means"); *Sartin v. EKF Diagnostics, Inc.*, No. CV 16-1816, 2016 WL 3598297, at *3 (E.D. La. July 5, 2016) (dismissing a Telephone Consumer Protection Act case without prejudice where plaintiff only made a "bare assurance that an unspecified injury exists"); *Wall v. Rental*, No. 15-13254, 2016 WL 3418539, at *3 (E.D. Mich. June 22, 2016) (dismissing a violation of a Michigan statute regulating security deposits because "the statute does not give a tenant a right to damages for a violation"); *Gubala v. Time Warner Cable, Inc.*, No. 15cv1078-PP, 2016 WL 3390415, at *4 (E.D. Wis. June 17, 2016) (finding that no concrete harm existed under the Cable Communications Policy Act where a defendant retained information but did not publish or make that information available to a third party); *Khan v. Children's Nat'l Health Sys.*, No. CV TDC-15-2125, 2016 WL 2946165, at *4 (D. Md. May 19, 2016) (remanding a data breach case to state court where plaintiff's alleged harm was based on common law claims and claims brought pursuant to state consumer protection statutes).

[25] TransUnion's repeated theatrical claims that Clark suffered no "real world" impact based on this omission not only do not persuade, but risk improperly suggesting that a different legal standard exists. (Def.'s Mem. Supp. Mot. Dismiss 13, 15.) *Spokeo* contemplated and identified the existence of intangible harms, including those created when Congress defines an injury "where none existed before." *Spokeo*, 136 S. Ct. at 1549 (explaining Congress's "'power to define injuries and articulate chains of causation that will give rise to a case or controversy'" (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment))).

First, regarding the Motion to Compel, the parties initially asked the Court to hold that motion in abeyance while they attempted to resolve their discovery disputes in the absence of Court intervention.  However, Clark now has filed a "Notice" asking "for the Court's prompt resolution of these discovery disputes and other relief available under Fed. R. Civ. P. 37." (Pl.'s Not. Re: Mot. Compel 1 (the "Motion to Compel Notice"), ECF No. 105.)

In response, TransUnion has filed a Motion for Extension of Time to File a Response Brief, (ECF No. 107), asking for an extension of time to file its response to the Motion to Compel Notice.  TransUnion contends that Clark includes charts and arguments in the Motion to Compel Notice not submitted when Clark filed the Motion to Compel.  TransUnion represents that Clark failed to comply with this Court's Initial Pretrial Order, which requires that discovery disputes be submitted jointly by parties, in chart form.  TransUnion states that Clark would not send it the Microsoft Word version of the document, thereby preventing TransUnion from inserting its arguments into the document, as the Court requires.  As a result of this logistical delay, TransUnion seeks an extension to file a response until December 9, 2016.  Clark does not consent to TransUnion's modest request.

In the interest of justice and for good cause shown, the Court will conditionally grant the Motion for Extension of Time to File a Response Brief to the extent any response would comply with this Court's June 29, 2016 Initial Pretrial Order.  However, the Court admonishes both parties to reexamine the June 29, 2016 Initial Pretrial Order and its directives regarding discovery disputes to ensure that any disputes now pending stand properly before this Court. The Court will not consider any improperly submitted discovery disputes.

Second, regarding Clark's Motion for Class Certification, the parties jointly seek an enlargement of time because additional discovery may become necessary after the Court decides

that motion. (ECF No. 103.)  While the Court generally disfavors continuances, they may be granted for good cause.  *See* Fed. R. Civ. P. 16(b)(4);[26] E.D. Va. Loc. Civ. R. 7(G).[27]

In view of this case's procedural posture, in the interest of justice, and for good cause shown, the Court will continue generally the trial date, thereby suspending all existing deadlines. The Court must address any properly submitted motion to compel before discerning what effect, if any, the outcome might have on any discovery deadlines.  As such, all motions for enlargement of time will be denied as moot.

The parties will be directed to contact the Court no later than three business days from the date of this Memorandum Opinion and Order to establish a hearing to resolve the discovery issues set forth in the Motion to Compel.  After that determination, a new trial date and appropriate pre-trial deadlines will issue.

### V.  Conclusion

For the foregoing reasons, the Court grants, denies, and otherwise addresses the pending motions as described above.

An appropriate Order shall issue.

 

 

_____
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date  12/9/16

---

[26] Federal Rule of Civil Procedure 16(b)(4) provides:  "**(4) Modifying a Schedule.**  A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

[27] United States District Court for the Eastern District of Virginia Local Civil Rule 7(G) provides:  "**(G) Continuances**: Motions for continuances of a trial or hearing date shall not be granted by the mere agreement of counsel.  No continuance will be granted other than for good cause and upon such terms as the Court may impose."  E.D. Va. Loc. Civ. R. 7(G).