EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **IN RE: MICHAELS STORES, INC., FAIR CREDIT REPORTING ACT (FCRA) LITIGATION** | Civ. No. 14-7563 (KM) (JBC)<br><br>Civ. No. 15-2547 (KM) (JBC)<br><br>Civ. No. 15-5504 (KM) (JBC)<br><br>MDL No. 2615<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This putative class action arises out of alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.,* and its New Jersey and California state counterparts. Defendants bring a challenge, *inter alia,* to Plaintiffs' standing on the grounds that the complaints fail to allege injury in fact. For the reasons stated below, I agree that Plaintiffs have failed to establish their Article III standing, and I will dismiss their complaints for failure to plead subject matter jurisdiction under the Supreme Court's recent decision in *Spokeo, Inc. v. Robbins,* 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016). Because the filing of these complaints preceded the decision in *Spokeo,* in fairness I have ordered that this dismissal be without prejudice and granted leave to file amended complaints within 30 days.

## I. BACKGROUND

Plaintiffs Christina Graham, Gary Anderson, Michele Castro, Janice Bercut, and Michelle Bercut applied for employment at Michaels Stores, Inc. ("Michaels") through an online employment application. One section of the online application form disclosed that Michaels would be obtaining background checks on the applicants and required applicants to authorize and consent to those checks. Michaels in fact obtained consumer reports, known also as

background checks, which it used in making hiring decisions. All of the Plaintiffs were hired by Michaels. They contend, however, that Michaels violated the FCRA (and its state counterparts) because its disclosure of its intent to obtain the background checks was insufficient.

Plaintiff Graham first filed an action, Civ. No. 14-7563, on December 4, 2014, in the District of New Jersey. Graham later amended her complaint, adding Plaintiff Anderson, on February 5, 2015. Plaintiff Michele Castro filed a similar complaint in Northern District of Texas on January 28, 2015, and later amended that complaint to include plaintiff Janice Bercut.[1] By order dated April 9, 2015, the Judicial Panel on Multi District Litigation consolidated the actions into MDL No. 2615 pursuant to 28 U.S.C. § 1407, and the Castro/Bercut action was assigned civil number 15-2547. Plaintiff Michelle Bercut filed an action on June 8, 2015 in the Superior Court of California, which was removed by Michaels to the Northern District of California on June 23, 2015. That action was later consolidated with the MDL and transferred to this Court on July 9, 2015, under civil number 15-5504.

Michaels filed motions to dismiss the currently operative complaints in the three actions. (ECF nos. 38, 18, 22) In part, Michaels sought under Fed. R. Civ. P. 12(b)(1) to dismiss the complaints for lack of subject matter jurisdiction. Michaels challenged Plaintiffs' standing, asserting that the complaints failed to allege an injury-in-fact. For the reasons stated in my prior Memorandum Opinion and Order (ECF no. 92),[2] I stayed this action pending the United

---

[1]  **On March 17, 2015, Castro accepted a Rule 68 offer from Michaels. Janice Bercut did not accept a similar offer. (Civ. No. 15-2547, ECF no. 36 at 6)**

[2]  Unless **otherwise noted, citations to a single ECF docket entry refer to the lead case in this MDL, Civ. No. 14-7563. Further, record items cited repeatedly will be abbreviated as follows**

> **"Pl. Opp." =** **Plaintiffs' Consolidated Opposition to Defendant's Consolidated Motion to Dismiss All Centralized Civil Actions Under MDL No. 2165 (ECF no. 102)**

> **"Graham Cmplt." = First Amended Complaint (ECF no. 1)**

> **"Castro Cmplt." = First Amended Complaint (Civ. No. 15-cv-2547, ECF no. 1)**

2

States Supreme Court's decision in the then-pending case of *Spoken, Inc. v. Robbins.*

On May 16, 2016, the Supreme Court issued its decision *in Spoken, Inc. v. Robbins, 136* S. Ct. 1540, 194 L. Ed. 2d 635 (2016). On May 17, 2016, I ordered the parties to reformulate and resubmit their motions to dismiss in light of *Spokeo.*[3] (ECF no. 94) Thereafter, on June 23, 2016, Michaels submitted a consolidated motion to dismiss all of the complaints in this MDL (ECF no. 99) under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. Now before the Court is that consolidated motion to dismiss. Because I dispose of the motion on jurisdictional grounds, I do not reach the Rule 12(b)(6) issues.

## II. LEGAL STANDARDS AND DISCUSSION

### A. Rule 12(b)(1)

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Constitution* Party *of Pa. v. Aichele,* 757 F.3d 347, 357 (3d Cir. 2014) (citing *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007)). Rule 12(b)(1) challenges may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Say. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.,* 67 F. Supp. 2d 424, 438 (D.N.J. 1999), Where a Rule 12(b)(1) motion is filed prior to any answer, it will be considered a facial challenge to jurisdiction. *Aichele,* 757 F.3d at 358. A court considering such a facial challenge applies the same standard that would apply on a motion to

---

"Bercut Cmplt." = Class Action Complaint (Civ. No. 15-cv-5504, ECF no. 1)

[3]     Previously pending before this Court was Plaintiffs' motion to certify a class. (ECF no. 33) I administratively terminated that motion, but noted that it may be restored to the Court's docket by letter from the parties following the Supreme Court's decision in *Spoken.* To date, no such letter has been filed, no doubt because the parties are awaiting a decision on these motions to dismiss before proceeding.

dismiss under Rule 12(b)(6). *In re Horizon Healthcare Services Inc. Data Breach Litigation,* No. 15-2309, slip op. at 13 (3d Cir. Jan. 20, 2017). Thus well-pleaded factual allegations are taken as true, and reasonable inferences are drawn in the plaintiff's favor. *Id.* The complaint will be dismissed for lack of standing only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio--Med. Assocs., Ltd. v. Crozer-Chester Med. Ctr.,* 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa,* 67 F. Supp. 2d at 438. The court may consider documents relied upon by the complaint and attached to it, but must construe such documents, like the allegations of the complaint, in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000).

