EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**VIRGINIA PAIGE JENKINS,**
*Administratrix of Estate of Erin Jenkins,*

        **Plaintiff,**

v.                               **Civil Action No. 3:15cv355**

**SHERIFF C.T. WOODY,** *et al.,*

        **Defendants.**

## MEMORANDUM ORDER

This matter comes before the Court on Defendant Sheriff Woody's Motion in *Limine* to

Exclude Opinions of Plaintiff's Expert Witness, Dr. Allison Twente, Ph.D. (the "Motion to

Exclude"). (ECF No. 155.) Plaintiff Virginia Paige Jenkins[1] has responded, (ECF No. 170).

Sheriff Woody did not reply, and the time to do so has expired. The Court heard oral argument.

Accordingly, the matter is ripe for disposition. The Court exercises jurisdiction pursuant to

28 U.S.C. §§ 1331[2] and 1367.[3] For the reasons that follow, the Court DENIES Sheriff Woody's

Motion to Exclude.

---

[1] Because the plaintiff in this matter, Virginia Paige Jenkins, Administratrix of the Estate of Erin Jenkins, has the same last name as Erin Jenkins, the subject of this case, the Court refers to Virginia Paige Jenkins as "Plaintiff" and Erin Jenkins as "Ms. Jenkins."

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Third Amended Complaint alleges Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983 and brings pendent claims of gross negligence against Deputy Beaver and Sheriff Woody.

[3] The Court exercises supplemental jurisdiction over Plaintiff's gross negligence claim pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). The Third Amended Complaint alleges pendent claims of gross negligence against Sheriff Woody and Deputy Beaver.

## I. Factual Background

This case involves Ms. Jenkins's death while housed as a pretrial detainee in the Richmond City Justice Center (the "RCJC"). On August 1, 2014, Ms. Jenkins was found in her cell at the RCJC incoherent, incontinent, and not breathing. She was transported to the hospital, where she later died.[4]

Plaintiff alleges that Ms. Jenkins's death was caused by Sheriff Woody's and Deputy Beaver's deliberate indifference to Ms. Jenkins's serious medical needs in violation of Ms. Jenkins's rights under the Fourteenth Amendment to the United States Constitution.[5] Plaintiff further alleges that by failing to address Ms. Jenkins's serious medical needs, Sheriff Woody and Deputy Beaver breached the duty of care they owed Ms. Jenkins and were grossly negligent in monitoring Ms. Jenkins and meeting her medical needs. Sheriff Woody and Deputy Beaver deny the allegations.

## II. Motion to Exclude Standard

Federal Rule of Evidence 702 "imposes a special obligation upon a trial judge to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999) (*quoting Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993) (second alteration in original)). "'[T]here are many different kinds of experts, and many different kinds of expertise.' The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him [or her] to testify as an expert in all related areas." *Shreve v.*

---

[4] The facts surrounding Ms. Jenkins's death are more fully set forth in the Court's Memorandum Opinion on defendants' motions for summary judgment. (*See* ECF No. 271.)

[5] The Fourteenth Amendment states in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. am. XIV.

*Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001) (first alteration in original)

(quoting *Kumho Tire*, 526 U.S. at 150).

> Rule 702 provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and[,]
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Expert testimony is admissible under Rule 702, then, if it concerns

(1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of

fact to understand or resolve a fact at issue." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257,

261 (4th Cir. 1999) (citing *Daubert*, 509 U.S. at 592). The first prong of the inquiry

"necessitates an examination of whether the reasoning or methodology underlying the expert's

proffered opinion is reliable," and the second prong "requires an analysis of whether the opinion

is relevant to the facts at issue." *Id.*

In determining whether proffered expert testimony is sufficiently reliable so as to assist

the trier of fact, *Daubert* suggests that courts consider several non-dispositive factors:

(1) whether the expert's methodology can be tested; (2) whether the theory or technique has been

subjected to peer review and publication; (3) the known or potential rate of error; and,

(4) whether the theory or technique has gained general acceptance within the relevant scientific

community. *Daubert*, 509 U.S. at 593–94. This analysis applies to all proffered specialized

knowledge, not solely scientific expert testimony. *Kumho Tire,* 526 U.S. at 141. Despite these

factors, "[t]he inquiry to be undertaken by the district court is 'a flexible one' focusing on the

'principles and methodology' employed by the expert, not on the conclusions reached."

