**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**CAROLYN CLARK,**
*on behalf of herself and all*
*similarly situated individuals,*

      **Plaintiffs,**

v.                               **Civil Action No. 3:15cv391**

**TRANS UNION, LLC,**

      **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on the Motion for Class Certification filed by Plaintiff Carolyn Clark, on behalf of herself and all similarly situated individuals. (ECF No. 66.) Defendant Trans Union, LLC ("TransUnion") has responded to the Motion for Class Certification, (ECF No. 82), and Clark has replied, (ECF No. 104). The Court heard oral argument on February 23, 2017. Accordingly, the matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[1] For the reasons that follow, the Court will grant the Motion for Class Certification.

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The First Amended Class Complaint alleges violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §§ 1681 *et seq.*

# I. Procedural and Factual Background[2]

## A.       Procedural Background

Clark, the named plaintiff, asserts six counts against TransUnion:  one proposed class

claim and five individual claims.  Count I, the "Disclosure of Sources Claim" or the "Class

Claim" alleges a putative class action arising out of TransUnion's violations of 15 U.S.C.

§ 1681g(a)(2)[3] of the FCRA, which requires that consumer reporting agencies "clearly and

accurately" disclose to consumers "[t]he sources of information" in their credit files.  15 U.S.C.

§ 1681g(a)(2).  Clark alleges that TransUnion's violations of § 1681g(a)(2) entitle each

consumer who received his or her credit file with incorrect source information to statutory

damages under § 1681n(a) between $100 and $1,000.[4]

---

[2] The Court assumes familiarity with the facts and procedural background of this case as set forth in its December 9, 2016 Memorandum Opinion. *Clark v. Trans Union, LLC*, No. 3:15cv391, 2016 WL 7197391 (E.D. Va. Dec. 9, 2016) (the "December 2016 Opinion").

[3] Section 1681g(a)(2) provides in full:

**(a) Information on file; sources; report recipients**

Every consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer:

. . . .

**(2)** The sources of the information; except that the sources of information acquired solely for use in preparing an investigative consumer report and actually used for no other purpose need not be disclosed: ***Provided,*** That in the event an action is brought under this subchapter, such sources shall be available to the plaintiff under appropriate discovery procedures in the court in which the action is brought.

15 U.S.C. § 1681g(a)(2).

[4] Section 1681n(a) provides that "[a]ny person who willfully fails to comply with" the FCRA "is liable to that consumer" for "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000" and "such amount of punitive damages as the court may allow." 15 U.S.C. § 1681n(a).

Following the Supreme Court of the United States' opinion in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016), TransUnion moved to dismiss this case on the grounds that Clark and the proposed class lack standing. In its December 2016 Opinion, the Court denied TransUnion's motion, explicitly rejecting TransUnion's contention that each class member would need to prove individualized injury in fact based on harm suffered beyond the violation of § 1681g(a)(2) itself. *Clark*, 2016 WL 7197391, at *11; *see also Thomas v. FTS USA, LLC*, No. 3:13cv825, 2016 WL 3653878 (E.D. Va. June 30, 2016). The Court explained:

> *Thomas* correctly acknowledged that Congress enacted several substantive, and not merely procedural or technical, rights to protect specific information in the FCRA. Analyzing § 1681b(b)(2) and an unauthorized disclosure of personal information, the *Thomas* court aptly quoted *Spokeo*'s reliance on *Akins* and *Public Citizen* when stating that "the violation of a procedural right granted by statute can be sufficient in some circumstances to establish an injury in fact." 2016 WL 3653878, at *11. "In other words," the *Thomas* court explained, "a plaintiff in such a case need not allege any <u>additional</u> harm [*e.g.*, actual damages] beyond the one Congress has identified." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549) (emphasis in original). Again relying directly on *Spokeo*, the *Thomas* court also confirmed that even a *risk* of real harm might satisfy the concreteness requirement. *Id.* (citing *Spokeo*, 136 S. Ct. at 1549) (emphasis added). This Court agrees with *Thomas* that a consumer need not necessarily prove any more harm than that suffered as a result of the deprivation of FCRA information to which he or she is entitled. The purpose of the FCRA as articulated in legislative history supports this point.

*Clark*, 2016 WL 7197391, at *9. In a footnote, the Court continued: "Mere factual differences . . . do not end the analysis. The finding of injury in fact in these decisions rests in large part on the consumer's inability to monitor his or her file for falsity when not provided the relevant information." *Id.* at *10 n.20 (citing *Patel v. TransUnion, LLC*, No. 14cv00522–LB, 2016 WL 6143191, at *4 (N.D. Cal. Oct. 21, 2016) ("[A] consumer cannot monitor [his or] her file for falsity if [he or] she is not given the relevant information. That impediment, that non-disclosure, is thus a real injury. At the very least, preventing a consumer from monitoring [his or] her file presents a 'risk of real harm' of exactly the type that [the] FCRA seeks to prevent (*i.e.*, the

dissemination of incorrect information); and this risk can itself 'satisfy the requirement of concreteness.'")).

When highlighting the remedial purpose of the FCRA, the Court noted that "Congress intended that the FCRA be construed to promote the credit industry's responsible dissemination of accurate and relevant information and to maintain the confidentiality of consumer reports." *Id.* at * 8 (citing *Thomas*, 2016 WL 3653878, at *7–8). Moreover, "Congress sought 'to establish [ ] the *right of a consumer to be informed* of investigations into his [or her] personal life.'" *Id.* (citing *Thomas*, 2016 WL 3653878, at *8). With respect to disclosure provisions in particular, including § 1681g(a), the Court concluded that the FCRA "promotes consumer oversight of compliance . . . by informing consumers of the source of the reported information, thereby advancing the broader purposes of 'fair and accurate credit reporting.'" *Id.* (quoting *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 941 (7th Cir. 2007)). Looking to these purposes of the FCRA, the Court ultimately reasoned that the "failure to reveal source information reflects the type of harm, or injury in fact, that *Spokeo* recognizes as 'concrete' and 'particularized.'" *Id.* at *9.

Despite this Court's December 2016 Opinion, TransUnion relentlessly pursues its preferred interpretation of *Spokeo*'s effect on defining a "concrete" injury. (*See, e.g.*, Opp'n Mot. Strike 10, ECF No. 117 ("*Spokeo* clarified that a plaintiff does not satisfy the 'injury-in-fact requirement by merely alleging a violation of a statutory right, but must demonstrate a concrete injury even in the context of a statutory violation." (citations omitted)).) As discussed below, to the extent TransUnion proffers more recent cases that have interpreted *Spokeo* differently, none persuade the Court to reconsider its December findings.