### B. Article III Standing

### I.    Legal Principles

Under Article HI of the U.S. Constitution, a plaintiff seeking to establish standing to sue must demonstrate: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.,* 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. Nat'l Football League,* 810 F.3d 187, 193 (3d Cir. 2016)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (citing *FW/ PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth* v. *Seldin,* 422 U.S. 490, 518, 95 S. Ct. 2197, 2215, 45 L. Ed. 2d 343 (1975)).

Here, as in *Spokeo,* the particular component of standing at issue is injury-in-fact. *Id.* To allege injury-in-fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Nickelodeon,* 827 F.3d at

4

272 (quoting *Finkelman,* 810 F.3d 187, 193) (internal quotations omitted). A harm is "concrete" only if it is *"de facto';* that is, it must actually exist"; it cannot be merely "abstract." *Id.* (quoting *Spoken,* 136 S. Ct. at 1548).

A harm need not be tangible, however, to be "concrete." To determine whether an "intangible" harm amounts to an injury-in-fact, a court "should consider whether the purported injury 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Id.* (quoting *Spoken,* 136 S. Ct. at 1549) "Congress's judgment on such matters is 'also instructive and important,' meaning that Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (quoting *Spokeo,* 136 S. Ct. at 1549) (alteration in original).

*Spoken* teaches, however, that a mere wave of the Congressional hand is not enough to render an abstract injury concrete. Allegations of a "bare procedural violation, divorced from any concrete harm" cannot satisfy the Article III injury-in-fact requirement. *Spokeo,* 136 S. Ct. at 1549 (citing *Summers v. Earth Island Inst.,* 555 U.S. 488, 496, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")); *Nickelodeon,* 827 F.3d at 274 (citing *id.* at 1550). In other words, not every bare violation of a procedural right granted by statute is inherently injurious; to constitute an injury-in-fact, such a violation must result in a concrete harm. That requirement persists even where a statute "purports to authorize [a] person to sue to vindicate [a statutory procedural] right." *Id.; Raines v. Byrd,* 521 U.S. 811, 820 n.3, 117 S. Ct. 2312, 138 L. Ed. 2d 849

---

[4]    "A harm is "particularized" if it "affectis] the plaintiff in a personal and individual way." *Nickelodeon,* 827 F.3d at 272 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 n.1, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). It is undisputed that the purported injury in this case is particularized; Michaels procured a consumer report on each plaintiff, allegedly without first making a proper "stand-alone" disclosure.

(1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.").

> **2.** ***Spokeo's* Application of the Article III Injury-in-Fact Element to FCRA Procedural Violations**

In *Spokeo,* the plaintiff, Robins, sued Spoken, an online "people search engine" that uses computerized searches to conduct background checks. Robins alleged that Spokeo had violated the FCRA when it inaccurately reported his personal information to its customers. Spokeo challenged Robins's standing to sue. The Ninth Circuit held that Robins had adequately alleged an injury-in-fact. The court based its holding on the twin observations that Robins had an individualized, "personal interest]] in the handling of his credit information" and that "Spoken violated *his* statutory rights." *Robins v. Spokeo, Inc.,* 742 F.3d 409, 413-14 (9th Cir. 2014) (emphasis in original).

The Supreme Court reversed. It found that the Ninth Circuit had failed to properly consider whether the claimed violation of the FCRA statute resulted in concrete harm. Applying general Article III standing principles, the Court stated that a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation" of the FCRA, because "[a] violation of one of the FCRA's procedural requirements may result in no harm." *Spokeo,* 136 S. Ct. at 1550. Accordingly, the Court vacated the Court of Appeals' judgment and remanded with instructions to address "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement." *Id.*

> **3. Plaintiffs' Pleadings and Article III Standing**
> **a. The stand-alone disclosure requirement**

The plaintiffs in our case, like Robins, have alleged a bare procedural violation of the FCRA. In particular, they allege a violation of what they call the "stand-alone disclosure requirement." The FCRA requires that the employer's

intent to obtain a background check be disclosed conspicuously, in a dedicated, stand-alone document:

> [A]n employer or prospective employer cannot "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless-
>
>> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure,* that a consumer report may be obtained for employment purposes; and
>>
>> (ii) the consumer has authorized in writing . . . the procurement of the report by that person.

FCRA, 15 U.S.C. § 1681b(b)(2)(A) (emphasis added) .[5]

The complaints here allege that Michaels' only disclosure of its intent to obtain consumer reports for employment purposes was contained in each plaintiffs online job application. The disclosure allegedly appears in the middle of the application, not in a stand-alone document. In addition, the disclosure allegedly contains extraneous information, further violating the stand-alone requirement. (Pl. Opp. *7)*

In essence, then, the allegations setting forth the elements of a statutory violation are: (1) Plaintiffs completed the online job application on Michaels' website; (2) the application failed to comply with the FCRA's (and/or a state counterpart's) stand-alone disclosure requirement; and (3) for each plaintiff, Michaels procured a consumer report from an outside consumer reporting agency. It follows, say the Plaintiffs, that Michaels violated 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii) because it failed to make a proper disclosure and therefore failed to obtain proper authorizations before procuring the consumer reports.[6]

---

[5]     The New Jersey state law counterpart has a similar stand-alone disclosure requirement. *See* N.J. Stat. Ann. § 56:11-31(c)(1) (mirroring the text of the FCRA).