*Westberry*, 178 F.3d at 261 (quoting *Daubert*, 509 U.S. at 594–95). A district court "need not

determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or

certainly correct. As with all other admissible evidence, expert testimony is subject to being

tested by '[v]igorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof.'" *Westberry*, 178 F.3d at 261 (quoting *Daubert*, 509 U.S. at

596) (alteration in original) (internal citation omitted). Relevant to Sheriff Woody's Motion to

Exclude, facts or data that experts in a particular field "would reasonably rely on . . . in forming

an opinion on the subject" need not be admissible for the expert's opinion itself to be admitted.

Fed. R. Evid. 703.

### III.  Analysis

#### A.     The Court Denies Sheriff Woody's Motion to Exclude

Sheriff Woody's Motion to Exclude argues that Dr. Twente's opinions should be

excluded because they are unreliable, irrelevant, and unduly prejudicial. (Woody Mem. Supp.

5–7, ECF No. 156.) Sheriff Woody asserts that Dr. Twente's opinions lack reliability because

they "are based on unsupported opinions provided by the decedent's parents and what the five-

year-old child told [Dr. Twente] during her interview, all of which [Dr. Twente] took at face

value, rather than the application [sic] of any specialized knowledge." (*Id.* at 5–6.) Sheriff

Woody contends that Dr. Twente's submission lacks relevance because her "opinion is pure

speculation, and no more useful than anyone else's opinion." (*Id.*) Finally, Sheriff Woody

submits that unfair prejudice could flow from Dr. Twente's opinions because "[n]o one can

accurately predict the future for another person, . . . [i]f Dr. Twente is permitted to testify as to

her assumptions and opinions[] as though they were 'evidence,' the jury will potentially be

4

distracted from the pertinent issues of the case and confused by the testimony." [6] (*Id.* at 7.)

Plaintiff opposes Sheriff Woody's Motion to Exclude, arguing that Dr. Twente's opinions should be permitted because: (1) they are "relevant as they deal with the emotional and psychological trauma [that Ms. Jenkins's daughter] suffered as a result of [Ms. Jenkins's] death"; (2) they "are not unreliable[,] as they are based upon [Dr. Twente's] education, training, and years of experience as a child psychologist"; and, (3) they "are not unfairly prejudicial." (Pl.'s Opp'n 1, ECF No. 170.) Plaintiff asserts that Dr. Twente's reliance on interviews with G.J. and G.J.'s grandparents is reasonable and does not render Dr. Twente's opinions inadmissible because "child psychologists who opine in courts across the country base their testimony upon interviews." (*Id.* at 3.) Plaintiff declares that Dr. Twente's testimony "is absolutely relevant to the case at hand" because "Dr. Twente will testify as to the emotional distress[] and mental anguish that [G.J.] has suffered, is suffering, and is reasonably certain to suffer in the future." (*Id.* at 4.)

**B.     Dr. Twente's Expert Opinions**

Dr. Allison Twente, a licensed clinical psychologist with a Ph.D. in child psychology, proposes to testify regarding "the emotional distress[] and mental anguish that G.J. [(Ms. Jenkins's biological daughter)] has suffered, is suffering, and is reasonably certain to suffer in the future." (Pl.'s Mem. Opp'n 4, ECF No.170.)   Since 2011, Dr. Twente has served on the Board of Directors for Comfort Zone Camp, a Richmond, Virginia, bereavement camp for

---

[6] At oral argument, Sheriff Woody asserted, without citing a basis, that if the Court did not exclude Dr. Twente's testimony, Sheriff Woody should be allowed to review the confidential Report of the Guardian Ad Litem ("GAL Report"), (ECF No. 164).  The Court denied Sheriff Woody's request without prejudice because he had filed no written motion, and because he offered no factual or legal basis that would allow him to access to the GAL Report.