### *In re Michaels Stores, Inc.*

For instance, TransUnion suggests that *In re Michaels Stores, Inc.*, No. 2:15cv2547, 2017 WL 354023 (D.N.J. Jan. 24, 2016), concluded that bare procedural violations of the FCRA do not satisfy the injury-in-fact requirement of a standing analysis. But the *Michaels Stores* decision provides no analysis on the legislative history of the FCRA, or the purpose of the statutory provision at issue. It thus ignores *Spokeo*'s requirement to consider the judgment of Congress when evaluating whether an intangible injury satisfies the "concreteness" requirement. *Spokeo*, 136 S. Ct. at 1549. *Spokeo* recognized that Congress "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quotation omitted). But *Michaels Stores,* without elaboration, unpersuasively dismisses *Spokeo*'s guidance in conclusory fashion. 2017 WL 354023, at *7. And *Michaels Stores* differs factually in an important way: those plaintiffs "concede[d] that they d[id] not plead any concrete harm." *Id.* at *3. Perhaps in view of this pleading error, the *Michaels Stores* court permitted plaintiffs leave to file amended complaints. *Id.* at *12.

### *Cruper–Weinmann v. Paris Baguette America, Inc.*

Relying on *Cruper–Weinmann v. Paris Baguette America, Inc.*, No. 13 CIV. 7013, 2017 WL 398657, at *3 (S.D.N.Y. Jan. 30, 2017), TransUnion next contends that *Spokeo* created a two-part test to establish concrete injury: (1) that the case involves a specific right created by "Congress . . . to protect a concrete interest of the plaintiff"; and, (2) that "the alleged violation of [a] right presented a material risk of harm to that concrete interest." (Opp'n Mot. Strike 10.) However, TransUnion cites no Fourth Circuit cases performing such a two-step inquiry, and the Court sees none. But even assuming that *Cruper-Weinmann*'s test for informational injury was sound, Clark likely would satisfy it. This Court has recognized that Clark, and anyone not notified that LexisNexis was a source of public records information, has suffered the violation of

5

a right created by Congress. *See Clark*, 2016 WL 7197391, at *11. The violation of that right creates "a material risk that LexisNexis could . . . report inaccurate information to others in the future." *Id.* (emphasis added).

In *Cruper-Weinmann*, on the other hand, the plaintiff could not assert standing under the Fair and Accurate Credit Transactions Act (the "FACTA") because she did not suffer *a risk of harm* after a restaurant printed a receipt that displayed the expiration date of her credit card. The court explained:

> In 2007, FACTA was amended in order to provide a retrospective safe harbor to persons who had previously printed an expiration date on a receipt but otherwise complied with FACTA's requirements. Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110–241, 122 Stat. 1565. That amendment contained Congress's finding that "[e]xperts in the field agree that proper truncation of the card number, by itself as required by [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud." § 2(a)(6).

*Cruper–Weinmann*, 2017 WL 398657, at *1. As such, the statutory violation in *Cruper-Weinmann*, unlike TransUnion's alleged violations of § 1681g(a)(2), resulted in no risk of harm to the plaintiff. Accordingly, even were TransUnion's standing argument before this Court properly, it likely would fail.

TransUnion also had sought to strike class certification in its Motion to Dismiss. In the December 2016 Opinion, the Court rejected that challenge as untimely because class certification would be "more appropriately [brought] on the more complete record than the parties' briefing" then provided. *Clark*, 2016 WL 7197391, at *5. Although discovery disputes continue to plague this litigation,[5] the Court now considers the Motion for Class Certification.[6]

---

[5] As a result of, among other things, myriad discovery disputes, in its December 2016 Opinion, the Court continued the trial date generally and suspended all existing deadlines. The Court heard argument on the parties' discovery disputes on February 21, 2017. The Court issues its determinations regarding discovery in a separate opinion filed simultaneous to this one.

### B.    Factual Background

As noted in the December 2016 Opinion, although the Motion for Class Certification pertains exclusively to Clark's ability to certify the class and advance the Class Claim, Clark's five individual counts provide context to the entire action.  Accordingly, the Court outlines the Class Claim, Clark's individual claims, and the facts framing all allegations below.

### 1.    The Named Plaintiff's Individual Claims (Counts II through VI)

Clark alleges that on August 7, 2014, TransUnion provided to her a copy of her credit file that incorrectly listed two civil judgments entered against her.  TransUnion listed the sources of the two judgments as "Henrico District Court" and "Virginia Federal Court," respectively.  (First Am. Class Compl. ¶ 27.)  Clark contends that another source of the judgments was LexisNexis, the third-party vendor that retrieved the data.

Quik Cash allegedly entered one of the judgments against Clark in November 2008 in the amount of $575, even though that judgment had been appealed and dismissed.  Clark submitted multiple demand letters requesting that TransUnion correct its error.  TransUnion, however, purportedly failed to conduct a "timely and reasonable reinvestigation" and continued to report the Quik Cash judgment as unpaid.  (*Id.* ¶ 35.)

These events, according to Clark, give rise to five individual claims.  Count II, the "Reasonable Procedure Claim," proceeds under 15 U.S.C. § 1681e(b).[7]  Count III, the

---

[6] Neither TransUnion nor Clark sought permission to file supplemental briefing on class certification following the December 2016 Memorandum Opinion.  TransUnion also did not seek an interlocutory appeal.

[7] In Count II, Clark alleges that TransUnion failed "to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of [her] credit report and credit filed it published and maintained."  (First Am. Class Compl. ¶ 75.)

"Reasonable Reinvestigation Claim," invokes 15 U.S.C. § 1681i(a)(1).[8] Count Four, the "Failure

to Send Furnisher all Relevant Information Claim," cites 15 U.S.C. § 1681i(a)(2).[9]  Count Five,

the "Failure to Review Consumer Communication Claim" relies upon 15 U.S.C. § 1681i(a)(4).[10]

Finally, Count Six, the "Failure to Delete Claim," proceeds under 15 U.S.C. § 1681(a)(5).[11]  For

each of these five individual claims, Clark seeks actual damages, statutory damages, punitive

damages, costs, and attorneys' fees under §§ 1681n and 1681o.[12]

---

[8] In Count III, Clark contends that TransUnion failed to "conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently delete the information from the file." (First Am. Class Compl. ¶ 81.)

[9] In Count IV, Clark claims that TransUnion failed to send to the furnishers all relevant information that it received in [her] dispute letter." (First Am. Class Compl. ¶ 86.)

[10] In Count V, Clark asserts that TransUnion failed to" review and consider all relevant information that it received in [Clark's] communications." (First Am. Class Compl. ¶ 91.)