[6]     Graham and Anderson's complaint alleges an FCRA violation only under 15 U.S.C. § 1681b(b)(2)(A)(i). (Graham Cmplt. ¶¶ 63-67) The remaining Plaintiffs, however, also allege a violation under subsection (b)(2)(A)(ii). (Castro Cmplt. ¶ 59 ("Defendant violated the FCRA by procuring consumer reports relating to Plaintiffs and other putative class members without proper authorization. *See* 15 U.S.C. §

Plaintiffs allege a violation of what I have called the purely formal requirements of FCRA. They do not factually allege any harm aside from the statutory violation itself.[7] As I noted in my prior Memorandum Opinion and Order staying the matter pending a decision in *Spokeo:*

> Plaintiffs here concede that they do not plead any concrete harm; their claims are based on a bare violation of the FCRA. A decision in *Spokeo* that a bare violation of a federal statute fails to confer standing would therefore dispose of the pending motions, because this court would lack jurisdiction to continue.

(ECF no. 92).

In light of *Spokeo,* bare procedural violations of the FCRA, such as the violation of the stand-alone requirement alleged here, do not constitute an injury-in-fact. For the reasons expressed herein, I join the ranks of the courts that have so held.[8]

---

1681b(b)(2)(A)(ii)."); Bercut Cmplt. ¶ 71 ("The two signature boxes contained within Defendant's Application state above the box: 'Signature (by typing in this field, you are electronically signing this form.)' and do not purport to authorize the procurement of a consumer report. As a result, and because Defendant failed to make a [stand-alone disclosure], Defendant violated the FCRA by procuring consumer reports relating to Plaintiff and other putative class members without proper authorization.")).

[7]   A single, passing reference to an invasion of privacy appears in the preliminary statements of two of the three complaints: "Plaintiffs and other putative class members have been injured, including, without limitation, by having their privacy and statutory rights invaded in violation of the FCRA." (Castro Cmplt. ¶ 9; Bercut Cmplt. ¶ 8) These two complaints make no further mention of, let alone an explanation of, any invasion of privacy.

[8]   Cases holding that failure to comply with the stand-alone disclosure requirement does not in itself constitute an injury-in-fact include the following: *Thus v. United States Postal Serv.,* No. 15-CV-1467, 2017 WL 52609, at *6 (E.D. Wis. Jan. 4, 2017) (absent some additional allegation of harm, a failure to comply with the FCRA's stand-alone disclosure requirement is not a "concrete" injury); *Lee v. Hertz Corp.,* No. 15-CV-04562-BLF, 2016 WL 7034060, at *5 (N.D. Cal. Dec. 2, 2016) (same); *Kirchner v. First Advantage Background Servs. Corp.,* No. CV 2:14-1437 WBS EFB, 2016 WL 6766944, at *3 (E.D. Cal. Nov. 14, 2016) (same); *Shoots u. iQor Holdings US Inc.,* No. 15-CV-563 (SRN/SER), 2016 WL 6090723, at *5-8 (D. Minn. Oct. 18, 2016) *(same); Nokchan v. Lyft, Inc.,* No. 15-CV-03008 JCS, 2016 WL 5815287, at *6 (N.D. Cal. Oct. 5, 2016) *(same); Landrum v. Blackbird Enterprises, LLC,* No. CV H-16-0374, 2016 WL 6075446, at *4 (S.D. Tex. Oct. 3, 2016) (same); *Fisher v. Enter. Holdings, Inc.,* No. 4:15-CV-00372 AGF, 2016 WL 4665899, at *4 (E.D. Mo. Sept. 7, 2016) (same); *Smith v. Ohio State Univ.,* No. 2:15-CV-3030, 2016 WL 3182675, at *1, 4 (S.D. Ohio June 8,

### b. "Informational Injury" and "Invasion of Privacy"

In an attempt to salvage standing post-*Spokeo,* the plaintiffs argue that the alleged FCRA violations caused them two types of concrete harm: (1) informational injury, and (2) invasion of privacy.[9] (Pl. Opp. 13-28) Of course, statements in briefs cannot serve to amend a deficient complaint.[10] Here, however, Plaintiffs rely on *post-Spoken* cases adopting the position that certain alleged violations of § 1681b(b)(2)(A) "necessarily entail" these two additional harms. *E.g., Meza v. Verizon Commc'ns, Inc.,* No. 1:16-CV-0739 AWI MJS, 2016 WL 4721475, at *4 (E.D. Cal. Sept. 9, 2016) ("[P]hrases such as 'informational injury' or 'right to privacy' . . . need not be expressly stated in the Complaint [because] [t]he nature of the violations of § 1681 b(b)(2)(A) alleged in the Complaint necessarily entail an 'informational injury' and an invasion of the 'right to privacy.'"). To the extent that a fact arises by necessary implication, it may be regarded as inherent to the Complaint. I respectfully disagree, however, with the reasoning of the cases on which the Plaintiffs rely.