Sheriff Woody has since filed a Motion to Disclose Guardian ad Litem Report. (ECF No. 257.)  Plaintiff responded to Woody's Motion. (ECF No. 287.)

children who have lost a parent, sibling, or legal guardian. Dr. Twente's opinions are based upon her education, training, and over twenty years of experience as a child psychologist. Dr. Twente's opinions rest, if not on "scientific" knowledge, certainly on "specialized" knowledge as described in Federal Rule of Evidence 702.[7] Of course, the test for admissibility of expert opinion applies to all proffered specialized knowledge, not solely scientific expert testimony. *Kumho Tire,* 526 U.S. at 141.

Dr. Twente based her opinions in part on information she gathered during an interview with Plaintiff, Plaintiff's husband, and G.J.; and two individual sessions with G.J. Based on these interviews, her observations of G.J., and "a body of social science research," Dr. Twente offers, *inter alia*, the following opinions:

(1)   G.J. is "very attached in a loving and secure manner with each of her maternal grandparents." (*Id.* at 5.)

(2)   G.J. is "coping with the profound and enduring loss of her own biological mother and that makes her young life much more complicated and difficult due to her mother's early death." (*Id.*)

(3)   G.J. has "expressed persistent worries about who would care for her should her grandparents die." (*Id.*)

(4)   G.J.'s "questions about her missing parents will only intensify as she develops cognitively and attains a deeper understanding of her orphan status." (*Id.*)

(5)   G.J.'s sense of "feeling very different from her peers will remain a constant in her young life and will set [her] apart from her peers." (*Id.*)

(6)   G.J. "risks feeling isolated and alone in her present circumstance." (*Id.*)

---

[7] In determining whether proffered expert testimony is sufficiently reliable so as to assist the trier of fact, courts should consider several non-dispositive factors: (1) whether the expert's methodology can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and, (4) whether the theory or technique has gained general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 593–94.

(7)   G.J. mourns her own mother's death and she grieves and actively misses her mother currently." (*Id.*)

(8)   "Traumatic and complicated grief reactions are commonly found in situations in which loved ones feel that a person's death could have been prevented. This type of death is difficult for loved ones to hear or recover from . . . ." (*Id.* at 5–6.)

(9)   G.J., because her skin and hair color are darker than her grandparents', "has the additional challenge of feeling slightly different than those people who care for her." (*Id.* at 6.)

(10)  "[A] body of social science research . . . documents the consistent finding that growing up following the death of a parent places a child at additional risk for many negative outcomes including increased risk for psychopathology of anxiety and depression, more peer relationship problems, increased behavioral problems[,] and an increase in the likelihood of substance use and abuse." (*Id.*)

(11)  "The death of a parent is profound and lasting and impacts a person throughout their lifespan." (*Id.*)

(12)  "[C]hildren who lose a parent at a very early age are additionally vulnerable because they don't have many years of memories to draw from throughout the course of their life." (*Id.*)

(13)  "A child whose parent dies when they [sic] are as young as three years of age often feels as they [sic] grow older that their [sic] parent was not at all present to guide them [sic] during the most important years of their [sic] life." (*Id.* at 6–7.)

(14)  "Life as an orphan—without either a biological mother or father living—can be quite difficult and can cause a child to feel very inadequate and alone." (*Id.* at 7.)

(15)  Ms. Jenkins's death "presents a lasting tragedy for" G.J.. "G.J. will have a long road ahead in which she strives to understand more about her biological mother and how she might cope in the face of an entire life spent without her." (*Id.*)

(16)  As G.J. "grow[s] and develop[s] a solid sense of [herself,]" she will not have "important input from her biological mother, Erin Jenkins." (*Id.*)

7

### 1.  <u>Dr. Twente's Opinions are Reliable</u>

In determining whether a proffered expert's opinions are reliable, the district court must focus on "the 'principles and methodology' employed by the expert, not on the conclusions reached." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 594–95). When experts in a particular field rely on facts or data on which "experts in the particular field would reasonably rely," the facts or data need not be admissible for the opinion itself to be admitted. Fed. R. Evid. 703.