[11] In Count VI, Clark alleges that TransUnion failed to "delete any information that was subject to [her] disputes that was inaccurate or could not be verified." (First Am. Class Compl. ¶ 96.)

[12] Section 1681o provides, in relevant part:

**(a) In general**

> Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
>
> > (1) any actual damages sustained by the consumer as a result of the failure; and[,]
> >
> > (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681o.

### 2.    The Class Claim (Count I)

In the Class Claim, Clark alleges that TransUnion violated § 1681g(a)(2) by failing to

convey on her credit file that LexisNexis was a source of the judgment information.  To advance

the claims of similarly situated individuals, Clark proposes to certify a class as follows:

> All natural persons residing in the Fourth Circuit[:] (a) who requested their
> consumer file from Trans Union or any of its affiliated companies, subsidiaries, or
> any other Trans Union entity, (b) within five years preceding this filing of this
> action and during its pendency, and[,] (c) to whom Trans Union provided a
> response that did not include any reference to its public records vendor as the
> source of public records information within the consumer's file disclosure.
> Excluded from the class definition are any employees, officers, or directors of
> Trans Union, any attorney appearing in this case, and any judge assigned to hear
> this action.

(First Am. Class Compl. ¶ 62.)  Clark seeks statutory and punitive damages in the amount of not

less than $100 and not more than $1,000 per violation per class member, as set forth in 15 U.S.C.

§ 1681n(a).

## II.    Analysis

Clark seeks to certify a class comprised of individuals who received credit reports from

TransUnion "that did not include any reference to its public records vendor as the source of

public records information within the consumer's file disclosure." (First Am. Class Compl.

¶ 62.) At the heart of the Class Claim rests the straightforward allegation that TransUnion has a

systemic procedure of willfully omitting its source of public records information in its consumer

reports.  In spite of this direct theory of liability, TransUnion opposes certification.

TransUnion's opposition to the Motion for Class Certification repeatedly highlights the

factual differences regarding the purported inaccuracies on the class members' consumer reports.

TransUnion proffers this argument in several ways, ultimately contending that these disparities

necessarily mean that the class members suffered different injuries.  According to TransUnion,

such dissimilarities cannot survive the rigorous analysis this Court must undertake before

certifying a class under Federal Rule of Civil Procedure 23.[13]   In so arguing, TransUnion either continues to dispute this Court's ruling on standing[14] or it erroneously adds an element of accuracy to § 1681g(a)(2)'s plain language. Both of TransUnion's arguments founder. The Class Claim seeks redress not for *inaccurate* public records information, but for TransUnion's failure to disclose *the sources* of public records information on the class members' consumer reports—irrespective of the accuracy of the information those sources provide.

For the reasons stated below, Clark readily meets the Rule 23 requirements. The Court will certify the class.

A.    **Standard for Class Certification**

Clark, as plaintiff, bears the burden of proving all requirements of Rule 23. *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). First, her proposed class must satisfy the four requirements of Federal Rule of Civil Procedure 23(a).[15] Those requirements are that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the class representative's claims or defenses are typical of those of the class; and, (4) the class representative will fairly and adequately represent the interests of the class. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998).

---

[13] Rule 23 provides the requirements a plaintiff must satisfy in order to certify a class under the Federal Rules of Civil Procedure.

[14] Without reference to this Court's decision or the decisions of its sister courts, TransUnion continued to advance its theory on standing at oral argument and in the briefing discussed above. *See* pp. 5–6 *supra.* At oral argument, TransUnion suggested that its standing challenge at the class certification stage differs from that raised in its Motion to Dismiss because the Court no longer must accept Clark's allegations as true. The distinction raised by TransUnion ignores that the December 2016 Opinion decided a *legal* question of what constitutes an injury in fact.

[15] Rule 23(a) lists four requirements that a class representative must meet in order to sue on behalf of a class. Fed. R. Civ. P. 23(a).

Second, Clark's proposed class must align with at least one of the types of class actions delineated in Federal Rule of Civil Procedure 23(b),[16] and meet the corresponding prerequisites for certification. Here, Clark moves for certification under Rule 23(b)(3). A court may certify a class under Rule 23(b)(3) when it finds that: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and, (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As the United States Court of Appeals for the Fourth Circuit has explained, courts need not "accept plaintiffs' pleadings when assessing whether a class should be certified." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004). Rather, "the district court must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (quoting *Gariety*, 368 F.3d at 365). "Such findings can be necessary even if the issues tend to overlap into the merits of the underlying case," but "[t]he likelihood of the plaintiffs' success on the merits . . . is not relevant to the issue of whether certification is proper." *Id.* (internal citations omitted).

The Supreme Court recently elaborated on a district court's ability to make factual determinations at the class certification stage in *Wal-Mart Stores, Inc. v. Dukes*, 541 U.S. 338 (2011). In *Dukes*, the Supreme Court explained:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, *etc.* We recognized in *Falcon* that

---

[16] Rule 23(b) outlines three types of class actions, including the type proposed here: one involving "questions of law or fact common to class members [that] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

"sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."

541 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982) (emphasis in original)). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."[17] *Id.* at 351.

**B.     Clark Satisfies the Requirements of Rule 23**

As delineated above, Clark must satisfy the numerous requirements of Rule 23 before this Court may certify the proposed class. Upon review, the Court determines that Clark has done so. The Court will address the requirements of Rule 23(a) and Rule 23(b) seriatim.

**1.     Clark Satisfies the Four Requirements of Rule 23(a)**

Clark's class satisfies the four requirements of Rule 23(a): (1) numerosity of the class makes joinder of all members impracticable; (2) there are questions of law or fact common to the class; (3) Clark's claims typify those of the class; and, (4) Clark will fairly and adequately represent the interests of the class. *See Broussard*, 155 F.3d at 337.

---

[17] After *Dukes*, in *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184 (2013), and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), the Supreme Court expounded upon the extent to which a court may address merits issues at the class certification stage. In *Amgen*, the Court explained that, "[a]lthough we have cautioned that a court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." 133 S. Ct. at 1194. The *Amgen* Court continued: "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1194–95 (internal citations omitted). In *Comcast*, the Supreme Court elucidated that the "rigorous analysis" required for class certification also reaches damages and causation. 133 S. Ct. at 1434–35.