---

2016) *(same); but see Moody v. Ascenda USA Inc.,* **No. 16-CV-60364-WPD, 2016 WL 5900216 (S.D. Fla. Oct. 5, 2016) (a failure to comply with the FCRA's stand-alone disclosure requirement *is* a "concrete" injury where plaintiffs alleged informational injury and invasion of privacy);** *Meza v. Verizon Commc'ns, Inc.,* **No. 1:16-CV-0739 AWI MJS, 2016 WL 4721475, at *3 (E.D. Cal. Sept. 9, 2016) (same).**

[9] **I do not fault anyone, of course, for failing to anticipate the precise reasoning of** *Spokeo.* **For clarity, however, I note that it was only in a footnote to an earlier brief that Janice Bercut characterized her complaint as alleging an informational injury. (Civ. No. 15-2547, ECF no. 36 at 8-9 n.6) Plaintiffs Graham and Anderson did not make a similar argument in their earlier opposition, though they make it now.** *(See* **Civ. No. 14-7563, ECF no. 41 at 8-10) All Plaintiffs now raise the invasion of privacy argument for the first time.**

[10] *See, e.g., Pennsylvania ex. rel Zimmerman v. PepsiCo, Inc.,* **836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.");** *Talley v. United States,* **No. 11-1180, 2014 WL 282680, at *5 (D.N.J. Jan. 24, 2014) (holding that "a complaint cannot be amended through the brief of a party in opposition to a motion to dismiss").**

### i. Informational Injury

The Supreme Court has held that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Fed. Election Comm'n v. Akins,* 524 U.S. 11, 21, 118 S. Ct. 1777, 1784, 141 L. Ed. 2d 10 (1998) (citing *Public Citizen v. Department of Justice,* 491 U.S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989)). *Spokeo,* citing *Akins* and *Public Citizen,* reaffirmed this principle. *Nickelodeon,* 827 F.3d at 273-74 ("[U]nlawful denial of access to information [statutorily] subject to disclosure" alone sufficiently constitutes injury-in-fact to confer Article III standing.) (citing *Spokeo, 136* S. Ct. at 1549-50). In *Akins,* a group of voters challenged the Federal Election Committee's refusal to require the disclosure of information allegedly mandated by the Federal Election Campaign Act of 1971. 524 U.S. at 20-25. In *Public Citizen,* two advocacy organizations sought information allegedly subject to disclosure under the Federal Advisory Committee Act. 491 U.S. at 447. The Court found that plaintiffs had standing to sue in both cases.

The *goal* of the stand-alone requirement is a substantive one: to ensure that certain information is in fact conveyed clearly to job applicants. The *means* chosen to implement that goal, however, are purely formal: the portion of the statute at issue prescribes the physical format that the disclosure must take. The means and goals are not perfectly correlated. Thus a noncompliant disclosure that did not appear in a stand-alone document, but in flashing red letters a foot high, could nevertheless be unmissable. (Or alternatively a conspicuous disclosure in a stand-alone document could be phrased so unclearly that it failed to warn the reader.) Defendants' argument, boiled down, is that a concrete injury entails, at a minimum, that the statutory violation *in fact* denied the plaintiff information to which the plaintiff was entitled.

On this basis, our cases are clearly distinguishable from *Akins* and *Public Citizen.* There, the plaintiffs alleged that they did not *actually* receive the substantive informational *content* to which they were entitled. In contrast,

Plaintiffs concede that they received a disclosure containing the requisite information; they object only to its form.[11]

Plaintiffs nevertheless contend that they have suffered an informational injury because they have been deprived of disclosure *"in the manner* prescribed by *law," i.e.,* as a stand-alone document. (Pl. Opp. 19; emphasis added) I am unpersuaded, because I think the argument virtually erases the distinction between a merely procedural violation and a substantive injury-in-fact.

Plaintiffs rely primarily on the reasoning in *Thomas v. FT'S USA, LLC, No.* 3:13-CV-825, 2016 WL 3653878 (E.D. Va. June 30, 2016). In that case, decided shortly after *Spokeo,* Thomas claimed that the defendant's disclosure of its intent to obtain a copy of his consumer report "was not a 'clear and conspicuous' disclosure and that it [did] not contain a proper authorization," in violation of § 168 lb(b)(2)(A). *Id.* at *8. The defendants challenged Thomas's standing, because he alleged only "technical or procedural violations of the FCRA." *Id.* at *6. Following *Spokeo's* instructions, the court "look[ed] to the common law and to the judgment of Congress, as reflected in the FCRA, to determine whether the violations of that statute alleged by Thomas constitute concrete injuries" sufficient to confer standing. *Id.* After a thorough examination of the statutory text and legislative history, the court concluded that, "[i]n Congress' legislative judgment, where the disclosure does not satisfy then requirements [that it be `clear,' conspicuous,' and In a document

---

11      Plaintiffs' **citation to** *Church v. Accretive Health, Inc.,* **654 F. App'x 990, (11th Cir. 2016), is similarly inapposite. (Pl. Opp. 25) In** *Church,* **the court held that a plaintiff who alleged that a hospital violated the Fair Debt Collections Practices Act ("FDCPA") by omitting from a debt collection letter certain disclosures required by the FDCPA suffered an injury-in-fact.** *Id.* **at 991, 995. Church, unlike Plaintiffs here, alleged deprivation of informational** *content* **to which she was entitled.**

        **Plaintiffs also cite** *Havens Realty Corp. v. Coleman,* **455 U.S. 363, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982), a case on which** *Akins* **relies. There, a black discrimination tester was told an apartment was not available for rent. He knew from other sources that it was available (a white tester had been told it was). The Court found that the black applicant had standing because he was denied informational** *content* **to which he was entitled under the Fair Housing Act.**

*11*

consisting solely of the disclosure'], the consumer has been deprived of a fully appreciable disclosure to which he or she is entitled under the FCRA." *Id.* at *10.