In reaching her conclusions, Dr. Twente relies on her observation of and interaction with G.J. during one interview with G.J., Plaintiff, and Plaintiff's husband, and two interviews with only G.J. Dr. Twente also relies on social science research that discusses the effects of losing a parent.[8] Contrary to Sheriff Woody's protestations that this data constitutes "unsupported opinions provided by the decedent's parents . . . rather than the application of any specialized knowledge," (Mem. Supp. 5–6), clinical interviews and social science research constitute *precisely* the sort of data on which experts in the specialized field of psychology would reasonably rely. Dr. Twente, a clinical child psychologist, may rely on the interviews she conducted because they typify the facts or data on which experts in her field would reasonably rely, Fed. R. Evid. 703, and the technique that has gained general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 593–94.

Sheriff Woody's arguments regarding the reliability of Dr. Twente's opinions go to weight, not admissibility. The Court remains mindful that, "[t]he inquiry to be undertaken by the

---

[8] Sheriff Woody insists, without factual or expert backing, that "the research articles provided by Dr. Twente are deeply flawed [and] there is no basis to conclude these limited research studies provide a reasonable or reliable method to evaluate the child's future." (*Id.*) Such a challenge founders because it leaves both the Court and Plaintiff unable to discern where and how the articles fail to inform. Sheriff Woody may exercise proper challenges on cross-examination.

8

district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert." *Westberry*, 178 F.3d at 261 (quoting *Daubert*, 509 U.S. at 594–95).  A district court "need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct.  As with all other admissible evidence, expert testimony is subject to being tested by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Westberry*, 178 F.3d at 261 (quoting *Daubert*, 509 U.S. at 596) (alteration in original) (internal citation omitted).

Sheriff Woody will have the opportunity to cross-examine Dr. Twente, within proper bounds, about the reliability of her methodology and any conclusions she reaches.  The Court finds Dr. Twente's opinions meet the required showing of factual and data underpinning, and of reliable principles and methods, applied reliably to the facts of this case.  *See* Fed. R. Evid. 702.

### 2. <u>Dr. Twente's Opinions are Relevant</u>

Determining the relevance of an expert's opinions "requires an analysis of whether the opinion is relevant to the facts at issue." *Westberry*, 178 F.3d at 261.  Dr. Twente's opinions regarding the "emotional distress[] and mental anguish that [G.J.] has suffered, is suffering, and is reasonably certain to suffer in the future" are clearly relevant to the issue of damages in this case.  Plaintiff avers that "the surviving beneficiaries of Ms. Jenkins[] have suffered and will continue to suffer sorrow, mental anguish, loss of companionship, [and] loss of comfort . . . ."[9] (Third Am. Compl. ¶ 178, ECF No. 92.)  Dr. Twente's opinions *directly* address this issue.  Further, contrary to Sheriff Woody's assertions at oral argument, Dr. Twente's opinions do not

---

[9] Plaintiff also seeks "monetary relief consisting of compensatory . . . damages in the amount to be established at trial." (Third Am. Compl. ¶¶ 123, 142.)  Dr. Twente's opinions regarding G.J.'s emotional trauma could also be relevant to these requests. *See* Va. Code. 8.01-52 (allowing damages in a wrongful death suit to include damages for, *inter alia*, sorrow and mental anguish).

consist merely of general statements about any five-year-old who lost a parent. Dr. Twente's opinions numbers (1), (3), (5), (7), (9), and (16) all speak of G.J. *specifically*, and how Ms. Jenkins's death has affected and will continue to affect G.J. Dr. Twente's opinions are specific to G.J. and relevant to the facts at issue. Dr. Twente do not rise to speculation, nor will they confuse or mislead the jury.