### a.   Clark's Class is So Numerous That Joinder of All Members is Impracticable

Appropriately, TransUnion does not oppose Clark's assertion that numerosity makes joinder of all class members impracticable.  Clark easily satisfies this requirement.  Although no there is no minimum number of potential class members needed to fulfill the numerosity requirement, *see Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984), joinder usually becomes impracticable where the class exceeds 40 members, *see Kennedy v. Va. Polytechnic Inst. & State Univ.*, No. 7-08cv00579, 2010 WL 3743642, at *3 (W.D. Va. Sept. 23, 2010).[18]

Here, Clark suggests that "the putative class will number in the hundreds of thousands if not in the millions." (Mem. Supp. Mot. Class Certification 9, ECF No. 67.)  Clark demonstrates that, at a minimum, the class size exceeds 4,227 members.  That figure reflects the number of class members who could have received their TransUnion consumer file via credit monitoring in the wake of the *Souter v. Trans Union LLC* settlement.[19]

---

[18] In *Kennedy*, the court explained that, although courts are reluctant to certify classes with fewer than 25 members, they are "much more willing to certify a class if it has more than 40 members." *Kennedy*, 2010 WL 3743642, at *3 (citing cases).

[19] In *Souter v. Trans Union, LLC*, the class representative brought suit against TransUnion asserting a class claim pursuant to 15 U.S.C. § 1681e(b), which requires that "consumer reporting agenc[ies] . . . follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual[s] about whom the report[s] relate[]." Souter sought to certify a class of individuals who received a consumer report from TransUnion reporting a judgment that had been set aside, vacated, or dismissed with prejudice.  The parties ultimately agreed to settle the class claim.  In a joint motion for approval of the class settlement, the class administrator declared the existence of 160,876 potential class members. *Souter v. Trans Union, LLC*, Civ. No. 3:10cv514, ECF No. 56-1, at 2 (E.D. Va. May 31, 2014).  Of those potential class members, 4,227 class members requested free crediting monitoring subscriptions—the relief obtained by the class settlement. *Id.* at 4.  Given that the proposed class claim at bar requires only that class members received a consumer report from TransUnion omitting information about sources—and does not require further proof of judgments that have been set aside, vacated, or dismissed with prejudice—the number of class members in Clark's proposed class necessarily exceeds that in *Souter*.

The Court must also determine whether it can ascertain Clark's class. *See Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 196 (E.D. Va. 2015) ("In order to certify a class under Rule 23, a court must be able to readily identify the class members in reference to objective criteria. Although the plaintiff need not be able to identify every class member at the time of certification, the plaintiff must demonstrate that class members will be identifiable without extensive and individualized fact-finding or mini-trials." (internal quotation marks and citations omitted)). TransUnion has admitted in discovery that it has the ability "to determine from [its] records the identity and number of disclosures [it] sent to consumers" with "an address in the Fourth Circuit and an item in the 'Public Records' section of their report." (Responses of TransUnion to Clark's First Set of Requests for Admission No. 15, ECF No. 66-2.)[20] In light of TransUnion's own admission, the Court finds that Clark can ascertain and identify the class.[21]

---

[20] The discovery response submitted to the Court did not include TransUnion's admission to Request for Admission No. 15. At oral argument, the parties confirmed that TransUnion provided a supplemental response that confirmed that it has the ability "to determine from [its] records the identity and number of disclosures [it] sent to consumers" with "an address in the Fourth Circuit and an item in the 'Public Records' section of their report."

[21] TransUnion argues that the Court cannot ascertain Clark's class because "she fails to limit her class definition to persons with 'concrete' injury, as mandated by *Spokeo*." (Opp'n Mot. Class Certification 16, ECF No. 82.) TransUnion explains that Clark makes "no effort to limit the proposed class to persons with inaccurate information in their credit files, and [Clark] fails to show how a person whose file was perfectly accurate was concretely harmed by not knowing the specifics of how TransUnion collected the accurate information." (*Id.* (citing Stango Decl. ¶¶ 50, 59–64).) Thus, TransUnion continues to argue that Clark (and the class members) must have suffered some harm beyond an informational injury in order to allege that TransUnion violated § 1681g(a)(2). In support of this contention, TransUnion repeatedly cites the "Declaration" of Dr. Victor Stango, its offered expert on consumer behavior regarding financial matters, as proof that Clark cannot make such a showing. (*See* Stango Decl., ECF No. 87.)

The conclusions in Dr. Stango's Declaration amount to four opinions: (1) only a small fraction of the putative class members could have suffered any concrete injury; (2) because each class member's injury is predicated on inaccuracies that originated with LexisNexis, it would require individualized inquiries to determine which putative class members suffered concrete injuries; (3) no objective method exists to determine which consumers would benefit from the

**b.**     **Questions of Law or Fact Are Common to the Class**

Two questions underlie the proposed class action: (1) whether TransUnion's uniform

policy to withhold the disclosure of LexisNexis as its source of public records information

violated § 1681g(a)(2); and, (2) whether TransUnion acted willfully in withholding this

information. These questions, common to the class, satisfy Rule 23(a)(2).

Rule 23(a)(2) requires that class members' claims involve common questions of law or

fact. Fed. R. Civ. P. 23(a)(2). "The commonality requirement focuses on the claims of the class

as a whole, and whether they turn on questions of law applicable in the same manner to each

member of the class.'" *Soutter*, 307 F.R.D. at 199 (quoting *Califano v. Yamasaki*, 442 U.S. 682,

701 (1979)). "To satisfy this requirement, there need be only a single issue common to the

class." *Id.* (citing *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636

(D.S.C. 1992), *aff'd* 6 F.3d 177 (4th Cir. 1993)). Clark, however, cannot merely allege that the

class members "have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at

360. "Commonality requires the plaintiff to demonstrate that the class members have suffered

the same injury." *Id.* That is, the "common contention . . . [must be] of such a nature that it is

capable of classwide resolution—which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

---

disclosure of LexisNexis; and, (4) no objective method exists to determine whether the
disclosure of LexisNexis would provide greater information value to consumers.
     Even in the face of the rigorous analysis that this Court must undertake when determining
whether to certify Clark's class, Dr. Stango's opinions on concrete injury do not move the
needle. Indeed, Dr. Stango's opinion about what constitutes a concrete injury has no bearing on
the class certification issue. To the extent it must, the Court reiterates its finding that Clark
alleged a concrete injury by virtue of the § 1681g(a)(2) violation itself. No amount of expert
*evidence* changes that *legal* conclusion. For the same reason, TransUnion's reliance on the
Declaration of one of its employees, Kimberly Bye, attesting to the number of consumers who
had disputes with TransUnion resolved in their favor, does not persuade. (Bye Decl., ECF No.
88.) Not only does her Declaration fail to articulate the foundation for its findings, at best, it
attempts to refute an assertion (*i.e.*, the existence of harm beyond informational injury) that Clark
need not prove.