The *Thomas* court held further that even a deviation from the statutorily specified form of the information suffices to confer standing. *Id.* at *9 (citing *Charvat v. Mutual First Fed. Credit Union,* 725 F.3d 819, 824 (8th Cir. 2013) (holding that deprivation of the proper form of information required by the Electronic Fund Transfer Act ("EFTA") confers standing); *Manuel v. Wells Fargo Bank, Nat. Ass'n,* 123 F. Supp. 3d 810, 817-18 (E.D. Va. 2015) (same, under the FCRA); *Amason v.* Kangaroo *Express,* 2013 WL 987935, at *3-*4 (N.D. Ala. Mar. 11, 2013) (same, under the Fair and Accurate Credit Transactions Act)). In the *Thomas* court's view, "the rights created by § 1681b(b)(2) are substantive rights, and the breach of the statute [including its stand-alone disclosure requirement] is not a bare procedural violation' of a technical requirement." *Id.* at *11.

I respectfully disagree with *Thomas's* conclusion that the disclosure requirements set forth in § 1681b(b)(2)(A)(i) are substantive rather than procedural. Relatedly, I cannot hold, post-Spokeo, that Michaels' nonconformance to disclosure formatting specifications constitutes an "informational injury" sufficient to confer standing.

First, although it is sometimes difficult to distinguish between substantive and procedural rights, I consider this case clear.[12] *Spokeo* directed

---

[12]     A pellucid explanation of the distinction can be found in Landrum *v. Blackbird Enterprises, LLC,* No. CV H-16-0374, 2016 WL 6075446 (S.D. Tex. Oct. 3, 2016). In that case, holding that the lack of a stand-alone disclosure as required by § 168 lb(b)(2) is not a "concrete" injury, Judge Lake explained:

> Whether a violation of a statutorily created right confers standing turns on whether the right is substantive or merely procedural. Black's Law Dictionary defines a "procedural right" as "[a] right that derives from legal or administrative procedure; a right that helps in the protection or enforcement of a substantive right. Cf. substantive right." (10th ed. 2014) (emphasis added). A "substantive right," on the other hand, is "[a] right that can be protected or enforced by law; a right of substance rather than

the courts to look to (a) whether the right violated was one traditionally recognized at law, and (b) whether Congress had elevated it to the status of a legally cognizable, redressable injury. *In re Horizon Healthcare Services Inc. Data Breach Litigation,* No. 15-2309, slip op. at 23 (3d Cir. Jan. 20, 2017) (citing *Spokeo,* 136 S. Ct. at 1549). The right to know about and effectively consent to a search of one's personal background may well be considered substantive. That the disclosure at issue be contained in a separate document, however, does not correspond to any right traditionally recognized at law. Nor is there is any indication that Congress, in requiring it, was elevating it to a substantive right. It is no more than a procedural means to a substantive end. The stand-alone requirement is no less procedural than a hypothetical

---

form." Id. To the extent that a violation of the procedural right has no effect on the substantive right, the bare procedural violation does not cause an injury of the sort that, alone, would support standing. Confusion understandably arises when the procedure is closely intertwined with the substantive right.

In this case the procedure, a specified manner for disseminating information, protects the underlying right to receive that information. The distinction is a subtle one, and an analogy may prove helpful. Consider a hypothetical statute requiring building managers to notify occupants in the event of a fire in a timely manner via a loudspeaker using specific language. Now imagine that, during a fire, a manager effectively communicates a warning to an occupant in a timely manner but does so in person, after which the occupant escapes unharmed. The occupant was subjected to a bare, procedural violation. If, however, another occupant was never warned but smelled smoke and safely exited the building, the latter occupant was subject to a substantive violation of his right to be timely notified, albeit without independent, "tangible" harm. In the latter case, a statutory remedy would be appropriate. In the former case, only the manner in which the warning was to be delivered (i.e., the procedure) failed to meet statutory guidelines. The underlying right, the right to be timely notified in the event of a fire, was honored.

The FCRA protects a consumer's substantive right to be notified of the procurement and use of a consumer report for employment purposes. However, the requirement that the notice be in the form of a stand-alone disclosure is a procedural protection of that substantive right. Put yet another way, a statutory right to information is substantive. A statutory right to receive that information in a particular format is procedural.

*Id.* at *3-4.

13

requirement that the disclosure be printed with double spacing or in a given font. Indeed, if a disclosure that flunks the stand-alone test automatically "counts as a concrete informational injury, then it is hard to imagine a statutory violation that would not cause some form of informational injury." *Groshek v. Great Lakes Higher Educ. Corp.,* No. 15-CV-143-JDP, 2016 WL 6819697, at *2 (W.D. Wis. Oct. 4, 2016). As I see it, although deviation from such technical or procedural requirements may cause concrete harm, whether the violation *has* caused such harm is situation-dependent.