Moreover, "the testimony of psychologists, psychiatrists, or other duly qualified health care professionals is regularly received by courts in the Commonwealth on the issue of the emotional distress or mental anguish sustained by a party entitled to compensation such as [G.J.]" *Sperry v. Schuyler Enterprises, Inc.*, 31 Va. Cir. 200, at *1 (Va. Cir. 1993). Virginia law expressly allows a statutory beneficiary, G.J. in this case, to be compensated for the mental anguish she has suffered as a result of a loss of her mother. Va Code. 8.01-52(1). "'When[, as here,] the case is a proper one for the recovery of damages for mental anguish . . . *any competent evidence* which tends to establish or dispute the fact that the plaintiff suffered mental anguish as a result of the defendant's act is admissible.'" *Sperry*, 31 Va. Cir. at *3 (second alteration in original) (emphasis added) (quoting 22 Am. Jur. 2d Damages § 932). A psychologist's expert opinions, such as Dr. Twente's, are helpful to "provide a reasonably reliable basis" for awarding damages "and to prevent the jury from falling into speculation, conjecture, and sympathy." *Id.* (internal citations and quotation marks omitted). Dr. Twente's opinions certainly constitute "competent evidence which tends to establish . . . the fact that [G.J.] suffered mental anguish" as a result of Ms. Jenkins's death. *See id.* As such, it satisfies the relevance requirement of Federal Rule of Evidence 702.

As did his arguments regarding reliability, Sheriff Woody's positions on the relevance of Dr. Twente's opinions go to weight, not admissibility. Bearing in mind that the Court must

10

undertake a flexible inquiry focusing on the principles and methodology Dr. Twente employed, the Court finds that Dr. Twente's opinions are "relevant to the facts at issue." *Westberry*, 178 F.3d at 261 (citing *Daubert*, 509 U.S. at 592). Additionally, Dr. Twente's opinions stem from information which an expert in Dr. Twente's field "would reasonably rely on . . . in forming an opinion on the subject." Fed. R. Evid. 703. To the extent Sheriff Woody seeks to challenge Dr. Twente's opinions as something short of irrefutably correct, he may test that through appropriate rigorous cross-examination. The Court finds Dr. Twente's opinions sufficiently relevant to admit them pursuant to Federal Rule of Evidence 702.

### 3.     The Risk of Unfair Prejudice From Dr. Twente's Opinions Does Not Substantially Outweigh their Probative Value

Federal Rule of Evidence 403 allows courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

> [T]he mere fact that the evidence will damage the defendant's case is not enough—the evidence must be unfairly prejudicial, and the unfair prejudice must substantially outweigh the probative value of the evidence. Evidence is unfairly prejudicial . . . when there is a *genuine risk* that the emotions of a jury will be *excited to irrational behavior*, and . . . this risk is disproportionate to the probative value of the offered evidence.

*United States v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008) (emphases added). Dr. Twente's opinions present no such risk.

As to prejudice, the jury will hear evidence, *inter alia*, that G.J., a five-year-old girl, mourns her mother's death, feels different from her peers, and might feel more isolated and alone in the future. That prejudice, however, is not *unfair*—the evidence Plaintiff offers about G.J.'s emotional distress simply constitutes alleged facts of the case. Although "the evidence

11

[regarding G.J.'s emotional distress might] damage [Sheriff Woody's] case," no risk exists, much less a *genuine* risk, that the jury's emotions will be "excited to irrational behavior."[10] *See Lentz*, 524 F.3d at 525. Moreover, Dr. Twente's testimony will be subject to cross-examination, and weighed within the evidence as a whole.

Even if a risk of unfair prejudice existed, it does not substantially outweigh the probative value of Dr. Twente's opinions. Dr. Twente's opinions are relevant, reliable, and go specifically to an issue of damages. Her opinions carry significant probative value, and any risk of unfair prejudice would not substantially outweigh that probative value. The Court will not exclude Dr. Twente's opinions under Federal Rule of Evidence 403.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Sheriff Woody's Motion to Exclude, (ECF No. 155.) The Court will allow the testimony of Dr. Allison Twente, Ph.D.

Let the Clerk send a copy of this Memorandum Order to all counsel of record.

It is so ORDERED.

/s/

M. Hannah Lauck
United States District Judge

Date: 1/25/17
Richmond, Virginia

---

[10] Plaintiff also aptly points out that "having a psychologist present testimony instead of a five year old child who has lost her mother would [possibly] prevent unfair prejudice from occurring." (Pl.'s Opp'n 5.)

12