Clark submits that FCRA cases, and specifically those involving violations of

§ 1681g(a)(2), have repeatedly been held to satisfy the commonality requirement of Rule

23(a)(2).[22] The Court agrees. In spite of such authority, TransUnion contends that "proving the

class claim will require a review of every single credit file to determine whether *the public*

*records information* contained therein was in fact *inaccurate*." (Opp'n Mot. Class

Certification 18 (emphasis added).) TransUnion argues that "a consumer who received a credit

file with accurate public record information has no need to seek correction, and therefore *could*

*not have been affected at all* by not being told the details of how TransUnion retrieved the data."

(*Id.* (emphasis added).) By making this argument, TransUnion again appears to: (1) conflate

standing, which this Court has already decided, with the merits; or, (2) add an accuracy element

to the statutory language of § 1681g(a)(2). Both arguments fail.

Section 1681g(a)(2) requires TransUnion to "clearly and accurately disclose to the

consumer . . . [t]he sources of information" found in the consumer's credit report. 15 U.S.C.

§ 1681g(a)(2); *see also Dreher v. Experian Info. Sols., Inc.*, 71 F. Supp. 3d 572, 579 (E.D.

Va. 2014) ("*Dreher II*"). As explained in *Dreher II,*

> The "information" contemplated by the [FCRA] is the actual content of the credit
> items listed on the consumer's credit report. By law, the consumer reporting
> agency must disclose the "sources" of that actual content. Although gifted legal
> minds can create myriad interpretations for how many sources or what kinds of
> sources should be included in the disclosure, the term "sources" clearly includes,
> at the very least, the entity that gives that information directly to the consumer
> reporting agency.

---

[22] *See, e.g., Dreher v. Experian Info. Sols., Inc.*, No. 3:11cv624, 2014 WL 2800766, at *1
(E.D. Va. June 19, 2014) ("*Dreher I*") (finding commonality where the plaintiff "must show that
(1) the information [the consumer reporting agency] provided was inaccurate, (2) in violation of
§ 1681(g)(a)(2) of the FCRA, and (3) [the consumer reporting agency's] violation was willful");
*see also, e.g., Soutter*, 307 F.R.D. at 201–02 (finding commonality on issues of inaccuracy,
reasonableness of procedures, and willfulness); *Manuel v. Wells Fargo Bank Nat'l Assoc.*,
No. 3:14cv238, 2015 WL 4994549, at *10, 12 (E.D. Va. Aug. 19, 2015) (finding commonality
on impermissible use claim and adverse action claim).

71 F. Supp. 3d at 579–80; *see also Dennis v. Trans Union, LLC*, No. 14-2865, 2014 WL 5325231, at *7 (E.D. Pa. Oct. 20, 2014) ("A liberal reading of Section 1681g(a)(2) allows for a definition of 'sources' like that suggested by Plaintiff, which does not limit Defendant's, nor any CRA's, 'sources' to only the original source of information. Defendant's proposed definition, and its reading of 'sources' as excluding the possibility of multiple sources for one piece of information, [is] too narrow in light of the "remedial scheme" Congress intended and the fact that Congress wrote Section 1681g(a)(2) using the plural 'sources' rather than the singular 'source.'").[23] Thus, the focus of the Class Claim must remain on the "sources." No issue exists regarding whether the public record information (as opposed to the sources of information)

---

[23] In spite of *Dreher II* and *Dennis*, TransUnion argues against a reading of § 1681g(a)(2) that deems the direct, rather than what TransUnion calls the "ultimate," source of information in a consumer report as the "source of information" as intended by the statute. That argument falters.

"The analysis of statutory terms begins with the text of the statute." *Milbourne v. JRK Residential Am., LLC*, 92 F. Supp. 3d 425, 431 (E.D. Va. 2015) ("*Milbourne II*") (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed . . . .")). "If the statutory text is clear and unambiguous, the analysis need to go no further." *Id.* (citing *Caminetti*, 242 U.S. at 485 ("Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion.")).

"'In interpreting the plain language of a statute, [courts] give the terms their ordinary, contemporary, [and] common meaning, absent an indication Congress intended [them] to bear some different import." *Id.* at 431–32 (quoting *Crespo v. Holder*, 631 F.3d 130, 133 (4th Cir. 2011)). The dictionary definition of "source" states: "a place, person, or thing from which something comes or can be obtained." *New Oxford American Dictionary* 1669 (3d ed. 2010). While the ordinary meaning of "sources" *could* be read to cover both the entity that provided information to the consumer reporting agency (*e.g.*, LexisNexis) and the place where that information originated (*e.g.*, courts), the term, at least, covers the entity, such as LexisNexis, that actually provided the information to TransUnion. *See Dreher II*, 71 F. Supp. 3d at 579–80; *see also Milbourne v. JRK Residential Am., LLC*, No. 3:12cv861, 2016 WL 4265741, at *9 (E.D. Va. Aug. 11, 2016) ("*Milbourne IV*") ("[A] lack of judicial or administrative guidance cannot salvage an objectively unreasonable interpretation where the statutory text is clear.").

requires correction.[24]  Because the violation Clark and the class allege concerns the accuracy of

"the *sources* of the information" found in the consumer's credit report, if TransUnion

systemically failed to disclose LexisNexis as a source, that contention can be determined "in one

stroke."[25]  *Dukes*, 564 U.S. at 360.

---

[24] TransUnion again weaves into its argument the issue of accuracy and posits that Clark's class will improperly include "uninjured consumers." (Opp'n Mot. Class Certification 18.)  While the Court does not disagree that TransUnion's failure to include LexisNexis as a source of public records information may affect some consumers more than others, the statute does not require any such finding.  The Class Claim rests on the plain allegation that, under § 1681g(a)(2), the class members had a statutory right to accurate information about sources.  By omitting that information, Clark submits, TransUnion violated the statute.  This contention proves common for all class members.

[25] This reading comports with a purpose of the FCRA. *See, e.g., Spokeo*, 136 S. Ct. at 1550 ("Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk."); *see also Thomas*, 2016 WL 3653878, at *7–8 ("Congress intended that the FCRA be construed to promote the credit industry's responsible dissemination of accurate and relevant information and to maintain the confidentiality of consumer reports.").  Knowing the direct source permits a consumer to correct inaccurate information with the entity that disseminated it to the consumer reporting agency.  That, in turn, assists the consumer in making sure that the disseminating entity, as well as TransUnion, foregoes future, possibly harmful dissemination.

TransUnion's policy argument to the contrary does not persuade.  Based in part upon Dr. Stango's testimony, TransUnion contends that including LexisNexis on consumer reports will only confuse consumers seeking to correct inaccurate public records information.  (Opp'n Mot. Class Certification 18 (arguing that the disclosure of LexisNexis would not assist most consumers in reaching "a better outcome").)  Whether TransUnion's inclusion of the correct source information would actually help consumers does not matter when determining the statutory damages sought here.  A plain reading of the statute requires that TransUnion provide the "sources" information in all instances.  To hold otherwise would require this Court to rewrite the statute, by, for instance, substituting "ultimate sources" where Congress included "sources."  That, however, remains a responsibility reserved to Congress.