Second, the authorities *Thomas* cites as precedent for its "informational injury" theory predate *Spokeo,* and I do not think their rationales survive.[13] The only Court of Appeals case among them, *Charvat v. Mut. First Fed. Credit Union,* 725 F.3d 819 (8th Cir. 2013), involved an Electronic Fund Transfer Act ("EFTA") requirement that ATMs include both an "on machine" and an "on screen" notice disclosing ATM transaction fees. Defendants' ATMs displayed only the "on screen" notice, to which the plaintiff apparently responded by accepting the fee. The Eighth Circuit agreed with plaintiff, however, that the omission of the "on machine" notice constituted informational injury sufficient to confer standing. *Charvat* indeed tends to support the holding of *Thomas,* but

---

[13]      **At the time of *Thomas,* some courts, including a Third Circuit panel, held that a mere showing of a statutory violation is sufficient to confer standing in a case involving statutory damages.** *E.g., Salvati v. Deutsche Bank Nat'l Trust Co., N.A.,* **575 F. App'x 49, 56 (3d Cir. 2014) (non-precedential) (plaintiff suing under the FDCPA had standing to sue for bare violation of the act because the act provided for statutory damages);** *see also Sacchi v. Care One, LLC,* **No., 2015 WL 3966034 (D.N.J. June 30, 2015) ("A statute may permit recovery of statutory damages for statutory violations even when the plaintiff had not suffered actual damages.").**

     **Plaintiffs contend that "the Third Circuit recently recognized [that] *Spokeo* changed nothing." (Pl. Opp. 10) (citing *Nickelodeon,* 827 F.3d 262) That is an overstatement. More precisely,** *Nickelodeon* **noted that** *Spokeo* **did not alter the court's "prior analysis in** *Google,"* 806 F.3d **125, regarding standing in the context of violations of federal privacy law.** *Nickelodeon,* 827 **F.3d at 274.** *See also In* **re** *Horizon Healthcare Services Inc. Data Breach Litigation,* No. **15-2309, slip op. at 23-25 (3d Cir. Jan. 20, 2017) (stating that "procedural" violation of FCRA might not confer standing under *Spokeo,* but that the plaintiffs had pled a substantive privacy breach where lax procedures had permitted the theft of laptops containing private information).**

the Eighth Circuit itself has since held that its holding in *Charvat* was superseded by *Spokeo*.[14] *Braitberg v. Charter Commc'ns, Inc.,* 836 F.3d 925, 929-30 (8th Cir. 2016).

Finally, it is of course true that a plaintiff alleging a "violation of a procedural right granted by statute . . . need not allege any *additional* harm beyond the one Congress has identified," *Spokeo,* 136 S. Ct. at 1549 (emphasis in original). That is essentially the principle vindicated in the recent case of *In re Horizon Healthcare Services Inc. Data Breach Litigation,* No. 15-2309 (3d Cir. Jan. 20, 2017) (where plaintiff sued under FCRA for data breach caused by stolen laptops, standing did not require further dissemination of the stolen information or identity theft).

Here, however, Plaintiffs do not even allege that they have suffered the harm addressed by Congress's promulgation of the stand-alone disclosure rule. That harm would be an applicant's failure to understand that he or she was authorizing an employer background check.[15] "The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side within the disclosure." (Castro Cmplt. ¶ 29; Bercut Cmplt. ¶ 26 (quoting Federal Trade Commission ("FTC") opinion letter)) Where, as here, plaintiffs do not allege that they did not

---

[14]     Also superseded by *Spokeo* was another case relied on by *Thomas, Manuel u. Wells Fargo Bank, Nat. Ass'n,* 123 F. Supp. 3d at 817-18. *Manuel* held that the plaintiff demonstrated an injury-in-fact through his allegations that he was deprived of the appropriate type of information under § 1681 b (b)(2)(A) when defendant's disclosure allegedly failed to satisfy the stand-alone requirement. Subsequent cases have limited *Manuel. See Nokchan v. Lyft, Inc.,* No. 15-CV-03008-JCS, 2016 WL 5815287, at *9 (N.D. Cal. Oct. 5, 2016) ("[I]n the wake of *Spokeo, Manuel* cannot be read to stand for the broad proposition that violation of a disclosure requirement under the FCRA, by itself, is sufficient to confer Article III standing on a plaintiff."); *Groshek v. Great Lakes Higher Educ. Corp.,* No. 15-CV-143-JDP, 2016 WL 6819697, at *2 (W.D. Wis. Oct. 4, 2016) (*Manuel's* "expansive view of 'informational injury' is hard to square with *Spokeo's* reasoning.").

[15]     Although *Spokeo* recognized that a "risk of real harm" can satisfy the concreteness requirement, 136 S. Ct. at 1549, Plaintiffs allege no risk of harm deriving from the alleged violations. They do not allege that they failed to read or understand the disclosure. For what it is worth, all were subsequently hired by Michaels.

15

see the disclosure, or were distracted from it, the allegations amount to no more than a bare procedural violation of the stand-alone requirement.[16]

Thus, Plaintiffs' allegations do not confer standing on an informational injury theory.