Even assuming, as TransUnion contends, that Dr. Stango "proves" that disclosing LexisNexis would merely "confuse" consumers and would not have allowed Clark to correct her problem as readily, this record might evince a different "harm."  LexisNexis, to the extent it is covered as a furnisher under 15 U.S.C. § 1681s-2, must correct the records of all three consumer reporting agencies when finding an error.  TransUnion did less than that:  it corrected the error in Clark's report, but nothing shows it took any action with another consumer reporting agency.  In fact, TransUnion only notified LexisNexis in 2014 and did not do so in 2013.

### c.   **Clark's Claim Is Typical of Those of the Class**

Clark contends that she satisfies typicality because, by alleging a violation of

§ 1681g(a)(2), proving her claim will necessarily advance the claims of all class members.  The

Court agrees.

For a class representative to satisfy typicality, he or she "must be part of the class and

possess the same interest and suffer the same injury as the class members." *Dieter v. Microsoft*

*Corp.*, 436 F.3d 461, 466 (4th Cir. 2006); *see also Soutter*, 307 F.R.D. at 208 ("[T]he typicality

prerequisite focuses on the general similarity of the named representative's legal and remedial

theories to those of the proposed class.").  As explained by the Fourth Circuit in *Dieter*:

> The typicality requirement goes to the heart of a representative parties' ability to
> represent a class, particularly as it tends to merge with the commonality and
> adequacy-of-representation requirements.  The representative party's interest in
> prosecuting his own case must simultaneously tend to advance the interests of the
> absent class members.  For that essential reason, plaintiff's claim cannot be so
> different from the claims of absent class members that their claims will not be
> advanced by plaintiff's proof of his own individual claim.  That is not to say that
> typicality requires that the plaintiff's claim and the claims of class members be
> perfectly identical or perfectly aligned.  But when the variation in claims strikes at
> the heart of the respective causes of actions, we have readily denied class
> certification.

436 F.3d at 466–67.  In short, "[t]he essence of the typicality requirement is captured by the

notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'"  *Id.* at 466

(quoting *Broussard*, 155 F.3d at 340).

Here, Clark's interests align with those of the class, and she alleges to have suffered the

same injury.  Clark's § 1681g(a)(2) claim arises from TransUnion's failure to disclose the source

of information reported on her consumer report.  And the Class Claim arises from the same

omission.  "Because there are no factual differences between claims and the members all raise

the same legal issue as [Clark], there are no factual or legal differences between the class

members' claims and [Clark's] claims." *Milbourne v. JRK Residential America, LLC*, No. 3:12cv861, 2014 WL 5529731, at *7 (E.D. Va. Oct. 31, 2014) ("*Milbourne I*").

Disagreeing with this straightforward analysis, TransUnion contends that Clark cannot satisfy the typicality requirement because her claim involves experiences unique to Clark, who "'is subject to unique defenses which threaten to become the focus of the litigation.'" (Opp'n Mot. Class Certification 18 (quoting *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 313 (E.D. Va 2007).) TransUnion specifically argues that Clark "is an atypical and inadequate class representative because: (i) the facts surrounding her allegations are unique; (ii) her claims are subject to unique defenses; and[,] (iii) the conditions that led to this lawsuit were created by her counsel, who still represents her in this matter."[26] (*Id.*) TransUnion's argument does not affect the Court's typicality analysis.

First, TransUnion opposes typicality on the incorrect presumption that Clark's § 1681g(a)(2) claim depends on facts entirely unique to her. While TransUnion correctly identifies that Clark's case had a judgment that was appealed and dismissed, but remained on her

---

[26] The Court addresses this final argument only in this rare instance where an attorney accuses another of sloppy work—or worse. TransUnion suggests that the purported error on Clark's credit report originated with Clark's then-counsel. (Opp'n Mot. Class Certification 20.) TransUnion contends that the Virginia Poverty Law Center (the "VPLC"), Clark's counsel for her underlying dispute, "failed to include the [General District Court] case number in the dismissal order, the amount of judgment, or any other important detail tying it back to the [General District Court's] Quik Cash Judgment." (*Id.* at 2.) According to TransUnion, the VPLC "prevent[ed] even the courts themselves from deciphering which judgment was dismissed." (*Id.*) TransUnion's argument misconstrues basic operations of Virginia's court system.

In Virginia, a General District Court, which is not a court of record, can hear some types of cases. After a party appeals a civil General District Court civil case to a Circuit Court, that court considers the matter *de novo*. Va. Code § 16.1-106 ("Such appeal shall be to a court of record having jurisdiction within the territory of the court from which the appeal is taken and shall be heard de novo."). The Circuit Court then enters its judgment as a new order. *See id.* § 16.1-113. Regardless, because this matter extends beyond the scope of certifying the Class Claim, the Court need not decide it now.

credit file, those "unique" facts have no bearing on her § 1681g(a)(2) claim (*i.e.*, the Class Claim).[27] Indeed, the Class Claim involves only whether TransUnion disclosed the "sources of information," an omission that satisfies "the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Deiter*, 436 F.3d at 466 (quoting *Broussard*, 155 F.3d at 340).

Second, TransUnion argues that Clark's case is "unique" because it may assert a statute-of-limitations defense against Clark in particular. TransUnion relies on 15 U.S.C. § 1681p, which states:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—
>
>> (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or[,]
>>
>> (2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p. TransUnion posits that any alleged violation serving as the basis for its liability under § 1681g(a)(2) occurred prior to May 20, 2009, when Clark first disputed the Quik Cash Judgment on her TransUnion consumer report. (Opp'n Mot. Class Certification 22 (citation omitted).) TransUnion argues that, because it failed to disclose LexisNexis as the source of information regarding Clark's Quik Cash Judgment at that time, the violation occurred then—more than five years before Clark filed suit.

In reply, Clark argues that no such defense exists because "[a] consumer need not allege (or prove) either that the [consumer reporting agency] furnished an inaccurate credit report or that [the consumer] made a § 1681i(a) dispute before being afforded the right to see what is

---

[27] The Court does not deny that some factual differences exist between Clark and the proposed class. While those distinctions remain immaterial to certifying the Class Claim, it bears mentioning that TransUnion nonetheless misreads the facts surrounding Clark's experience as discussed above.

actually in [his or] her credit file." (Pl.'s Reply 17, ECF No. 104.) In support of her position, Clark cites *Yarish v. Downey Fin. Corp.*, No. 3:08cv380, 2009 WL 1208178 (E.D. Va. Apr. 28, 2009),[28] which pertains only to the two-year statute of limitations in § 1681p(1).