### ii. Invasion of Privacy

Plaintiffs also contend that, by violating the stand-alone disclosure requirement, Michaels invaded their privacy when procuring consumer reports, contrary to the FCRA. (Pl. Opp. 13-14) (citing 15 U.S.C. § 1681b(b)(2) ("[A] a person may not procure a consumer report . . . for employment purposes . . . unless . . . a clear and conspicuous disclosure has been made in writing . . . in a document that consists solely of the disclosure.")) To be sure, an invasion of consumers' privacy was among the harms that Congress identified and sought to prevent by passing the FCRA.[17] The Third Circuit recognizes that "Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private." *Nickelodeon,* 827 F.3d 262 at 274 (citing *Google,* 806 F.3d at 134 8; n.19 (3d Cir. 2015)). And it recently reaffirmed that principle in *In re Horizon Healthcare Services Inc. Data Breach Litigation,* No. 15-2309, slip op. at 23-25 (3d Cir. Jan. 20, 2017). *Horizon* was a data breach case under the FCRA, in which the defendant, a credit reporting agency, allegedly permitted laptop computers containing personal information to be stolen. The district court dismissed the action for lack of standing, because there was no allegation that

---

[16]     *C.f. Feist v. Petco Animal Supplies, Inc.,* No. 3:16-CV-01369-H-DHB, 2016 WL 6902549, at *2 (S.D. Cal. Nov. 22, 2016) (noting *Spokeo's* affirmation of *Akins* and *Public Citizen* and holding that the plaintiffs sufficiently alleged injury-in-fact to survive a motion to dismiss because they plausibly alleged that they may have been confused or distracted by the length of the consent form).

[17]     The FCRA includes in its congressional findings "a need to insure that consumer reporting agencies exercise their grave responsibilities with . . . a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). *See also Safeco v.* Burr, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) ("Congress enacted FCRA... to protect consumer privacy.").

the information had been further disseminated, causing plaintiffs an injury in fact. The Third Circuit reversed, holding that plaintiffs had alleged a violation of their substantive right to have their personal information secured against unauthorized disclosure. Private information had *in fact* been taken by third parties without plaintiffs' consent, said the court. That harm is one traditionally recognized at law: unauthorized release of private information. And it was one identified by Congress in FCRA. Slip. Op. at 23. That was enough to confer standing.

The case here, however, is different. Everyone agrees that an applicant would have standing under the FCRA if the employer simply obtained a credit report without telling the applicant, and without the applicant's consent. On the other hand, the applicant's consent, after being informed that the employer would be seeking such a report, vitiates any claim of a privacy violation. Either way, the issue hinges on whether the applicant received disclosure before consenting. The employer's procurement of a consumer report would not be unauthorized (and thus an invasion of privacy) unless the applicant was in *fact* denied disclosure. That Michaels did not comply with the stand-alone requirement, unless it *resulted* in a deprivation of disclosure, adds nothing. Plaintiffs' theory collapses on itself; without the addition of nondisclosure in fact, it is indistinguishable from a bare procedural violation.

Plaintiffs' position amounts to a contention that a violation of the standalone requirement automatically implies that the credit report is unauthorized. That principle, if accepted, "would raise every technical violation of [the FCRA] to the realm of a major substantive harm. This is a leap too far, and is directly contradicted by *Spokeo,* which made clear that some subset of violations are too small to implicate—on a standing level—the interests protected by the larger statutory framework." *Shoots v. iQor Holdings US Inc.,* No. 15-CV-563 (SRN/SER), 2016 WL 6090723, at *4 (D. Minn. Oct. 18, 2016) (citing *Spokeo,* 136 S. Ct. at 1550) (holding that plaintiff alleging violation of the FCRA's stand-alone disclosure requirement lacked standing). The

procedural/ substantive distinction would lose all meaning if the court were to find that plaintiffs have a substantive right to be free of every procedural violation.[18]

Spokeo aside, the logic of Plaintiffs' argument is not compelling. Assume that an employer provided an applicant with a disclosure (again, not on a stand-alone document, but in flashing red letters a foot high); the applicant read and understood that disclosure; and the applicant signed an authorization. In such a case, it makes little sense to conclude that the employer's acquisition of a consumer report was done without consent, or that

---

[18]     **Again, Plaintiffs rely primarily on** *Thomas* **and other decisions adopting its reasoning. In** *Thomas,* **the plaintiff alleged,** *inter alia,* **that the "[d]efendants invaded the statutory right to confidentiality of his personal information by obtaining his consumer report without first providing the required disclosure or obtaining his written consent, as required by § 1681b(b)(2)(A)."** *Thomas,* **2016 WL 3653878, at *11. The court held that because "[t]he FCRA provides that an employer may not obtain an applicant's consumer report, thereby invading his or her statutory right of privacy, unless the employer first obtains the consumer's knowing and voluntary written consent to secure that information,** *as* **required by § 1681b(b)(2)(A), . . . [t]his allegedly unauthorized disclosure of personal information constitutes an invasion of the statutory right to privacy and a concrete injury sufficient to confer Article III standing."** *Id.* **at *10-11.**

        **Unlike the plaintiff in** *Thomas,* **Plaintiffs do not allege that they did not consent to or authorize the background checks. However, other courts have extended the reasoning in** *Thomas* **to cases with similar facts to this case, on the theory that the lack of a stand-alone FCRA disclosure fatally undermines the validity of a subsequent authorization.** *See Moody v. Ascenda USA Inc.,* **No. 16-CV -60364-WPD , 2016** WL 5900216 (S.D. **Fla. Oct. 5, 2016) (recognizing a split among courts but finding** *Thomas* **persuasive and holding that plaintiffs alleging invasion of privacy for violations of § 168 lb(b)(2)(A)(i)- (ii) had standing);** *see also Meza v. Verizon Commc'ns, Inc.,* **No. 1:16-CV-0739 AWI MJS, 2016 WL 4721475, at *3 (E.D. Cal. Sept. 9, 2016) (finding** *Thomas's* **analysis persuasive and therefore following that decision). I do not find the reasoning in those cases persuasive,** *see infra.*

        **Other cases cited by Plaintiffs are distinguishable because the violations alleged there were more substantive.** *Firneno v. Radner Law Grp., PLLC,* **No. 2:13-CV-10135,** 2016 WL 5899762, **at *4 (E.D. Mich. Sept. 28, 2016) (alleging the unauthorized viewing and retention** of **personal credit and other information);** *Perrin v. Equifax Info. Servs., LLC,* **No. A-14-CA-612-SS, 2016 WL 4572212, at *4 (W.D. Tex. Aug. 31, 2016) (alleging defendant provided consumer reports to state comptroller without reason to believe the comptroller had a permissible purpose in violation of § 1681b(a)).**

it invaded the applicant's privacy. Any lack of disclosure must be alleged directly, and factually.