The five-year statute of repose in § 1681p(2), on the other hand, includes no discovery component. Section 1681p(2) bars any claim arising out of a violation that occurred more than five years before a plaintiff filed suit. *See Milbourne v. JRK Residential Am.*, LLC, No. 3:12cv861, 2016 WL 1071569, at *5 (E.D. Va. Mar. 15, 2016) ("*Milbourne III*") (referring to § 1681p(2) as "a five-year absolute statute of repose").

Regardless, the Court cannot find that the five-year statute of repose has run as to Clark's § 1681g(a)(2) claim. Trans Union did not rectify its failure to disclose LexisNexis immediately after the alleged May 2009 violation. In fact, the 2014 consumer credit report provided to Clark continued to state that TransUnion obtained the records only from the courthouses that maintained the records: "Virginia Federal Court" and "Henrico District Court." Even if TransUnion violated § 1681g(a)(2) as early as 2009, it violated the statute *again* in 2014. Thus, even if § 1681p bars a claim arising out of TransUnion's failure to disclose the source of information on Clark's consumer report in 2009, Clark's claim can rest on the 2014 violation or

---

[28] In *Yarish*, the Honorable Henry E. Hudson, United States District Judge, rejected a statute-of-limitations defense under § 1681p because "the FCRA's limitations period does not commence until a 'consumer learns information which appears to be normally within the province of the bank or credit reporting agency and not easily discovered by the consumer.'" *Id.* at *2 (quoting *Broccuto v. Experian Info. Solutions, Inc.*, No. 3:07cv782, 2008 WL 1969222 (E.D. Va. May 6, 2008)). The plain text of § 1681p(1) provides that the two-year statute of limitations does not begin to run until *discovery* by the plaintiff.

any violation within five years of the date Clark brought this case.[29] Accordingly, Clark satisfies the typicality requirement of Rule 23(a)(3).

> ### d. Clark Will Fairly and Adequately Represent the Interests of the Class

The final requirement of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) "is met if the named plaintiff has interests common with, and not antagonistic to, the [c]lass's interests; and . . . the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." *Milbourne I*, 2014 WL 5529731, at *8 (internal citations and quotations omitted). "[T]he adequacy inquiry itself focuses on conflicts of interests." *Soutter*, 307 F.R.D. at 213. Clark meets the adequacy requirement.

First, Clark has no interests antagonistic to the class's interests. Clark and the class share the identical interest of establishing TransUnion's liability based on the same questions of law and fact. TransUnion does not contend otherwise, and the record demonstrates no conflicts of interest.

Second, the record does not demonstrate that either Clark or her attorneys are not suited to represent the class. This Court has repeatedly found that Clark's counsel is qualified to conduct such litigation. *See, e.g., Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14cv238, 2016 WL 1070819, at *3 (E.D. Va. Mar. 15, 2016) ("[T]his Court would have difficulty overstating Class Counsel's experience in the area of FCRA class action litigation."); *Thomas v.*

---

[29] TransUnion's one-sentence alternative argument that the two-year statute of limitations has expired also fails. While Clark discovered inaccurate public records information in her consumer report as early as 2009, "the FCRA's limitations period does not commence until a 'consumer learns information which appears to be normally within the province of the . . . credit reporting agency and not easily discovered by the consumer.'" *Yarish*, 2009 WL 1208178, at *2. Because TransUnion wholly omitted reference to LexisNexis, Clark had no reason to know that TransUnion failed to disclose an unknown source.

*FTS USA, LLC*, 312 F.R.D. 407, 420 (E.D. Va. 2016) ("the Court finds that Thomas'[s] counsel

is qualified, experienced, and able to conduct this litigation so as to fully and adequately

represent both classes.  Counsel is experienced in class action work, as well as consumer

protection issues, and has been approved by this Court and others as class counsel in numerous

cases around the country."); *Dreher I*, 2014 WL 2800766, at *2 ("Dreher's counsel is well-

experienced in the arena of FCRA class action litigation.").  This Court echoes the sentiments

previously stated about Clark's counsel because they pertain here with equal vigor.[30]

The Court further rejects TransUnion's argument that Clark should not represent the class

simply because her knowledge of the case does not rise to that of her counsel's.  *See Gunnells v.

Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003) ("It is hornbook law . . . that '[i]n a

complex lawsuit, such as one in which the defendant's liability can be established only after a

great deal of investigation and discovery by counsel against a backdrop of legal knowledge, the

representative need not have extensive knowledge of the facts of the case in order to be an

adequate representative."); *see also Flores v. Anjost Corp.*, 284 F.R.D. 112, 129 (S.D.N.Y 2012)

("'Knowledge of all the intricacies of the litigation is not required and several courts have found

that general knowledge of what is involved is sufficient.'  While Rule 23 requires 'adequate

---

[30] TransUnion remarkably asserts that the VPLC should be disqualified as counsel because the VPLC: "(i) did not include the [General District Court] case number in the Order dismissing the Quik Cash Judgment; and[,] (ii) did not take action to ensure that the [General District Court] docket reflected dismissal." (Opp'n Mot. Class Certification 25.)  As a result, TransUnion contends, the "VPLC *is responsible* for the very harm [Clark] claims in this action . . . because [the] VPLC failed to ensure proper documentation of the dismissal of the Quik Cash Judgment on appeal." (*Id.*)  This argument fails for at least two reasons.  First, nothing on the record supports the notion that the VPLC acted contrary to normal procedure in Virginia courts. *See supra* p. 20 n.26 (citing Va. Code §§ 16.1-106, 16.1-113).  Second, even if the Court were to find that the VPLC harmed the viability of Clark's claim (which it does not), it cannot see how the circumstances surrounding the VPLC's representation rise to a level of a conflict with the class.  The Class Claim about TransUnion's failure to disclose the sources of the public records information on the class members' consumer reports would bear no relation to whether the VPLC hindered Clark's ability to bring her individual claims.

personal knowledge of the essential facts of the case,' plaintiffs are entitled to rely on their counsel for the legal underpinning of their claims." (citations omitted)); *Barr v. Harrah's Entm't, Inc.*, 242 F.R.D. 287, 295 (D.N.J. 2007) ("A class representative need only possess 'a minimal degree of knowledge necessary to meet the adequacy standard.'"). Clark's counsel represents that Clark has participated in discovery and has asked appropriate questions. Clark's deposition testimony demonstrates that she has sufficient general knowledge of the case. (Clark Dep. 162:18–25 (suggesting that her responsibilities as class representative include "representing for the whole as one" and "mak[ing] sure everybody is treated fair and equally so they won't have to experience, moving forward, incorrect information being reported"). Accordingly, Clark satisfies the adequacy requirement of Rule 23(a)(4).