Here, Plaintiffs concede that they received a disclosure. (Pl. Opp. 6-7) They do not allege that they were confused or distracted by the format, or that they did not know what they were authorizing. Nor do they deny that in fact they completed the online application and authorized the background check. Instead, they argue only that "Michaels' acquisition of Plaintiffs' consumer reports . . . was unlawful" because "Michaels' disclosure did not comply with the FCRA," and was ipso facto "an invasion of Plaintiffs' right to privacy." (Pl. Opp. 13-14) This is precisely the type of "bare procedural violation" that is insufficient to confer standing. *See Spokeo,* 136 S. Ct. at 1549.[19]

## C. Remand or Dismissal of Michelle Bercut's Action

Plaintiffs argue that if the Court finds Plaintiffs to lack Article III standing, Plaintiff Michelle Bercut's action should not be dismissed. Instead, Plaintiffs say, it must be remanded to the Superior Court of California, County of Sonoma, where it was commenced. (Pl. Opp. 28-30) In contrast, Defendants

---

[19]    *See also Tyus v. United States Postal Serv.,* No. 15-CV-1467, 2017 WL 52609, at *6 (E.D. Wis. Jan. 4, 2017) (no privacy injury where no allegations that "plaintiffs did not understand or were confused by the disclosure forms because they were not limited to the information required by the [FCRA's] stand-alone disclosure requirement"); *Kirchner v. First Advantage Background Servs.* Corp., No. CV 2:14-1437 WBS EFB, 2016 WL 6766944, at *3 (E.D. Cal. Nov. 14, 2016) (inclusion of extraneous information on § 1681b(b)(2) notice did not result in unauthorized invasion of privacy where plaintiff was provided notice and opportunity to consent to release of consumer report); *Nokchan v. Lyft, Inc.,* No. 15-cv-03008-JCS, 2016 WL 5815287, at *5_6 (N.D. Cal. Oct. 5, 2016) (no invasion of privacy where plaintiff consented to background check, despite defendant's alleged failure to provide a stand-alone disclosure); *Landrum* v. *Blackbird Enterprises, LLC,* No. CV H-16-0374, 2016 WL 6075446, at *3 -4 (S.D. Tex. Oct. 3, 2016) (plaintiff lacked standing where he did not allege that "he did not know what he was authorizing or did not, in fact, authorize the report" due to absence of stand-alone disclosure); *Groshek v. Great Lakes Higher Educ. Corp.,* No. 15-CV-143-JDP, 2016 WL 6819697, at *2 (W.D. Wis. Oct. 4, 2016) (no privacy injury where plaintiff did not allege that compliance with FCRA's stand-alone requirement would have affected plaintiff's decision to authorize employer's acquisition of a consumer report).

urge this court to dismiss the case because, they contend, remand would be futile.[20] (Def. Reply, Civ. No. 14-07563, ECF no. 103 at 12-14)

Having found that this Court lacks subject matter jurisdiction over Plaintiffs' actions, I must remand this removed case to the California state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded.") (emphasis added). The Third Circuit "has never recognized the futility exception, and the Supreme Court has, in dicta, expressed a reluctance to recognize such discretion under the removal statute." *Bromwell v. Michigan Mutual Ins. Co.,* 115 F.3d 208, 213 (3d Cir. 1997) (citing *International Primate Protection League v. Administrators of Tulane Educ, Fund,* 500 U.S. 72, 87 (1991)); *see also Giordano v. Wachovia Securitites, LLC,* No. 06-476 JBS, 2006 WL 2177036, at *5 (D.N.J. July 31, 2006) (Simandle, J.) ("Ordering a remand is . . mandatory under 28 U.S.C. § 1447(c) even if remanding the case to state court may be futile.").

## III. CONCLUSION

The standing issue here presents itself as a matter of initial pleading, but it implicates class action practice. A cause of action for statutory damages in a fixed amount, based on a procedural violation committed against a number of persons in common, seems ideally suited for class action treatment. That is not so obviously true where each plaintiff must demonstrate that he or she was personally injured as a result of that procedural violation. If one applicant was confused by the noncompliant disclosure, perhaps another was not. But that is a problem for another day.

For the foregoing reasons, I conclude that Plaintiffs have failed to allege facts which, if true, would establish that they individually possess Article III standing. Accordingly, all three complaints are DISMISSED WITHOUT

---

[20]    Michaels adds that Michelle Bercut lacks standing to pursue her claims in the California courts. I will not anticipate the California court's ruling.

PREJUDICE for lack of subject matter jurisdiction. In addition, Michelle Bercut's case will be REMANDED to the Superior Court of California, County of Sonoma.

An appropriate Order follows. The effect of this order is stayed until further order of the Court. Within 30 days, the plaintiffs may, if they wish, file amended complaints; if so, the defendant may respond by answer or motion, as appropriate.

Dated: January 24, 2017

HON. KEVIN CNULTY, U.S .J.