### 2.   Clark Satisfies the Predominance and Superiority Requirements of Rule 23(b)

In addition to satisfying the four requirements of Rule 23(a), Clark's proposed class must also align with at least one of the types of class actions delineated in Federal Rule of Civil Procedure 23(b) and meet the corresponding prerequisites for certification. The three types of class actions in Rule 23(b) are as follows:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or[,]

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or[,]

25

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and[,]

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

Here, Clark moves for certification under Rule 23(b)(3).  Certification under Rule 23(b)(3) is appropriate where the Court finds that:  (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and, (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### a. Questions Common to the Class Predominate Over Questions Affecting Only Individual Members

Clark satisfies the predominance requirement of Rule 23(b)(3).  Under Rule 23(b)(3), questions common to the class "must predominate over any questions affecting only individual members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  Whether common questions predominate over individual questions "is a separate inquiry, distinct from the requirements found in Rule 23(a)." *Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299, 305 (4th Cir. 2013) (citing *Dukes*, 131 S. Ct. at 2556).  This requirement is "even more demanding than Rule 23(a)," *Comcast*, 133 S. Ct. at 1432, and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623.

26

"Rule 23(b)(3)'s commonality-predominance test is qualitative rather than quantitative." *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 272 (4th Cir. 2010) (citing *Gunnells*, 348 F. 3d at 429). If the "qualitatively overarching issue" in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues. *See Ealy*, 514 F. App'x at 305 ("Indeed, common issues of liability may still predominate even when some individualized inquiry is required.").

Clark satisfies the predominance requirement because Clark's and the class members' claims encompass the same essential factual and legal issues. The dominant issue before the Court is the ultimate question of liability: whether TransUnion willfully failed to disclose as its source the third-party public records vendor, LexisNexis, in violation of § 1681g(a)(2). This alone, as the qualitatively overarching issue of this case, satisfies the predominance requirement and outweighs any issues particular to individual class members. As explained in *Stillmock*:

> Where, as here, the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory damages are insufficient to defeat class certification under Rule 23(b)(3).

385 F. App'x at 273.[31] Accordingly, Clark satisfies the predominance requirement of Rule 23(b)(3).

---

[31] At oral argument, counsel for TransUnion argued that Fourth Circuit precedent precludes certification if damages remain individualized. *See Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 265 (4th Cir. 2012) (finding that statutory damages "typically require an individualized inquiry"); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342–43 (4th Cir. 1998) (finding, in an antitrust case, that "each putative class member's claim for lost profits damages was inherently individualized"). TransUnion overstates the proposition. Although a range of statutory damages may charge a jury with the task of selecting a figure within that range, *Stillmock*, 385 F. App'x at 277 (Wilkinson, J., concurring), that alone does not end the inquiry. If "common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Id.* at 273 (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003)). This is because class certification in such cases will still "achieve economies of time, effort, and

**b.    A Class Action is Superior to Other Available Methods for Fairly and Efficiently Adjudicating This Lawsuit**

Clark satisfies the superiority requirement. Superiority requires that litigation by means of a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority "'depends greatly on the circumstances surrounding each case,'" and "'[t]he rule requires the court to find that the objectives of the class-action procedure really will be achieved.'" *Stillmock*, 385 F. App'x at 274 (internal citation omitted). When making a "determination of whether the class action device is superior to other methods available to the court for a fair and efficient adjudication of the controversy . . . [the court should] not contemplate the possibility that no action at all might be superior to a class action." *Brown v. Cameron-Brown Co.*, 92 F.R.D. 32, 49 (E.D. Va. 1981). In determining whether the class action mechanism is truly superior, the court should consider "the class members' interest in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and[,] the likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

---

expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Gunnells*, 348 F.3d at 424 (citing *Amchem*, 521 U.S. at 615).

Meanwhile, TransUnion anchors its only written argument against predominance in the Supreme Court's *Spokeo* decision. TransUnion argues: "[I]dentifying those individuals who suffered *concrete injury* due to TransUnion's manner of disclosing public record sources would be impossible without individual inquiry." (Opp'n Mot. Class Certification 27 (emphasis added).) According to TransUnion, determining whether a putative class member suffered concrete harm would require a finding of several conditions, including whether "the public record section of the . . . consumer report must have contained incorrect information or omitted relevant information." (*Id.*) Again, in light of the December 2016 Memorandum Opinion, this argument fails.

TransUnion again contends that factual differences preclude certification, claiming that the supposed individualized claims would make managing the class action ineffective. (*See* Opp'n Mot. Class Certification 30 ("[T]here are incredible complexities in managing litigation on behalf of the class consisting of persons who each, individually, would need to tender proof of specific, concrete injury under Section 1681h as a result of TransUnion's manner of disclosing public record sources.").) The Court has already rejected that argument, finding that resolving the Class Claim will not require individualized inquiries concerning any inaccuracies in the class members' consumer reports. TransUnion's objection to superiority aside, Clark satisfies the requirement for two principal reasons. First, a class action could provide redress to claimants who, as a result of the technical nature of TransUnion's violation, might not otherwise know the existence of their respective claims. *See Manuel*, 2015 WL 4994549, at *18; *Soutter*, 307 F.R.D. at 218 ("'[T]here is a strong presumption in favor of a finding of superiority,' where, as here, 'the alternative to a class action is likely to be no action at all for the majority of class members.'" (citation omitted)); *Dreher I*, 2014 WL 2800766, at *5 (finding superiority where "the class members do not have a strong interest in individually prosecuting the case").

Second, a class action gives claimants incentive to pursue claims that otherwise would not be worth pursing in light of the insignificant damages that could be recovered. *See Stillmock*, 385 F. App'x at 274 ("[T]he low amount of statutory damages available means no big punitive damages award on the horizon, thus making an individual action unattractive from a plaintiff's perspective. Second, there is no reasoned basis to conclude that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of [the] FCRA by individual actions of a scale comparable to the potential enforcement by way of class action."); *see also Soutter*, 307 F.R.D. at 218 (following *Stillmock*

to find superiority where statutory damage provisions in the FCRA cannot support any meaningful number of individual suits); *Dreher I*, 2014 WL 2800766, at *5. Accordingly, Clark satisfies the superiority requirement of Rule 23(b)(3).

### III.  Conclusion

For the foregoing reasons, the Court finds that Clark meets the requirements of Federal Rule of Civil Procedure 23.  The Court will grant the Motion for Class Certification.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date:  3/1/2017